**Lewis R. Landau** (CA Bar No. 143391)
**Attorney-at-Law**
22287 Mulholland Hwy., # 318
Calabasas, California 91302
Voice & Fax: (888) 822-4340
Email: Lew@Landaunet.com

Attorney for Platinum Loan Servicing, Inc.

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>FRE 355 Investment Group, LLC,<br><br>Debtor. | Case No.: 20-50628 SLJ 11<br><br>Cases Jointly Administered<br><br>Chapter 11<br><br>Case No.: 20-50631 SLJ 11<br><br>**MOTION TO DISMISS CHAPTER 11 CASES** |
| In re<br><br>Mora House, LLC,<br><br>Debtor. | Date: August 19, 2020<br>Time: 2:00 p.m.<br>Place: Courtroom 9 (Telephonic)<br>US Bankruptcy Court; Judge Johnson<br>280 South First Street<br>San Jose, California 95113 |

Platinum Loan Servicing, Inc. ("PLS") as servicing agent for the beneficiaries of the mortgages on the real property owned by FRE 355 dba FRE 355 Investment Group, LLC ("FRE 355") and Mora House, LLC ("Mora House") (FRE 355 and Mora House are collectively referred to as "Debtors"), herein moves for an order dismissing the Debtors' chapter 11 cases pursuant to 11 U.S.C. § 1112(b). PLS's motion is supported by the following memorandum of points and authorities, the Declaration of Scot Fine ("Fine Declaration"), Declaration of Ricci E. Hart ("Hart Declaration") and request for judicial notice ("RFJN") filed concurrently herewith. For all these reasons, the Court should dismiss the Debtors' cases.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION AND BACKGROUND FACTS

FRE 355 filed its chapter 11 case on April 13, 2020 and Mora House filed its chapter 11 case on April 15, 2020. Both petitions disclosed that the Debtors are single asset real estate cases as defined in 11 U.S.C. § 101(51)(B). *See* ECF # 1 (for each case) at ¶ 7. As such, the 90-day single asset relief from stay deadline under 11 U.S.C. § 362(d)(3) lapsed on July 12 and 14, 2020. On July 10, 2020, the Debtors filed their joint chapter 11 plan and disclosure statement set for hearing on September 3, 2020. *See* RFJN Exhibits 1 and 2.

PLS is the loan servicing agent for the beneficiaries of mortgages on Debtors' real property.[1] The Lenders loaned FRE 355 the sum of $10,937,000 on March 29, 2018 secured by a first priority deed of trust on the FRE 355 real property and a second priority deed of trust on the Mora House real property. The total amount due on the Lenders' loan as of July 7, 2020 is $13,173,440.49 with interest accruing at the rate of $4,561.46 per day thereafter and additional costs. *See* Fine Declaration and Exhibit 2 hereto. Debtors filed their chapter 11 cases to stay the Lenders' imminent foreclosure sales.

The following admissions are taken from the Debtors' Disclosure Statement for Debtors' Plan of Reorganization (July 10, 2020) [ECF # 65] ("Disclosure Statement") attached as RFJN Exhibit 1:

> The Debtors are limited liability companies formed to own, develop and sell individual parcels of real property. Melvin Vaughn is the managing member and sole owner of the Debtors.
> The principal asset of FRE 355 is the Mora House, a newly-constructed single family dwelling located at 10718 Mora Hills Drive, Los Altos Hills, California. The Mora House has 6 bedrooms, 8 full bathrooms, 3 half bathrooms, a

---

[1] Those beneficiaries are set forth in the Note Secured by Deed of Trust attached hereto as Exhibit 1: S & R Income Fund I, LP as to an undivided 40.569% interest and S & R Income Fund II, LP as to an undivided 22.401% interest and RDG Lender Services, LLC, as to an undivided 9.600% interest and PLC Investment Group, LLC, a California limited liability company as to an undivided 9.143% interest and Julian Maimin and Stacey Maimin, Trustees, of the Julian Maimin & Stacey Maimin Revocable Trust U/A 12/1/10 as to an undivided 6.857% interest and Judi Beth Kaplan, Trustee of the Judi Beth Kaplan Living Trust dated November 29, 2006 as to an undivided 4.572% interest and William H. Scripps and Kathryn A. Scripps Trustees, of the Scripps Family 1992 Revocable Trust U/A 6-9-92 as to an undivided 4.572% interest and Lauren Dromy, Trustee, of The Israel Maimin 2010 Granter Trust FBO Lauren Dromy U/A 12/1/10 as to an undivided 2.286% interest (hereinafter "Lenders").

4-car garage and is 9,677 square feet. The lot upon which the Mora House sits is approximately 1.24 acres in the Los Altos Hills with jaw dropping views of the San Francisco Bay, East Bay mountains and Silicon Valley, including the adjacent 4,000-acre Rancho San Antonio Open Space Reserve. Construction of the home, which is in a modern style, was completed in approximately early 2018. The Mora House has been actively marketed for sale since April 2018 with a current list price of $14,999,999.

> The sole asset of Mora House, LLC is the Mora Lot, an undeveloped parcel lot of approximately 1.47 acres located immediately adjacent to the Mora House. The Mora Lot has been marketed concurrently with the Mora House under a separate listing agreement because ownership of the Mora Lot, and its continued preservation as undeveloped property, preserves the unobstructed views from the new home. The Mora Lot is currently listed for sale at $4,000,000. Access to the Mora House and Mora Lot is by a common driveway.
>
> Both the Mora House and the Mora Lot are encumbered by the secured debt of S&R. S&R holds a first position deed of trust on the Mora House in the scheduled amount of $12,113,909.20 including interest and foreclosure fees. The debt owed to S&R is cross-collateralized by a second deed of trust on the Mora Lot.
>
> The Blanchard Trust holds a senior deed of trust against the Mora Lot alone in the amount of $2,441,801.23.

Disclosure Statement, RFJN Exhibit 1 at internal page 6-7.

In regard to post-petition operations, the Disclosure Statement admits:

> <u>Post-Petition Operations</u>: The Mora House has not been rented since the commencement of these cases, and no cash collateral has been generated. The limited costs of operations are utilities which are in Mr. Vaughn's personal name, routine maintenance such as landscaping, pool care, and insurance. Mr. Vaughn continues to advance these limited costs each month along with quarterly U.S. Trustee fees as an unsecured loan to the Debtors, as was his custom and practice pre-petition.

Disclosure Statement, RFJN Exhibit 1 at internal pages 8-9.

The Debtors' chapter 11 plan [ECF # 64; RFJN Exhibit 2] ("Plan") is a plan of liquidation.

Per the Disclosure Statement:

> **A. Plan Overview.**
> The Debtors will advertise, market and close sales of the Mora House and Mora Lot within 6 months after the Effective Date of the Plan, the Initial Marketing Period, to pay secured claimants of both properties in full and to pay a projected dividend of 9.15% to unsecured claimants. If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then (1) S&R shall release its lien against the Mora Lot, and (2) the Debtors shall have the Extended Marketing Period of six additional months to close sales of the Mora House and Mora Lot.

Disclosure Statement, RFJN Exhibit 1 at internal pages 1-2.

The feasibility of the Debtors' Plan is described as follows:

> The Bankruptcy Code requires as a condition to the Plan's confirmation that the Bankruptcy Court find that liquidation of the Debtors or the need for further reorganization is not likely to follow after confirmation. In order to prove feasibility, the Debtors are required therefore to set forth their Effective Date and other priority payments and show that they have adequate cash to pay them when due. This involves a two-step analysis: first, the Debtors will set forth their analysis of the proceeds from sale of the Mora House and Mora Lot.
>
> As set forth in Exhibit "C" hereto, the Debtors assume that the Mora House and Mora Lot will sell for list prices, $14,999,000 and $4,000,000, respectively. The combined tax basis for the two properties is $17,433,065. Assuming sale expenses of 7% ($1,225,000), the Debtors would generate a loss of $1,158,065 on the sale, meaning no Federal or State capital gains taxes would be payable. $16,275,000 would be available to pay claims after costs of sale.
>
> Payment from escrow of the secured claims set forth in Classes 1A-2C listed above will leave $430,606 in net proceeds for distribution to creditors.

Disclosure Statement, RFJN Exhibit 1 at internal pages 9-10.

The Debtor's Disclosure Statement confirms that the Debtors are operating at a loss and have no funds from operations to pay administrative expenses other than loan proceeds from Mr. Vaughn. Those loans will increase the administrative burden in the cases, as does the Debtors' general counsel fees. In fact, Debtors' most recent Monthly Operating Reports for June 2020 reflect $274,676 in unpaid post-petition liabilities. *See* RFJN Exhibits 3 and 4.

The critical foundation for Debtors' liquidating Plan is that the Debtors sell their real properties for at least $19 million, which will yield $430,606 to pay general unsecured claims. The Debtors' Plan is a **sham delay tactic** that was filed before the 90-day single asset real estate case relief from stay deadline under 11 U.S.C. § 362(d)(3). The Debtors' Plan is patently infeasible and Debtors' cases must be dismissed for at least the following reasons:

1. Per the Disclosure Statement, "The Mora House has been actively marketed for sale since April 2018 with a current list price of $14,999,999." The $15 million listing price has thus been market tested for over two (2) years and has failed to generate a closed sale. There is no credible reason to believe that an additional year of marketing (after plan confirmation) will result in a sale at the listing price after market testing confirms no sale at the $15 million listing price.

2. Debtors have not offered an appraisal valuation for their real properties. PLS has obtained recent appraisals reflecting that the current value of the Mora House is only $10,500,000 and the Mora Lot is only $2.75 million. At $13,250,000 combined value, the Debtors cannot close a sale. *See* Hart Declaration. The $13,250,000 combined value of Debtors' real properties reveals the ***sham delay tactic*** nature of the Debtors' Plan.

3. Debtors' distribution analysis that results in $430,606 to pay unsecured creditors on a $19 million sale is based on PLS receiving only $13 million at closing. RFJN Exhibit 1 at internal Exhibit C. However, the amount due PLS as of July 7, 2020 is $13,173,440.49 and increases by at least $136,000 monthly plus costs. *See* Exhibit 2 hereto. Based on PLS's accrual status, ***another $816,000 in interest accrues every six months*** from and after July 7, 2020. As such, the Debtors' proposed Plan distribution is patently infeasible making it abundantly clear that that the Plan is a ***sham delay tactic*** to avoid relief from stay under 11 U.S.C. § 362(d)(3).

4. Finally, Debtors' Plan relies upon the accrual of negative amortization of interest during the Plan term as Debtors do not propose to make any interim plan distributions during the Plan term and prior to sale closing. Negative amortization plans, while not *per se* prohibited, are subject to stringent confirmation standards under Great Western Bank v. Sierra Woods Group, 953 F.2d 1174, 1177-78 (9th Cir. 1992) to assure fair and equitable treatment under the plan. Debtors' Plan contains none of the fair and equitable safeguards required to confirm a negative amortization plan and shifts the risk of loss entirely to the Lenders for the success of Debtors' liquidating Plan. Since the Debtors value their real property excessively and unreasonably high and fail to account for all accruing liabilities in the estate, the Plan is patently infeasible.

Although § 1112(b) authorizes conversion or dismissal of Debtors' cases under these circumstances, conversion to chapter 7 will result in a chapter 7 trustee receiving a fully encumbered no asset estate. As such, dismissal is in the best interests of creditors under these circumstances. For all these reasons, the Debtors cases must be dismissed.

## II.

## DISMISSAL IS MANDATORY UNDER 11 U.S.C. § 1112(b)

PLS moves to dismiss Debtors' case under 11 U.S.C. § 1112(b). Following BAPCPA's amendment of § 1112(b)(1), once cause has been demonstrated under § 1112(b)(4)(A), the Court <u>must</u> either dismiss or convert a chapter 11 case. <u>In re TCR of Denver</u>, LLC, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("[I]t appears that Congress has purposefully limited the role of this Court in deciding issues of conversion and dismissal, such that this Court has no choice, and no discretion, in that it '*shall*' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4).") (emphasis in original); *accord* <u>In re Adamo</u>, Case No. 14-73640-las, 2016 Bankr. LEXIS 694, at *27-28 (Bankr. E.D.N.Y. Mar. 4, 2016) ("If cause is found to exist, and the Court determines that the limited exceptions do not apply, dismissal or conversion is mandatory - the Court must dismiss or convert the chapter 11 case.") (continuing to note that, if cause is found to exist, the Court's discretion is limited to the selection of the proper remedy between dismissal or conversion); <u>In re Gregory & Parker, Inc.</u>, Case No. 12-01382-8-SWH, 2013 Bankr. LEXIS 2104, at *11 (Bankr. E.D. N.C. May 23, 2013) ("Once 'cause' is established, conversion or dismissal is mandatory, unless an exception set out in § 1121(b)(1) applies.").

Section 1112(b)(4)(A) has two elements:

> (1) whether after the commencement of the case, the debtor has suffered or continued to experience a negative cash flow, or alternatively, declining asset value; and (2) whether there is any reasonable likelihood that the debtor, or some other party, will be able to stem the debtor's losses and place the debtor's business enterprise back on a solid financial footing within a reasonable amount of time.

<u>Andover Covered Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC)</u>, 553 B.R. 162, 174 (B.A.P. 1st Cir. 2016) (*quoting* <u>In re Franco</u>, No. 10-09758 (ESL), 2012 Bankr. LEXIS 3254, at *7 (Bankr. D.P.R. July 27, 2012)). In the context of a debtor who has ceased business operations, in the absence of a cash infusion from third parties, the first prong will be satisfied because "any negative cash flow-including that resulting from only administrative expenses - effectively comes straight from the pockets of the creditors." <u>Loop Corp. v. United States Tr.</u>, 379

F.3d 511, 516 (8th Cir. 2004). Debtors' Disclosure Statement admits that the Debtors have no operations and their assets consist solely of **non-income producing** real properties. Debtors' expenses are being paid by loans from Mr. Vaughn, not cash infusions. As set forth in the Debtors' June, 2020 MORs, Debtors have accrued $274,676 in unpaid post-petition liabilities. *See* RFJN Exhibits 3 and 4.

Thus, the question is whether Debtors' liquidating plan is sufficiently viable and satisfies the "reasonable likelihood of rehabilitation" requirement. Case law is clear that it does not. Courts have consistently held that rehabilitation refers to the debtor's ability to restore the viability of the business. Loop Corp. v. United States Tr., 379 F.3d at 516 (collecting cases).

> The standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort. Rehabilitation is not another word for reorganization. Rehabilitation means to reestablish a business. Whereas confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation.

7 Collier on Bankruptcy ¶ 1112.04[6][a][ii] (internal footnotes and case citations omitted). The standard is not whether Debtor can ultimately fund a plan based entirely on speculative outcomes. Id. n.71 (*citing* Quarles v. United States Trustee, 194 B.R. 94, 97 (W.D. Va. 1996) (no likelihood of rehabilitation where debtor was losing money and only hope of reorganization depended entirely on speculative outcomes in pending litigation)). Rather, rehabilitation is a different and much more demanding standard than reorganization. In re Brutsche, 476 B.R. 298, 301 (Bankr. D. N.M. 2012). For purposes of § 1112(b)(4)(A), "'rehabilitation means to put back in good condition and reestablish on a sound basis.'" In re BH S&B Holdings, LLC, 439 B.R. at 347 (*quoting* In re AdBrite Corp., 290 B.R. 209, 216 (Bankr. S.D. N.Y. 2003)).

Finally, even if a liquidating plan could satisfy the rehabilitation requirement of § 1112(b)(4)(A), Debtors' Plan is patently infeasible and has no **reasonable likelihood** of confirmation for all the reasons stated herein. Although § 1112(b) authorizes conversion or dismissal of Debtors' cases under these circumstances, conversion to chapter 7 will result in a chapter 7 trustee receiving a fully encumbered no asset estate. As such, dismissal is in the best

interests of creditors under these circumstances.  For all these reasons, the Debtors cases must be dismissed.

## III.

## <u>CONCLUSION</u>

For all the reasons set forth above, PLS respectfully requests entry of an order dismissing the Debtors' cases.

Dated:  July 22, 2020  **Lewis R. Landau**
**Attorney-at-Law**


By:<u>*/s/ Lewis R. Landau*</u>
Lewis R. Landau
Attorneys for Movant

# DECLARATION OF SCOT FINE

I, Scot Fine, do hereby declare:

1. I am the Chief Executive Officer of Platinum Loan Servicing, Inc. ("PLS") and have personal knowledge of the facts set forth herein. PLS is the contractual loan servicer for S & R Income Fund I, LP as to an undivided 40.569% interest and S & R Income Fund II, LP as to an undivided 22.401% interest and RDG Lender Services, LLC, as to an undivided 9.600% interest and PLC Investment Group, LLC, a California limited liability company as to an undivided 9.143% interest and Julian Maimin and Stacey Maimin, Trustees, of the Julian Maimin & Stacey Maimin Revocable Trust U/A 12/1/10 as to an undivided 6.857% interest and Judi Beth Kaplan, Trustee of the Judi Beth Kaplan Living Trust dated November 29, 2006 as to an undivided 4.572% interest and William H. Scripps and Kathryn A. Scripps Trustees, of the Scripps Family 1992 Revocable Trust U/A 6-9-92 as to an undivided 4.572% interest and Lauren Dromy, Trustee, of The Israel Maimin 2010 Granter Trust FBO Lauren Dromy U/A 12/1/10 as to an undivided 2.286% interest (hereinafter "Lenders") under the Note Secured by Deed of Trust executed by FRE 355, LLC, a true and correct copy of which is attached hereto as Exhibit 1 and incorporated herein by reference ("Note"). The Note is secured by a first priority deed of trust on the FRE 355 real property and a second priority deed of trust on the Mora House real property.

2. The total amount due on the Lenders' loan as of July 7, 2020 is $13,173,440.49 with interest accruing at the rate of $4,561.46 per day thereafter and additional costs. Attached hereto as Exhibit 2 and incorporated herein by reference is a true, correct, and accurate Beneficiary Demand for Payoff reflecting the amounts due to satisfy the Note as of July 7, 2020. The Beneficiary Demand for Payoff was prepared in the ordinary course of PLS's loan servicing business based on PLS's books and records for servicing the Note.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 22nd day of July 2020 at Los Angeles, California.

Scot Fine

# EXHIBIT 1

# NOTE SECURED BY A DEED OF TRUST

Loan Number: **10536**     Date: **03/29/2018**     Calabasas, California

**Marquee Funding Group, Inc**
**BRE#01870113 & NMLS #267442**
**Dawn Bailey-ButtarBRE: #01940291/**
**NMLS: #1166016**
**10718 Mora Drive Los Altos CA 94024**
Property Address

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$10,937,000.00** (this amount will be called "principal"), plus interest, to the order of **S & R Income Fund I, LP as to an undivided 40.569% interest and S & R Income Fund II, LP as to an undivided 22.401% interest and RDG Lender Services, LLC, as to an undivided 9.600% interest and PLC Investment Group, LLC, a California limited liability company as to an undivided 9.143% interest and Julian Maimin and Stacey Maimin, Trustees, of the Julian Maimin & Stacey Maimin Revocable Trust U/A 12/1/10 as to an undivided 6.857% interest and Judi Beth Kaplan, Trustee of the Judi Beth Kaplan Living Trust dated November 29, 2006 as to an undivided 4.572% interest and William H. Scripps and Kathryn A. Scripps Trustees, of the Scripps Family 1992 Revocable Trust**

**U/A 6-9-92 as to an undivided 4.572% interest and Lauren Dromy, Trustee, of The Israel Maimin 2010 Grantor Trust FBO Lauren Dromy U/A 12/1/10 as to an undivided 2.286% interest** (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

### 2. INTEREST

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on **04/10/2018**, and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

### 3. PAYMENTS

My payments are   ☑ Interest Only   ☐ Fully Amortized   ☐ Other
I will make my payments each month as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 5 | Monthly beginning December 1, 2018 | 10.00% | $91,141.67 |
| 1 | May 1, 2019 | 10.00% | $11,028,141.67 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on **05/01/2019** (the Due Date) I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.

I will make my payments payable to **Platinum Loan Servicing, Inc., 24025 Park Sorrento, Suite #150, Calabasas CA 91302**, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

### 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge For Overdue Payments.** If I do not pay the full amount of each monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.000%** of my overdue payment or U.S. **$0.00**, whichever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than **10** days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

**(B) Default.** If I do not pay the full amount of each monthly payment due under this Note by the date stated in paragraph 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Applied Business Software, Inc. (800) 833-3343
Note Secured by Deed of Trust

10536/FRE 355 Investment Group, LLC
Page 1 of 3

Case: 20-50628   Doc# 69   Filed: 07/22/20   Entered: 07/22/20 15:52:43   Page 11 of 17

011

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

## 5. BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows: **If this loan is paid off or refinanced during the first Three (3) month(s) of the term, a prepayment penalty equal to the difference between Three (3) month(s) of interest and the date of prepayment shall be due tendered.**

## 6. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 7. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

## 8. THIS NOTE IS SECURED BY A DEED OF TRUST

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

## 9. DEFAULT RATE

In the event of a default under the terms of this note, including but not limited to; (a) non-payment of any installment of principal or interest within ten (10) days of its designated due date; (b) failure to pay insurance premiums or property taxes when they become due; (c) transfer of title; (d) or that this note is not paid in full on or before due date, then any unpaid balance at the time of default shall bear interest at the rate of Five percent (5%) above the herein stated note rate, from the time of default, until this note has been paid in full, or until the specific default has been cured. The Default Rate will automatically apply to all interest accrued thereafter without demand by the Note Lender.

## 10. WAIVER OF STATUTORY REGULATIONS

By initialing below, Borrower waives any right under California Civil Code 2954.10 or otherwise to prepay this Note, in whole or in part, without a prepayment penalty as described in Paragraph 5. Borrower acknowledges that prepayment of this Note may result in Lender's incurring additional losses, costs, expenses, and **liabilities**, including, but not limited to, lost revenue and lost profits. Borrower therefore agrees to pay the prepayment penalty as described in Paragraph 5, if any principal amount is prepaid, whether voluntarily or by reason of acceleration of the Maturity Date on default (including, but not limited to, acceleration on any transfer or conveyance of any right, title, or interest in the Mortgaged Property giving Lender the right to accelerate the maturity of this Note as provided in the Deed of Trust).

Case: 20-50628   Doc# 69   Filed: 07/22/20   Entered: 07/22/20 15:52:43   Page 12 of 17

## 11. USE OF PROCEEDS

Loan Proceeds are intended to be used primarily for business and commercial purpose and are not intended to be used for personal, family, or household purpose or in any manner which may result in the loan Transaction not being exempt from Truth in Lending Act (TILA), 15 U.S.C.A 1602 (h) or any similar or applicable consumer lending laws.

FRE 355, LLC, a Delaware Limited Liability Company Doing business in California as FRE 355 Investment Group, LLC, a Delaware Limited Liability Company by:

_____  3/30/18  _____  3/30/18
Borrower  Melvin Vaughn, Managing Member  Date    Borrower  Melvin Vaughn, Guarantor  Date

---

# ASSIGNMENT OF NOTE
# SECURED BY A DEED OF TRUST

Date: _____

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:


all beneficial interest under the within Note, without recourse, and Deed of Trust securing same

_____     _____

_____     _____

**DO NOT DESTROY THIS NOTE:** When paid it must be surrendered to the Trustee, together with the Deed of Trust securing same for cancellation, before reconveyance will be made.

Case: 20-50628   Doc# 69   Filed: 07/22/20   Entered: 07/22/20 15:52:43   Page 13 of 17
013

# Addendum to Promissory Note

# Loan#10536

In addition to the security in the real property at 10718 Mora Drive, Los Altos, California as described in the Deed of Trust securing this obligation the promissory note will also be secured by an additional Deed of Trust further collateralized by the following:

**The real property commonly known as 276 Dalewood Way, San Francisco, Ca 94127**

Borrower has represented that the property is currently under contract and scheduled to close on or about 30 days from the date of execution.

**Lender shall release the real property interest in said property for a Principal reduction of Five Hundred Thousand dollars ($500,000.00)**

Agreed and accepted this ____4____ day of ____April____, 2018

_[signature]_

# EXHIBIT 2

Case: 20-50628   Doc# 69   Filed: 07/22/20   Entered: 07/22/20 15:52:43   Page 15 of 17

015

# Platinum Loan Servicing Inc.
24025 Park Sorrento Suite 150
Calabasas, CA 91302
(818) 222-5222

7/7/2020

FRE 355 Investment Group, LLC by: Melvin Vaughn, Managing Member
10700 Mora Drive
Los Altos, CA 94024
Account: 10536

## BENEFICIARY'S DEMAND FOR PAYOFF

Dear FRE 355 Investment Group, LLC by: Melvin Vaughn, Managing Member

You are authorized to use the following amounts to pay off the above-mentioned loan. All necessary legal documents will be forwarded to the trustee for Full Reconveyance upon receipt of payment in full.

| **Payoff Date** | **7/7/2020** |
|---|---|
| Maturity Date | 5/1/2019 |
| Next Payment Due | 9/1/2019 |
| Interest Rate | 15.000% |
| Interest Paid-To Date | 8/1/2019 |
| Principal Balance | $10,937,000.00 |
| Unpaid Interest | $366,878.11 |
| Accrued Interest From 8/1/2019 To 7/7/2020 | $1,562,822.83 |
| Unpaid Late Charges | $86,587.38 |
| Accrued Late Charges | $136,726.40 |
| Unpaid Charges   *For additional details see itemization attached | $83,380.67 |
| Prepayment Penalty | $0.00 |
| Other Fees *For additional details see itemization attached | $45.00 |
| Trust Balance | $0.00 |
| **Payoff Amount** | **$13,173,440.39** |

Please add **$4,561.46** for each additional day past **7/7/2020**.

We reserve the right to amend this demand should any changes occur that would increase the total amount for payoff.  **Please note that this demand expires on Platinum Loan Servicing Inc.**, at which time you are instructed to contact this office for additional instructions (DEMAND FORWARDING FEES ARE DUE EVEN UPON CANCELLATION OF YOUR ESCROW).

Make disbursement check payable to**: Platinum Loan Servicing Inc.**

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

Sincerely,

Karen Larson
Loan Servicing Manager
(818) 222-5222

| ITEMIZATION OF UNPAID CHARGES | | | | | |
|---|---|---|---|---|---|
| Date | Description | Interest Rate | Unpaid Balance | Accrued Interest | Total Due |
| 02/14/2019 | NSF Payment Charge | 0.000% | $25.00 | $0.00 | $25.00 |
| 04/15/2019 | Advanced Trustee Fees | 0.000% | $17,538.34 | $0.00 | $17,538.34 |
| 04/15/2019 | Advanced Trustee Fees | 0.000% | $5,062.91 | $0.00 | $5,062.91 |
| 04/29/2019 | Advanced Trustee Fees | 0.000% | $6,668.08 | $0.00 | $6,668.08 |
| 04/29/2019 | Advanced Trustee fees | 0.000% | $1,924.92 | $0.00 | $1,924.92 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $14,471.84 | $0.00 | $14,471.84 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $852.48 | $0.00 | $852.48 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $426.87 | $0.00 | $426.87 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $1,790.35 | $0.00 | $1,790.35 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $1,705.12 | $0.00 | $1,705.12 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $4,177.69 | $0.00 | $4,177.69 |
| 04/10/2020 | defaulted late fees | 0.000% | $18,228.32 | $0.00 | $18,228.32 |
| 07/06/2020 | Advanced Appraisal Fees | 15.000% | $10,500.00 | $8.75 | $10,508.75 |
| | | | | Total | $83,380.67 |

| ITEMIZATION OF OTHER FEES | |
|---|---|
| Description | Amount |
| Demand Fee | $0.00 |
| Reconveyance Fee | $45.00 |
| Recording Fee | $0.00 |
| Forwarding Fee | $0.00 |
| Total | **$45.00** |