**Lewis R. Landau** (CA Bar No. 143391)
**Attorney-at-Law**
22287 Mulholland Hwy., # 318
Calabasas, California 91302
Voice & Fax: (888) 822-4340
*Email: Lew@Landaunet.com*

Attorney for Platinum Loan Servicing, Inc.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No.: 20-50628 SLJ 11 |
| FRE 355 Investment Group, LLC, | Cases Jointly Administered |
| | Chapter 11 |
| Debtor. | Case No.: 20-50631 SLJ 11 |
| | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS CHAPTER 11 CASES** |
| In re | |
| Mora House, LLC, | |
| Debtor. | Date: August 19, 2020 |
| | Time: 2:00 p.m. |
| | Place: Courtroom 9 (Telephonic) |
| | US Bankruptcy Court; Judge Johnson |
| | 280 South First Street |
| | San Jose, California 95113 |

Platinum Loan Servicing, Inc. ("PLS") as servicing agent for the beneficiaries of the mortgages on the real property owned by FRE 355 dba FRE 355 Investment Group, LLC ("FRE 355") and Mora House, LLC ("Mora House") (FRE 355 and Mora House are collectively referred to as "Debtors"), herein requests that the Court take judicial notice pursuant to Federal Rules of Evidence 201 of the following Court file documents in support of PLS's concurrently filed motion for an order dismissing the Debtors' chapter 11 cases pursuant to 11 U.S.C. § 1112(b).

Copies of the following documents are attached hereto as exhibits as follows:

Exhibit 1:    Disclosure Statement for Debtors' Plan of Reorganization (July 10, 2020)
              [ECF # 65];

Exhibit 2:    Debtors' Plan of Reorganization (July 10, 2020) [ECF # 64];

Exhibit 3:    June 2020 Chapter 11 Monthly Operating Report - FRE 355 [ECF # 67];

Exhibit 4:    June 2020 Chapter 11 Monthly Operating Report - Mora House [ECF # 33].

Dated:  July 22, 2020                         **Lewis R. Landau**
                                              **Attorney-at-Law**


                                              By:*/s/ Lewis R. Landau*
                                              Lewis R. Landau
                                              Attorneys for Movant

# EXHIBIT 1

Michael W. Malter, Esq.  ID #96533
Robert G. Harris, Esq. ID #124678
Julie H. Rome-Banks, Esq. ID #142364
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050
Telephone: (408) 295-1700
Facsimile: (408) 295-1531
Email: Michael@bindermalter.com
Email: Rob@bindermalter.com
Email: Julie@bindermatler.com

Attorneys for Debtors and Debtors-in-possession
FRE 355 Investment Group, LLC and Mora House, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, DIVISION 5

| | |
|---|---|
| In re:<br><br>FRE 355 INVESTMENT GROUP, LLC, dba FRE 355,<br><br>                Debtor. | Case No.  20-50628-SLJ<br><br>Cases Jointly Administered<br><br>Chapter 11 |
| In re<br><br>MORA HOUSE, LLC,<br><br>                Debtor. | Case No. 20-50631-SLJ<br><br>Chapter 11<br><br>DISCLOSURE HEARING:<br><br>Date: September 3, 2020<br>Time: 1:30 p.m.<br>Courtroom: 11 (telephonic) |

## DISCLOSURE STATEMENT FOR DEBTORS' PLAN OF REORGANIZATION (JULY 10, 2020)

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................................. 1

II.     SUMMARY OF CREDITOR TREATMENT IN PLAN ............................................... 1

        A.      Plan Overview. ..................................................................................................... 1

        B.      Summary of Plan Treatment by Class. ................................................................ 2

III.    VOTING PROCEDURES ............................................................................................... 5

        A.      Impairment. .......................................................................................................... 5

        B.      Cramdown (Procedure Absent Acceptance by All Classes). ............................... 5

        C.      Submission of Votes ............................................................................................ 5

IV.     HISTORY OF THE DEBTORS ..................................................................................... 6

        A.      The Debtors' Businesses. ..................................................................................... 6

        B.      Events Leading to Bankruptcy. ............................................................................ 7

V.      SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE ................................... 8

VI.     ASSETS .......................................................................................................................... 9

VII.    FEASIBILITY ................................................................................................................ 9

VIII.   ALTERNATIVES TO THE PLAN OF REORGANIZATION ..................................... 10

        A.      Best Interest of Creditors Test ........................................................................... 10

        B.      Liquidation under Chapter 7 .............................................................................. 10

        C.      Assertion of All Claims Yields A Chapter 7 Dividend Smaller Than the
                Dividend that the Plan Provides ........................................................................ 11

IV.     OTHER RELEVANT PLAN PROVISIONS ............................................................... 11

        A.      Executory Contracts. ......................................................................................... 11

        B.      Means of Execution. .......................................................................................... 12

        C.      Effect of Confirmation of Plan. ......................................................................... 14

        D.      Retention of Jurisdiction. ................................................................................... 15

        E.      General Provisions. ............................................................................................ 17

        F.      Implementation Orders. ..................................................................................... 18

## I.    INTRODUCTION

THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION UNDER BANKRUPTCY CODE SECTION 1125 FOR SOLICITATION OF ACCEPTANCES THEREOF. DISTRIBUTION OF THIS DISCLOSURE STATEMENT TO CREDITORS IS AUTHORIZED BY THE ENCLOSED ORDER OF THE COURT.

This Disclosure Statement (the "Disclosure Statement") contains information with respect to the Debtors' Chapter 11 Plan (July 10, 2020) (the "Plan") filed by debtors and debtors-in-possession FRE 355 Investment Group, LLC, dba FRE 355 and Mora House, LLC (collectively, the "Debtors"). Pursuant to section 1125 of the Bankruptcy Code, this Disclosure Statement is being distributed to you for the purpose of enabling you to make an informed judgment about the Plan.

**Your vote on the Plan is important. For the Plan to be accepted by a class of claims, the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of allowed claims in such class who vote on the Plan must vote to accept it.**

Non-acceptance of the Plan may lead to a liquidation of the Debtors and their assets under chapter 7 of the Bankruptcy Code or to the confirmation of another plan. These alternatives may not provide for a distribution of as much value to holders of allowed claims and interests as the Plan. Accordingly, the Debtors urge you to accept the Plan by completing and returning the enclosed ballot no later than October __, 2020.

## II.    SUMMARY OF CREDITOR TREATMENT IN PLAN

### A.    Plan Overview.

The Debtors will advertise, market and close sales of the Mora House and Mora Lot within 6 months after the Effective Date of the Plan, the Initial Marketing Period, to pay secured claimants of both properties in full and to pay a projected dividend of 9.15% to unsecured claimants. If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then (1) S&R shall release its lien against the Mora Lot, and (2) the Debtors shall have the Extended Marketing Period of six additional months to close sales of the Mora House and Mora Lot. The

Blanchard Trust shall retain without modification the right to advance $500,000 under the Addendum to Promissory Note to cause the release of the S&R lien from the Mora Lot.

**B.      Summary of Plan Treatment by Class.**

The treatment[1] of each class of creditors under the Plan is summarized as follows

| Class | Claimant(s) | Claim Amount | Treatment | Impairment/ Voting |
|---|---|---|---|---|
| Unclassified | Tax claims entitled to priority under Bankruptcy Code section 507(a)(8) | $3,442.75 | Will receive equal payments of $60 per month until sales of the Mora House and Mora Lot close, at which time the balance of FTB's priority tax claim will be paid in full with statutory interest. | Unimpaired Not entitled to vote |
| Unclassified | Estate Professionals | $20,000 | Will receive pay 100% of allowed amounts of claims without interest in cash on the Effective Date unless the holder of the claim otherwise agrees. | Unimpaired and not entitled to vote |
| Class 1A | Blanchard Trust | $2,441,801.23 | Retains lien against the Mora Lot. Will receive a single payment equal to the allowed amount of its claim with contract rate interest and reasonable attorneys' fees six months after the Effective Date or at such time that the Mora House is sold, whichever is sooner. If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then the Debtors shall have the Extended Marketing Period of to sell the Mora House and Mora Lot and six additional months to pay the Blanchard Trust's Class 1A claim. Blanchard Trust shall retain without modification the right to advance $500,000 under the Addendum to Promissory Note to cause the release of the S&R lien from the Mora Lot. | Impaired and entitled to vote |

---

[1] The Plan's language controls in the event of any conflict or ambiguity.

Case 2:20-06628   Doc# 652   Filed 07/12/20   Entered 07/12/20 14:55:23   Page 7 of
84
007

| | | | | |
|---|---|---|---|---|
| Class 1B | S&R | $12,113,909.20 | Retains lien against the Mora Lot.<br><br>Will receive a single payment equal to the allowed amount of its claim with contract rate interest and reasonable attorneys' fees six months after the Effective Date or at such time that the Mora Lot is sold, whichever is sooner.<br><br>If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then the Debtors shall have the Extended Marketing Period to sell the Mora House and Mora Lot and six additional months to pay S&R's Class 1B claim. | Impaired and entitled to vote |
| Class 1C | Department of Tax & Collections | $255,300.00 | Retains lien against the Mora Lot.<br><br>Will receive a single payment equal to the allowed amount of its claim with statutory interest six months after the Effective Date or at such time that the Mora Lot is sold, whichever is sooner.<br><br>If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then the Debtors shall have the Extended Marketing Period to sell the Mora House and Mora Lot and six additional months and to pay the Department of Tax & Collections' Class 1C claim | Impaired and entitled to vote |
| Class 2A | S&R | $12,113,909.20 | Retains lien against the Mora House.<br><br>Will receive a single payment equal to the allowed amount of its claim with contract rate interest and reasonable attorneys' fees six months after the Effective Date or at such time that the Mora House is sold, whichever is sooner.<br><br>If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then the Debtors shall have the Extended Marketing Period to sell the Mora House and Mora Lot and six additional months to pay S&R's Class 2A claim. | Impaired and entitled to vote |

| | | | | |
|---|---|---|---|---|
| Class 2B | Department of Tax & Collections | $116,838 | Retains lien against the Mora House. Will receive a single payment equal to the allowed amount of its claim with statutory rate interest six months after the Effective Date or at such time that the Mora House is sold, whichever is sooner. If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then the Debtors shall have the Extended Marketing Period to sell the Mora House and Mora Lot and six additional months to pay the Class 2B claim of the Department of Tax & Collections. | Impaired and entitled to vote |
| Class 2C | EPS Plumbing | $27,000.00 | Retains lien against the Mora House. Will receive a single payment equal to the allowed amount of its claim with contract rate interest six months after the Effective Date or at such time that the Mora House is sold, whichever is sooner. If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then the Debtors shall have the Extended Marketing Period to sell the Mora House and Mora Lot and six additional months to pay the Class 2B claim of EPS Plumbing. | Impaired and entitled to vote |
| Class 3A | General Unsecured Claims of FRE 355 | $4,165,014.69 | Will receive payment of the allowed amount of their claims, without interest, from the net proceeds from sale of the Mora House after the full payment of all secured and priority claims six months after the Effective Date, unless S&R receives a $500,000 principal paydown under the Addendum to Promissory Note, in which case payment shall be made twelve months after the Effective Date or at such time that the Mora House and Mora Lot are sold, whichever is sooner | Impaired and entitled to vote |
| Class 3B | General Unsecured Claims of Mora House LLC | $25,663.49 | Will receive a pro rata distribution on the allowed amount of their claims, without interest, from the net proceeds from sale of the Mora Lot after the full payment of all secured and priority claims. | Impaired and entitled to vote |

| | | | Payment shall be made six months after the Effective Date, unless S&R receives a $500,000 principal paydown under the Addendum to Promissory Note, in which case payment shall be made twelve months after the Effective Date or at such time that the Mora House and Mora Lot are sold, whichever is sooner. | |
|---|---|---|---|---|
| Class 4A | Equity Interests in FRE 355 | N/A | Interests to be retained | No |
| Class 4B | Equity Interests in Mora House LLC | N/A | Interests to retained | No |

## III.  VOTING PROCEDURES

### A.  Impairment.

If you hold a claim that is impaired and classified, and listed in the column of the table above you will receive a ballot and may vote on the Plan.  "Impairment" means that your legal, equitable, or contractual rights are altered by the Plan or that you will not be paid in cash in full with interest as set forth below on the Effective Date.  Holders of claims that are not impaired under the Plan are deemed to accept it.

### B.  Cramdown (Procedure Absent Acceptance by All Classes).

Bankruptcy Code section 1129(b) provides that, if the Plan is rejected by one or more impaired classes of claims, it may be confirmed by the Bankruptcy Court, if: (i) the Court determines that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting class(es) of claims impaired under the Plan; and (ii) at least one class of impaired claims voted to accept the Plan.  The Debtors will seek to confirm the Plan under this provision if one or more impaired classes do not vote to accept.

### C.  Submission of Votes.

A vote for acceptance or rejection of the Plan may be cast by completing and signing the ballot enclosed herewith and mailing it to:

///

Case: 20-50628    Doc# 65-2   Filed: 07/10/20   Entered: 07/10/20 15:13:43   Page 6
of 84

Case: 20-50628    Doc# 65   Filed: 07/02/20   Entered: 07/02/20 15:53:43   Page 10 of 84

010

Robert G. Harris, Esq.
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050

Only the Ballot should be mailed. For your vote to be counted, your completed ballot must be received no later than October __, 2020 by 5:00 p.m., prevailing Pacific Time. Upon confirmation, the Plan will be binding on all creditors regardless of whether a creditor has voted in favor of or rejected the Plan.

## IV.     HISTORY OF THE DEBTORS

### A.     The Debtors' Businesses.

The Debtors are limited liability companies formed to own, develop and sell individual parcels of real property. Melvin Vaughn is the managing member and sole owner of the Debtors.

The principal asset of FRE 355 is the Mora House, a newly-constructed single family dwelling located at 10718 Mora Hills Drive, Los Altos Hills, California. The Mora House has 6 bedrooms, 8 full bathrooms, 3 half bathrooms, a 4-car garage and is 9,677 square feet. The lot upon which the Mora House sits is approximately 1.24 acres in the Los Altos Hills with jaw dropping views of the San Francisco Bay, East Bay mountains and Silicon Valley, including the adjacent 4,000-acre Rancho San Antonio Open Space Reserve. Construction of the home, which is in a modern style, was completed in approximately early 2018. The Mora House has been actively marketed for sale since April 2018 with a current list price of $14,999,999.

The sole asset of Mora House, LLC is the Mora Lot, an undeveloped parcel lot of approximately 1.47 acres located immediately adjacent to the Mora House. The Mora Lot has been marketed concurrently with the Mora House under a separate listing agreement because ownership of the Mora Lot, and its continued preservation as undeveloped property, preserves the unobstructed views from the new home. The Mora Lot is currently listed for sale at $4,000,000. Access to the Mora House and Mora Lot is by a common driveway.

Both the Mora House and the Mora Lot are encumbered by the secured debt of S&R. S&R holds a first position deed of trust on the Mora House in the scheduled amount of $12,113,909.20

Case: 20-50628     Doc# 65-2   Filed: 07/02/20   Entered: 07/02/20 15:13:43   Page 11
of 84

1  including interest and foreclosure fees. The debt owed to S&R is cross-collateralized by a second

2  deed of trust on the Mora Lot.

3       The Blanchard Trust holds a senior deed of trust against the Mora Lot alone in the amount of

4  $2,441,801.23.

5       FRE 355 and S&R are parties to an Addendum to Promissory Note Loan #10536 dated

6  December 11, 2018, which granted S&R an additional deed of trust collateralized by the Mora Lot

7  and provides that "Lender shall release the real property interest in said property for a principal

8  reduction of Five Hundred Thousand dollars ($500,000)."

9      **B.**    **Events Leading to Bankruptcy.**

10       The loan from S&R was originally in the amount of $10,937,000 and was made on or about

11  March 29, 2018. The loan matured on May 1, 2019. Five (5) interest only payments were made to

12  S&R by FRE 355 pursuant to the terms of its promissory note before the loan matured.

13       The loan from S&R was originally in the amount of $10,937,000 and was made on or about

14  March 29, 2018. The loan matured on May 1, 2019. FRE made five interest only payments to S&R

15  on its promissory note before the loan matured. Upon maturity, neither Debtor had located a buyer

16  for its respective real property[2]. S&R recorded notices of defaults on both properties with trustee's

17  sales initially set for July 31, 2019 as to FRE 355 and August 21, 2019 as to Mora House LLC.

18       Following the maturation of S&R's loan and scheduled trustee's sales, Mr. Vaughn entered

19  into a series of verbal agreements with S&R on behalf of the Debtors. Mr. Vaughn personally

20  advanced unsecured loans to FRE 355 and used limited rents from a holiday rental in order to make

21  additional interest only forbearance payments to S&R beginning in August 2019 of $91,141.67

22  approximately each month. S&R postponed the trustee's sales while the Debtors continued to

23  actively market and show the Mora House and Mora Lot with the assistance of a real estate broker.

24  Continuances of the trustee's sales were granted monthly upon additional payment to S&R. Mr.

25

26      [2] There had been sale contracts on both properties entered into in early March 2020 that

27  would have been sufficient to pay all secured and unsecured debt in both cases in full and provide
Mr. Vaughn with a return on his equity. However, it was cancelled pre-petition by the buyer, an

28  individual from China, as a result of the pandemic.

Case: 20-50628   Doc# 65-2  Filed: 07/02/20  Entered: 07/02/20 15:13:43  Page 012 of 84

1   Vaughn estimates that he has contributed approximately $3.1 million of his own funds into the

2   development, construction and carrying costs of the Mora House and Mora Lot since 2007

3   principally in the form of unsecured loans.

4       The trustee's sale of the property owned by FRE 355 was continued to April 13, 2020 at

5   10:00 a.m., and the trustee's sale of the undeveloped lot owed by Mora House, LLC was continued

6   to April 15, 2020 at 10:00 a.m.   Less than an hour prior to the sale time, Mr. Vaughn was informed

7   that S&R refused to honor an agreement for another month of forbearance, refused to accept

8   payment, and would not continue the trustee's sale on the Mora House.

9       The Debtors commenced the filing of these bankruptcy cases by initially filing a voluntary

10  petition with the Bankruptcy Court, first on April 13, 2020 on behalf of FRE 355 to prevent the

11  trustee's foreclosure sale of the Mora House and second, by filing a voluntary petition on April 14,

12  2020 on behalf of Mora House, LLC to prevent the trustee's foreclosure sale of the Mora Lot.

13          **V.        SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE**

14      Appointment of Professionals:

15      Both Debtors applied for appointment of accountant Alan R. David to assist in the

16  preparation of required State income tax returns and to provide guidance on any required capital

17  gains analysis.  The Court entered the Order Appointing Accountant for Debtors [Dkt. #51] on May

18  29, 2020.

19      Both Debtors applied for appointment of a real estate broker.  The Court entered the

20  Order Granting Application for Approval of Listing Agreement for Sale of Property of The Estate

21  and Appointment of Real Estate Broker [Dkt. #58] on June 16, 2020.

22      Both Debtors applied for the appointment of Binder & Malter, LLP as their bankruptcy

23  counsel.  After contested hearings held on May 27, 2020 and June 20, 2020, employment was

24  approved.  The Court's Amended Order Granting Amended Motion for Employment and For

25  Approval of Post-Petition Retainer [Dkt. #63] was entered on June 28, 2020.

26      Post-Petition Operations:  The Mora House has not been rented since the commencement of

27  these cases, and no cash collateral has been generated.  The limited costs of operations are utilities

28  which are in Mr. Vaughn's personal name, routine maintenance such as landscaping, pool care, and

---

DISCLOSURE STATEMENT FOR DEBTORS' PLAN OF REORGANIZATION (JULY 10, 2020)        8

insurance. Mr. Vaughn continues to advance these limited costs each month along with quarterly U.S. Trustee fees as an unsecured loan to the Debtors, as was his custom and practice pre-petition.

Attendance at 341 Meetings and Initial Debtor Interviews: Both Debtors have completed their initial debtor interview, held jointly by the United States Trustee. Both Debtors have individually appeared at their Section 341 meetings of creditors which were both concluded.

Monthly Operating Reports and DIP Accounts: The Debtors are current in the filing of their monthly operating reports. The May, 2020 reports for each Debtor are attached hereto as Exhibits "A" and "B".

## VI. ASSETS

### A. Listed Assets and Values.

The Debtors listed the following assets in its most recent Monthly Operating Reports to the Bankruptcy Court for the period ending May 31, 2020:

| Description | Value |
|---|---|
| Cash – DIP Accounts | $267 |
| Professional Retainers | $37,149 + $19,016 = $56,165 |
| Mora House | $14,999,000 |
| Mora Lot | $4,000,000 |
| **Total assets** | $19,055,432 |

## VII. FEASIBILITY

The Bankruptcy Code requires as a condition to the Plan's confirmation that the Bankruptcy Court find that liquidation of the Debtors or the need for further reorganization is not likely to follow after confirmation. In order to prove feasibility, the Debtors are required therefore to set forth their Effective Date and other priority payments and show that they have adequate cash to pay them when due. This involves a two-step analysis: first, the Debtors will set forth their analysis of the proceeds from sale of the Mora House and Mora Lot.

As set forth in Exhibit "C" hereto, the Debtors assume that the Mora House and Mora Lot will sell for list prices, $14,999,000 and $4,000,000, respectively. The combined tax basis for the

two properties is $17,433,065. Assuming sale expenses of 7% ($1,225,000), the Debtors would generate a loss of $1,158,065 on the sale, meaning no Federal or State capital gains taxes would be payable. $16,275,000 would be available to pay claims after costs of sale.

Payment from escrow of the secured claims set forth in Classes 1A-2C listed above will leave $430,606 in net proceeds for distribution to creditors.

In addition, to the extent there are ongoing costs of operations such as payment of insurance and quarterly U.S. Trustee fees to be paid by the Debtors, as well as monthly payment of the priority tax claim of the Franchise Tax Board (until paid in full at the time of sale of the Mora House property as described earlier), the Debtors may continue to receive unsecured loans or equity contributions by their sole member, Melvin Vaughn, to enable the Debtors to make those required payments.

## VIII. ALTERNATIVES TO THE PLAN OF REORGANIZATION

The Debtors believe that the Plan provides creditors with the greatest value that can be obtained on their respective claims. The most likely alternative to confirmation of the Plan is liquidation of the estates under chapter 7 of the Bankruptcy Code.

### A. Best Interest of Creditors Test

The "best interest" test of Bankruptcy Code section 1129(a)(7)(A)(ii) requires that a plan provide to each dissenting member of each impaired class a recovery that has a present value at least equal to the present value of the distribution that unsecured creditors would receive if the bankruptcy estate were liquidated under chapter 7 of the Bankruptcy Code.

### B. Liquidation under Chapter 7

When a chapter 11 case is converted to a case under chapter 7 of the Bankruptcy Code, a chapter 7 trustee is appointed to conduct the affairs of the estate. In applying the liquidation test of Bankruptcy Code section 1129(a)(7)(A)(ii), the court must consider not only the accrued expenses of administration from the chapter 11, but the chapter 7 trustee's fees and expenses, and the fees and expenses of professionals likely to be retained by that trustee. Generally, no distribution is made in a chapter 7 case until all assets of the bankruptcy estate and all claims have been liquidated, a process that can often take many months and sometimes years. Most importantly, a chapter 7

trustee does not operate the business over which he or she takes control except in very rare circumstances.

**C.     Assertion of All Claims Yields A Chapter 7 Dividend Smaller Than the Dividend that the Plan Provides**

As set forth above, sales of the Mora House and Mora Lot if closed within the Initial Marketing Period or Extended Marketing Period would leave $430,606 in net proceeds for distribution to unsecured creditors in Classes 3A and 3B.  Subtracting the $25,663.49 for Class 3A leaves $404,942.51 for distribution to creditors.  Even if the two properties could be sold for list price, a Chapter 7 would yield less than the projected Chapter 11 dividend.  The following table illustrates why:

| | |
|---|---|
| Cash at closing | $6,275,000 |
| Less Secured Claims | $15,870,057.49 |
| **Subtotal – Net Unencumbered Asset Value** | **$404,942.51** |
| Chapter 11 Administrative Claims | [$20,000] |
| Priority Tax Claim | [$3,442.75] |
| Projected Chapter 7 Trustee Fees | [$10,400] |
| Chapter 7 Trustee's Professionals | [$25,000] |
| **NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS IN CHAPTER 7** | **$346,099.76** |
| *Percent Distribution to Holders of Allowed Unsecured Creditors in Chapter 7* | *8.3%* |
| **NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS IN CHAPTER 11** | **$381,100.01** |
| *Percent Distribution to Non-Insider Unsecured Creditors Under Plan* | *9.15%* |

**IV.     OTHER RELEVANT PLAN PROVISIONS**

**A.     Executory Contracts.**

**1.  Assumption and Rejection**

**i.  Contract Assumed.**

The Debtors assume, to the extent it is necessary, the Addendum to Promissory Note.

///

///

Case: 20-50628    Doc# 69-2    Filed: 07/10/2020    Entered: 07/10/2020 14:15:43    Page 16 of 84
016

**ii. Rejection of All Other Contracts Not Assumed.**

All other executory contracts not (a) previously assumed, assigned or rejected pursuant to final order of the Bankruptcy Court entered prior to the Effective Date, or (b) not subject to a pending motion to assume, assign or reject filed with the Bankruptcy Court prior to the Effective Date, will be deemed rejected as of the Effective Date.

**iii. Claims Arising Out of Rejection.**

Any claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Bankruptcy Court by no later than 30 calendar days after the confirmation of the Plan. If no proof of claim is filed within such time period, it will be forever barred from receiving a distribution from estate assets.

**B.     Means of Execution.**

**1.  Reorganized Debtors.**

The Debtors, as the Reorganized Debtors shall, from and after confirmation of the Plan, continue as the representatives of their respective estates and succeed without further order to all right, title and interest in all estate assets and property pursuant to the terms of the Plan. The Debtors will be authorized and empowered to take all actions and measures necessary to implement and administer the Plan. The Debtors will conduct their business and operate from confirmation and through and after substantial consummation of the Plan.

**2.  Marketing and Sale of Mora House and Mora Lot.**

The Debtors will advertise, show, market and sell the Mora House and Mora Lot and close sales thereof in the Initial Marketing Period, within 6 months of the Effective Date; provided however that if S&R receives a $500,000 principal paydown under the Addendum to Promissory Note, the Debtors will have 6 more months to close sales of both the Mora House and Mora Lot within the Extended Marketing Period. The Debtor's court-approved real estate broker, Phil Chen of Sybarite Luxury Real Estate has developed an advanced strategy to close a sale of the Mora House and Mora Lot within these Marketing Periods. The marketing brochure and kit setting forth the strategy, plan and timing is attached hereto as Exhibit "D".

///

**3. Effect of Failure to Close Sale.**

In the event that sales of the Mora House and Mora Lot have not closed within Initial Marketing Period or the Extended Marketing Period in the event that the Addendum to Promissory Note has resulted in payment of $500,000 to S&R and release of its lien from the Mora Lot, all holders of secured claims shall have immediate relief to exercise their rights and foreclose their liens against their respective collateral without further order of the Bankruptcy Court. Any party may, following failure by the Debtors to close a sale of one or both of the Mora House and Mora Lot within the periods set forth above, request conversion of these bankruptcy cases to Chapter 7 by filing an explanatory declaration with the Bankruptcy Court, uploading a proposed form of order, and serving both with 10 days' notice and opportunity for hearing.

**4. Effective Date Distribution.**

The Debtors will pay holders of allowed professional administrative expense claims in cash on the Effective Date Distribution or at such later dates as the Court approves unless they agree to a different treatment.

**5. Funding and Operation of Disputed Claims Reserve.**

The Reorganized Debtors will create the Disputed Claims Reserve by establishing at the time of closing of sale of the Mora House and Mora Lot a separate bank account and depositing into it cash equal to the face amount of all claims that are disputed, contingent or unliquidated. No deposit is required for a claim as to which an order disallowing the claim has been entered. A deposit is only required up to the amount at which a claim has been estimated should Debtors seek and obtain an order of the bankruptcy court for estimation of a disputed claim. If a disputed claim becomes an allowed claim, the Reorganized Debtors will immediately distribute to the claimant from the Disputed Claims Reserve the amount of the allowed claim that it would have been entitled to receive had it been an allowed claim on the confirmation date. Any funds no longer needed in reserve shall be released for use according to the terms of the Plan.

///

///

///

Case: 20-50628    Doc# 65-2    Filed: 07/10/2020    Entered: 07/10/2020 14:15:43    Page 18 of 84

018

6.  **Powers of Reorganized Debtor.**

   a.  **Powers Generally and Power to Sue.**

On the Effective Date, the Reorganized Debtors will be vested with all rights and powers of the Debtors under State and Federal law, including but not limited to the right to pursue all claims and causes of action that the Debtors have including avoidance actions, and any other causes of action, defenses, requests for subordination or recharacterization, or requests for any other equitable or legal relief that was or could have been asserted pre-petition by the Debtors against any party other than those which have been settled. The Reorganized Debtors may, on behalf of the Debtors, pursue, settle or release all such actions in accordance with the best interest of and for the benefit of the holders of allowed claims.

   b.  **Objections to and Estimation of Claims.**

After the Effective Date, the Reorganized Debtors may file objections to claims. As to any claims arising from the rejection of an executory contract or unexpired lease pursuant to the Plan, the Reorganized Debtors may object within sixty (60) calendar days of the filing of any such claims. As to claims arising from the recovery of an avoidable transfer under chapter 5 of the Bankruptcy Code, the Reorganized Debtors may object within sixty (60) calendar days of the filing of any such claims.

   c.  **Settlements.**

After the Effective Date the Reorganized Debtors will have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to claims, including without limitation, any objections to claims filed by the Debtors prior to the Effective Date. The Reorganized Debtors will provide notice and opportunity for hearing of any settlement.

C.  **Effect of Confirmation of Plan.**

   1.  **Confirmation Injunction.**

On and after date of confirmation of the Plan, except to enforce the terms and conditions of the Plan before the Bankruptcy Court or to implement the terms of the Plan, all persons and entities who have held, hold or may hold any debt, claim, lien, encumbrance against or interest in the Debtors are permanently enjoined from and after the date of entry of the order confirming the Plan

Case: 20-50628    Doc# 65-2    Filed: 07/10/2020    Entered: 07/10/2020 15:15:43    Page 16
of 84

from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against either the Debtors, their estates, their property, or the Reorganized Debtors; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, of any judgment, award, decree or order against any of the foregoing; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against any of the foregoing (d) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due; and (e) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan.

**2.** Binding Effect.

Except as otherwise expressly provided in the Plan, as of the Effective Date, the provisions of the Plan, a confirmation order, and any associated findings of fact or conclusions of law will bind the Debtor, the Reorganized Debtors, and all holders of claims and interests against the Debtors, regardless of whether such holders are impaired under the Plan or voted to accept.

**D.** **Retention of Jurisdiction.**

The Bankruptcy Court will retain jurisdiction over the Bankruptcy Case subsequent to the date of Plan confirmation to the fullest extent permitted by law, including, without limitation, for the following purposes:

**1.** To approve any proposed sale(s) of the Mora House and Mora Lot following one or more duly noticed motions including any sale free and clear of disputed liens and interests, and to enter orders as may be necessary and appropriate to aid in the close of escrows;

**2.** To determine any and all proceedings related to allowance of claims or objections thereto, including objections to classification and including, on an appropriate motion pursuant to Bankruptcy Rule 3008, reconsideration of claims that have been allowed or disallowed prior to confirmation;

///

///

Case: 20-50628     Doc# 65-2     Filed: 07/10/2020     Entered: 07/10/2020 15:15:43     Page 20 of 84
020

3.    To hear and determine any and all applications for compensation by professionals or any other fees and expenses authorized to be paid or reimbursed in accordance with the Bankruptcy Code or the Plan;

4.    To determine any and all claims or causes of action, whether pending before the Bankruptcy Court at Plan confirmation or filed or instituted after that date;

5.    To modify the Plan or the Disclosure Statement, or to remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court (including the confirmation order) as may be necessary to carry out the purposes and effects of the Plan;

6.    To determine disputes regarding title of the property claimed to be property of the Debtors or their estates;

7.    To ensure that distributions to holders of allowed claims are accomplished in accordance with the provisions of the Plan;

8.    To enter such orders as may be necessary to consummate and effectuate the operative provisions of the Plan, including actions to enjoin enforcement of claims inconsistent with the terms of the Plan;

9.    To hear and determine disputes concerning any event of default or alleged event of default under the Plan, as well as disputes concerning remedies upon any event of default under the Plan;

10. To hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code.

11. To enter a final decree closing the Debtors' bankruptcy cases

12. To enter and implement such orders as may be appropriate in the event the confirmation order is for any reason stayed, reversed, revoked or vacated;

13. To hear and determine such other matters as may arise in connection with the Plan, the Disclosure Statement, or the confirmation order;

14. To hear and determine any dispute between the Reorganized Debtors and any creditor or defendant or plaintiff in litigation;

15. To approve any post-petition retainer payments to professionals; and,

16. To issue temporary restraining orders and preliminary injunctions.

Case: 20-50628    Doc# 69-2    Filed: 07/10/2020    Entered: 07/10/2020 14:15:43    Page 21 of 84

## E. General Provisions.

### 1. Preservation of Causes of Action.

Any and all claims and other causes of action accruing to Debtors or estate, the right and power to object to any filed or scheduled claims, the right to pursue avoidance actions will be preserved and retained by the estate after the confirmation date, and the Reorganized Debtors on behalf of the estate will have the exclusive right and standing to enforce any such causes of action.

### 2. Cramdown.

Pursuant to section 1129(b) of the Bankruptcy Code, Debtors reserve the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

### 3. Notices.

Any notice to Debtors will be in writing, and will be deemed to have been given six days after the date sent by first-class mail, postage prepaid and addressed as follows:

**Reorganized Debtors:**

> Mora House LLC
> FRE 355 Investment Group, LLC
> Attn: Melvin Vaughn
> 10700 Mora Drive, Los Altos, CA 94022
> Email: c4scab@aol.com

> With a copy to counsel:
> Robert G. Harris, Esq.
> Binder & Malter, LLP
> 2775 Park Avenue
> Santa Clara, CA 95050
> Facsimile: (408) 295-1531
> Email: rob@bindermalter.com

### 4. Modification of Plan.

The Debtors reserve the right, in accordance with the Bankruptcy Code and Bankruptcy Rules, to amend or modify the Plan at any time prior to entry of an order confirming it. After entry of an order confirming the Plan but prior to the Effective Date, the Debtors may seek an order of the Bankruptcy Court to amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

Case: 20-50628    Doc# 65-2    Filed: 07/10/2020    Entered: 07/10/2020 15:15:43    Page 22
of 84

After the Effective Date, the Reorganized Debtors may seek an order of the Bankruptcy Court to amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

The holder of an allowed claim that has accepted the Plan will be deemed to have accepted the Plan as modified if the modification does not materially and adversely change the treatment of the holder's claim.

**5. Withdrawal or Revocation of Plan.**

The Debtors may withdraw the Plan at any time prior to its confirmation date. If the Debtors withdraw the Plan prior to confirmation, or if the Plan is not confirmed, then the Plan will be deemed null and void and not binding on any person or entity.

**6. Failure of Effective Date.**

In the event the Effective Date does not occur, nothing in this Plan will be binding on the Debtors or any other person or entity or otherwise be of any force or effect.

**7. Post-Effective Date Notices.**

Except as otherwise provided in the Plan, upon and after the Effective Date, notices will be served only on the Office of the United States Trustee, the Reorganized Debtor, and those persons who file with the Bankruptcy Court and serve upon the Reorganized Debtors a request, which includes the person's name, contact individual, address, telephone number and facsimile number, that such Person receive notice of post-Effective Date matters. Persons who had previously filed with the Bankruptcy Court requests for special notice of the proceedings and other filings in the Bankruptcy Case will not receive notice of post-Effective Date matters unless such persons file a new request in accordance with this Section.

**F.      Implementation Orders.**

The Bankruptcy Court may, at any time, make such orders and give such directions as appropriate for consummation of the Plan pursuant to Bankruptcy Code section 1142.

*[Signatures on following page]*

Case: 20-50628    Doc# 65-2    Filed: 07/10/2020    Entered: 07/10/2020 14:51:43    Page 23 of 84

**023**

Dated: July 10, 2020                           MORA HOUSE LLC

                                               By: */s/ Melvin Vaughn*
                                                    Melvin Vaughn

                                          Its:  Managing Member


Dated: July 10, 2020                           FRE INVESTMENT GROUP LLC

                                               By: */s/ Melvin Vaughn*
                                                    Melvin Vaughn

                                          Its:  Managing Member


Dated: July 10, 2020                           BINDER & MALTER, LLP


                                               By: */s/ Robert G. Harris*
                                                    Robert G. Harris

                                          Attorneys for Debtors and Debtors-in-possession
                                          FRE 355 Investment Group, LLC and
                                          Mora House, LLC

**EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

| In re:  FRE 355 INVESTMENT GROUP, LLC, dba FRE 355 | **Case No.** | 20-50628-SLJ |
|---|---|---|
| | **CHAPTER 11**<br>**MONTHLY OPERATING REPORT**<br>**(SMALL REAL ESTATE/INDIVIDUAL CASE)** | |

### SUMMARY OF FINANCIAL STATUS

**MONTH ENDED:** 05/31/20          **PETITION DATE:** 04/13/20

1. Debtor in possession (or trustee) hereby submits this Monthly Operating Report on the Accrual Basis of accounting (or if checked here ___ the Office of the U.S. Trustee or the Court has approved the Cash Basis of Accounting for the Debtor).
   Dollars reported in ___$1

| | | **End of Current Month** | **End of Prior Month** | **As of Petition Filing** |
|---|---|---|---|---|
| 2. | **Asset and Liability Structure** | | | |
| | a. Current Assets | $37,416 | $37,146 | |
| | b. Total Assets | $15,037,415 | $15,037,139 | $14,999,999 |
| | c. Current Liabilities | $141,362 | $16,000 | |
| | d. Total Liabilities | $17,437,007 | $17,311,645 | $17,295,645 |

| | | **Current Month** | **Prior Month** | **Cumulative (Case to Date)** |
|---|---|---|---|---|
| 3. | **Statement of Cash Receipts & Disbursements for Month** | | | |
| | a. Total Receipts | $965 | $0 | $965 |
| | b. Total Disbursements | $688 | $1,005 | $1,020 |
| | c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | $277 | ($1,005) | ($55) |
| | d. Cash Balance Beginning of Month | ($1,054) | ($1,054) | $0 |
| | e. Cash Balance End of Month (c + d) | ($777) | ($2,059) | ($55) |

| | | **Current Month** | **Prior Month** | **Cumulative (Case to Date)** |
|---|---|---|---|---|
| 4. | **Profit/(Loss) from the Statement of Operations** | N/A | N/A | N/A |
| 5. | **Account Receivables (Pre and Post Petition)** | $0 | $0 | |
| 6. | **Post-Petition Liabilities** | $141,362 | $16,000 | |
| 7. | **Past Due Post-Petition Account Payables (over 30 days)** | $91,142 | $0 | |

| At the end of this reporting month: | **Yes** | **No** |
|---|---|---|
| 8. Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9. Have any payments been made to professionals?  (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 10. If the answer is yes to 8 or 9, were all such payments approved by the court? | | X |
| 11. Have any payments been made to officers, insiders, shareholders, relatives?  (if yes, attach listing including date of payment, amount and reason for payment, and name of payee) | | X |
| 12. Is the estate insured for replacement cost of assets and for general liability? | X | |
| 13. Are a plan and disclosure statement on file? | | X |
| 14. Was there any post-petition borrowing during this reporting period? | X | |

15. Check if paid: Post-petition taxes ___;          U.S. Trustee Quarterly Fees ___; Check if filing is current for: Post-petition tax reporting and tax returns: ___.
   (Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.)

I declare under penalty of perjury I have reviewed the above summary and attached financial statements, and after making reasonable inquiry believe these documents are correct.

Date:  June 22, 2020          /s/ Melvin Vaughn
                              Responsible Individual

Revised 1/1/98

|  | Assets | Check if Exemption Claimed on Schedule C | Market Value |
|---|---|---|---|
|  | **Current Assets** |  |  |
| 1 | Cash and cash equivalents (including bank accts., CDs, ets.) |  | $267 |
| 2 | Accounts receivable (net) |  | $0 |
| 3 | Retainer(s) paid to professionals |  | $37,149 * |
| 4 | Other: |  | $0 |
| 5 |  |  |  |
| 6 | **Total Current Assets** |  | $37,416 |
|  | **Long Term Assets (Market Value)** |  |  |
| 7 | Real Property (residential) |  | $14,999,999 |
| 8 | Real property (rental or commercial) |  | $0 |
| 9 | Furniture, Fixtures, and Equipment |  | $0 |
| 10 | Vehicles |  | $0 |
| 11 | Partnership interests |  | $0 |
| 12 | Interest in cortporations |  | $0 |
| 13 | Stocks and bonds |  | $0 |
| 14 | Interests in IRA, Keogh, other retirement plans |  | $0 |
| 15 | Other: |  | $0 |
| 16 |  |  |  |
| 17 | **Total Long Term Assets** |  | $14,999,999 |
| 18 | **Total Assets** |  | $15,037,415 |

**Liabilities**

**Post-Petition Liabilities**

|  |  |  | Market Value |
|---|---|---|---|
|  | **Current Liabilities** |  |  |
| 19 | Post-petition not delinquent (under 30 days) |  | $0 |
| 20 | Post-petition delinquent other than taxes (over 30 days) |  | $91,142 |
| 21 | Post-petition delinquent taxes |  | $0 |
| 22 | Accrued professional fees (estimated) |  | $50,200 |
| 23 | Other: |  |  |
| 24 | Unsecured Post-Petition Borrowing Responsible Individual |  | $20 |
| 25 | **Total Current Liabilities** |  | $141,362 |
| 26 | **Long-Term Post Petition Debt** |  |  |
| 27 | **Total Post-Petition Liabilities** |  | $141,362 |
|  | **Pre-Petition Liabilities (allowed amount)** |  |  |
| 28 | Secured claims (residence) |  | $12,113,909 |
| 29 | Secured claims (other) |  | $161,475 |
| 30 | Priority unsecured claims |  | $0 |
| 31 | General unsecured claims |  | $5,020,262 |
| 32 | **Total Pre-Petition Liabilities** |  | $17,295,645 |
| 33 | **Total Liabilities** |  | $17,437,007 |

**Equity (Deficit)**

|  |  |  | Market Value |
|---|---|---|---|
| 34 | **Total Equity (Deficit)** |  |  |
| 35 | **Total Liabilities and Equity (Deficit)** |  | $17,437,007 |

NOTE:
* The Managing Member, Melvin Vaughn, made a pre-petition loan to the Debtor in the sum of $50,000 from funds which were derived from the sale of his 1960 Porsche. These funds were sent to Binder & Malter, LLP by wire at approximately 9:59 a.m. on April 13, 2020. The sum of $12,851.63 was applied to pre-petition attorneys' fees and costs, leaving an initial retainer in the sum of $37,148.37. Due to the emergency nature of the filing of this case, the retainer funds were deposited into an account held by Mora Estates 1, LLC, another company in which the Managing Member holds a 100% interest in. The initial retainer was wired directly from this account due to Mr. Vaughn's concern that the secured creditor who holds a deed of trust against the only asset of this estate was about to foreclose.

# SCHEDULES TO THE BALANCE SHEET

### Schedule A
### Rental Income Information

**List the Rental Information Requested Below By Properties (For Rental Properties Only)**

|   |   | **Property 1** | **Property 2** | **Property 3** |
|---|---|---|---|---|
| 1 | **Description of Property** | 0 | 0 | 0 |
| 2 | **Scheduled Gross Rents** | | | |
|   | **Less:** | | | |
| 3 | **Vacancy Factor** | | | |
| 4 | **Free Rent Incentives** | | | |
| 5 | **Other Adjustments** | | | |
| 6 | **Total Deductions** | $0 | $0 | $0 |
| 7 | **Scheduled Net Rents** | $0 | $0 | $0 |
| 8 | **Less:  Rents Receivable (2)** | | | |
| 9 | **Scheduled Net Rents Collected (2)** | $0 | $0 | $0 |

(2) To be completed by cash basis reporters only.

### Schedule B
### Recapitulation of Funds Held at End of Month

|   |   | **Account 1** | **Account 2** | **Account 3** |
|---|---|---|---|---|
| 10 | **Bank** | Chase | | |
| 11 | **Account No.** | 1180 | | |
| 12 | **Account Purpose** | Checking | | |
| 13 | **Balance, End of Month** | $267 | | |
| 14 | **Total Funds on Hand for all Accounts** | $267 | | |

Attach copies of the month end bank statement(s), reconciliation(s), and the check register(s) to the Monthly Operating Report.

Revised 1/1/98

# STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS

**EXHIBIT A**

Increase/(Decrease) in Cash and Cash Equivalents

For the Month Ended _____ 05/31/20 _____

|  |  | Actual<br>Current Month | Cumulative<br>(Case to Date) |
|---|---|---|---|
| | **Cash Receipts** | | |
| 1 | Rent/Leases Collected | $0 | $0 |
| 2 | Cash Received from Sales | $0 | $0 |
| 3 | Interest Received | $0 | $0 |
| 4 | Borrowings - Pre-petition | $0 | $0 |
| 5 | Funds from Shareholders, Partners, or Other Insiders | $945 | $945 |
| 6 | Capital Contributions | $0 | $0 |
| 7 | Post-Petition borrowing Responsible Individual | $20 | $20 |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | **Total Cash Receipts** | $965 | $965 |
| | **Cash Disbursements** | | |
| 13 | Selling | $0 | $0 |
| 14 | Administrative | $0 | $0 |
| 15 | Insurance | $550 | $0 |
| 16 | Repairs and Maintenance | $123 | $0 |
| 17 | Interest Paid | $0 | $0 |
| | Rent/Lease: | | |
| 18 | Personal Property | $0 | $0 |
| 19 | Real Property | $0 | $0 |
| | Amount Paid to Owner(s)/Officer(s) | | |
| 20 | Salaries | $0 | $0 |
| 21 | Draws | $0 | $0 |
| 22 | Commissions/Royalties | $0 | $0 |
| 23 | Expense Reimbursements | $0 | $0 |
| 24 | Other | $0 | $0 |
| 25 | Salaries/Commissions (less employee withholding) | $0 | $0 |
| 26 | Management Fees | $0 | $0 |
| | Taxes: | | |
| 27 | Employee Withholding | $0 | $0 |
| 28 | Employer Payroll Taxes | $0 | $0 |
| 29 | Real Property Taxes | $0 | $0 |
| 30 | Other Taxes | $0 | $0 |
| 31 | Other Cash Outflows: | | |
| 32 | Secretary of State | $0 | $20 |
| 33 | | | |
| 34 | Transfer to Checking 9892 in error | $0 | $725 |
| 35 | Transfer to Checking 7223 in error | $0 | $220 |
| 36 | Bank charges | $15 | $55 |
| 37 | **Total Cash Disbursements:** | $688 | $1,020 |
| 38 | **Net Increase (Decrease) in Cash** | $277 | ($55) |
| 39 | **Cash Balance, Beginning of Period** | ($1,054) | |
| 40 | **Cash Balance, End of Period** | ($777) | ($55) |

Revised 11/1/98

# CHASE 

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218- 2051

May 01, 2020 through May 29, 2020
Account Number: ███████ **1180**

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00019812 DRE 703 141 15120 YNNNNNNNNNN T 1 000000000 64 0000
FRE 355 INVESTMENT GROUP, LLC
DEBTOR-IN-POSSESSION 20-50628
PO BOX 3156
LOS ALTOS CA 94024-0156

## We updated the Funds Availability Policy in the Deposit Account Agreement

We increased the minimum amount of funds that we make available to you the next business day when you deposit a check.
For more information, please see the Funds Availability Policy in the Deposit Account Agreement at chase.com/disclosures.

Please call the number on your statement if you have questions. We accept operator relay calls.

## CHECKING SUMMARY
Chase Total Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **-$9.16** |
| Deposits and Additions | 3 | 965.00 |
| ATM & Debit Card Withdrawals | 3 | -673.66 |
| Fees | 1 | -15.00 |
| **Ending Balance** | **7** | **$267.18** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/01 | Online Transfer From Chk ...7223 Transaction#: 9541748127 | $20.00 |
| 05/22 | ATM Cash Deposit        05/22 199 Main St Los Altos CA Card 4534 | 900.00 |
| 05/22 | Online Transfer From Chk ...9892 Transaction#: 9655826769 | 45.00 |
| **Total Deposits and Additions** | | **$965.00** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/28 | Card Purchase        05/27 State Farm  Insurance 800-956-6310 IL Card 4534 | $550.25 |
| 05/28 | Card Purchase With Pin  05/28 The Home Depot #6635 San Jose CA Card 4534 | 112.41 |
| 05/28 | Card Purchase With Pin  05/28 Lucky #723.Los Los Altos CA Card 4534 | 11.00 |
| **Total ATM & Debit Card Withdrawals** | | **$673.66** |

## ATM & DEBIT CARD SUMMARY

Melvin Vaughn  Card 4534

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $673.66 |

Case: 20-50628   Doc# 69-2 Filed: 06/02/2020 Entered: 06/02/2020 14:52:43 Page 29
of 84


| | |
|---|---|
| Total Card Deposits & Credits | $900.00 |
| ATM & Debit Card Totals | |
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $673.66 |
| Total Card Deposits & Credits | $900.00 |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/29 | Monthly Service Fee | $15.00 |
| **Total Fees** | | **$15.00** |

You were charged a monthly service fee of $15.00 this period. You can avoid this fee in the future by maintaining a minimum daily balance of $1,500.00. Your minimum daily balance was -$9.16.

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 05/01 | $10.84 |
| 05/22 | 955.84 |
| 05/28 | 282.18 |
| 05/29 | 267.18 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 3 |
| Deposits / Credits | 0 |
| Deposited Items | 0 |
| **Transaction Total** | **3** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $15.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$15.00** |
| Excessive Transaction Fees (Above 100) | $0.00 |
| **Total Service Fees** | **$15.00** |

---

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

 **JPMorgan Chase Bank, N.A. Member FDIC**

FRE 355 Investment Group, LLC (Check Register May 1, 2020-May 29, 2020)

| Date | Bank | Account | Description | Amount | Type | Category | Receipt | Notes |
|------|------|---------|-------------|--------|------|----------|---------|-------|
| | | | Ending Balance | -9.16 | | | | |
| 5/29/20 | Chase Bank | TOTAL BUS CHK | Account Maintenance Fee | -15 | Business | Other business expenses | N | |
| 5/28/20 | Chase Bank | TOTAL BUS CHK | State Farm | -550.25 | Business | Homeowner/rental insurance | N | State Farm Homeowner Ins |
| 5/28/20 | Chase Bank | TOTAL BUS CHK | Home Depot | -112.41 | Business | Materials & Supplies | N | Outdoor Plant Replacemen |
| 5/28/20 | Chase Bank | TOTAL BUS CHK | Lucky | -11 | Business | Meals | N | Water for Open Houses |
| 5/22/20 | Chase Bank | TOTAL BUS CHK | Online Transfer Chk | 45 | Business | Transfer | N | Personal loan to FRE 355 |
| 5/22/20 | Chase Bank | TOTAL BUS CHK | ATM Cash Deposit 199 Main Street | 900 | Business | Income | N | Personal Loan to FRE 355 |
| 5/1/20 | Chase Bank | TOTAL BUS CHK | Online Transfer Chk | 20 | Business | Transfer | N | transaction#: 9541748127 |

**EXHIBIT B**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| In re: MORA HOUSE , LLC | Case No. | 20-50631-SLJ |
|---|---|---|
| | **CHAPTER 11**<br>**MONTHLY OPERATING REPORT**<br>**(SMALL REAL ESTATE/INDIVIDUAL CASE)** | |

## SUMMARY OF FINANCIAL STATUS

**MONTH ENDED:** 5/31/120      **PETITION DATE:** 04/14/20

1. Debtor in possession (or trustee) hereby submits this Monthly Operating Report on the Accrual Basis of accounting (or if checked here ▢ the Office of the U.S. Trustee or the Court has approved the Cash Basis of Accounting for the Debtor).
   Dollars reported in   $1

| 2. Asset and Liability Structure | End of Current Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|
| a. Current Assets | $19,006 | $19,016 | |
| b. Total Assets | $4,019,006 | $4,019,016 | $4,000,000 |
| c. Current Liabilities | $15,000 | $7,500 | |
| d. Total Liabilities | $13,051,821 | $13,044,321 | $13,036,820 |

| 3. Statement of Cash Receipts & Disbursements for Month | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| a. Total Receipts | $0 | $0 | $0 |
| b. Total Disbursements | $10 | $0 | $10 |
| c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | ($10) | $0 | ($10) |
| d. Cash Balance Beginning of Month | $0 | $0 | $0 |
| e. Cash Balance End of Month (c + d) | ($10) | $0 | ($10) |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 4. Profit/(Loss) from the Statement of Operations | N/A | N/A | N/A |
| 5. Account Receivables (Pre and Post Petition) | $0 | $0 | |
| 6. Post-Petition Liabilities | $15,000 | $7,500 | |
| 7. Past Due Post-Petition Account Payables (over 30 days) | $0 | $0 | |

| At the end of this reporting month: | Yes | No |
|---|---|---|
| 8. Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9. Have any payments been made to professionals? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 10. If the answer is yes to 8 or 9, were all such payments approved by the court? | | |
| 11. Have any payments been made to officers, insiders, shareholders, relatives? (if yes, attach listing including date of payment, amount and reason for payment, and name of payee) | | X |
| 12. Is the estate insured for replacement cost of assets and for general liability? | X | |
| 13. Are a plan and disclosure statement on file? | | X |
| 14. Was there any post-petition borrowing during this reporting period? | | X |

15. Check if paid: Post-petition taxes ▢ ;    U.S. Trustee Quarterly Fees ▢ ; Check if filing is current for: Post-petition tax reporting and tax returns: ▢ .
    (Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.)

I declare under penalty of perjury I have reviewed the above summary and attached financial statements, and after making reasonable inquiry believe these documents are correct.

Date:   June 22, 2020      /s/ Melvin Vaughn

                                       Responsible Individual

Revised 1/1/98

| Assets | Check if Exemption Claimed on Schedule C | Market Value |
|---|---|---|
| **Current Assets** | | |
| 1    Cash and cash equivalents (including bank accts., CDs, ets.) | | ($10) |
| 2    Accounts receivable (net) | | $0 |
| 3    Retainer(s) paid to professionals | | $19,016 |
| 4    Other: | | |
| 5 | | |
| 6    **Total Current Assets** | | $19,006 |
| **Long Term Assets (Market Value)** | | |
| 7    Real Property (residential) | | $0 |
| 8    Real property (rental or commercial) | | $4,000,000 |
| 9    Furniture, Fixtures, and Equipment | | $0 |
| 10    Vehicles | | $0 |
| 11    Partnership interests | | $0 |
| 12    Interest in corportations | | $0 |
| 13    Stocks and bonds | | $0 |
| 14    Interests in IRA, Keogh, other retirement plans | | $0 |
| 15    Other: | | $0 |
| 16 | | |
| 17    **Total Long Term Assets** | | $4,000,000 |
| 18    **Total Assets** | | $4,019,006 |
| **Liabilities** | | |
| **Post-Petition Liabilities** | | |
| **Current Liabilities** | | |
| 19    Post-petition not delinquent (under 30 days) | | $0 |
| 20    Post-petition delinquent other than taxes (over 30 days) | | $0 |
| 21    Post-petition delinquent taxes | | $0 |
| 22    Accrued professional fees | | $15,000 |
| 23    Other: | | $0 |
| 24 | | |
| 25    **Total Current Liabilities** | | $15,000 |
| 26    **Long-Term Post Petition Debt** | | |
| 27    **Total Post-Petition Liabilities** | | $15,000 |
| **Pre-Petition Liabilities (allowed amount)** | | |
| 28    Secured claims (residence) | | $0 |
| 29    Secured claims (other) | | $13,011,821 |
| 30    Priority unsecured claims | | $0 |
| 31    General unsecured claims | | $25,000 |
| 32    **Total Pre-Petition Liabilities** | | $13,036,821 |
| 33    **Total Liabilities** | | $13,051,821 |
| **Equity (Deficit)** | | |
| 34    **Total Equity (Deficit)** | | ($9,114,730) |
| 35    **Total Liabilities and Equity (Deficit)** | | $3,937,091 |

NOTE:

     * Binder & Malter, LLP received an initial retainer from the Managing Member, Melvin Vaughn who obtained the funds from a personal loan from a friend prior to the filing of the within petition. The funds were deposited into an account held by FRE 355 Investment Group, LLC, also a Debtor-In-Possession, Case No. 20-50328-SLJ, because this Debtor does not have a bank account.

## SCHEDULES TO THE BALANCE SHEET

### Schedule A
### Rental Income Information

**List the Rental Information Requested Below By Properties (For Rental Properties Only)**

|   |   | **Property 1** | **Property 2** | **Property 3** |
|---|---|---|---|---|
| 1 | Description of Property | 0 | | |
| 2 | Scheduled Gross Rents | | | |
|   | Less: | | | |
| 3 | Vacancy Factor | | | |
| 4 | Free Rent Incentives | | | |
| 5 | Other Adjustments | | | |
| 6 | Total Deductions | $0 | $0 | $0 |
| 7 | Scheduled Net Rents | $0 | $0 | $0 |
| 8 | Less: Rents Receivable (2) | | | |
| 9 | Scheduled Net Rents Collected (2) | $0 | $0 | $0 |

(2) To be completed by cash basis reporters only.

### Schedule B
### Recapitulation of Funds Held at End of Month

|   |   | **Account 1** | **Account 2** | **Account 3** |
|---|---|---|---|---|
| 10 | Bank | Chase | | |
|   |   | account opened in May 2020 | | |
| 11 | Account No. | | | |
| 12 | Account Purpose | Checking | | |
| 13 | Balance, End of Month | ($10) | | |
| 14 | Total Funds on Hand for all Accounts | ($10) | | |

Attach copies of the month end bank statement(s), reconciliation(s), and the check register(s) to the Monthly Operating Report.

Revised 4/1/98

EXHIBIT B

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
### Increase/(Decrease) in Cash and Cash Equivalents
**For the Month Ended** 05/31/20

| | | Actual Current Month | Cumulative (Case to Date) |
|---|---|---|---|
| | **Cash Receipts** | | |
| 1 | Rent/Leases Collected | $0 | $0 |
| 2 | Cash Received from Sales | $0 | $0 |
| 3 | Interest Received | $0 | $0 |
| 4 | Borrowings | $0 | $0 |
| 5 | Funds from Shareholders, Partners, or Other Insiders | $0 | $0 |
| 6 | Capital Contributions | $0 | $0 |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | **Total Cash Receipts** | $0 | $0 |
| | **Cash Disbursements** | | |
| 13 | Selling | $0 | |
| 14 | Administrative | $0 | |
| 15 | Capital Expenditures | $0 | |
| 16 | Principal Payments on Debt | $0 | |
| 17 | Interest Paid | $0 | |
| | Rent/Lease: | | |
| 18 | Personal Property | $0 | |
| 19 | Real Property | $0 | |
| | Amount Paid to Owner(s)/Officer(s) | | |
| 20 | Salaries | $0 | |
| 21 | Draws | $0 | |
| 22 | Commissions/Royalties | $0 | |
| 23 | Expense Reimbursements | $0 | |
| 24 | Other | $0 | |
| 25 | Salaries/Commissions (less employee withholding) | $0 | |
| 26 | Management Fees | $0 | |
| | Taxes: | | |
| 27 | Employee Withholding | $0 | |
| 28 | Employer Payroll Taxes | $0 | |
| 29 | Real Property Taxes | $0 | |
| 30 | Other Taxes | $0 | |
| 31 | Other Cash Outflows: | $0 | |
| 32 | Bank charges | $10 | $10 |
| 33 | | | |
| 34 | | | |
| 35 | | | |
| 36 | | | |
| 37 | **Total Cash Disbursements:** | $10 | $10 |
| 38 | **Net Increase (Decrease) in Cash** | ($10) | ($10) |
| 39 | **Cash Balance, Beginning of Period** | | |
| 40 | **Cash Balance, End of Period** | ($10) | ($10) |

Revised 1/1/98

**CHASE** 

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218-2051

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |



00021358 DRE 703 143 15120 NNNNNNNNNNN T 1 000000000 64 0000
MORA HOUSE LLC DEBTOR-IN-POSSESSION
20-50631
PO BOX 3156
LOS ALTOS CA 94024-0156

## CHECKING SUMMARY
Chase Total Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$0.00** |
| Deposits and Additions | 1 | 5.00 |
| Fees | 2 | -15.00 |
| **Ending Balance** | **3** | **-$10.00** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/18 | Service Fee Reversal | $5.00 |
| **Total Deposits and Additions** | | **$5.00** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/15 | Card Replacement Fee | $5.00 |
| 05/27 | Orig CO Name:Check OR Supply     Orig ID:1410216800 Desc Date:200522 CO Entry Descr:Order     Sec:PPD     Trace#:042000019576920 Eed:200527   Ind ID: Ind Name:Mora House LLC Trn: 1489576920Tc | 10.00 |
| **Total Fees** | | **$15.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 05/15 | -$5.00 |
| 05/18 | 0.00 |
| 05/27 | -10.00 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 0 |
| Deposits / Credits | 0 |
| Deposited Items | 0 |
| **Transaction Total** | **0** |



## SERVICE CHARGE SUMMARY *(continued)*

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $0.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 100) | $0.00 |
| **Total Service Fees** | **$0.00** |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**  Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:**  Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A.  Member FDIC

 **JPMorgan Chase Bank, N.A. Member FDIC**

MORA HOUSE, LLC (CHECK REGISTER) MAY 1, 2020-MAY 31, 2020)

| Date | Bank | Account | Description | Amount | Type | Category | Receipt | Notes |
|---|---|---|---|---|---|---|---|---|
| 5/31/20 | Chase Bank | TOTAL BUS CHK | ENDING BALANCE | -10.00 | | | | |
| 5/27/20 | Chase Bank | TOTAL BUS CHK | Check Fee charge | -10.00 | | Business Bank Charge | | |
| 5/18/20 | Chase Bank | TOTAL BUS CHK | Service Fee Reversal | 5 | Business | Income | N | |
| 5/15/20 | Chase Bank | TOTAL BUS CHK | Card | -5 | Business | Other business expenses | N | |

EXHIBIT C

Capital Gains and Other Taxes Analysis for FRE 355 Investment Group, LLC and Mora House, LLC
Date: 7/1/2020

## MORA HOUSE:

**Tax Basis:**

| | |
|---|---|
| Original Purchase Price: | $2,500,000 |
| Improvements (estimated): | $350,000 |
| Capitalized Expenses: | $545,000 |
| Tax Basis | $3,395,000 |

**Tax Projections:**

| | |
|---|---|
| Estimated Selling Price: | $3,500,000 |
| Estimated sales expenses @7% | -$245,000 |
| Tax Basis: | -$3,395,000 |
| Net Projected Loss on Sale: | -$140,000 |

No capital gains tax on sale due to loss

| | |
|---|---|
| California LLC projected taxes and fees | $6,800 |

**Cash flow Projections:**

| | |
|---|---|
| Estimated Selling Price: | $3,500,000 |
| Estimated sales expenses @7% | -$245,000 |
| Blanchard Deed of Trust (claim filed): | -$2,441,803 |
| S&R Release Price: | -$500,000 |
| Estimated Property Taxes (not filed) | -$116,838 |
| Estimated Net Cash from Sale: | $196,359 |

## FRE 355 INVESTMENT GROUP LLC:

**Tax Basis:**

| | |
|---|---|
| Original Purchase Price: | $1,484,000 |
| Improvements (estimated): | $8,000,000 |
| Capitalized Expenses | $4,554,065 |
| Tax Basis | $14,038,065 |

**Tax Projections:**

| | |
|---|---|
| Estimated Selling Price: | $14,999,999 |
| Estimated sales expenses @7% | -$1,050,000 |
| Tax Basis: | -$14,038,065 |
| Net Projected Loss on Sale: | -$88,066 |

No capital gains tax on sale due to loss

| | |
|---|---|
| California LLC projected taxes and fees | $12,590 |

**Cash flow Projections:**

| | |
|---|---|
| Estimated Selling Price: | $14,999,999 |
| Estimated sales expenses @7% | -$1,050,000 |
| S&R Claim Estimate (not filed) | -$13,000,000 |
| Estimated Property Taxes (claim filed): | -$255,300 |
| FTB Lien (not filed) | -$3,453 |
| EPS Plumbing Abstract Lien (not filed) | -$27,000 |
| Estimated Net Cash from Sale: | $664,246 |

## COMBINED SALE OF BOTH PROPERTIES:

**Tax Basis:**

| | |
|---|---|
| Tax Basis Mora House: | $3,395,000 |
| Tax Basis FRE: | $14,038,065 |
| Combined Tax Basis | $17,433,065 |

**Tax Projections:**

| | |
|---|---|
| Estimated Selling Price: | $17,500,000 |
| Estimated sales expenses @7% | -$1,225,000 |
| Combined Tax Basis: | -$17,433,065 |
| Net Projected Loss on Sale: | -$1,158,065 |

No capital gains tax on sale due to loss

| | |
|---|---|
| California LLC projected taxes and fees | $19,390 |

**Cash flow Projections:**

| | |
|---|---|
| Estimated Selling Price: | $17,500,000 |
| Estimated sales expenses @7% | -$1,225,000 |
| S&R Claim Estimate (not filed) | -$13,000,000 |
| Blanchard Deed of Trust | -$2,441,803 |
| Mora House Est. Property Taxes | -$116,838 |
| FRE Estimated Property Taxes | -$255,300 |
| FTB Lien (not filed) | -$3,453 |
| EPS Plumbing Abstract Lien (not filed) | -$27,000 |
| Estimated Net Cash from Sale: | $430,606 |



# SYBARITE LUXURY REAL ESTATE

## 10718 MORA DRIVE MARKETING KIT

Case: 20-50628    Doc# 65    Filed: 07/10/20    Entered: 07/10/20 14:51:37    Page 37 of 42

040



Case: 20-50628   Doc# 65   Filed: 07/10/20   Entered: 07/10/20 14:51:37   Page 38 of 42



WHO WE ARE

# syb·a·rite

/ˈsibəˌrīt/

noun

**a person who is self-indulgent in their fondness for sensuous luxury.**

Sybarite captures the essence of California's Bay Area—including luxury, elegance, altruism, and innovation.

With the support and strength of an elite team of seasoned real estate professionals, We manage every facet of clients' experiences seamlessly.

Case: 20-50628    Doc# 69-2    Filed: 07/22/20    Entered: 07/22/20 15:52:43    Page 42 of 84

Case: 20-50628    Doc# 65    Filed: 07/10/20    Entered: 07/10/20 14:51:37    Page 39 of 42

# 10718 MORA DRIVE MARKETING SCHEDULE



**MARKET PREPARATIONS**

Photoshoot-Hire model for lifestyle photoshoot to highlight the outside/SIP living potential with David Eichler

Video and 3D Tour if needed

Floor Plan Design if needed

Dedicated Property Website Planning & Development

**COMING SOON PITCH**

Contact personal sphere of high net worth clients, friends and modern home enthusiasts at Facebook/Yahoo/Google/Twitter/Professional athletes/LinkedIn/Box/Cortezyme/Coupa/ NerdWallet/Databricks/Tesla/Uber for example.

Personally reach out to select agents

Social Media Marketing (Instagram, Facebook, Twitter & Linkedin)

Compass Global Listings Feed

Compass Catch

Compass Private Exclusives

Compass Coming Soon

Top Agent Network

Coming Soon eBlast to the Top 100

The Network Group cross promotions amongst the Top Bay Area

Compass agents

**MARKET LAUNCHING**

MLS & Website Activation (10718mora.com)

International & Domestic Syndication via Proxio Pro

ListGlobally - Worldwide promotion to potential buyers across

60+ countries

Invite select agents/clients for private in person or virtual tours

Catered Tour and event if SIP allows

Punch Magazine October Ad Placement

For Sale Eblast Sent to Top Agents

Juwai.com Chinese Marketing

Dwell Magazine submission

SF Curbed Story Pitch

Facebook & Instagram Paid Ads

Adwerx Advertising - Optimized ads for Facebook, websites, NewsFeeds, and in thousands of mobile apps

Social Media

# 10718 MORA DRIVE MARKETING SCHEDULE

## july

Continue to stay in touch with and remind clients of the Mora House availability, value and potential as a SIP compound

Luxury Homes Ad Placement

Ongoing Juwai.com Campaign

Ongoing Facebook & Instagram Paid Advertisements

Private Broker + Client Showings

Social media



## august



High-End Magazine sent to all my past clients

Capture Magazine Ad Placement

Gentry Ad Placement

Ongoing Juwai.com Campaign

Ongoing Facebook & Instagram Paid Advertisements

Private Broker + Client Showings

Continue networking, selling and describing the values, architecture, potential, craftsmanship and exclusivity of the Mora House.

Social media

Case: 20-50628    Doc# 65    Filed: 07/10/20    Entered: 07/10/20 14:55:37    Page 44 of 63



# SYBARITE LUXURY REAL ESTATE

## 10718 MORA DRIVE MARKETING KIT

Case: 20-50628    Doc# 65    Filed: 07/10/20    Entered: 07/10/20 14:51:37    Page 42 of 42

# EXHIBIT 2

Case: 20-50628   Doc# 69-2   Filed: 07/22/20   Entered: 07/22/20 15:52:43   Page 46 of 84

Michael W. Malter, Esq.  ID #96533
Robert G. Harris, Esq. ID #124678
Julie H. Rome-Banks, Esq. ID #142364
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050
Telephone: (408) 295-1700
Facsimile: (408) 295-1531
Email: Michael@bindermalter.com
Email: Rob@bindermalter.com
Email: Julie@bindermatler.com

Attorneys for Debtors and Debtors-in-possession
FRE 355 Investment Group, LLC and Mora House, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, DIVISION 5

| | |
|---|---|
| In re:<br><br>FRE 355 INVESTMENT GROUP, LLC, dba FRE 355,<br><br>                     Debtor. | Case No.  20-50628-SLJ<br><br>Cases Jointly Administered<br><br>Chapter 11 |
| In re<br><br>MORA HOUSE, LLC,<br><br>                     Debtor. | Case No. 20-50631-SLJ<br><br>Chapter 11<br><br>DISCLOSURE HEARING:<br><br>Date: September 3, 2020<br>Time: 1:30 p.m.<br>Courtroom: 11 (telephonic) |

## DEBTORS' PLAN OF REORGANIZATION
## (JULY 10, 2020)

## TABLE OF CONTENTS

I.    DEFINITIONS ..................................................................................... 1

II.   TREATMENT OF UNCLASSIFIED CLAIMS ........................................ 2

III.  TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ............... 3

    A.    Classes under Plan and Voting Rights Summary ..................... 3

    B.    Treatment of Claims ............................................................... 4

    Class 1A – Blanchard Trust ............................................................ 4

    Class 1B – S&R ............................................................................... 4

    Class 1C – Department of Tax & Collections ................................. 5

    Class 2A – S&R ............................................................................... 5

    Class 2B – Department of Tax & Collections ................................. 5

    Class 2C – EPS Plumbing ............................................................... 6

    Class 3A – FRE 355 General Unsecured Claims ............................ 6

    Class 3B – Mora House LLC General Unsecured Claims ............... 6

    Class 4A – Equity Interests in FRE 355 ......................................... 7

    Class 4B – Equity Interests in Mora House LLC ............................ 7

IV.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................... 7

    A.    Assumption and Rejection ....................................................... 7

        1.    Contract Assumed. ..................................................... 7

        2.    Rejection of All Other Contracts Not Assumed. ......... 7

        3.    Claims Arising Out of Rejection. ................................ 7

V.    MEANS OF EXECUTION. .................................................................... 7

    A.    Reorganized Debtors. .............................................................. 7

    B.    Marketing and Sale of Mora House and Mora Lot. ................. 8

    C.    Effect of Failure to Close Sale. ............................................... 8

    D.    Effective Date Distribution. .................................................... 8

    E.    Funding and Operation of Disputed Claims Reserve. .............. 9

    F.    Distributions Generally. .......................................................... 9

| | | | |
|---|---|---|---|
| | G. | Powers of Reorganized Debtor. | 11 |
| VI. | | EFFECT OF CONFIRMATION OF PLAN | 12 |
| | A. | Confirmation Injunction. | 12 |
| | B. | Binding Effect. | 12 |
| VII. | | RETENTION OF JURISDICTION | 12 |
| VIII. | | GENERAL PROVISIONS | 14 |
| | A. | Preservation of Causes of Action. | 14 |
| | B. | Cramdown. | 14 |
| | C. | Severability. | 14 |
| | D. | Governing Law. | 14 |
| | E. | Notices. | 14 |
| | F. | Post-Confirmation United States Trustee Fees. | 15 |
| | G. | Modification of Plan. | 15 |
| | H. | Withdrawal or Revocation of Plan. | 16 |
| | I. | Failure of Effective Date. | 16 |
| | J. | Post-Effective Date Notices. | 16 |
| | K. | Plan Controls. | 16 |
| | L. | Applicable Law. | 16 |
| | M. | Implementation Orders. | 16 |

Case: 20-50628    Doc# 64-2 Filed: 07/02/20 Entered: 07/02/20 14:37:23 Page 9 of 24
049

Debtors and debtors-in-possession FRE 355 Investment Group, LLC, dba FRE 355 and Mora House, LLC (collectively, the "Debtors") hereby propose their Chapter 11 Plan pursuant to section 1121 of the Bankruptcy Code. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.

## I. DEFINITIONS

Terms used in this Plan or the Disclosure Statement that are defined in the Bankruptcy Code or Bankruptcy Rules have the meaning assigned to them in the Bankruptcy Code and Rules.

1. ***"Addendum to Promissory Note"*** means that Addendum to Promissory Note Loan #10536 between S&R and FRE 355, dated December 11, 2018, which grants S&R an additional deed of trust collateralized by the Mora Lot and provides that "Lender shall release the real property interest in said property for a principal reduction of Five Hundred Thousand dollars ($500,000)."

2. ***"Administrative Claims Bar Date"*** means November 1, 2020.

3. ***"Avoidance Actions"*** means any actions commenced or that may be commenced before or after the Effective Date arising under Bankruptcy Code sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553, or under related state, federal, or foreign statutes and common law, including, without limitation fraudulent transfer laws.

4. ***"Blanchard Trust"*** means Richard and Esther Blanchard, Trustees of the Richard and Esther Blanchard 1990 Trust dated 10/1/1990.

5. ***"Disputed Claim Reserve"*** means cash withheld by the Debtors to pay any claims that are disputed, contingent or unliquidated and as to which no order sustaining an objection thereto has been entered or as to which no order estimating such claim for purposes of voting and distribution has been entered as of the Effective Date.

6. ***"Effective Date"*** means the sixtieth day following the date of the entry of the order of confirmation of the Plan if no notice of appeal from that order has been filed. If a notice of appeal has been filed, Debtors may waive the finality requirement and put the Plan into effect unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been

050

1   issued, the Effective Date will be the first day after that date on which no stay of the confirmation

2   order is in effect, provided that the confirmation order has not been vacated.

3          7.     "***Effective Date Distribution***" means distribution on the Effective Date of the

4   following: (a) 100% of allowed administrative claims without interest and (b) the first monthly

5   payment to the Franchise Tax Board on account of its priority tax claim as described in Article II

6   of this Plan.

7          8.     "***Extended Marketing Period***" means the six-month period following the Initial

8   Marketing Period for the Debtors to close a sale of the Mora House and Mora Lot.

9          9.     "***FRE 355***" means FRE 355 Investment Group, LLC, dba FRE 355.

10        10.     "***Initial Marketing Period***" means the six-month period after the Effective Date the

11  Debtors have to close a sale of the Mora House and Mora Lot.

12        11.     "***Mora House***" means the improved real property located at 10718 Mora Drive Los

13  Altos, California 94024, Parcel No. 331-14-066 consisting of residence with 9,677 square feet of

14  livable space and 6 bedrooms.

15        12.     "***Mora Lot***" means the vacant land situated in Los Altos, California, Parcel No.

16  331-14-067, 1.4512 acres, Lot No. 3 adjacent to the Mora House.

17        13.     "***Reorganized Debtors***" means the Debtors following entry of an order confirming

18  the Plan.

19        14.     "***S&R***" means S&R Income Fund I, LP, by and through Platinum Loan Servicing,

20  Inc.

21              **II.    TREATMENT OF UNCLASSIFIED CLAIMS**

22      <u>Unsecured Priority Tax Claims</u>

23        The State of California Franchise Tax Board ("FTB") filed a claim for unsecured priority

24  taxes in the amount of $3,442.75 in the bankruptcy case of Mora House, LLC. This creditor will

25  receive equal payments of $60 per month until sales of the Mora House and Mora Lot close, at

26  which time the balance of FTB's priority tax claim will be paid in full with statutory interest.

27  ///

28  ///

<u>Non-Professional Ordinary Course Administrative Expense Claims</u>

The Debtors will pay non-professionals who hold administrative expense claims in the ordinary course as and when such amounts are due unless they agree to a different treatment.

<u>Professional Fees</u>

The Debtors will pay holders of allowed professional administrative expense claims approved by the Bankruptcy Court in cash on the Effective Date Distribution unless they agree to a different treatment.

Applications for compensation are to be filed within 60 days after the Effective Date unless the Debtors agree in writing to an extension of that deadline which extension agreement is then filed with the Court, except for the real estate broker appointed on behalf of the Debtor who shall request approval of compensation in connection with the sale of the Mora House and/or Mora Lot.

After the Effective Date and except as provided herein, the Debtors may incur and pay professional fees in the ordinary course without notice or court approval.

<u>Statutory U.S. Trustee Fees</u>

The Debtors will pay all fees owed to the United States Trustee pursuant to 28 U.S.C. §1930 within 15 days of billing by the United States Trustee after entry of an order confirming the Plan and as a condition thereof.

## III. TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

### A. Classes under Plan and Voting Rights Summary

| Class | Claimant | Secured/ Unsecured | Collateral | Impairment/ Voting |
|-------|----------|--------------------|-----------|--------------------|
| Class 1A | Blanchard Trust | Secured | Mora Lot | Impaired Entitled to vote |
| Class 1B | S&R | Secured | Mora Lot | Impaired Entitled to vote |
| Class 1C | Department of Tax & Collections | Secured | Mora Lot | Impaired, entitled to vote |
| Class 2A | S&R | Secured | Mora House | Impaired, entitled to vote |
| Class 2B | Department of Tax & Collections | Secured | Mora House | Impaired, entitled to vote |

| Class 2C | EPS Plumbing | Secured | Mora House | Impaired, entitled to vote |
| Class 3A | FRE 355 General Unsecured Claims | Unsecured | N/A | Impaired, entitled to vote |
| Class 3C | Mora House LLC General Unsecured Claims | Unsecured | N/A | Impaired, entitled to vote |
| Class 4A | Equity Interests in FRE 355 | N/A | N/A | Unimpaired, deemed to accept |
| Class 4B | Equity Interests in Mora House LLC | N/A | N/A | Unimpaired, deemed to accept |

## B. Treatment of Claims

### Class 1A – Blanchard Trust

Class 1A consists of the first-priority secured claim of the Blanchard Trust against the Mora Lot in the filed amount of $2,441,801.23. Under the Plan, the Blanchard Trust shall retain its lien against the Mora Lot to the extent of its allowed claim. The Blanchard Trust shall receive a single payment equal to the allowed amount of its claim with contract rate interest and reasonable attorneys' fees six months after the Effective Date or at such time that the Mora Lot is sold, whichever is sooner; provided, however that if S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then (1) S&R shall release its lien against the Mora Lot, and (2) the Debtors shall have the Extended Marketing Period to sell Mora Lot and Mora House and six additional months to pay Blanchard Trust's Class 1B claim. The Blanchard Trust shall retain without modification the right to advance $500,000 under the Addendum to Promissory Note to cause the release of the S&R lien from the Mora Lot.

### Class 1B – S&R

Class 1B consists of the second priority secured claim of the S&R against the Mora Lot in the scheduled amount of $12,113,909.20 including interest and foreclosure fees. Under the Plan, S&R shall retain its lien against the Mora Lot to the extent of its allowed claim. S&R shall receive a single payment equal to the allowed amount of its claim with contract rate interest and reasonable attorneys' fees six months after the Effective Date or at such time that the Mora Lot is sold, whichever is sooner; provided, however that if S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then (1) S&R shall release its lien against the Mora Lot,

| | |
|---|---|
| 1 | and (2) the Debtors shall have the Extended Marketing Period to sell Mora Lot and Mora House |
| 2 | and six additional months to pay S&R's Class 1B claim. |
| 3 | **Class 1C – Department of Tax & Collections** |
| 4 | Class 1C consists of the secured claim of the Department of Tax & Collections for unpaid |
| 5 | real property taxes secured against the Mora Lot in the amount of $113,837.60.  Under the Plan, |
| 6 | the Department of Tax & Collections shall retain its lien against the Mora Lot to the extent of its |
| 7 | allowed claim.  The Department of Tax & Collections shall receive a single payment equal to the |
| 8 | allowed amount of its claim with statutory interest six months after the Effective Date or at such |
| 9 | time that the Mora Lot is sold, whichever is sooner provided, however that if S&R receives a |
| 10 | $500,000 principal paydown under the Addendum to Promissory Note then (1) S&R shall release |
| 11 | its lien against the Mora Lot, and (2) the Debtors shall have the Extended Marketing Period to sell |
| 12 | Mora Lot and Mora House and six additional months to pay the Class 1C claim of the Department |
| 13 | of Tax & Collections . |
| 14 | **Class 2A – S&R** |
| 15 | Class 2A consists of the first priority secured claim of the S&R against the Mora House in |
| 16 | the scheduled amount of $12,113,909.20 including interest and foreclosure fees.  Under the Plan, |
| 17 | S&R shall retain its lien against the Mora House to the extent of its allowed claim.  S&R shall |
| 18 | receive a single payment equal to the allowed amount of its claim with contract rate interest and |
| 19 | reasonable attorneys' fees six months after the Effective Date or at such time that the Mora House |
| 20 | is sold, whichever is sooner; provided, however that if S&R receives a $500,000 principal |
| 21 | paydown under the Addendum to Promissory Note then (1) S&R shall release its lien against the |
| 22 | Mora Lot, and (2) the Debtors shall have the Extended Marketing Parioer to sell Mora Lot and |
| 23 | Mora House and six additional months to pay S&R's Class 2A claim. |
| 24 | **Class 2B – Department of Tax & Collections** |
| 25 | Class 2B consists of the secured claim of the Department of Tax & Collections secured |
| 26 | against the Mora House in the filed amount of $255,298.22 for unpaid real property taxes.  Under |
| 27 | the Plan, the Department of Tax & Collections shall retain its lien against the Mora House to the |
| 28 | extent of its allowed claim.  The Department of Tax & Collections shall receive a single payment |

equal to the allowed amount of its claim with statutory interest six months after the Effective Date or at such time that the Mora House is sold, whichever is sooner; provided, however that if S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then (1) S&R shall release its lien against the Mora Lot, and (2) the Debtors shall have the Extended Marketing Period to sell Mora Lot and Mora House and six additional months to pay the Class 2B claim of the Department of Tax & Collections.

**Class 2C – EPS Plumbing**

Class 2C consists of the secured claim of EBS Plumbing against the Mora House in the amount of $27,000. Under the Plan, EPS Plumbing shall retain its lien against the Mora House to the extent of its allowed claim. EPS Plumbing shall receive a single payment equal to the allowed amount of its claim with contract rate interest six months after the Effective Date or at such time that the Mora House is sold, whichever is sooner; provided, however that if S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then (1) S&R shall release its lien against the Mora Lot, and (2) the Debtors shall have the Extended Marketing Period to sell Mora Lot and Mora House and six additional months to pay the Class 2C claim of EPS Plumbing.

**Class 3A – FRE 355 General Unsecured Claims**

Class 3A consists of the claims of holders of general unsecured claims against FRE 355. Holders of allowed claims in this class will receive payment of the allowed amount of their claims, without interest, from the net proceeds from sale of the Mora House after the full payment of all secured and priority claims. Payment shall be made six months after the Effective Date, unless S&R receives a $500,000 principal paydown under the Addendum to Promissory Note, in which case payment shall be made twelve months after the Effective Date or at such time that the Mora House is sold, whichever is sooner.

**Class 3B – Mora House LLC General Unsecured Claims**

Class 3B consists of the claims of holders of general unsecured claims against Mora House, LLC. Holders of allowed claims in this class will receive a pro rata distribution on the allowed amount of their claims, without interest, from the net proceeds from sale of the Mora Lot after the full payment of all secured and priority claims. Payment shall be made six months after

the Effective Date, unless S&R receives a $500,000 principal paydown under the Addendum to Promissory Note, in which case payment shall be made twelve months after the Effective Date or at such time that the Mora Lot is sold, whichever is sooner.

**Class 4A – Equity Interests in FRE 355**

Melvin Vaughn will retain his equity interests in FRE 355 without impairment.

**Class 4B – Equity Interests in Mora House LLC**

Melvin Vaughn will retain his equity interests in Mora House, LLC without impairment.

## IV.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.     Assumption and Rejection

#### 1.     Contract Assumed.

The Debtors assume, to the extent it is necessary, the Addendum to Promissory Note.

#### 2.     Rejection of All Other Contracts Not Assumed.

All other executory contracts not (a) previously assumed, assigned or rejected pursuant to final order of the Bankruptcy Court entered prior to the Effective Date, or (b) not subject to a pending motion to assume, assign or reject filed with the Bankruptcy Court prior to the Effective Date, will be deemed rejected as of the Effective Date.

#### 3.     Claims Arising Out of Rejection.

Any claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Bankruptcy Court by no later than 30 calendar days after the confirmation of the Plan. If no proof of claim is filed within such time period, it will be forever barred from receiving a distribution from estate assets.

## V.     MEANS OF EXECUTION.

### A.     Reorganized Debtors.

The Debtors, as the Reorganized Debtors shall, from and after confirmation of the Plan, continue as the representatives of their respective estates and succeed without further order to all right, title and interest in all estate assets and property pursuant to the terms of the Plan. The Debtors will be authorized and empowered to take all actions and measures necessary to implement and administer the Plan. The Debtors will conduct their business and operate from

1 confirmation and through and after substantial consummation of the Plan. The Debtors may

2 continue to receive unsecured loans or equity advances from their sole member, Melvin Vaughn,

3 to pay the Debtors' respective ongoing costs of operations until a sale of the Mora House and

4 Mora Lot.

5       **B.**    **Marketing and Sale of Mora House and Mora Lot.**

6     The Debtors will advertise, show, market and sell the Mora House and Mora Lot and close

7 sales thereof in the Initial Marketing Period, within 6 months of the Effective Date; provided

8 however that if S&R receives a $500,000 principal paydown under the Addendum to Promissory

9 Note, the Debtors will have 6 more months to close sales of both the Mora House and Mora Lot

10 within the Extended Marketing Period.  After the Effective Date, the Debtors may extend their

11 listing agreements with Court appointed real estate broker, Phil Chen of Compass, without the

12 need for Court approval, but shall seek Court approval as a condition to entering into listing

13 agreements with any replacement broker.

14       **C.**    **Effect of Failure to Close Sale.**

15     In the event that sales of the Mora House and Mora Lot have not closed within Initial

16 Marketing Period or the Extended Marketing Period in the event that the Addendum to Promissory

17 Note has resulted in payment of $500,000 to S&R and release of its lien from the Mora Lot, all

18 holders of secured claims shall have immediate relief to exercise their rights and foreclose their

19 liens against their respective collateral without further order of the Bankruptcy Court.  Any party

20 may, following failure by the Debtors to close a sale of one or both of the Mora House and Mora

21 Lot within the periods set forth above, request conversion of these bankruptcy cases to Chapter 7

22 by filing an explanatory declaration with the Bankruptcy Court, uploading a proposed form of

23 order, and serving both with 10 days' notice and opportunity for hearing.

24       **D.**    **Effective Date Distribution.**

25     The Debtors will pay holders of allowed professional administrative expense claims in

26 cash on the Effective Date Distribution or at such later dates as the Court approves unless they

27 agree to a different treatment.

28 ///

### E. Funding and Operation of Disputed Claims Reserve.

The Reorganized Debtors will create the Disputed Claims Reserve by establishing at the time of closing of sale of the Mora House and Mora Lot a separate bank account and depositing into it cash equal to the face amount of all claims that are disputed, contingent or unliquidated. No deposit is required for a claim as to which an order disallowing the claim has been entered. A deposit is only required up to the amount at which a claim has been estimated should Debtors seek and obtain an order of the bankruptcy court for estimation of a disputed claim. If a disputed claim becomes an allowed claim, the Reorganized Debtors will immediately distribute to the claimant from the Disputed Claims Reserve the amount of the allowed claim that it would have been entitled to receive had it been an allowed claim on the confirmation date. Any funds no longer needed in reserve shall be released for use according to the terms of the Plan.

### F. Distributions Generally.

#### 1. Best Efforts to Make Distributions.

The Reorganized Debtors will not be obligated to make any distribution if it is reasonably expected that the cost of such distribution would exceed the amount of cash on hand. The Reorganized Debtors will make continuing efforts to administer the estate assets, make timely distributions, and will not unduly prolong the duration of the Reorganized Debtor's appointment.

#### 2. Addresses for Delivery.

If any distribution to a holder of an allowed claim is returned as undeliverable, no further distributions will be made to such holder unless and until the Reorganized Debtors is notified in writing of such holder's then-current address, at which time all currently due and missed distributions will be made to such holder. Undeliverable distributions will remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable or such distribution is cancelled.

#### 3. Delivery of Distributions.

Distributions may be delivered by first class mail, postage pre-paid. Mailings may be made to the address indicated on the latest notice of appearance or the latest proof of claim or

1  other paper filed by any of the foregoing in the Bankruptcy Court. Absent any such filing, the

2  address set forth in the Debtor's schedules filed with the Bankruptcy Court may be used.

3        Distributions made in accordance with this provision will be deemed delivered whether

4  actually received or not.

5  ### 4. Disputed Distributions.

6        If any dispute arises as to the identity of a claimant who is to receive any distribution, the

7  Reorganized Debtors may, in lieu of making such distribution to such holder, make such

8  distribution into a segregated fund until the disposition thereof will be determined by Bankruptcy

9  Court order or by written agreement among the interested parties to such dispute.

10  ### i. DeMinimis Distributions.

11        Notwithstanding any other provision of the Plan, Distributions of less than $50.00 need not

12  be made on account of any Allowed Claim; provided, however, that Distributions that would

13  otherwise be made but for this provision shall carry over to the next Distribution Date until the

14  cumulative amount to which any holder of an Allowed Claim is entitled to is more than $50.00, at

15  which time the cumulative amount of such Distributions will be paid to such holder.

16  ### ii. Withholding and Reporting Requirements.

17        Any foreign, federal, state or local withholding taxes or other amounts required to be

18  withheld under applicable law will be deducted from any distributions hereunder. All claimants

19  are required to provide any information necessary to withhold such taxes, including provision of a

20  FEIN or SSN to the Reorganized Debtor. The Reorganized Debtors will be authorized to withhold

21  distribution on such claims until the requisite information is received. If such information is not

22  received within one hundred and twenty (120) calendar days after the relevant distribution date,

23  distribution will be treated as unclaimed, and the claimant will forfeit its right to the distribution.

24  All distributions under the Plan will be net of the actual and reasonable costs of making such

25  distributions and of any allocable fees or other charges relating thereto.

26  ### 5. Unclaimed Distributions.

27        If any distribution remains unclaimed for a period of one hundred and twenty (120)

28  calendar days after the relevant distribution date, or any distribution check remains uncashed for

one hundred and twenty (120) calendar days after its issuance, the distribution will constitute an unclaimed distribution (hereafter referred to as an "Unclaimed Distribution"). Any uncashed check will be void, and the claimant will no longer be entitled to that distribution. Pursuant to Bankruptcy Code section 347(b), all right, title and interest in and the Unclaimed Distributions will immediately vest in the Debtors and be administered by the Reorganized Debtors pursuant to the terms of this Plan.

### G. Powers of Reorganized Debtor.

#### 1. Powers Generally and Power to Sue.

On the Effective Date, the Reorganized Debtors will be vested with all rights and powers of the Debtors under State and Federal law, including but not limited to the right to pursue all claims and causes of action that the Debtors have including avoidance actions, and any other causes of action, defenses, requests for subordination or recharacterization, or requests for any other equitable or legal relief that was or could have been asserted pre-petition by the Debtors against any party other than those which have been settled. The Reorganized Debtors may, on behalf of the Debtors, pursue, settle or release all such actions in accordance with the best interest of and for the benefit of the holders of allowed claims.

#### 2. Objections to and Estimation of Claims.

After the Effective Date, the Reorganized Debtors may file objections to claims. As to any claims arising from the rejection of an executory contract or unexpired lease pursuant to the Plan, the Reorganized Debtors may object within sixty (60) calendar days of the filing of any such claims. As to claims arising from the recovery of an avoidable transfer under chapter 5 of the Bankruptcy Code, the Reorganized Debtors may object within sixty (60) calendar days of the filing of any such claims.

#### 3. Settlements.

After the Effective Date the Reorganized Debtors will have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to claims, including without limitation, any objections to claims filed by the Debtors prior to the Effective Date. The Reorganized Debtors will provide notice and opportunity for hearing of any settlement.

# VI.   EFFECT OF CONFIRMATION OF PLAN

### A.   Confirmation Injunction.

On and after date of confirmation of the Plan, except to enforce the terms and conditions of the Plan before the Bankruptcy Court or to implement the terms of the Plan, all persons and entities who have held, hold or may hold any debt, claim, lien, encumbrance against or interest in the Debtors are permanently enjoined from and after the date of entry of the order confirming the Plan from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against either the Debtors, their estates, their property, or the Reorganized Debtors; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, of any judgment, award, decree or order against any of the foregoing; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against any of the foregoing (d) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due; and (e) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan.

### B.   Binding Effect.

Except as otherwise expressly provided in the Plan, as of the Effective Date, the provisions of the Plan, a confirmation order, and any associated findings of fact or conclusions of law will bind the Debtor, the Reorganized Debtors, and all holders of claims and interests against the Debtors, regardless of whether such holders are impaired under the Plan or voted to accept.

# VII.   RETENTION OF JURISDICTION

The Bankruptcy Court will retain jurisdiction over the Bankruptcy Case subsequent to the date of Plan confirmation to the fullest extent permitted by law, including, without limitation, for the following purposes:

///

///

**A.** To approve any proposed sale(s) of the Mora House and Mora Lot following one or more duly noticed motions including any sale free and clear of disputed liens and interests, and to enter orders as may be necessary and appropriate to aid in the close of escrows;

**B.** To determine any and all proceedings related to allowance of claims or objections thereto, including objections to classification and including, on an appropriate motion pursuant to Bankruptcy Rule 3008, reconsideration of claims that have been allowed or disallowed prior to confirmation;

**C.** To hear and determine any and all applications for compensation by professionals or any other fees and expenses authorized to be paid or reimbursed in accordance with the Bankruptcy Code or the Plan;

**D.** To determine any and all claims or causes of action, whether pending before the Bankruptcy Court at Plan confirmation or filed or instituted after that date;

**E.** To modify the Plan or the Disclosure Statement, or to remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court (including the confirmation order) as may be necessary to carry out the purposes and effects of the Plan;

**F.** To determine disputes regarding title of the property claimed to be property of the Debtors or their estates;

**G.** To ensure that distributions to holders of allowed claims are accomplished in accordance with the provisions of the Plan;

**H.** To enter such orders as may be necessary to consummate and effectuate the operative provisions of the Plan, including actions to enjoin enforcement of claims inconsistent with the terms of the Plan;

**I.** To hear and determine disputes concerning any event of default or alleged event of default under the Plan, as well as disputes concerning remedies upon any event of default under the Plan;

**J.** To hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

**K.** To enter a final decree closing the Debtors' bankruptcy cases;

///

1       **L.**       To enter and implement such orders as may be appropriate in the event the

2   confirmation order is for any reason stayed, reversed, revoked or vacated;

3       **M.**       To hear and determine such other matters as may arise in connection with the Plan,

4   the Disclosure Statement, or the confirmation order;

5       **N.**       To hear and determine any dispute between the Reorganized Debtors and any

6   creditor or defendant or plaintiff in litigation;

7       **O.**       To approve any post-petition retainer payments to professionals; and,

8       **P.**       To issue temporary restraining orders and preliminary injunctions.

9               **VIII.**     **GENERAL PROVISIONS**

10      **A.**      **Preservation of Causes of Action.**

11         Any and all claims and other causes of action accruing to Debtors or estate, the right and

12  power to object to any filed or scheduled claims, the right to pursue avoidance actions will be

13  preserved and retained by the estate after the confirmation date, and the Reorganized Debtors on

14  behalf of the estate will have the exclusive right and standing to enforce any such causes of action.

15      **B.**      **Cramdown.**

16         Pursuant to section 1129(b) of the Bankruptcy Code, Debtors reserve the right to seek

17  confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

18      **C.**      **Severability.**

19         If any provision in the Plan is determined to be unenforceable, the determination will in no

20  way limit or affect the enforceability and operative effect of any other provision of the Plan.

21      **D.**      **Governing Law.**

22         Except to the extent a federal rule of decision or procedure applies, the laws of the State of

23  California govern the Plan.

24      **E.**      **Notices.**

25         Any notice to Debtors will be in writing, and will be deemed to have been given six days

26  after the date sent by first-class mail, postage prepaid and addressed as follows:

27  ///

28  ///

**Reorganized Debtors:**

> Mora House LLC
> FRE 355 Investment Group, LLC
> Attn: Melvin Vaughn
> 10700 Mora Drive, Los Altos, CA 94022
> Email: c4scab@aol.com
>
> With a copy to counsel:
> Robert G. Harris, Esq.
> Binder & Malter, LLP
> 2775 Park Avenue
> Santa Clara, CA 95050
> Facsimile: (408) 295-1531
> Email: rob@bindermalter.com

### F. Post-Confirmation United States Trustee Fees.

Following confirmation, Debtors will continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtors is required to make these payments, Debtors will file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

### G. Modification of Plan.

The Debtors reserve the right, in accordance with the Bankruptcy Code and Bankruptcy Rules, to amend or modify the Plan at any time prior to entry of an order confirming it. After entry of an order confirming the Plan but prior to the Effective Date, the Debtors may seek an order of the Bankruptcy Court to amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

After the Effective Date, the Reorganized Debtors may seek an order of the Bankruptcy Court to amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

///

///

The holder of an allowed claim that has accepted the Plan will be deemed to have accepted the Plan as modified if the modification does not materially and adversely change the treatment of the holder's claim.

**H.  Withdrawal or Revocation of Plan.**

The Debtors may withdraw the Plan at any time prior to its confirmation date.  If the Debtors withdraw the Plan prior to confirmation, or if the Plan is not confirmed, then the Plan will be deemed null and void and not binding on any person or entity.

**I.  Failure of Effective Date.**

In the event the Effective Date does not occur, nothing in this Plan will be binding on the Debtors or any other person or entity or otherwise be of any force or effect.

**J.  Post-Effective Date Notices.**

Except as otherwise provided in the Plan, upon and after the Effective Date, notices will be served only on the Office of the United States Trustee, the Reorganized Debtor, and those persons who file with the Bankruptcy Court and serve upon the Reorganized Debtors a request, which includes the person's name, contact individual, address, telephone number and facsimile number, that such Person receive notice of post-Effective Date matters.  Persons who had previously filed with the Bankruptcy Court requests for special notice of the proceedings and other filings in the Bankruptcy Case will not receive notice of post-Effective Date matters unless such persons file a new request in accordance with this Section.

**K.  Plan Controls.**

To the extent the terms of the Plan are inconsistent with the Disclosure Statement or any document implementing the Plan, the terms of the Plan will be controlling.

**L.  Applicable Law.**

The Plan is to be governed by and construed under the Bankruptcy Code and the laws of the State of California as they may be applicable.

**M.  Implementation Orders.**

The Bankruptcy Court may, at any time, make such orders and give such directions as appropriate for consummation of the Plan pursuant to Bankruptcy Code section 1142

Dated: July 10, 2020

MORA HOUSE LLC

By: */s/ Melvin Vaughn*
        Melvin Vaughn

Its:  Managing Member

FRE INVESTMENT GROUP LLC

Dated: July 10, 2020

By: */s/ Melvin Vaughn*
        Melvin Vaughn

Its:  Managing Member

July 10, 2020

BINDER & MALTER, LLP

By: */s/ Robert G. Harris*
        Robert G. Harris

Attorneys for Debtors and Debtors-in-possession
FRE 355 Investment Group, LLC and
Mora House, LLC

# EXHIBIT 3

Case: 20-50628    Doc# 69-2    Filed: 07/22/20    Entered: 07/22/20 15:52:43    Page 67
of 84

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

| In re:  FRE 355 INVESTMENT GROUP, LLC, dba FRE 355 | **Case No.** | 20-50628-SLJ |
|---|---|---|
| | **CHAPTER 11**<br>**MONTHLY OPERATING REPORT**<br>**(SMALL REAL ESTATE/INDIVIDUAL CASE)** | |

## SUMMARY OF FINANCIAL STATUS

**MONTH ENDED:**     06/30/20          **PETITION DATE:**          04/13/20

1. Debtor in possession (or trustee) hereby submits this Monthly Operating Report on the Accrual Basis of accounting (or if checked here �へ the Office of the U.S. Trustee or the Court has approved the Cash Basis of Accounting for the Debtor).
   Dollars reported in    $1

| 2. **Asset and Liability Structure** | **End of Current Month** | **End of Prior Month** | **As of Petition Filing** |
|---|---|---|---|
| a. Current Assets | $36,343 | $37,146 | |
| b. Total Assets | $15,036,342 | $15,037,139 | $14,999,999 |
| c. Current Liabilities | $254,895 | $141,362 | |
| d. Total Liabilities | $17,550,540 | $17,437,007 | $17,295,645 |

| 3. **Statement of Cash Receipts & Disbursements for Month** | **Current Month** | **Prior Month** | **Cumulative (Case to Date)** |
|---|---|---|---|
| a. Total Receipts | $560 | $965 | $1,545 |
| b. Total Disbursements | $1,634 | $688 | $2,654 |
| c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | ($1,074) | $277 | ($1,109) |
| d. Cash Balance Beginning of Month | $267 | ($1,054) | ($787) |
| e. Cash Balance End of Month (c + d) | ($807) | ($777) | ($1,896) |

| | **Current Month** | **Prior Month** | **Cumulative (Case to Date)** |
|---|---|---|---|
| 4. **Profit/(Loss) from the Statement of Operations** | N/A | N/A | N/A |
| 5. **Account Receivables (Pre and Post Petition)** | $0 | $0 | |
| 6. **Post-Petition Liabilities** | $254,895 | $141,362 | |
| 7. **Past Due Post-Petition Account Payables (over 30 days)** | $182,284 | $91,142 | |

| At the end of this reporting month: | **Yes** | **No** |
|---|---|---|
| 8. Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9. Have any payments been made to professionals?  (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 10. If the answer is yes to 8 or 9, were all such payments approved by the court? | | X |
| 11. Have any payments been made to officers, insiders, shareholders, relatives?  (if yes, attach listing including date of payment, amount and reason for payment, and name of payee) | | X |
| 12. Is the estate insured for replacement cost of assets and for general liability? | X | |
| 13. Are a plan and disclosure statement on file? | X | |
| 14. Was there any post-petition borrowing during this reporting period? | X | |

15. Check if paid: Post-petition taxes     ;          U.S. Trustee Quarterly Fees     ; Check if filing is current for: Post-petition
    tax reporting and tax returns:     .
    (Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.)

I declare under penalty of perjury I have reviewed the above summary and attached financial statements, and after making reasonable inquiry believe these documents are correct.

| Date:    July 20, 2020 | /s/ Melvin Vaughn |
|---|---|
| | Melvin Vaughn, Responsible Individual |

REVISED 1/1/98

|  | | Check if Exemption Claimed on Schedule C | Market Value |
|---|---|---|---|
| **Assets** | | | |
| **Current Assets** | | | |
| 1 | Cash and cash equivalents (including bank accts., CDs, ets.) | | ($806) |
| 2 | Accounts receivable (net) | | $0 |
| 3 | Retainer(s) paid to professionals | | $37,149 * |
| 4 | Other: _____ | | $0 |
| 5 | _____ | | |
| 6 | **Total Current Assets** | | $36,343 |
| | **Long Term Assets (Market Value)** | | |
| 7 | Real Property (residential) | | $14,999,999 |
| 8 | Real property (rental or commercial) | | $0 |
| 9 | Furniture, Fixtures, and Equipment | | $0 |
| 10 | Vehicles | | $0 |
| 11 | Partnership interests | | $0 |
| 12 | Interest in corportations | | $0 |
| 13 | Stocks and bonds | | $0 |
| 14 | Interests in IRA, Keogh, other retirement plans | | $0 |
| 15 | Other: _____ | | $0 |
| 16 | _____ | | |
| 17 | **Total Long Term Assets** | | $14,999,999 |
| 18 | **Total Assets** | | $15,036,342 |
| **Liabilities** | | | |
| **Post-Petition Liabilities** | | | |
| **Current Liabilities** | | | |
| 19 | Post-petition not delinquent (under 30 days) | | $0 |
| 20 | Post-petition delinquent other than taxes (over 30 days) | | $182,284 |
| 21 | Post-petition delinquent taxes | | $0 |
| 22 | Accrued professional fees (estimated) | | $72,051 |
| 23 | Other: _____ | | |
| 24 | Unsecured Post-Petition Borrowing Responsible Individual | | $560 |
| 25 | **Total Current Liabilities** | | $254,895 |
| 26 | **Long-Term Post Petition Debt** | | |
| 27 | **Total Post-Petition Liabilities** | | $254,895 |
| | **Pre-Petition Liabilities (allowed amount)** | | |
| 28 | Secured claims (residence) | | $12,113,909 |
| 29 | Secured claims (other) | | $161,475 |
| 30 | Priority unsecured claims | | $0 |
| 31 | General unsecured claims | | $5,020,262 |
| 32 | **Total Pre-Petition Liabilities** | | $17,295,645 |
| 33 | **Total Liabilities** | | $17,550,540 |
| **Equity (Deficit)** | | | |
| 34 | **Total Equity (Deficit)** | | ($2,514,199) |
| 35 | **Total Liabilities and Equity (Deficit)** | | $15,036,342 |

NOTE:

# SCHEDULES TO THE BALANCE SHEET

### Schedule A
### Rental Income Information

**List the Rental Information Requested Below By Properties (For Rental Properties Only)**

|   |   | Property 1 | Property 2 | Property 3 |
|---|---|---|---|---|
| 1 | Description of Property | 0 | 0 | 0 |
| 2 | Scheduled Gross Rents<br>Less: | | | |
| 3 | Vacancy Factor | | | |
| 4 | Free Rent Incentives | | | |
| 5 | Other Adjustments | | | |
| 6 | Total Deductions | $0 | $0 | $0 |
| 7 | Scheduled Net Rents | $0 | $0 | $0 |
| 8 | Less: Rents Receivable (2) | | | |
| 9 | Scheduled Net Rents Collected (2) | $0 | $0 | $0 |

(2) To be completed by cash basis reporters only.

### Schedule B
### Recapitulation of Funds Held at End of Month

|    |                                    | Account 1 | Account 2 | Account 3 |
|----|------------------------------------|-----------|-----------|-----------|
| 10 | Bank                               | Chase     |           |           |
| 11 | Account No.                        | 1180      |           |           |
| 12 | Account Purpose                    | Checking  |           |           |
| 13 | Balance, End of Month              | ($806)    |           |           |
| 14 | Total Funds on Hand for all Accounts | ($806)  |           |           |

Attach copies of the month end bank statement(s), reconciliation(s), and the check register(s) to the Monthly Operating Report.

# STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
## Increase/(Decrease) in Cash and Cash Equivalents
### For the Month Ended ___06/30/20___

| | | Actual Current Month | Cumulative (Case to Date) |
|---|---|---|---|
| **Cash Receipts** | | | |
| 1 | Rent/Leases Collected | $0 | $0 |
| 2 | Cash Received from Sales | $0 | $0 |
| 3 | Interest Received | $0 | $0 |
| 4 | Borrowings - Pre-petition | $0 | $0 |
| 5 | Funds from Shareholders, Partners, or Other Insiders | $0 | $945 |
| 6 | Capital Contributions | $0 | $0 |
| 7 | Post-Petition borrowing Responsible Individual | $560 | $600 |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | **Total Cash Receipts** | $560 | $1,545 |
| | **Cash Disbursements** | | |
| 13 | Selling | $0 | $0 |
| 14 | Administrative | $0 | $0 |
| 15 | Insurance | $623 | $623 |
| 16 | Repairs and Maintenance | $7 | $7 |
| 17 | Interest Paid | $0 | $0 |
| | Rent/Lease: | | |
| 18 | Personal Property | $0 | $0 |
| 19 | Real Property | $0 | $0 |
| | Amount Paid to Owner(s)/Officer(s) | | |
| 20 | Salaries | $0 | $0 |
| 21 | Draws | $0 | $0 |
| 22 | Commissions/Royalties | $0 | $0 |
| 23 | Expense Reimbursements | $0 | $0 |
| 24 | Other | $0 | $0 |
| 25 | Housekeeper | $650 | $650 |
| 26 | Transportation | $75 | $75 |
| | Taxes: | | |
| 27 | Employee Withholding | $0 | $0 |
| 28 | Employer Payroll Taxes | $0 | $0 |
| 29 | Real Property Taxes | $0 | $0 |
| 30 | Other Taxes | $0 | $0 |
| 31 | Other Cash Outflows: | | |
| 32 | Secretary of State | $0 | $20 |
| 33 | Utilities | $162 | $162 |
| 34 | Transfer to Checking 9892 in error | $0 | $725 |
| 35 | Transfer to Checking 7223 in error | $0 | $220 |
| 36 | Bank charges | $117 | $172 |
| 37 | **Total Cash Disbursements:** | $1,634 | $2,654 |
| 38 | **Net Increase (Decrease) in Cash** | ($1,074) | ($1,109) |
| 39 | **Cash Balance, Beginning of Period** | $267 | ($787) |
| 40 | **Cash Balance, End of Period** | ($807) | ($1,896) |



## CHASE

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218- 2051

May 30, 2020 through June 30, 2020
Account Number:

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |



00018016 DRE 703 141 18320 NNNNNNNNNNN T.. 1 000000000 64 0000
FRE 355 INVESTMENT GROUP, LLC
DEBTOR-IN-POSSESSION 20-50628
PO BOX 3156
LOS ALTOS CA 94024-0156

## CHECKING SUMMARY

Chase Total Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$267.18** |
| Deposits and Additions | 2 | 560.00 |
| ATM & Debit Card Withdrawals | 5 | -866.38 |
| Electronic Withdrawals | 1 | -650.00 |
| Fees | 4 | -117.00 |
| **Ending Balance** | **12** | **-$806.20** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 06/01 | ATM Cash Deposit | 06/01 199 Main St Los Altos CA Card 4534 | $400.00 |
| 06/08 | ATM Cash Deposit | 06/08 199 Main St Los Altos CA Card 4534 | 160.00 |
| **Total Deposits and Additions** | | | **$560.00** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 06/01 | Card Purchase | 05/30 Uber   Trip Help.Uber.Com CA Card 4534 | $64.03 |
| 06/08 | Card Purchase | 06/06 Uber   Trip Help.Uber.Com CA Card 4534 | 10.80 |
| 06/11 | Card Purchase | 06/11 Comcast Californ Cs 1 800-266-2278 CA Card 4534 | 162.37 |
| 06/15 | Card Purchase With Pin | 06/15 The Home Depot #6635 San Jose CA Card 4534 | 6.52 |
| 06/23 | Card Purchase | 06/22 State Farm  Insurance 800-956-6310 IL Card 4534 | 622.66 |
| **Total ATM & Debit Card Withdrawals** | | | **$866.38** |

## ATM & DEBIT CARD SUMMARY

Melvin Vaughn  Card 4534

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $866.38 |
| Total Card Deposits & Credits | $560.00 |

ATM & Debit Card Totals

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $866.38 |


Total Card Deposits & Credits      $560.00

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 06/08 | Quickpay With Zelle Payment To Mary.Cleaners Mora Romero Jpm381447272 | $650.00 |
| **Total Electronic Withdrawals** | | **$650.00** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 06/11 | Insufficient Funds Fee For A $162.37 Card Purchase - Details:    0611Comcast Californ Cs 1 800-266-2278 CA04427427064774534 01 | $34.00 |
| 06/15 | Insufficient Funds Fee For A $6.52 Card Purchase With Pin - Details: 0922770615The Home Depot #6635 San Jose CA    04427427064774534 05 | 34.00 |
| 06/23 | Insufficient Funds Fee For A $622.66 Card Purchase - Details:    0622State Farm  Insurance 800-956-6310 IL04427427064774534 00 | 34.00 |
| 06/30 | Monthly Service Fee | 15.00 |
| **Total Fees** | | **$117.00** |

You were charged a monthly service fee of $15.00 this period. You can avoid this fee in the future by maintaining a minimum daily balance of $1,500.00. Your minimum daily balance was -$791.20.

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|------|--------|
| 06/01 | $603.15 |
| 06/08 | 102.35 |
| 06/11 | -94.02 |
| 06/15 | -134.54 |
| 06/23 | -791.20 |
| 06/30 | -806.20 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------------------------------------------|------------------------|
| Checks Paid / Debits | 5 |
| Deposits / Credits | 0 |
| Deposited Items | 0 |
| **Transaction Total** | **5** |

| SERVICE FEE CALCULATION | AMOUNT |
|-------------------------|--------|
| Service Fee | $15.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$15.00** |
| Excessive Transaction Fees (Above 100) | $0.00 |
| **Total Service Fees** | **$15.00** |


**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

 **JPMorgan Chase Bank, N.A. Member FDIC**


This Page Intentionally Left Blank

# FRE 355 INVESTMENT GROUP LLC (MONTHLY REPORT MAY 30, 2020-JUNE 30,2020)

| Date | Bank | Account | Description | Amount | Type | Category | Receipt | Notes | |
|---|---|---|---|---|---|---|---|---|---|
| 6/30/20 | Chase Bank | TOTAL BUS CHK | Ending Balance (Acct. #1190) | -806.20 | Business | | | | |
| 6/30/20 | Chase Bank | TOTAL BUS CHK | Monthly Service Fee | -15.00 | Business | Bank Fees | | | |
| 6/25/20 | Chase Bank | TOTAL BUS CHK | Insufficient Funds Fee | -34.00 | Business | Bank Fees | | | |
| 6/26/20 | Chase Bank | TOTAL BUS CHK | State Farm Insurance (Property Insurance Policy) | -822.66 | Business | Insurance | | STATE FARM | |
| 6/16/20 | Chase Bank | TOTAL BUS CHK | Insufficient Funds Fee | -34 | Business | Other business expenses | N | $2 CARD PURCHASE WITH PIN - DETAILS: 09327700151THE HOME DEPOT #8635 SAN JOSE CA  04427427004774534 | 05 |
| 6/16/20 | Chase Bank | TOTAL BUS CHK | Home Depot | -6.52 | Business | Materials & Supplies | N | 092277 06/15 (Cleaning Supplies) | |
| 6/11/20 | Chase Bank | TOTAL BUS CHK | Comcast (Cable and Internet Services ) | -162.37 | Business | Utilities | N | CABLE & INTERNET | |
| 6/11/20 | Chase Bank | TOTAL BUS CHK | Insufficient Funds Fee | -34 | Business | Other business expenses | N | 2.37 CARD PURCHASE - DETAILS:   06111COMCAST CALIFORN CS 1 800-266-2278 CA04427427004774534 | 01 |
| 6/9/20 | Chase Bank | TOTAL BUS CHK | Quickpay With Zelle (Mary Romero House cleaners) | -650 | Business | Transfer | N | HOUSE CLEANERS | |
| 6/9/20 | Chase Bank | TOTAL BUS CHK | Uber.com (Assistant Transportation to Home Office) Filing & Organizing | -10.9 | Business | Travel expenses | N | OFFICE ASSISTANCE | |
| 6/9/20 | Chase Bank | TOTAL BUS CHK | ATM Cash Deposit 198 Main Street (Loan from Malvin Vaughn) Cover Business Expenses | 160 | Business | Income | N | LOAN TO FRE 355 | |
| 6/1/20 | Chase Bank | TOTAL BUS CHK | Uber.com (Assistant Transportation to Home Office ) Filing & Organizing | -44.03 | Business | Travel expenses | N | OFFICE ASSISTANCE | |
| 6/1/20 | Chase Bank | TOTAL BUS CHK | ATM Cash Deposit 198 Main Street (Loan from Malvin Vaughn ) Cover Business Expenses | 400 | Business | Income | N | LOAN TO FRE 355 | |

# EXHIBIT 4

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| In re: MORA HOUSE , LLC | Case No. | 20-50631-SLJ |
|---|---|---|
| | **CHAPTER 11**<br>**MONTHLY OPERATING REPORT**<br>**(SMALL REAL ESTATE/INDIVIDUAL CASE)** | |

## SUMMARY OF FINANCIAL STATUS

| MONTH ENDED: | 06/30/20 | PETITION DATE: | 04/14/20 |
|---|---|---|---|

1. Debtor in possession (or trustee) hereby submits this Monthly Operating Report on the Accrual Basis of accounting (or if checked here the Office of the U.S. Trustee or the Court has approved the Cash Basis of Accounting for the Debtor).
Dollars reported in ___$1___

| 2. **Asset and Liability Structure** | End of Current Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|
| a. Current Assets | $19,006 | $19,006 | |
| b. Total Assets | $4,019,006 | $4,019,006 | $4,000,000 |
| c. Current Liabilities | $19,781 | $15,000 | |
| d. Total Liabilities | $13,056,602 | $13,044,321 | $13,036,820 |

| 3. **Statement of Cash Receipts & Disbursements for Month** | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| a. Total Receipts | $40 | $0 | $40 |
| b. Total Disbursements | $22 | $0 | $32 |
| c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | $18 | $0 | $8 |
| d. Cash Balance Beginning of Month | ($10) | $0 | ($10) |
| e. Cash Balance End of Month (c + d) | $8 | $0 | ($2) |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 4. **Profit/(Loss) from the Statement of Operations** | N/A | N/A | N/A |
| 5. **Account Receivables (Pre and Post Petition)** | $0 | $0 | |
| 6. **Post-Petition Liabilities** | $19,781 | $7,500 | |
| 7. **Past Due Post-Petition Account Payables (over 30 days)** | $0 | $0 | |

At the end of this reporting month:

| | | Yes | No |
|---|---|---|---|
| 8. | Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9. | Have any payments been made to professionals? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 10. | If the answer is yes to 8 or 9, were all such payments approved by the court? | | |
| 11. | Have any payments been made to officers, insiders, shareholders, relatives? (if yes, attach listing including date of payment, amount and reason for payment, and name of payee) | | X |
| 12. | Is the estate insured for replacement cost of assets and for general liability? | X | |
| 13. | Are a plan and disclosure statement on file? | X | |
| 14. | Was there any post-petition borrowing during this reporting period? | X | |

15. Check if paid: Post-petition taxes ___; U.S. Trustee Quarterly Fees ___; Check if filing is current for: Post-petition tax reporting and tax returns: ___.
(Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.)

I declare under penalty of perjury I have reviewed the above summary and attached financial statements, and after making reasonable inquiry believe these documents are correct.

| Date: | July 20, 2020 | /s/ Melvin Vaughn |
|---|---|---|
| | | Melvin Vaughn, Responsible Individual |

Revised 1/1/98

|  | Assets | Check if Exemption Claimed on Schedule C | Market Value |
|---|---|---|---|
|  | **Current Assets** |  |  |
| 1 | Cash and cash equivalents (including bank accts., CDs, ets.) |  | $8 |
| 2 | Accounts receivable (net) |  | $0 |
| 3 | Retainer(s) paid to professionals |  | $19,016 |
| 4 | Other: |  |  |
| 5 |  |  |  |
| 6 | **Total Current Assets** |  | $19,006 |
|  | **Long Term Assets (Market Value)** |  |  |
| 7 | Real Property (residential) |  | $0 |
| 8 | Real property (rental or commercial) |  | $4,000,000 |
| 9 | Furniture, Fixtures, and Equipment |  | $0 |
| 10 | Vehicles |  | $0 |
| 11 | Partnership interests |  | $0 |
| 12 | Interest in corportations |  | $0 |
| 13 | Stocks and bonds |  | $0 |
| 14 | Interests in IRA, Keogh, other retirement plans |  | $0 |
| 15 | Other: |  | $0 |
| 16 |  |  |  |
| 17 | **Total Long Term Assets** |  | $4,000,000 |
| 18 | **Total Assets** |  | $4,019,006 |
|  | **Liabilities** |  |  |
|  | **Post-Petition Liabilities** |  |  |
|  | **Current Liabilities** |  |  |
| 19 | Post-petition not delinquent (under 30 days) |  | $0 |
| 20 | Post-petition delinquent other than taxes (over 30 days) |  | $0 |
| 21 | Post-petition delinquent taxes |  | $0 |
| 22 | Accrued professional fees |  | $19,741 |
| 23 | Other: |  | $0 |
| 24 | Unsecured Post-Petition Borrowing Responsible Indiv |  | $40 |
| 25 | **Total Current Liabilities** |  | $19,781 |
| 26 | **Long-Term Post Petition Debt** |  |  |
| 27 | **Total Post-Petition Liabilities** |  | $19,781 |
|  | **Pre-Petition Liabilities (allowed amount)** |  |  |
| 28 | Secured claims (residence) |  | $0 |
| 29 | Secured claims (other) |  | $13,011,821 |
| 30 | Priority unsecured claims |  | $0 |
| 31 | General unsecured claims |  | $25,000 |
| 32 | **Total Pre-Petition Liabilities** |  | $13,036,821 |
| 33 | **Total Liabilities** |  | $13,056,602 |
|  | **Equity (Deficit)** |  |  |
| 34 | **Total Equity (Deficit)** |  | ($9,114,730) |
| 35 | **Total Liabilities and Equity (Deficit)** |  | $3,941,872 |

NOTE:

* Binder & Malter, LLP received an initial retainer from the Managing Member, Melvin Vaughn who obtained the funds from a personal loan from a friend prior to the filing of the within petition. The funds were deposited into an account held by FRE 355 Investment Group, LLC, also a Debtor-In-Possession, Case No. 20-50328-SLJ, because this Debtor does not have a bank account.

# SCHEDULES TO THE BALANCE SHEET

### Schedule A
### Rental Income Information

**List the Rental Information Requested Below By Properties (For Rental Properties Only)**

|  |  | Property 1 | Property 2 | Property 3 |
|---|---|---|---|---|
| 1 | Description of Property | 0 |  |  |
| 2 | Scheduled Gross Rents |  |  |  |
|  | Less: |  |  |  |
| 3 | Vacancy Factor |  |  |  |
| 4 | Free Rent Incentives |  |  |  |
| 5 | Other Adjustments |  |  |  |
| 6 | Total Deductions | $0 | $0 | $0 |
| 7 | Scheduled Net Rents | $0 | $0 | $0 |
| 8 | Less:  Rents Receivable (2) |  |  |  |
| 9 | Scheduled Net Rents Collected (2) | $0 | $0 | $0 |

(2) To be completed by cash basis reporters only.

### Schedule B
### Recapitulation of Funds Held at End of Month

|  |  | Account 1 | Account 2 | Account 3 |
|---|---|---|---|---|
| 10 | Bank | Chase |  |  |
|  |  | account opened in May 2020 |  |  |
| 11 | Account No. |  |  |  |
| 12 | Account Purpose | Checking |  |  |
| 13 | Balance, End of Month | $8 |  |  |
| 14 | Total Funds on Hand for all Accounts | $8 |  |  |

Attach copies of the month end bank statement(s), reconciliation(s), and the check register(s) to the Monthly Operating Report.

# STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
## Increase/(Decrease) in Cash and Cash Equivalents
### For the Month Ended     06/30/20

| | | Actual Current Month | Cumulative (Case to Date) |
|---|---|---:|---:|
| **Cash Receipts** | | | |
| 1 | Rent/Leases Collected | $0 | $0 |
| 2 | Cash Received from Sales | $0 | $0 |
| 3 | Interest Received | $0 | $0 |
| 4 | Borrowings | $0 | $0 |
| 5 | Funds from Shareholders, Partners, or Other Insiders | $0 | $0 |
| 6 | Capital Contributions | $0 | $0 |
| 7 | Unsecured Post-Petition Borrowing Responsible Individual | $40 | $40 |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | **Total Cash Receipts** | $40 | $40 |
| **Cash Disbursements** | | | |
| 13 | Selling | $0 | |
| 14 | Administrative | $0 | |
| 15 | Capital Expenditures | $0 | |
| 16 | Principal Payments on Debt | $0 | |
| 17 | Interest Paid | $0 | |
| | Rent/Lease: | | |
| 18 | Personal Property | $0 | |
| 19 | Real Property | $0 | |
| | Amount Paid to Owner(s)/Officer(s) | | |
| 20 | Salaries | $0 | |
| 21 | Draws | $0 | |
| 22 | Commissions/Royalties | $0 | |
| 23 | Expense Reimbursements | $0 | |
| 24 | Other | $0 | |
| 25 | Salaries/Commissions (less employee withholding) | $0 | |
| 26 | Management Fees | $0 | |
| | Taxes: | | |
| 27 | Employee Withholding | $0 | |
| 28 | Employer Payroll Taxes | $0 | |
| 29 | Real Property Taxes | $0 | |
| 30 | Other Taxes | $0 | |
| 31 | Other Cash Outflows: | $0 | |
| 32 | Bank charges | $0 | $10 |
| 33 | Feed Cleaning Crews | $22 | $22 |
| 34 | | | |
| 35 | | | |
| 36 | | | |
| 37 | **Total Cash Disbursements:** | $22 | $32 |
| 38 | **Net Increase (Decrease) in Cash** | $18 | $8 |
| 39 | **Cash Balance, Beginning of Period** | ($10) | ($10) |
| 40 | **Cash Balance, End of Period** | $8 | ($2) |

Revised 1/1/98



**CHASE**

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218- 2051

May 30, 2020 through June 30, 2020

Account Number: ████████████

## CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00054673 DRE 703 143 18320 NNNNNNNNNNN T  1 000000000 64 0000
MORA HOUSE LLC DEBTOR-IN-POSSESSION
20-50631
PO BOX 3156
LOS ALTOS CA 94024-0156



## CHECKING SUMMARY  Chase Total Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **-$10.00** |
| Deposits and Additions | 1 | 40.00 |
| ATM & Debit Card Withdrawals | 1 | -21.75 |
| **Ending Balance** | **2** | **$8.25** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/01 | ATM Cash Deposit        06/01 199 Main St Los Altos CA Card 3849 | $40.00 |
| **Total Deposits and Additions** | | **$40.00** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/22 | Card Purchase        06/20 Spot A Pizza Place Los Altos CA Card 3849 | $21.75 |
| **Total ATM & Debit Card Withdrawals** | | **$21.75** |

## ATM & DEBIT CARD SUMMARY

Melvin Vaughn  Card 3849

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $21.75 |
| Total Card Deposits & Credits | $40.00 |

ATM & Debit Card Totals

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $21.75 |
| Total Card Deposits & Credits | $40.00 |



## DAILY ENDING BALANCE

| DATE | AMOUNT |
|------|--------|
| 06/01 | $30.00 |
| 06/22 | 8.25 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------|------|
| Checks Paid / Debits | 1 |
| Deposits / Credits | 0 |
| Deposited Items | 0 |
| **Transaction Total** | **1** |

| SERVICE FEE CALCULATION | AMOUNT |
|------|------|
| Service Fee | $0.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 100) | $0.00 |
| **Total Service Fees** | **$0.00** |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A.  Member FDIC



**JPMorgan Chase Bank, N.A. Member FDIC**

MORA HOUSE, LLC (MONTHLY REPORT) MAY 30, 2020-JUNE 30, 2020)

| Date | Bank | Account | Description | Amount | Type | Category | Receipt | Notes |
|------|------|---------|-------------|--------|------|----------|---------|-------|
| 6/30/20 | Chase Bank | TOTAL BUS CHK | Ending Balance | 8.25 | Business | | | |
| 6/22/20 | Chase Bank | TOTAL BUS CHK | Spot A Pizza Place (FEED CLEANING CREWS) | -21.75 | Business | Meals | N | 06/20 |
| 6/1/20 | Chase Bank | TOTAL BUS CHK | ATM Cash Deposit 199 Main Street (LOAN FROM Melvin Vaughn to Balance Acct.) | 40 | Business | Income | N | ST LOS ALTOS CA |