**Lewis R. Landau** (CA Bar No. 143391)
**Attorney-at-Law**
22287 Mulholland Hwy., # 318
Calabasas, California 91302
Voice & Fax: (888) 822-4340
*Email: Lew@Landaunet.com*

Attorney for Platinum Loan Servicing, Inc.

### UNITED STATES BANKRUPTCY COURT

### NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>FRE 355 Investment Group, LLC,<br><br>Debtor. | Case No.: 20-50628 SLJ 11<br><br>Cases Jointly Administered<br><br>Chapter 11<br><br>Case No.: 20-50631 SLJ 11<br><br>R.S. No.: LRL-001 |
| In re<br><br>Mora House, LLC,<br><br>Debtor. | **MOTION FOR RELIEF FROM STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: August 11, 2020<br>Time: 10:00 a.m.<br>Place: Courtroom 9 (Telephonic)<br>US Bankruptcy Court; Judge Johnson<br>280 South First Street<br>San Jose, California 95113 |

Platinum Loan Servicing, Inc. ("PLS") as servicing agent for the beneficiaries of the mortgages on the real property owned by FRE 355 dba FRE 355 Investment Group, LLC ("FRE 355") and Mora House, LLC ("Mora House") (FRE 355 and Mora House are collectively referred to as "Debtors"), herein moves for an order granting PLS relief from stay to foreclose on and exercise its remedies to recover possession of its real property collateral in each Debtors' case pursuant to 11 U.S.C. § 362(d)(1), (d)(2) and (d)(3). PLS's motion is supported by the following memorandum of points and authorities, the Declaration of Scot Fine ("Fine Declaration"), Declaration of Ricci E. Hart ("Hart Declaration") and request for judicial notice ("RFJN") filed concurrently herewith. For all these reasons, the Court should grant the requested relief.

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 2

I. INTRODUCTION AND BACKGROUND FACTS ................................................. 2

II. RELIEF FROM STAY SHOULD BE GRANTED UNDER 11 U.S.C. §§ 362(d)(1), 362(d)(2), 362(d)(3) ............................................................................................. 6

    *A.*     *Relief from Stay for Lack of Adequate Protection.* ...................................... 7

    *B.*     *Relief from Stay for Lack of Equity and No Effective Reorganization in Prospect.* . 9

    *C.*     *Relief from Stay for Failing to File a Reasonably Confirmable Plan in SARE cases.* ............................................................................................................. 10

III. WAIVER OF 14-DAY STAY UNDER FRBP 4001(a)(3) ................................. 11

IV. CONCLUSION ................................................................................................. 11

**TABLE OF AUTHORITIES**

**Cases**

Campora v. HSBC Bank USA, N.A. (In re Campora), 2015 WL 5178823, at *5, 2015 U.S. Dist. LEXIS 117862, at *17 (E.D.N.Y. Sept. 3, 2015)................................................................ 8

F&F, LLC v. U.S. Hung Wui Investment, Inc. (In re F&F, LLC), No. CC 10-1083 HDMK (9th Cir. B.A.P. 2010)................................................................................................................ 9

Great Western Bank v. Sierra Woods Group, 953 F.2d 1174, 1177-78 (9th Cir. 1992)................... 5

Hadley v. Victory Construction Co., Inc. (In re Victory Construction Co., Inc.), 37 B.R. 222, 226 (9th Cir. B.A.P. 1984) ......................................................................................................... 7

In re Deico Elecs., Inc., 139 B.R. 945, 947 (9th Cir. B.A.P. 1992) ............................................... 7

In re Delaney-Morin, 304 B.R. 365 fn. 3 (9th Cir. BAP 2003)...................................................... 7

In re Elmira Litho, Inc., 174 B.R. 892, 902 (Bankr. S.D. N.Y. 1994) ....................................... 7, 8

In re Everton Aloysius Sterling, 543 B.R. 385, 392 (Bankr. S.D. N.Y. 2015 ) ............................... 8

In re Scotia Pacific Co., LLC, 508 F.3d 214, 223 (5th Cir. 2007) .............................................. 10

Rozier v. U.S. Bank. N.A. (In re Rozier), 2013 WL 4428808 (9th Cir. BAP 2013), affirmed, No. 13-60106 (9th Cir. 2015)...................................................................................................... 8

Price v. Del. State Police Fed. Credit Union (In re Price), 370 F.3d 362, 373 (3d Cir. 2004).......... 8

United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375 (1988).. 9

**Statutes**

11 U.S.C. § 101(51)(B) .................................................................................................... 2, 8

11 U.S.C. § 362(d) ...................................................................................................... passim

11 U.S.C. § 362(g) ............................................................................................................ 6

11 U.S.C. § 506(b) .......................................................................................................... 10

California Civil Code § 2924g(c)(1)-(2) ............................................................................ 11

**Rules**

Federal Rule of Bankruptcy Procedure 4001(a)(3) ............................................................. 11

**Treatises**

3 Collier on Bankruptcy ¶ 362.07[5][b] at 362-122 (Alan N. Resnick & Henry J. Sommer eds., 16 ed.).................................................................................................................................. 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### <u>INTRODUCTION AND BACKGROUND FACTS</u>

FRE 355 filed its chapter 11 case on April 13, 2020 and Mora House filed its chapter 11 case on April 15, 2020.  Both petitions disclosed that the Debtors are single asset real estate cases as defined in 11 U.S.C. § 101(51)(B).  *See* ECF # 1 (for each case) at ¶ 7; RFJN Exhibit 1.  As such, the 90-day single asset relief from stay deadline under 11 U.S.C. § 362(d)(3) lapsed on July 12 and 14, 2020.  On July 10, 2020, the Debtors filed their joint chapter 11 plan and disclosure statement set for hearing on September 3, 2020.  *See* RFJN Exhibits 2 and 3.

PLS is the loan servicing agent for the beneficiaries of mortgages on Debtors' real property.[1]  The Lenders loaned FRE 355 the sum of $10,937,000 on March 29, 2018 secured by a first priority deed of trust on the FRE 355 real property and a second priority deed of trust on the Mora House real property.  The total amount due on the Lenders' loan as of July 28, 2020 is $13,264,318.71 with interest accruing at the rate of $4,571.46 per day thereafter and additional costs.  *See* Fine Declaration and Exhibit 2 hereto.  Debtors filed their chapter 11 cases to stay the Lenders' imminent foreclosure sales after multiple postponements from the originally scheduled sale date of July 31, 2019.

The following admissions are taken from the Debtors' Disclosure Statement for Debtors' Plan of Reorganization (July 10, 2020) [ECF # 65] ("Disclosure Statement") attached as RFJN Exhibit 2:

> The Debtors are limited liability companies formed to own, develop and sell individual parcels of real property. Melvin Vaughn is the managing member and sole owner of the Debtors.

---

[1] Those beneficiaries are set forth in the Note Secured by Deed of Trust attached hereto as Exhibit 1: S & R Income Fund I, LP as to an undivided 40.569% interest and S & R Income Fund II, LP as to an undivided 22.401% interest and RDG Lender Services, LLC, as to an undivided 9.600% interest and PLC Investment Group, LLC, a California limited liability company as to an undivided 9.143% interest and Julian Maimin and Stacey Maimin, Trustees, of the Julian Maimin & Stacey Maimin Revocable Trust U/A 12/1/10 as to an undivided 6.857% interest and Judi Beth Kaplan, Trustee of the Judi Beth Kaplan Living Trust dated November 29, 2006 as to an undivided 4.572% interest and William H. Scripps and Kathryn A. Scripps Trustees, of the Scripps Family 1992 Revocable Trust U/A 6-9-92 as to an undivided 4.572% interest and Lauren Dromy, Trustee, of The Israel Maimin 2010 Granter Trust FBO Lauren Dromy U/A 12/1/10 as to an undivided 2.286% interest (hereinafter "Lenders").

The principal asset of FRE 355 is the Mora House, a newly-constructed single family dwelling located at 10718 Mora Hills Drive, Los Altos Hills, California. The Mora House has 6 bedrooms, 8 full bathrooms, 3 half bathrooms, a 4-car garage and is 9,677 square feet. The lot upon which the Mora House sits is approximately 1.24 acres in the Los Altos Hills with jaw dropping views of the San Francisco Bay, East Bay mountains and Silicon Valley, including the adjacent 4,000-acre Rancho San Antonio Open Space Reserve. Construction of the home, which is in a modern style, was completed in approximately early 2018. The Mora House has been actively marketed for sale since April 2018 with a current list price of $14,999,999.

The sole asset of Mora House, LLC is the Mora Lot, an undeveloped parcel lot of approximately 1.47 acres located immediately adjacent to the Mora House. The Mora Lot has been marketed concurrently with the Mora House under a separate listing agreement because ownership of the Mora Lot, and its continued preservation as undeveloped property, preserves the unobstructed views from the new home. The Mora Lot is currently listed for sale at $4,000,000. Access to the Mora House and Mora Lot is by a common driveway.

Both the Mora House and the Mora Lot are encumbered by the secured debt of S&R. S&R holds a first position deed of trust on the Mora House in the scheduled amount of $12,113,909.20 including interest and foreclosure fees. The debt owed to S&R is cross-collateralized by a second deed of trust on the Mora Lot.

The Blanchard Trust holds a senior deed of trust against the Mora Lot alone in the amount of $2,441,801.23.

Disclosure Statement, RFJN Exhibit 2 at internal page 6-7.

In regard to post-petition operations, the Disclosure Statement admits:

Post-Petition Operations: The Mora House has not been rented since the commencement of these cases, and no cash collateral has been generated. The limited costs of operations are utilities which are in Mr. Vaughn's personal name, routine maintenance such as landscaping, pool care, and insurance. Mr. Vaughn continues to advance these limited costs each month along with quarterly U.S. Trustee fees as an unsecured loan to the Debtors, as was his custom and practice pre-petition.

Disclosure Statement, RFJN Exhibit 2 at internal pages 8-9.

The Debtors' chapter 11 plan [ECF # 64; RFJN Exhibit 2] ("Plan") is a plan of liquidation.

Per the Disclosure Statement:

**A. Plan Overview.**
The Debtors will advertise, market and close sales of the Mora House and Mora Lot within 6 months after the Effective Date of the Plan, the Initial Marketing Period, to pay secured claimants of both properties in full and to pay a projected dividend of 9.15% to unsecured claimants. If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then (1) S&R shall release its

-3-

lien against the Mora Lot, and (2) the Debtors shall have the Extended Marketing Period of six additional months to close sales of the Mora House and Mora Lot.

Disclosure Statement, RFJN Exhibit 2 at internal pages 1-2.

The feasibility of the Debtors' Plan is described as follows:

> The Bankruptcy Code requires as a condition to the Plan's confirmation that the Bankruptcy Court find that liquidation of the Debtors or the need for further reorganization is not likely to follow after confirmation. In order to prove feasibility, the Debtors are required therefore to set forth their Effective Date and other priority payments and show that they have adequate cash to pay them when due. This involves a two-step analysis: first, the Debtors will set forth their analysis of the proceeds from sale of the Mora House and Mora Lot.
>
> As set forth in Exhibit "C" hereto, the Debtors assume that the Mora House and Mora Lot will sell for list prices, $14,999,000 and $4,000,000, respectively. The combined tax basis for the two properties is $17,433,065. Assuming sale expenses of 7% ($1,225,000), the Debtors would generate a loss of $1,158,065 on the sale, meaning no Federal or State capital gains taxes would be payable. $16,275,000 would be available to pay claims after costs of sale.
>
> Payment from escrow of the secured claims set forth in Classes 1A-2C listed above will leave $430,606 in net proceeds for distribution to creditors.

Disclosure Statement, RFJN Exhibit 2 at internal pages 9-10.

The Debtor's Disclosure Statement confirms that the Debtors are operating at a loss and have no funds from operations to pay administrative expenses other than loan proceeds from Mr. Vaughn. Those loans will increase the administrative burden in the cases, as does the Debtors' general counsel fees. In fact, Debtors' most recent Monthly Operating Reports for June 2020 reflect $274,676 in unpaid post-petition liabilities. *See* RFJN Exhibit 4.

The critical foundation for Debtors' liquidating Plan is that the Debtors sell their real properties for at least $19 million, which will yield $430,606 to pay general unsecured claims. The Debtors' Plan is utterly infeasible for at least the following reasons:

1. Per the Disclosure Statement, "The Mora House has been actively marketed for sale since April 2018 with a current list price of $14,999,999." The $15 million listing price has thus been market tested for over two (2) years and has failed to generate a closed sale. There is no credible reason to believe that an additional year of marketing (after plan confirmation) will result in a sale at the listing price after market testing confirms no sale at the $15 million listing price.

2.      PLS has obtained recent appraisals reflecting that the current value of the Mora House is only $10,500,000 and the Mora Lot is only $2.75 million.  At $13,250,000 combined value, the Debtors cannot close a sale.  *See* Hart Declaration.  The $13,250,000 combined value of Debtors' real properties confirms that Debtors have no equity in the real properties and the properties are not necessary to an effective reorganization in prospect.  Moreover, PLS lacks adequate protection due to continuing accruals on the $2,441,803 first mortgage owed Richard and Esther Blanchard Trustees of the Richard and Esther Blanchard 1990 Trust dated 10/1/1990 ("Blanchard") on the vacant lot and Debtors' continuing failure to pay real estate taxes which continues to erode PLS's collateral position.  The Blanchard proof of claim and County of Santa Clara claims for taxes are attached as RFJN Exhibits 5, 6 and 7.

3.      Debtors' distribution analysis that results in $430,606 to pay unsecured creditors on a $19 million sale is based on PLS receiving only $13 million at closing.  RFJN Exhibit 2 at internal Exhibit C.  However, the amount due PLS as of July 28, 2020 is $13,264,318.71 and increases by at least $136,000 monthly ($816,000 every six months) plus costs.  *See* Exhibit 2 hereto.

4.      Finally, Debtors' Plan relies upon the accrual of negative amortization of interest during the Plan term as Debtors do not propose to make any interim plan distributions during the Plan term and prior to sale closing.  Negative amortization plans, while not *per se* prohibited, are subject to stringent confirmation standards under <u>Great Western Bank v. Sierra Woods Group</u>, 953 F.2d 1174, 1177-78 (9th Cir. 1992) to assure fair and equitable treatment under the plan.  Debtors' Plan contains none of the fair and equitable safeguards required to confirm a negative amortization plan and shifts the risk of loss entirely to the Lenders for the success of Debtors' liquidating Plan.  Since the Debtors value their real property excessively and unreasonably high and fail to account for all accruing liabilities in the estate, the Plan is patently infeasible.

For all these reasons, relief from stay must be granted.

**II.**

**RELIEF FROM STAY SHOULD BE GRANTED**

**UNDER 11 U.S.C. §§ 362(d)(1), 362(d)(2), 362(d)(3)**

PLS moves for relief from stay to foreclose upon and recover its real property collateral pursuant to 11 U.S.C. §§ 362(d)(1), 362(d)(2) and 362(d)(3). These Bankruptcy Code sections state the following:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay —
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if —
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization;
> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later —
> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
> (B) the debtor has commenced monthly payments that —
> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate;

11 U.S.C. § 362(d)(1), (2), (3) (in relevant part).

In addition, 11 U.S.C. § 362(g) addresses the burden of proof as follows:

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
> (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

Here, PLS has carried its burden of proving that Debtors have no equity in their property. The combined value of both Debtors' properties is $13,250,000 subject to the senior Blanchard

lien totaling $2,441,803 and County of Santa Clara taxes of $342,136. With PLS's lien totaling $13,264,318.71, Debtors have no equity in their real properties. Consequently, the Debtors have the burden of proof on all issues in opposition to relief from stay.

> A. *Relief from Stay for Lack of Adequate Protection.*

"[U]ndersecured creditors are entitled to adequate protection to compensate them for the depreciation in their collateral. Adequate protection prevents creditors from becoming more undersecured because of the delay that bankruptcy works on the exercise of their state law remedies." In re Deico Elecs., Inc., 139 B.R. 945, 947 (9th Cir. B.A.P. 1992) (*citing* United Savings Assoc. v. Timbers of Inwood Forest, 484 U.S. 365 (1988)); *see also* 11 U.S.C. § 361(1) ("When adequate protection is required ..., such adequate protection may be provided by ... requiring the trustee to make a cash payment or periodic cash payments to such entity, *to the extent that the stay ... results in a decrease in the value of such entity's interest in such property....*") (emphasis added). Lack of adequate protection of an interest in property is a basis of cause for relief from the automatic stay. See 11 U.S.C. § 362(d)(1).

Here, PLS lacks adequate protection in at least two (2) ways. First, Debtors have no cash flow and are not making any payments on the Blanchard senior lien or real estate taxes. The additional accruals on these senior liens increases PLS's undersecured status resulting in a lack of adequate protection. A secured creditor lacks adequate protection if there is even a ***threat of a decline*** in the value of its collateral. An example of threatened decline in value, without an actual decline, is the failure to maintain property or insurance. *See*, In re Delaney-Morin, 304 B.R. 365 fn. 3 (9th Cir. BAP 2003), *citing*, In re Elmira Litho, Inc., 174 B.R. 892, 902 (Bankr. S.D. N.Y. 1994) *and* Hadley v. Victory Construction Co., Inc. (In re Victory Construction Co., Inc.), 37 B.R. 222, 226 (9th Cir. B.A.P. 1984) (stay was granted, conditioned on the debtor keeping current fire insurance). Here, PLS is threatened with a further decline in the value of its collateral because payments are not being paid on senior secured claims and Debtors have no cash available for property maintenance other than as Mr. Vaughn may, or may not, advance as a loan.

Second, a "debtor's failure to make monthly payments to a secured creditor constitutes "cause" for granting relief from the automatic stay." *See* Rozier v. U.S. Bank. N.A. (In re Rozier),

2013 WL 4428808 (9th Cir. BAP 2013), *affirmed*, No. 13-60106 (9th Cir. 2015), *citing*, Price v. Del. State Police Fed. Credit Union (In re Price), 370 F.3d 362, 373 (3d Cir. 2004)("A persistent failure to make monthly payments under loan documents can constitute cause for granting relief from the automatic stay."). "[T]he failure to make mortgage payments constitutes 'cause' for relief from the automatic stay and is one of the best examples of a 'lack of adequate protection' under Section 362(d)(1) of the Bankruptcy Code." *See* In re Everton Aloysius Sterling, 543 B.R. 385, 392 (Bankr. S.D. N.Y. 2015 ), *citing*, In re Schuessler, 386 B.R. 458, 480 (Bankr. S.D. N.Y. 2008); Campora v. HSBC Bank USA, N.A. (In re Campora), 2015 WL 5178823, at *5, 2015 U.S. Dist. LEXIS 117862, at *17 (E.D.N.Y. Sept. 3, 2015) ("A debtor's failure to make post-petition mortgage payments constitutes sufficient cause to modify an automatic stay."); In re Elmira Litho, Inc., 174 B.R. 892, 903 (Bankr. S.D. N.Y. 1994) ("Without quantifying the decline in value, the creditor can often establish its prima facie case by demonstrating that the debtor has completely failed, or substantially failed, to make post-petition payments.").

Here, Debtors have no cash flow and are not making any payments to Blanchard on the senior lien, to accruing real estate taxes or to PLS. Debtors are single asset real estate cases as defined in 11 U.S.C. § 101(51)(B) and the 90-day single asset relief from stay deadline under 11 U.S.C. § 362(d)(3) lapsed on July 12 and 14, 2020. Pursuant to § 362(d)(3)(B)(ii), Debtors would have had to start making payment to PLS at the non-default contract rate of interest to avoid relief from stay, had they not filed their Plan on July 10, 2020. But their Plan is utterly infeasible and does not meet the standard of § 362(d)(3)(B)(i) requiring that the Plan have a "reasonable possibility of being confirmed within a reasonable time." Debtors' Plan is based on the negative amortization of interest and the properties selling for $19 million after another 12 to 18 months of marketing. Since PLS's appraisals confirm a collectively value of only $13,250,000, the Plan is infeasible. Moreover, the Debtors' Plan assumes that PLS's payoff will be only $13,000,000 at the time of sale and PLS's claim already exceeds that amount, plus is accruing interest at the rate of over $800,000 every six-month period.

The failure to make payments and erosion of collateral value constitutes cause for relief from stay. The motion should be granted.

-8-

1    B.    *Relief from Stay for Lack of Equity and No Effective Reorganization in Prospect.*

2    PLS also seeks relief based on Debtors' lack of equity in their real properties and lack of

3    prospect of an effective reorganization in prospect.  Once PLS establishes that the Debtors have no

4    equity in the properties, "it is the burden of the debtor to establish that the collateral at issue is

5    necessary to an effective reorganization."  United Sav. Ass'n of Tex. v. Timbers of Inwood Forest

6    Assocs., Ltd., 484 U.S. 365, 375 (1988).

7    PLS has carried its burden of proving that Debtors lack equity in the Mora House and

8    Mora Lot.  Thus, the burden shifts to Debtors to prove that the collateral at issue is necessary to an

9    effective reorganization.  On this issue, the Debtors' Plan is facially deficient.  The crucial

10   question is whether Debtors can prove "a reasonable possibility of a successful reorganization

11   within a reasonable time."  United Sav. Ass'n v. Timbers of Inwood Forest Assoc. Ltd., 484 U.S.

12   365, 376 (1988).  The BAP summarized the standards on this element for relief from stay and

13   affirmed a Bankruptcy Court's early grant of relief from stay for failing to prove an effective

14   reorganization is in prospect.  *See* F&F, LLC v. U.S. Hung Wui Investment, Inc. (In re F&F,

15   LLC), No. CC 10-1083 HDMK (9th Cir. B.A.P. 2010).  The BAP identified the legal standard as

16   follows:

17          "Courts usually require the debtor to do more than manifest unsubstantiated
            hopes for a successful reorganization." In re Sun Valley Newspapers, Inc., 171
18          B.R. at 75; *see also* In re Dev. Corp., 36 B.R. at 1006. A debtor must do more than
            merely assert that it can reorganize if only given the opportunity to do so. *See, e.g.*,
19          Am. State Bank v. Grand Sports, Inc. (In re Grand Sports, Inc.), 86 B.R. 971, 975
            (Bankr. N.D. Ill. 1988). Thus, while the evidence demonstrated that the Debtor may
20          have taken some preliminary steps toward obtaining the funding necessary to
            formulate a feasible plan of reorganization, any negotiations were still in a
21          speculative stage. There was no term sheet, agreement, or other documentation
            (even in the form of emails or letters) that demonstrated there were investors or
22          loan commitments in place. *See* Pegasus Agency, Inc. v. Grammatikakis (In re
            Pegasus Agency, Inc.), 101 F.3d 882, 887 (2d Cir. 1996) (an effective
23          reorganization cannot be based on speculation).

24

25   Id., (affirming relief from stay on motion brought 60 days after chapter 11 case filed).

26   Here, Debtors' Plan egregiously overvalues the properties by almost $6 million and

27   understates the amount required to payoff PLS at any point during the 12 to 18-month term of the

28   Plan.  The Plan is utterly infeasible and does not constitute a reasonable possibility of a successful

1  reorganization within a reasonable time.  For all these reasons, relief from stay should be granted

2  under § 362(d)(2).

3      C.      *Relief from Stay for Failing to File a Reasonably Confirmable Plan in SARE cases.*

4      PLS also seeks relief from stay under 11 U.S.C. § 362(d)(3).  Debtors' cases are single

5  asset real estate cases ("SARE") as admitted in Debtors' voluntary petitions.  *See* ECF # 1 (for

6  each case) at ¶ 7.  Under § 362(d)(3), Debtors have not commenced monthly payments and were

7  therefore required to file a plan "that has a reasonable possibility of being confirmed within a

8  reasonable time" to avoid relief from stay.  Debtors have not done so.

9      The purpose of section 362(d)(3) is "to address perceived abuses in single asset real estate

10  cases, in which debtors have attempted to delay mortgage foreclosures even when there is little

11  chance that they can reorganize successfully."  3 <u>Collier on Bankruptcy</u> ¶ 362.07[5][b] at 362-122

12  (Alan N. Resnick & Henry J. Sommer eds., 16 ed.). Section 362(d)(3) shortens such cases by

13  requiring the court to grant relief from the stay if a reasonable plan is not filed within the time

14  specified or payments are not commenced.  <u>Id.</u>  Section 362(d)(3) was added to the Bankruptcy

15  Code to target abusive filings by Chapter 11 debtors with little or no cash flow and no means to

16  fund a reorganization or to make adequate protection payments.  *See* <u>In re Scotia Pacific Co., LLC</u>,

17  508 F.3d 214, 223 (5th Cir. 2007).  Debtors' cases are precisely the type of abusive filings that §

18  362(d)(3) was targeted to address.  Debtors have no cash flow and no means to fund a

19  reorganization or to make adequate protection payments.

20      Debtors' filed their Disclosure Statement and Plan as a sham delay tactic to avoid relief

21  from stay under § 362(d)(3).  The Plan is patently infeasible.  The Plan assumes negative

22  amortization on PLS's claim and an ultimate payoff of $13,000,000 in 12 to 18 months after

23  confirmation, but PLS's claim already exceeds that amount and accrues interest at over $800,000

24  every six months.  Debtors' Plan assumes that PLS is over secured, thus allowing for post-petition

25  accrual of all interest, fees and costs.  *See* 11 U.S.C. § 506(b).

26      Moreover, the Plan assumes a sale at $19 million when the properties are collectively

27  valued at only $13,250,000.  The Plan has no reasonable possibility of being confirmed within a

28  reasonable time and relief from stay should be granted under § 362(d)(3) as well.

1    For all these reasons the motion should be granted.

2                                    **III.**

3              **WAIVER OF 14-DAY STAY UNDER FRBP 4001(a)(3)**

4    Pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3)

5            An order granting a motion for relief from an automatic stay made
             in accordance with Rule 4001(a)(1) is stayed until the expiration of
6            14 days after the entry of the order, unless the court orders
             otherwise.
7

8    FRBP 4001(a)(3).

9        PLS requests that the Court waive the 14-day stay of FRBP 4001(a)(3) on the grounds that

10   PLS must republish its Notice of Sale in order to reset its foreclosure sale dates pursuant to

11   California Civil Code § 2924g(c)(1)-(2) due to postponements exceeding 365 days after the

12   original July 31, 2019 date set for the trustee sale.  As the republication period is 20-days and PLS

13   otherwise lacks adequate protection, there is good cause to waive the 14-day stay period so that

14   PLS can promptly republish its Notice of Sale.  Debtors effectively receive more time than the

15   benefit of the 14-day stay period due to the need to republish the sale for at least 20-days.

16                                   **IV.**

17                              **CONCLUSION**

18       Based on the foregoing, PLS requests that the Court grant the motion (1) authorizing

19   movant and its principal noteholder beneficiaries to exercise their rights and remedies under

20   applicable law and the loan documents with respect to 10718 Mora Hills Drive, Los Altos Hills,

21   California and the undeveloped parcel lot of approximately 1.47 acres assigned APN # 331-41-

22   067; (2) to foreclose upon and recover possession of the foregoing; (3) that the Court waive the

23   14-day stay pursuant to FRBP 4001(a)(3); and (4) for such other and further relief as the Court

24   deems just and proper.

25   Dated:  July 28, 2020                              **Lewis R. Landau**
                                                        **Attorney-at-Law**
26

27                                                      By:_/s/ Lewis R. Landau_
                                                        Lewis R. Landau
28                                                      Attorneys for Movant

-11-

# DECLARATION OF SCOT FINE

I, Scot Fine, do hereby declare:

      1.     I am the Chief Executive Officer of Platinum Loan Servicing, Inc. ("PLS") and have personal knowledge of the facts set forth herein. PLS is the contractual loan servicer for S & R Income Fund I, LP as to an undivided 40.569% interest and S & R Income Fund II, LP as to an undivided 22.401% interest and RDG Lender Services, LLC, as to an undivided 9.600% interest and PLC Investment Group, LLC, a California limited liability company as to an undivided 9.143% interest and Julian Maimin and Stacey Maimin, Trustees, of the Julian Maimin & Stacey Maimin Revocable Trust U/A 12/1/10 as to an undivided 6.857% interest and Judi Beth Kaplan, Trustee of the Judi Beth Kaplan Living Trust dated November 29, 2006 as to an undivided 4.572% interest and William H. Scripps and Kathryn A. Scripps Trustees, of the Scripps Family 1992 Revocable Trust U/A 6-9-92 as to an undivided 4.572% interest and Lauren Dromy, Trustee, of The Israel Maimin 2010 Granter Trust FBO Lauren Dromy U/A 12/1/10 as to an undivided 2.286% interest (hereinafter "Lenders") under the Note Secured by Deed of Trust executed by FRE 355, LLC, a true and correct copy of which is attached hereto as Exhibit 1 and incorporated herein by reference ("Note"). The Note is secured by a first priority deed of trust on the FRE 355 real property and a second priority deed of trust on the Mora House real property.

      2.     The total amount due on the Lenders' loan as of July 28, 2020 is $13,264,318.71 with interest accruing at the rate of $4,571.30 per day thereafter and additional costs. Attached hereto as Exhibit 2 and incorporated herein by reference is a true, correct, and accurate Beneficiary Demand for Payoff and borrower statement of account reflecting the amounts due to satisfy the Note as of July 28, 2020. Exhibit 2 was prepared in the ordinary course of PLS's loan servicing business based on PLS's books and records for servicing the Note.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 28th day of July 2020 at Los Angeles, California.

_____
Scot Fine

Case: 20-50628   Doc# 75   Filed: 07/28/20   Entered: 07/28/20 16:42:14   Page 14 of 23

# EXHIBIT 1

# NOTE SECURED BY A DEED OF TRUST

Loan Number: **10536**     Date: **03/29/2018**

Calabasas, California

**Marquee Funding Group, Inc**
**BRE#01870113 & NMLS #267442**
**Dawn Bailey-ButtarBRE: #01940291/**
**NMLS: #1166016**
**10718 Mora Drive Los Altos CA 94024**
Property Address

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$10,937,000.00** (this amount will be called "principal"), plus interest, to the order of **S & R Income Fund I, LP a Delaware Limited Partnership as to an undivided 40.569% interest and S & R Income Fund II, LP a Delaware Limited Partnership as to an undivided 22.401% interest and RDG Lender Services, LLC, a Delaware limited liability company as to an undivided 9.600% interest and PLC Investment Group, LLC, a California limited liability company as to an undivided 9.143% interest and Julian Maimin and Stacey Maimin, Trustees, of the Julian Maimin & Stacey Maimin Revocable Trust U/A 12/1/10 as to an undivided 6.857% interest and Judi Beth Kaplan, Trustee of the Judi Beth Kaplan Living Trust dated November 29, 2006 as to an undivided 4.572% interest and William H. Scripps and Kathryn A. Scripps Trustees, of the Scripps Family 1992 Revocable Trust U/A 6-9-92 as to an undivided 4.572% interest and Lauren Dromy, Trustee, of The Israel Maimin 2010 Grantor Trust FBO Lauren Dromy U/A 12/1/10 as to an undivided 2.286% interest** (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

## 2. INTEREST

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on **04/11/2018**, and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

## 3. PAYMENTS

My payments are  ☑ Interest Only     ☐ Fully Amortized     ☐ Other
I will make my payments each month as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 5 | Monthly beginning December 1, 2018 | 10.00% | $91,141.67 |
| 1 | May 1, 2019 | 10.00% | $11,028,141.67 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on **05/01/2019** (the Due Date) I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.

I will make my payments payable to **Platinum Loan Servicing, Inc., 24025 Park Sorrento, Suite #150, Calabasas CA 91302**, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge For Overdue Payments.** If I do not pay the full amount of each monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.000%** of my overdue payment or U.S. **$0.00**, whichever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than **10** days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

**(B) Default.** If I do not pay the full amount of each monthly payment due under this Note by the date stated in paragraph 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Case: 20-50628     Doc# 75     Filed: 07/28/20     Entered: 07/28/20 16:42:14     Page 16 of 23     **014**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

## 5. BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows: **If this loan is paid off or refinanced during the first Three (3) month(s) of the term, a prepayment penalty equal to the difference between Three (3) month(s) of interest and the date of prepayment shall be due tendered.**

## 6. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 7. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

## 8. THIS NOTE IS SECURED BY A DEED OF TRUST

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

## 9. DEFAULT RATE

In the event of a default under the terms of this note, including but not limited to; (a) non-payment of any installment of principal or interest within ten (10) days of its designated due date; (b) failure to pay insurance premiums or property taxes when they become due; (c) transfer of title; (d) or that this note is not paid in full on or before due date, then any unpaid balance at the time of default shall bear interest at the rate of Five percent (5%) above the herein stated note rate, from the time of default, until this note has been paid in full, or until the specific default has been cured. The Default Rate will automatically apply to all interest accrued thereafter without demand by the Note Lender.

## 10. WAIVER OF STATUTORY REGULATIONS

By initialing below, Borrower waives any right under California Civil Code 2954.10 or otherwise to prepay this Note, in whole or in part, without a prepayment penalty as described in Paragraph 5. Borrower acknowledges that prepayment of this Note may result in Lender's incurring additional losses, costs, expenses, and **liabilities**, including, but not limited to, lost revenue and lost profits. Borrower therefore agrees to pay the prepayment penalty as described in Paragraph 5, if any principal amount is prepaid, whether voluntarily or by reason of acceleration of the Maturity Date on default (including, but not limited to, acceleration on any transfer or conveyance of any right, title, or interest in the Mortgaged Property giving Lender the right to accelerate the maturity of this Note as provided in the Deed of Trust).

Applied Business Software, Inc. (800) 833-3343
Note Secured by Deed of Trust

**11. USE OF PROCEEDS**

Loan Proceeds are intended to be used primarily for business and commercial purpose and are not intended to be used for personal, family, or household purpose or in any manner which may result in the loan Transaction not being exempt from Truth in Lending Act (TILA), 15 U.S.C.A 1602 (h) or any similar or applicable consumer lending laws.

**FRE 355, LLC, a Delaware Limited Liability Company Doing business in California as FRE 355 Investment Group, LLC, a Delaware Limited Liability Company by:**

_____  3/30/18     _____  3/30/18

Borrower  **Melvin Vaughn, Managing Member**  Date     Borrower  **Melvin Vaughn, Guarantor**  Date

---

# ASSIGNMENT OF NOTE
## SECURED BY A DEED OF TRUST

Date: _____

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:


all beneficial interest under the within Note, without recourse, and Deed of Trust securing same

_____     _____

_____     _____

---

**DO NOT DESTROY THIS NOTE:** When paid it must be surrendered to the Trustee, together with the Deed of Trust securing same for cancellation, before reconveyance will be made.

Case: 20-50628   Doc# 75   Filed: 07/28/20   Entered: 07/28/20 16:42:14   Page 18 of 23

016

# EXHIBIT 2

# Platinum Loan Servicing Inc.
24025 Park Sorrento Suite 150
Calabasas, CA 91302
(818) 222-5222

7/28/2020

FRE 355 Investment Group, LLC by: Melvin Vaughn, Managing Member
10700 Mora Drive
Los Altos, CA 94024
Account: 10536

## BENEFICIARY'S DEMAND FOR PAYOFF

Dear FRE 355 Investment Group, LLC by: Melvin Vaughn, Managing Member

You are authorized to use the following amounts to payoff the above-mentioned loan. All necessary legal documents will be forwarded to the trustee for Full Reconveyance upon receipt of payment in full.

| Payoff Date | 7/28/2020 |
|---|---|
| Maturity Date | 5/1/2019 |
| Next Payment Due | 9/1/2019 |
| Interest Rate | 15.000% |
| Interest Paid-To Date | 8/1/2019 |
| Principal Balance | $10,937,000.00 |
| Unpaid Default Interest from 2/1/20 to 8/1/20 @ $45,584.75 per month | $319,093.25 |
| Accrued Interest From 8/1/2019 To 7/28/2020 | $1,658,521.58 |
| Unpaid Late Charges | $86,587.38 |
| Accrued Late Charges | $150,399.04 |
| Unpaid Charges (See itemization attached) | $112,672.46 |
| Prepayment Penalty | $0.00 |
| Other Fees (See itemization attached) | $45.00 |
| Trust Balance | $0.00 |
| **Payoff Amount** | **$13,264,318.71** |

Please add **$4,571.30** for each additional day past **7/28/2020**.

We reserve the right to amend this demand should any changes occur that would increase the total amount for payoff. <u>Please note that this demand expires on 7/28/2020</u>, at which time you are instructed to contact this office for additional instructions (DEMAND FORWARDING FEES ARE DUE EVEN UPON CANCELLATION OF YOUR ESCROW).

Make disbursement check payable to: **Platinum Loan Servicing Inc.**

Sincerely,

Karen Larson
Platinum Loan Servicing
818 222-5222
klarson@platinumloanservicing.com

Approved By Scot Fine CEO

## ITEMIZATION OF UNPAID CHARGES

| Date | Description | Interest Rate | Unpaid Balance | Accrued Interest | Total Due |
|------|-------------|---------------|----------------|------------------|-----------|
| 02/14/2019 | NSF Payment Charge | 0.000% | $25.00 | $0.00 | $25.00 |
| 04/15/2019 | Advanced Trustee Fees | 0.000% | $17,538.34 | $0.00 | $17,538.34 |
| 04/15/2019 | Advanced Trustee Fees | 0.000% | $5,062.91 | $0.00 | $5,062.91 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $426.87 | $0.00 | $426.87 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $1,790.35 | $0.00 | $1,790.35 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $1,705.12 | $0.00 | $1,705.12 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $4,177.69 | $0.00 | $4,177.69 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $14,471.84 | $0.00 | $14,471.84 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $852.48 | $0.00 | $852.48 |
| 04/10/2020 | defaulted late fees | 0.000% | $18,228.32 | $0.00 | $18,228.32 |
| 07/06/2020 | Advanced Appraisal Fees | 15.000% | $10,500.00 | $100.63 | $10,600.63 |
| 07/08/2020 | Advanced Lawyer Fees (Landau) | 15.000% | $1,564.00 | $13.69 | $1,577.69 |
| 07/15/2020 | Lawyer Fees Landau | 0.000% | $6,000.00 | $0.00 | $6,000.00 |
| 07/15/2020 | SBS Trust Deed Fees | 0.000% | $8,028.69 | $0.00 | $8,028.69 |
| 07/16/2020 | Advanced Lawyer Fees | 15.000% | $22,067.00 | $119.53 | $22,186.53 |
| | | | | Total | $112,672.46 |

## ITEMIZATION OF OTHER FEES

| Description | Amount |
|-------------|--------|
| Demand Fee | $0.00 |
| Reconveyance Fee | $45.00 |
| Recording Fee | $0.00 |
| Forwarding Fee | $0.00 |
| Total | $45.00 |

# BORROWER STATEMENT OF ACCOUNT



| ACCOUNT NO. | 10536 |
|---|---|
| STATEMENT DATE | 7/28/2020 |

| STATEMENT SUMMARY | |
|---|---|
| Statement Period | All Dates |
| Principal Balance | $10,937,000.00 |
| Reserve Balance | $0.00 |
| Impound Balance | $0.00 |
| Unpaid Late Charges | $86,587.38 |
| Unpaid Charges | $112,658.23 |
| Unpaid Interest | $319,093.25 |
| Regular Payment | $136,726.42 |
| Note Rate | 15.000% |
| Interest Paid in 2020 | $229,014.47 |
| Property: 10718 Mora Drive Los Altos CA 94024 | |

**BORROWER**

FRE 355 Investment Group, LLC by: Melvin Vaughn,
Managing Member
10700 Mora Drive
Los Altos CA 94024

Please advise us immediately of any discrepancies in the transactions or investment activity on your statement of account or if you contemplate changing your address. When making inquiries by telephone or in writing please give your account number. We urge you to keep this statement with your investment records.

## ACCOUNT ACTIVITY

| Transaction Date | Pmt Due Date | Reference | Description | Transaction Amount | Interest | Principal | Late Chgs | Other | Trust | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Balance Forward | | | | | | | $0.00 |
| 4/11/2018 | | | Funds Advanced | ($10,937,000.00) | $0.00 | $10,937,000.00 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 4/13/2018 | | 10182 | Payment - Other | $60,761.11 | $60,761.11 | $0.00 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 4/13/2018 | 6/1/2018 | 10182 | Payment - Thank You | $91,141.67 | $91,141.67 | $0.00 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 4/13/2018 | 7/1/2018 | 10182 | Payment - Thank You | $91,141.67 | $91,141.67 | $0.00 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 4/13/2018 | 8/1/2018 | 10182 | Payment - Thank You | $91,141.67 | $91,141.67 | $0.00 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 4/13/2018 | 9/1/2018 | 10182 | Payment - Thank You | $91,141.67 | $91,141.67 | $0.00 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 4/13/2018 | 10/1/2018 | 10182 | Payment - Thank You | $91,141.67 | $91,141.67 | $0.00 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 4/13/2018 | 11/1/2018 | 10182 | Payment - Thank You | $91,141.67 | $91,141.67 | $0.00 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 12/11/2018 | | | MOD | ($1,000.00) | $0.00 | $0.00 | $0.00 | ($1,000.00) | | $10,937,000.00 |
| 12/11/2018 | | | Fed Ex Fee | ($50.00) | $0.00 | $0.00 | $0.00 | ($50.00) | | $10,937,000.00 |
| 12/14/2018 | 12/1/2018 | WIRE | Payment - Thank You | $92,191.67 | $91,141.67 | $0.00 | $0.00 | $1,050.00 | | $10,937,000.00 |
| 12/14/2018 | | WIRE | Late Charge | ($9,114.17) | $0.00 | $0.00 | ($9,114.17) | $0.00 | | $10,937,000.00 |
| 12/14/2018 | 1/1/2019 | WIRE | Payment - Thank You | $91,186.67 | $91,141.67 | $0.00 | $0.00 | $45.00 | | $10,937,000.00 |
| 2/11/2019 | 2/1/2019 | 115 | Payment - Thank You | $91,141.67 | $91,141.67 | $0.00 | $0.00 | $0.00 | | $10,937,000.00 |
| 2/14/2019 | | 115 | NSF | ($91,141.67) | ($91,141.67) | $0.00 | $0.00 | $0.00 | | $10,937,000.00 |
| 2/14/2019 | | | NSF Payment Charge | ($25.00) | $0.00 | $0.00 | $0.00 | ($25.00) | | $10,937,000.00 |
| 4/15/2019 | | | Advanced Trustee Fees | ($17,538.34) | $0.00 | $0.00 | $0.00 | ($17,538.34) | | $10,937,000.00 |
| 4/15/2019 | | | Advanced Trustee Fees | ($5,062.91) | $0.00 | $0.00 | $0.00 | ($5,062.91) | | $10,937,000.00 |
| 7/31/2019 | | CASHIERS | Payment - Other | $5,000.00 | $2,500.00 | $0.00 | $0.00 | $2,500.00 | | $10,937,000.00 |
| 8/7/2019 | 2/1/2019 | WIRE | Payment - Thank You | $91,141.67 | $136,712.50 | ($45,570.83) | $0.00 | $0.00 | | $10,982,570.83 |
| 8/7/2019 | | WIRE | Late Charge | ($13,671.25) | $0.00 | $0.00 | ($13,671.25) | $0.00 | | $10,982,570.83 |
| 8/7/2019 | | | Funds Advanced | $45,570.83 | $0.00 | $45,570.83 | $0.00 | $0.00 | | $10,937,000.00 |
| 9/4/2019 | | WIRE | Payment - Other | $90,000.00 | $0.00 | $0.00 | $0.00 | $90,000.00 | | $10,937,000.00 |
| 9/5/2019 | 3/1/2019 | WIRE | Payment - Thank You | $0.00 | $91,141.67 | $0.00 | $0.00 | $0.00 | ($91,141.67) | $10,937,000.00 |
| 9/5/2019 | | WIRE | Late Charge | ($9,114.17) | $0.00 | $0.00 | ($9,114.17) | $0.00 | | $10,937,000.00 |
| 9/5/2019 | | WIRE | Payment - Other | $1,141.67 | $0.00 | $0.00 | $0.00 | $0.00 | $1,141.67 | $10,937,000.00 |
| 10/2/2019 | | WIRE | Payment - Other | $50,000.00 | $0.00 | $0.00 | $0.00 | $50,000.00 | | $10,937,000.00 |
| 10/2/2019 | | WIRE | Payment - Other | $10,000.00 | $0.00 | $0.00 | $0.00 | $10,000.00 | | $10,937,000.00 |
| 10/4/2019 | 4/1/2019 | WIRE | Payment - Thank You | $31,141.67 | $91,521.42 | ($379.75) | $0.00 | $0.00 | ($60,000.00) | $10,937,379.75 |
| 10/4/2019 | | WIRE | Late Charge | ($9,114.17) | $0.00 | $0.00 | ($9,114.17) | $0.00 | | $10,937,379.75 |
| 11/4/2019 | 5/1/2019 | WIRE | Payment - Thank You | $91,176.67 | $91,524.59 | ($347.92) | $0.00 | $0.00 | | $10,937,727.67 |
| 11/4/2019 | | WIRE | Late Charge | ($9,114.17) | $0.00 | $0.00 | ($9,114.17) | $0.00 | | $10,937,727.67 |
| 12/5/2019 | 6/1/2019 | WIRE | Payment - Thank You | $91,141.67 | $91,527.49 | ($385.82) | $0.00 | $0.00 | | $10,938,113.49 |
| 12/5/2019 | | WIRE | Late Charge | ($9,114.17) | $0.00 | $0.00 | ($9,114.17) | $0.00 | | $10,938,113.49 |
| 1/14/2020 | 7/1/2019 | WIRE | Payment - Thank You | $91,141.67 | $91,711.30 | ($569.63) | $0.00 | $0.00 | | $10,938,683.12 |
| 1/14/2020 | | WIRE | Late Charge | ($13,672.64) | $0.00 | $0.00 | ($13,672.64) | $0.00 | | $10,938,683.12 |
| 2/14/2020 | | | Advanced Trustee Fees | ($426.87) | $0.00 | $0.00 | $0.00 | ($426.87) | | $10,938,683.12 |
| 2/14/2020 | | | Advanced Trustee Fees | ($1,790.35) | $0.00 | $0.00 | $0.00 | ($1,790.35) | | $10,938,683.12 |

Powered by The Mortgage Office™

## ACCOUNT ACTIVITY

| Transaction Date | Pmt Due Date | Reference | Description | Transaction Amount | Interest | Principal | Late Chgs | Other | Trust | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 2/14/2020 | | | Advanced Trustee Fees | ($1,705.12) | $0.00 | $0.00 | $0.00 | ($1,705.12) | $0.00 | $10,938,683.12 |
| 2/14/2020 | | | Advanced Trustee Fees | ($4,177.69) | $0.00 | $0.00 | $0.00 | ($4,177.69) | $0.00 | $10,938,683.12 |
| 2/14/2020 | | | Advanced Trustee Fees | ($14,471.84) | $0.00 | $0.00 | $0.00 | ($14,471.84) | $0.00 | $10,938,683.12 |
| 2/14/2020 | | | Advanced Trustee Fees | ($852.48) | $0.00 | $0.00 | $0.00 | ($852.48) | $0.00 | $10,938,683.12 |
| 2/27/2020 | 8/1/2019 | WIRE | Payment - Thank You | $91,141.66 | $137,303.17 | ($46,161.51) | $0.00 | $0.00 | $0.00 | $10,984,844.63 |
| 2/27/2020 | | WIRE | Late Charge | ($13,672.64) | $0.00 | $0.00 | $13,672.64 | $0.00 | $0.00 | $10,984,844.63 |
| 2/27/2020 | | | Funds Advanced | $46,161.51 | $0.00 | $46,161.51 | $0.00 | $0.00 | $0.00 | $10,938,683.12 |
| 2/27/2020 | | | Funds Advanced | $1,683.12 | $0.00 | $1,683.12 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 4/10/2020 | | | defaulted late fees | ($18,228.32) | $0.00 | $0.00 | $0.00 | ($18,228.32) | $0.00 | $10,937,000.00 |
| 7/6/2020 | | | Advanced Appraisal Fees | ($10,500.00) | $0.00 | $0.00 | $0.00 | ($10,500.00) | $0.00 | $10,937,000.00 |
| 7/8/2020 | | | Advanced Lawyer Fees (Landau) | ($1,564.00) | $0.00 | $0.00 | $0.00 | ($1,564.00) | $0.00 | $10,937,000.00 |
| 7/15/2020 | | | SBS Trust Deed Fees | ($8,028.69) | $0.00 | $0.00 | $0.00 | ($8,028.69) | $0.00 | $10,937,000.00 |
| 7/15/2020 | | | Lawyer Fees Landau | ($17,106.00) | $0.00 | $0.00 | $0.00 | ($17,106.00) | $0.00 | $10,937,000.00 |
| 7/15/2020 | | | Charge Adjustment | ($12,394.00) | $0.00 | $0.00 | $0.00 | ($12,394.00) | $0.00 | $10,937,000.00 |
| 7/16/2020 | | | Charge Adjustment | $23,500.00 | $0.00 | $0.00 | $0.00 | $23,500.00 | $0.00 | $10,937,000.00 |
| 7/16/2020 | | | Advanced Lawyer Fees | ($22,067.00) | $0.00 | $0.00 | $0.00 | ($22,067.00) | $0.00 | $10,937,000.00 |
| | | | | $1,523,836.61 | ($10,937,000.00) | $86,587.38 | ($109,893.61) | $0.00 | | |

## TRUST ACCOUNT ACTIVITY

| Transaction Date | Check# or Reference | From Whom Received or To Whom Paid | Description / Memo | Amount Paid Out | Amount Received | Daily Balance |
|---|---|---|---|---|---|---|
| | | | Balance Forward | | | $0.00 |
| | | | | $0.00 | $0.00 | |

## OUTSTANDING CHARGES AND ADVANCES

| Date of Charge | Reference | Description | Interest Rate | Original Amount | Unpaid Balance | Accrued Interest | Total Amount Due |
|---|---|---|---|---|---|---|---|
| 2/14/2019 | | NSF Payment Charge | 0.000% | $25.00 | $25.00 | $0.00 | $25.00 |
| 4/15/2019 | | Advanced Trustee Fees | 0.000% | $17,538.34 | $17,538.34 | $0.00 | $17,538.34 |
| 4/15/2019 | | Advanced Trustee Fees | 0.000% | $5,062.91 | $5,062.91 | $0.00 | $5,062.91 |
| 2/14/2020 | | Advanced Trustee Fees | 0.000% | $426.87 | $426.87 | $0.00 | $426.87 |
| 2/14/2020 | | Advanced Trustee Fees | 0.000% | $1,790.35 | $1,790.35 | $0.00 | $1,790.35 |
| 2/14/2020 | | Advanced Trustee Fees | 0.000% | $1,705.12 | $1,705.12 | $0.00 | $1,705.12 |
| 2/14/2020 | | Advanced Trustee Fees | 0.000% | $4,177.69 | $4,177.69 | $0.00 | $4,177.69 |
| 2/14/2020 | | Advanced Trustee Fees | 0.000% | $14,471.84 | $14,471.84 | $0.00 | $14,471.84 |
| 2/14/2020 | | Advanced Trustee Fees | 0.000% | $852.48 | $852.48 | $0.00 | $852.48 |
| 4/10/2020 | | defaulted late fees | 0.000% | $18,228.32 | $18,228.32 | $0.00 | $18,228.32 |
| 7/6/2020 | | Advanced Appraisal Fees | 15.000% | $10,500.00 | $10,500.00 | $96.25 | $10,596.25 |
| 7/8/2020 | | Advanced Lawyer Fees (Landau) | 15.000% | $1,564.00 | $1,564.00 | $13.03 | $1,577.03 |
| 7/15/2020 | | Lawyer Fees Landau | 0.000% | $6,000.00 | $6,000.00 | $0.00 | $6,000.00 |
| 7/15/2020 | | SBS Trust Deed Fees | 0.000% | $8,028.69 | $8,028.69 | $0.00 | $8,028.69 |
| 7/16/2020 | | Advanced Lawyer Fees | 15.000% | $22,067.00 | $22,067.00 | $110.34 | $22,177.34 |
| | | | | $112,438.61 | $112,438.61 | $219.62 | $112,658.23 |

