1  **Lewis R. Landau** (CA Bar No. 143391)
   **Attorney-at-Law**
2  22287 Mulholland Hwy., # 318
   Calabasas, California 91302
3  Voice & Fax: (888) 822-4340
   *Email: Lew@Landaunet.com*
4
5  Attorney for Platinum Loan Servicing, Inc.
6
7              **UNITED STATES BANKRUPTCY COURT**
8              **NORTHERN DISTRICT OF CALIFORNIA**
               **SAN JOSE DIVISION**
9
10
11  In re                              Case No.:  20-50628 SLJ 11
12  FRE 355 Investment Group, LLC,     Cases Jointly Administered
13                                     Chapter 11
                    Debtor.            Case No.:  20-50631 SLJ 11
14
15  _____        R.S. No.: LRL-001
16  In re                              **REQUEST FOR JUDICIAL NOTICE IN**
                                       **SUPPORT OF MOTION FOR RELIEF**
17  Mora House, LLC,                   **FROM STAY**
                    Debtor.
18
19                                     Date: August 11, 2020
                                       Time: 11:00 a.m.
20                                     Place: Courtroom 9 (Telephonic)
                                       US Bankruptcy Court; Judge Johnson
21  _____        280 South First Street
                                       San Jose, California 95113
22
23        Platinum Loan Servicing, Inc. ("PLS") as servicing agent for the beneficiaries of the

24  mortgages on the real property owned by FRE 355 dba FRE 355 Investment Group, LLC ("FRE

25  355") and Mora House, LLC ("Mora House") (FRE 355 and Mora House are collectively referred

26  to as "Debtors"), herein requests that the Court take judicial notice pursuant to Federal Rules of

27  Evidence 201 of the following Court file documents in support of PLS's concurrently filed motion

28  for relief from stay.

Copies of the following documents are attached hereto as exhibits as follows:

Exhibit 1:    Voluntary Petition (first 2 pages) for each Debtors' case [ECF # 1];

Exhibit 2:    Disclosure Statement for Debtors' Plan of Reorganization (July 10, 2020)
              [ECF # 65];

Exhibit 3:    Debtors' Plan of Reorganization (July 10, 2020) [ECF # 64];

Exhibit 4:    June 2020 Chapter 11 Monthly Operating Report - FRE 355 [ECF # 67] and
              Mora House [ECF # 33] (without exhibits thereto).

Exhibit 5:    Blanchard proof of claim # 3 in Mora House (without exhibits thereto).

Exhibit 6:    County of Santa Clara tax claim # 1 in FRE 355 (without exhibits thereto).

Exhibit 7:    County of Santa Clara tax claim # 2 in Mora House (without exhibits thereto).

Dated:  July 28, 2020                                **Lewis R. Landau**
                                                     **Attorney-at-Law**


                                                     By:*/s/ Lewis R. Landau*
                                                     Lewis R. Landau
                                                     Attorneys for Movant

# EXHIBIT 1

Fill in this information to identify your case:

United States Bankruptcy Court for the:

NORTHERN DISTRICT OF CALIFORNIA

Case number *(if known)* _____  Chapter ___11___

☐ Check if this an
amended filing

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy    04/20

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| 1. | Debtor's name | **FRE 355 Investment Group, LLC** |
| 2. | All other names debtor used in the last 8 years<br><br>Include any assumed names, trade names and *doing business as* names | **DBA  FRE 355** |
| 3. | Debtor's federal Employer Identification Number (EIN) | **45-0508466** |

| | |
|---|---|
| 4. | Debtor's address |

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| **10700 Mora Drive**<br>**Los Altos, CA 94024**<br><span style="font-size:smaller">Number, Street, City, State & ZIP Code</span> | P. O. Box 3156<br>**Los Altos, CA 94024**<br><span style="font-size:smaller">P.O. Box, Number, Street, City, State & ZIP Code</span> |
| **Santa Clara**<br><span style="font-size:smaller">County</span> | Location of principal assets, if different from principal place of business<br><br><span style="font-size:smaller">Number, Street, City, State & ZIP Code</span> |

| | | |
|---|---|---|
| 5. | Debtor's website (URL) | |
| 6. | Type of debtor | ☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding LLP)<br>☐ Other. Specify: _____ |

**7.  Describe debtor's business**    A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☑ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☐ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
See http://www.uscourts.gov/four-digit-national-association-naics-codes. _____

---

**8.  Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check all that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

---

**9.  Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

☑ No.

☐ Yes.

If more than 2 cases, attach a separate list.

| District | ____ | When | ____ | Case number | ____ |
| District | ____ | When | ____ | Case number | ____ |

---

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☑ No

☐ Yes.

List all cases. If more than 1, attach a separate list

| Debtor | ____ | | | Relationship | ____ |
| District | ____ | When | ____ | Case number, if known | ____ |

---

Case: 20-50628    Doc# 1    Filed: 04/13/20    Entered: 04/13/20 10:01:42    Page 2 of 8

Case: 20-50628    Doc# 75-4    Filed: 07/28/20    Entered: 07/28/20 16:42:14    Page 6 of
92

005

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/20

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.**

| | | |
|---|---|---|
| 1. | **Debtor's name** | **Mora House, LLC** |
| 2. | **All other names debtor used in the last 8 years**<br>Include any assumed names, trade names and *doing business as* names | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **81-4644573** |

| | | | |
|---|---|---|---|
| 4. | **Debtor's address** | **Principal place of business** | **Mailing address, if different from principal place of business** |
| | | **10700 Mora Drive**<br>**Los Altos, CA 94024**<br>Number, Street, City, State & ZIP Code | **P. O. Box 3156**<br>**Los Altos, CA 94024**<br>P.O. Box, Number, Street, City, State & ZIP Code |
| | | **Santa Clara**<br>County | **Location of principal assets, if different from principal place of business**<br><br>Number, Street, City, State & ZIP Code |
| 5. | **Debtor's website** (URL) | | |
| 6. | **Type of debtor** | ■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding LLP)<br>☐ Other. Specify: _____ | |

Case: 20-50631   Doc# 75-4   Filed: 07/28/20   Entered: 07/28/20 16:38:14   Page 6 of 92

**7.** **Describe debtor's business**   A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

■ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☐ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
See http://www.uscourts.gov/four-digit-national-association-naics-codes.

____

**8.** **Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check **all** that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9.** **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

■ No.

☐ Yes.

| District | _____ | When | _____ | Case number | _____ |
|---|---|---|---|---|---|
| District | _____ | When | _____ | Case number | _____ |

**10.** **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list

■ No

☐ Yes.

| Debtor | _____ | | Relationship | _____ |
|---|---|---|---|---|
| District | _____ | When | Case number, if known | _____ |

Case: 20-50631    Doc #: 75-4 Filed: 04/28/20   Entered: 04/28/20 16:48:14   Page 7 of
92
Official Form 201    Voluntary Petition for Non-Individuals Filing for Bankruptcy    page 2

007

# EXHIBIT 2

Michael W. Malter, Esq.  ID #96533
Robert G. Harris, Esq. ID #124678
Julie H. Rome-Banks, Esq. ID #142364
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050
Telephone: (408) 295-1700
Facsimile: (408) 295-1531
Email: Michael@bindermalter.com
Email: Rob@bindermalter.com
Email: Julie@bindermatler.com

Attorneys for Debtors and Debtors-in-possession
FRE 355 Investment Group, LLC and Mora House, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, DIVISION 5

| | |
|---|---|
| In re:<br><br>FRE 355 INVESTMENT GROUP, LLC, dba FRE 355,<br><br>                  Debtor. | Case No.  20-50628-SLJ<br><br>Cases Jointly Administered<br><br>Chapter 11 |
| In re<br><br>MORA HOUSE, LLC,<br><br>                  Debtor. | Case No. 20-50631-SLJ<br><br>Chapter 11<br><br>DISCLOSURE HEARING:<br><br>Date: September 3, 2020<br>Time: 1:30 p.m.<br>Courtroom: 11 (telephonic) |

## DISCLOSURE STATEMENT FOR DEBTORS' PLAN OF REORGANIZATION (JULY 10, 2020)

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    SUMMARY OF CREDITOR TREATMENT IN PLAN ................................... 1

       A.    Plan Overview. ................................................................................... 1

       B.    Summary of Plan Treatment by Class. ............................................... 2

III.   VOTING PROCEDURES ................................................................................. 5

       A.    Impairment. ........................................................................................ 5

       B.    Cramdown (Procedure Absent Acceptance by All Classes). ............. 5

       C.    Submission of Votes ........................................................................... 5

IV.    HISTORY OF THE DEBTORS ....................................................................... 6

       A.    The Debtors' Businesses. ................................................................... 6

       B.    Events Leading to Bankruptcy. .......................................................... 7

V.     SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE ....................... 8

VI.    ASSETS ........................................................................................................... 9

VII.   FEASIBILITY .................................................................................................. 9

VIII.  ALTERNATIVES TO THE PLAN OF REORGANIZATION .......................... 10

       A.    Best Interest of Creditors Test ........................................................... 10

       B.    Liquidation under Chapter 7 .............................................................. 10

       C.    Assertion of All Claims Yields A Chapter 7 Dividend Smaller Than the
             Dividend that the Plan Provides ......................................................... 11

IV.    OTHER RELEVANT PLAN PROVISIONS ...................................................... 11

       A.    Executory Contracts. .......................................................................... 11

       B.    Means of Execution. ........................................................................... 12

       C.    Effect of Confirmation of Plan. ......................................................... 14

       D.    Retention of Jurisdiction. ................................................................... 15

       E.    General Provisions. ............................................................................. 17

       F.    Implementation Orders. ...................................................................... 18

# I. INTRODUCTION

THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION UNDER BANKRUPTCY CODE SECTION 1125 FOR SOLICITATION OF ACCEPTANCES THEREOF. DISTRIBUTION OF THIS DISCLOSURE STATEMENT TO CREDITORS IS AUTHORIZED BY THE ENCLOSED ORDER OF THE COURT.

This Disclosure Statement (the "Disclosure Statement") contains information with respect to the Debtors' Chapter 11 Plan (July 10, 2020) (the "Plan") filed by debtors and debtors-in-possession FRE 355 Investment Group, LLC, dba FRE 355 and Mora House, LLC (collectively, the "Debtors"). Pursuant to section 1125 of the Bankruptcy Code, this Disclosure Statement is being distributed to you for the purpose of enabling you to make an informed judgment about the Plan.

**Your vote on the Plan is important. For the Plan to be accepted by a class of claims, the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of allowed claims in such class who vote on the Plan must vote to accept it.**

Non-acceptance of the Plan may lead to a liquidation of the Debtors and their assets under chapter 7 of the Bankruptcy Code or to the confirmation of another plan. These alternatives may not provide for a distribution of as much value to holders of allowed claims and interests as the Plan. Accordingly, the Debtors urge you to accept the Plan by completing and returning the enclosed ballot no later than October __, 2020.

## II. SUMMARY OF CREDITOR TREATMENT IN PLAN

### A. Plan Overview.

The Debtors will advertise, market and close sales of the Mora House and Mora Lot within 6 months after the Effective Date of the Plan, the Initial Marketing Period, to pay secured claimants of both properties in full and to pay a projected dividend of 9.15% to unsecured claimants. If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then (1) S&R shall release its lien against the Mora Lot, and (2) the Debtors shall have the Extended Marketing Period of six additional months to close sales of the Mora House and Mora Lot. The

1 Blanchard Trust shall retain without modification the right to advance $500,000 under the
2 Addendum to Promissory Note to cause the release of the S&R lien from the Mora Lot.

**B.** **Summary of Plan Treatment by Class.**

The treatment[1] of each class of creditors under the Plan is summarized as follows

| Class | Claimant(s) | Claim Amount | Treatment | Impairment/ Voting |
|-------|-------------|--------------|-----------|--------------------|
| Unclassified | Tax claims entitled to priority under Bankruptcy Code section 507(a)(8) | $3,442.75 | Will receive equal payments of $60 per month until sales of the Mora House and Mora Lot close, at which time the balance of FTB's priority tax claim will be paid in full with statutory interest. | Unimpaired Not entitled to vote |
| Unclassified | Estate Professionals | $20,000 | Will receive pay 100% of allowed amounts of claims without interest in cash on the Effective Date unless the holder of the claim otherwise agrees. | Unimpaired and not entitled to vote |
| Class 1A | Blanchard Trust | $2,441,801.23 | Retains lien against the Mora Lot. Will receive a single payment equal to the allowed amount of its claim with contract rate interest and reasonable attorneys' fees six months after the Effective Date or at such time that the Mora House is sold, whichever is sooner. If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then the Debtors shall have the Extended Marketing Period of to sell the Mora House and Mora Lot and six additional months to pay the Blanchard Trust's Class 1A claim. Blanchard Trust shall retain without modification the right to advance $500,000 under the Addendum to Promissory Note to cause the release of the S&R lien from the Mora Lot. | Impaired and entitled to vote |

---

[1] The Plan's language controls in the event of any conflict or ambiguity.

DISCLOSURE STATEMENT FOR DEBTORS' PLAN OF REORGANIZATION (JULY 10, 2020)

Case: 20-50628   Doc# 75-4   Filed: 07/28/20   Entered: 07/28/20 16:12:14   Page 12 of 92   012

| | | | | |
|---|---|---|---|---|
| Class 1B | S&R | $12,113,909.20 | Retains lien against the Mora Lot. Will receive a single payment equal to the allowed amount of its claim with contract rate interest and reasonable attorneys' fees six months after the Effective Date or at such time that the Mora Lot is sold, whichever is sooner. If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then the Debtors shall have the Extended Marketing Period to sell the Mora House and Mora Lot and six additional months to pay S&R's Class 1B claim. | Impaired and entitled to vote |
| Class 1C | Department of Tax & Collections | $255,300.00 | Retains lien against the Mora Lot. Will receive a single payment equal to the allowed amount of its claim with statutory interest six months after the Effective Date or at such time that the Mora Lot is sold, whichever is sooner. If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then the Debtors shall have the Extended Marketing Period to sell the Mora House and Mora Lot and six additional months and to pay the Department of Tax & Collections' Class 1C claim | Impaired and entitled to vote |
| Class 2A | S&R | $12,113,909.20 | Retains lien against the Mora House. Will receive a single payment equal to the allowed amount of its claim with contract rate interest and reasonable attorneys' fees six months after the Effective Date or at such time that the Mora House is sold, whichever is sooner. If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then the Debtors shall have the Extended Marketing Period to sell the Mora House and Mora Lot and six additional months to pay S&R's Class 2A claim. | Impaired and entitled to vote |

| | | | | |
|---|---|---|---|---|
| Class 2B | Department of Tax & Collections | $116,838 | Retains lien against the Mora House.<br><br>Will receive a single payment equal to the allowed amount of its claim with statutory rate interest six months after the Effective Date or at such time that the Mora House is sold, whichever is sooner.<br><br>If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then the Debtors shall have the Extended Marketing Period to sell the Mora House and Mora Lot and six additional months to pay the Class 2B claim of the Department of Tax & Collections. | Impaired and entitled to vote |
| Class 2C | EPS Plumbing | $27,000.00 | Retains lien against the Mora House.<br><br>Will receive a single payment equal to the allowed amount of its claim with contract rate interest six months after the Effective Date or at such time that the Mora House is sold, whichever is sooner.<br><br>If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then the Debtors shall have the Extended Marketing Period to sell the Mora House and Mora Lot and six additional months to pay the Class 2B claim of EPS Plumbing. | Impaired and entitled to vote |
| Class 3A | General Unsecured Claims of FRE 355 | $4,165,014.69 | Will receive payment of the allowed amount of their claims, without interest, from the net proceeds from sale of the Mora House after the full payment of all secured and priority claims six months after the Effective Date, unless S&R receives a $500,000 principal paydown under the Addendum to Promissory Note, in which case payment shall be made twelve months after the Effective Date or at such time that the Mora House and Mora Lot are sold, whichever is sooner | Impaired and entitled to vote |
| Class 3B | General Unsecured Claims of Mora House LLC | $25,663.49 | Will receive a pro rata distribution on the allowed amount of their claims, without interest, from the net proceeds from sale of the Mora Lot after the full payment of all secured and priority claims. | Impaired and entitled to vote |

| | | | | |
|---|---|---|---|---|
| | | | Payment shall be made six months after the Effective Date, unless S&R receives a $500,000 principal paydown under the Addendum to Promissory Note, in which case payment shall be made twelve months after the Effective Date or at such time that the Mora House and Mora Lot are sold, whichever is sooner. | |
| Class 4A | Equity Interests in FRE 355 | N/A | Interests to be retained | No |
| Class 4B | Equity Interests in Mora House LLC | N/A | Interests to retained | No |

### III.    VOTING PROCEDURES

#### A.    Impairment.

If you hold a claim that is impaired and classified, and listed in the column of the table above you will receive a ballot and may vote on the Plan.  "Impairment" means that your legal, equitable, or contractual rights are altered by the Plan or that you will not be paid in cash in full with interest as set forth below on the Effective Date.  Holders of claims that are not impaired under the Plan are deemed to accept it.

#### B.    Cramdown (Procedure Absent Acceptance by All Classes).

Bankruptcy Code section 1129(b) provides that, if the Plan is rejected by one or more impaired classes of claims, it may be confirmed by the Bankruptcy Court, if: (i) the Court determines that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting class(es) of claims impaired under the Plan; and (ii) at least one class of impaired claims voted to accept the Plan.  The Debtors will seek to confirm the Plan under this provision if one or more impaired classes do not vote to accept.

#### C.    Submission of Votes.

A vote for acceptance or rejection of the Plan may be cast by completing and signing the ballot enclosed herewith and mailing it to:

///

DISCLOSURE STATEMENT FOR DEBTORS' PLAN OF REORGANIZATION (JULY 10, 2020)          5

Robert G. Harris, Esq.
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050

Only the Ballot should be mailed. For your vote to be counted, your completed ballot must be received no later than October __, 2020 by 5:00 p.m., prevailing Pacific Time. Upon confirmation, the Plan will be binding on all creditors regardless of whether a creditor has voted in favor of or rejected the Plan.

## IV. HISTORY OF THE DEBTORS

### A. The Debtors' Businesses.

The Debtors are limited liability companies formed to own, develop and sell individual parcels of real property. Melvin Vaughn is the managing member and sole owner of the Debtors.

The principal asset of FRE 355 is the Mora House, a newly-constructed single family dwelling located at 10718 Mora Hills Drive, Los Altos Hills, California. The Mora House has 6 bedrooms, 8 full bathrooms, 3 half bathrooms, a 4-car garage and is 9,677 square feet. The lot upon which the Mora House sits is approximately 1.24 acres in the Los Altos Hills with jaw dropping views of the San Francisco Bay, East Bay mountains and Silicon Valley, including the adjacent 4,000-acre Rancho San Antonio Open Space Reserve. Construction of the home, which is in a modern style, was completed in approximately early 2018. The Mora House has been actively marketed for sale since April 2018 with a current list price of $14,999,999.

The sole asset of Mora House, LLC is the Mora Lot, an undeveloped parcel lot of approximately 1.47 acres located immediately adjacent to the Mora House. The Mora Lot has been marketed concurrently with the Mora House under a separate listing agreement because ownership of the Mora Lot, and its continued preservation as undeveloped property, preserves the unobstructed views from the new home. The Mora Lot is currently listed for sale at $4,000,000. Access to the Mora House and Mora Lot is by a common driveway.

Both the Mora House and the Mora Lot are encumbered by the secured debt of S&R. S&R holds a first position deed of trust on the Mora House in the scheduled amount of $12,113,909.20

1  including interest and foreclosure fees.  The debt owed to S&R is cross-collateralized by a second

2  deed of trust on the Mora Lot.

3  The Blanchard Trust holds a senior deed of trust against the Mora Lot alone in the amount of

4  $2,441,801.23.

5  FRE 355 and S&R are parties to an Addendum to Promissory Note Loan #10536 dated

6  December 11, 2018, which granted S&R an additional deed of trust collateralized by the Mora Lot

7  and provides that "Lender shall release the real property interest in said property for a principal

8  reduction of Five Hundred Thousand dollars ($500,000)."

9  **B.    Events Leading to Bankruptcy.**

10  The loan from S&R was originally in the amount of $10,937,000 and was made on or about

11  March 29, 2018.  The loan matured on May 1, 2019.  Five (5) interest only payments were made to

12  S&R by FRE 355 pursuant to the terms of its promissory note before the loan matured.

13  The loan from S&R was originally in the amount of $10,937,000 and was made on or about

14  March 29, 2018.  The loan matured on May 1, 2019.  FRE made five interest only payments to S&R

15  on its promissory note before the loan matured.  Upon maturity, neither Debtor had located a buyer

16  for its respective real property[2].  S&R recorded notices of defaults on both properties with trustee's

17  sales initially set for July 31, 2019 as to FRE 355 and August 21, 2019 as to Mora House LLC.

18  Following the maturation of S&R's loan and scheduled trustee's sales, Mr. Vaughn entered

19  into a series of verbal agreements with S&R on behalf of the Debtors.  Mr. Vaughn personally

20  advanced unsecured loans to FRE 355 and used limited rents from a holiday rental in order to make

21  additional interest only forbearance payments to S&R beginning in August 2019 of $91,141.67

22  approximately each month.  S&R postponed the trustee's sales while the Debtors continued to

23  actively market and show the Mora House and Mora Lot with the assistance of a real estate broker.

24  Continuances of the trustee's sales were granted monthly upon additional payment to S&R.  Mr.

25

26  [2] There had been sale contracts on both properties entered into in early March 2020 that
would have been sufficient to pay all secured and unsecured debt in both cases in full and provide
27  Mr. Vaughn with a return on his equity.  However, it was cancelled pre-petition by the buyer, an
individual from China, as a result of the pandemic.
28

Case: 20-50628    Doc# 75-4   Filed: 07/28/20   Entered: 07/28/20 15:43:14   Page 17
of 92

1  Vaughn estimates that he has contributed approximately $3.1 million of his own funds into the

2  development, construction and carrying costs of the Mora House and Mora Lot since 2007

3  principally in the form of unsecured loans.

4      The trustee's sale of the property owned by FRE 355 was continued to April 13, 2020 at

5  10:00 a.m., and the trustee's sale of the undeveloped lot owed by Mora House, LLC was continued

6  to April 15, 2020 at 10:00 a.m.   Less than an hour prior to the sale time, Mr. Vaughn was informed

7  that S&R refused to honor an agreement for another month of forbearance, refused to accept

8  payment, and would not continue the trustee's sale on the Mora House.

9      The Debtors commenced the filing of these bankruptcy cases by initially filing a voluntary

10  petition with the Bankruptcy Court, first on April 13, 2020 on behalf of FRE 355 to prevent the

11  trustee's foreclosure sale of the Mora House and second, by filing a voluntary petition on April 14,

12  2020 on behalf of Mora House, LLC to prevent the trustee's foreclosure sale of the Mora Lot.

13      **V.      SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE**

14      <u>Appointment of Professionals:</u>

15      Both Debtors applied for appointment of accountant Alan R. David to assist in the

16  preparation of required State income tax returns and to provide guidance on any required capital

17  gains analysis.  The Court entered the Order Appointing Accountant for Debtors [Dkt. #51] on May

18  29, 2020.

19      Both Debtors applied for appointment of a real estate broker.  The Court entered the

20  Order Granting Application for Approval of Listing Agreement for Sale of Property of The Estate

21  and Appointment of Real Estate Broker [Dkt. #58] on June 16, 2020.

22      Both Debtors applied for the appointment of Binder & Malter, LLP as their bankruptcy

23  counsel.  After contested hearings held on May 27, 2020 and June 20, 2020, employment was

24  approved.  The Court's Amended Order Granting Amended Motion for Employment and For

25  Approval of Post-Petition Retainer [Dkt. #63] was entered on June 28, 2020.

26      <u>Post-Petition Operations</u>:  The Mora House has not been rented since the commencement of

27  these cases, and no cash collateral has been generated.  The limited costs of operations are utilities

28  which are in Mr. Vaughn's personal name, routine maintenance such as landscaping, pool care, and

insurance.  Mr. Vaughn continues to advance these limited costs each month along with quarterly U.S. Trustee fees as an unsecured loan to the Debtors, as was his custom and practice pre-petition.

Attendance at 341 Meetings and Initial Debtor Interviews:  Both Debtors have completed their initial debtor interview, held jointly by the United States Trustee.  Both Debtors have individually appeared at their Section 341 meetings of creditors which were both concluded.

Monthly Operating Reports and DIP Accounts:  The Debtors are current in the filing of their monthly operating reports.  The May, 2020 reports for each Debtor are attached hereto as Exhibits "A" and "B".

## VI.   ASSETS

A.   Listed Assets and Values.

The Debtors listed the following assets in its most recent Monthly Operating Reports to the Bankruptcy Court for the period ending May 31, 2020:

| Description | Value |
| --- | --- |
| Cash – DIP Accounts | $267 |
| Professional Retainers | $37,149 + $19,016 = $56,165 |
| Mora House | $14,999,000 |
| Mora Lot | $4,000,000 |
| **Total assets** | $19,055,432 |

## VII.   FEASIBILITY

The Bankruptcy Code requires as a condition to the Plan's confirmation that the Bankruptcy Court find that liquidation of the Debtors or the need for further reorganization is not likely to follow after confirmation.  In order to prove feasibility, the Debtors are required therefore to set forth their Effective Date and other priority payments and show that they have adequate cash to pay them when due.  This involves a two-step analysis: first, the Debtors will set forth their analysis of the proceeds from sale of the Mora House and Mora Lot.

As set forth in Exhibit "C" hereto, the Debtors assume that the Mora House and Mora Lot will sell for list prices, $14,999,000 and $4,000,000, respectively.  The combined tax basis for the

1. two properties is $17,433,065. Assuming sale expenses of 7% ($1,225,000), the Debtors would

2. generate a loss of $1,158,065 on the sale, meaning no Federal or State capital gains taxes would be

3. payable. $16,275,000 would be available to pay claims after costs of sale.

4.    Payment from escrow of the secured claims set forth in Classes 1A-2C listed above will

5. leave $430,606 in net proceeds for distribution to creditors.

6.    In addition, to the extent there are ongoing costs of operations such as payment of insurance

7. and quarterly U.S. Trustee fees to be paid by the Debtors, as well as monthly payment of the priority

8. tax claim of the Franchise Tax Board (until paid in full at the time of sale of the Mora House

9. property as described earlier), the Debtors may continue to receive unsecured loans or equity

10. contributions by their sole member, Melvin Vaughn, to enable the Debtors to make those required

11. payments.

12.    **VIII.   ALTERNATIVES TO THE PLAN OF REORGANIZATION**

13.    The Debtors believe that the Plan provides creditors with the greatest value that can be

14. obtained on their respective claims. The most likely alternative to confirmation of the Plan is

15. liquidation of the estates under chapter 7 of the Bankruptcy Code.

16.    **A.    Best Interest of Creditors Test**

17.    The "best interest" test of Bankruptcy Code section 1129(a)(7)(A)(ii) requires that a plan

18. provide to each dissenting member of each impaired class a recovery that has a present value at least

19. equal to the present value of the distribution that unsecured creditors would receive if the

20. bankruptcy estate were liquidated under chapter 7 of the Bankruptcy Code.

21.    **B.    Liquidation under Chapter 7**

22.    When a chapter 11 case is converted to a case under chapter 7 of the Bankruptcy Code, a

23. chapter 7 trustee is appointed to conduct the affairs of the estate. In applying the liquidation test of

24. Bankruptcy Code section 1129(a)(7)(A)(ii), the court must consider not only the accrued expenses

25. of administration from the chapter 11, but the chapter 7 trustee's fees and expenses, and the fees and

26. expenses of professionals likely to be retained by that trustee. Generally, no distribution is made in

27. a chapter 7 case until all assets of the bankruptcy estate and all claims have been liquidated, a

28. process that can often take many months and sometimes years. Most importantly, a chapter 7

trustee does not operate the business over which he or she takes control except in very rare circumstances.

**C.     Assertion of All Claims Yields A Chapter 7 Dividend Smaller Than the Dividend that the Plan Provides**

As set forth above, sales of the Mora House and Mora Lot if closed within the Initial Marketing Period or Extended Marketing Period would leave $430,606 in net proceeds for distribution to unsecured creditors in Classes 3A and 3B.  Subtracting the $25,663.49 for Class 3A leaves $404,942.51 for distribution to creditors.  Even if the two properties could be sold for list price, a Chapter 7 would yield less than the projected Chapter 11 dividend.  The following table illustrates why:

| | |
|---|---:|
| Cash at closing | $6,275,000 |
| Less Secured Claims | $15,870,057.49 |
| **Subtotal – Net Unencumbered Asset Value** | **$404,942.51** |
| Chapter 11 Administrative Claims | [$20,000] |
| Priority Tax Claim | [$3,442.75] |
| Projected Chapter 7 Trustee Fees | [$10,400] |
| Chapter 7 Trustee's Professionals | [$25,000] |
| **NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS IN CHAPTER 7** | **$346,099.76** |
| *Percent Distribution to Holders of Allowed Unsecured Creditors in Chapter 7* | *8.3%* |
| **NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS IN CHAPTER 11** | **$381,100.01** |
| *Percent Distribution to Non-Insider Unsecured Creditors Under Plan* | *9.15%* |

**IV.     OTHER RELEVANT PLAN PROVISIONS**

**A.     Executory Contracts.**

    **1.   Assumption and Rejection**

        **i.   Contract Assumed.**

The Debtors assume, to the extent it is necessary, the Addendum to Promissory Note.

///

///

Case: 20-50628     Doc# 65-4 Filed: 07/10/2020 Entered: 07/10/2020 15:14:14 Page 621 of 92

ii. **Rejection of All Other Contracts Not Assumed.**

All other executory contracts not (a) previously assumed, assigned or rejected pursuant to final order of the Bankruptcy Court entered prior to the Effective Date, or (b) not subject to a pending motion to assume, assign or reject filed with the Bankruptcy Court prior to the Effective Date, will be deemed rejected as of the Effective Date.

iii. **Claims Arising Out of Rejection.**

Any claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Bankruptcy Court by no later than 30 calendar days after the confirmation of the Plan. If no proof of claim is filed within such time period, it will be forever barred from receiving a distribution from estate assets.

B. **Means of Execution.**

1. **Reorganized Debtors.**

The Debtors, as the Reorganized Debtors shall, from and after confirmation of the Plan, continue as the representatives of their respective estates and succeed without further order to all right, title and interest in all estate assets and property pursuant to the terms of the Plan. The Debtors will be authorized and empowered to take all actions and measures necessary to implement and administer the Plan. The Debtors will conduct their business and operate from confirmation and through and after substantial consummation of the Plan.

2. **Marketing and Sale of Mora House and Mora Lot.**

The Debtors will advertise, show, market and sell the Mora House and Mora Lot and close sales thereof in the Initial Marketing Period, within 6 months of the Effective Date; provided however that if S&R receives a $500,000 principal paydown under the Addendum to Promissory Note, the Debtors will have 6 more months to close sales of both the Mora House and Mora Lot within the Extended Marketing Period. The Debtor's court-approved real estate broker, Phil Chen of Sybarite Luxury Real Estate has developed an advanced strategy to close a sale of the Mora House and Mora Lot within these Marketing Periods. The marketing brochure and kit setting forth the strategy, plan and timing is attached hereto as Exhibit "D".

///

1  **3. Effect of Failure to Close Sale.**

2  In the event that sales of the Mora House and Mora Lot have not closed within Initial

3  Marketing Period or the Extended Marketing Period in the event that the Addendum to Promissory

4  Note has resulted in payment of $500,000 to S&R and release of its lien from the Mora Lot, all

5  holders of secured claims shall have immediate relief to exercise their rights and foreclose their liens

6  against their respective collateral without further order of the Bankruptcy Court. Any party may,

7  following failure by the Debtors to close a sale of one or both of the Mora House and Mora Lot

8  within the periods set forth above, request conversion of these bankruptcy cases to Chapter 7 by

9  filing an explanatory declaration with the Bankruptcy Court, uploading a proposed form of order,

10  and serving both with 10 days' notice and opportunity for hearing.

11  **4. Effective Date Distribution.**

12  The Debtors will pay holders of allowed professional administrative expense claims in cash

13  on the Effective Date Distribution or at such later dates as the Court approves unless they agree to a

14  different treatment.

15  **5. Funding and Operation of Disputed Claims Reserve.**

16  The Reorganized Debtors will create the Disputed Claims Reserve by establishing at the

17  time of closing of sale of the Mora House and Mora Lot a separate bank account and depositing into

18  it cash equal to the face amount of all claims that are disputed, contingent or unliquidated. No

19  deposit is required for a claim as to which an order disallowing the claim has been entered. A

20  deposit is only required up to the amount at which a claim has been estimated should Debtors seek

21  and obtain an order of the bankruptcy court for estimation of a disputed claim. If a disputed claim

22  becomes an allowed claim, the Reorganized Debtors will immediately distribute to the claimant

23  from the Disputed Claims Reserve the amount of the allowed claim that it would have been entitled

24  to receive had it been an allowed claim on the confirmation date. Any funds no longer needed in

25  reserve shall be released for use according to the terms of the Plan.

26  ///

27  ///

28  ///

DISCLOSURE STATEMENT FOR DEBTORS' PLAN OF REORGANIZATION (JULY 10, 2020)    13

6. **Powers of Reorganized Debtor.**

   a. **Powers Generally and Power to Sue.**

   On the Effective Date, the Reorganized Debtors will be vested with all rights and powers of the Debtors under State and Federal law, including but not limited to the right to pursue all claims and causes of action that the Debtors have including avoidance actions, and any other causes of action, defenses, requests for subordination or recharacterization, or requests for any other equitable or legal relief that was or could have been asserted pre-petition by the Debtors against any party other than those which have been settled. The Reorganized Debtors may, on behalf of the Debtors, pursue, settle or release all such actions in accordance with the best interest of and for the benefit of the holders of allowed claims.

   b. **Objections to and Estimation of Claims.**

   After the Effective Date, the Reorganized Debtors may file objections to claims. As to any claims arising from the rejection of an executory contract or unexpired lease pursuant to the Plan, the Reorganized Debtors may object within sixty (60) calendar days of the filing of any such claims. As to claims arising from the recovery of an avoidable transfer under chapter 5 of the Bankruptcy Code, the Reorganized Debtors may object within sixty (60) calendar days of the filing of any such claims.

   c. **Settlements.**

   After the Effective Date the Reorganized Debtors will have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to claims, including without limitation, any objections to claims filed by the Debtors prior to the Effective Date. The Reorganized Debtors will provide notice and opportunity for hearing of any settlement.

C. **Effect of Confirmation of Plan.**

   1. **Confirmation Injunction.**

   On and after date of confirmation of the Plan, except to enforce the terms and conditions of the Plan before the Bankruptcy Court or to implement the terms of the Plan, all persons and entities who have held, hold or may hold any debt, claim, lien, encumbrance against or interest in the Debtors are permanently enjoined from and after the date of entry of the order confirming the Plan

1  from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit,

2  action or other proceeding of any kind (including, without limitation, any proceeding in a judicial,

3  arbitral, administrative or other forum) against either the Debtors, their estates, their property, or the

4  Reorganized Debtors; (b) enforcing, levying, attaching (including, without limitation, any pre-

5  judgment attachment), collecting or otherwise recovering by any manner or means whether directly

6  or indirectly, of any judgment, award, decree or order against any of the foregoing; (c) creating,

7  perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any

8  kind against any of the foregoing (d) asserting any right of setoff, subrogation, or recoupment of any

9  kind, directly or indirectly, against any obligation due; and (e) taking any actions in any place and in

10  any manner whatsoever that do not conform to or comply with the provisions of the Plan.

11      **2.** Binding Effect.

12      Except as otherwise expressly provided in the Plan, as of the Effective Date, the provisions

13  of the Plan, a confirmation order, and any associated findings of fact or conclusions of law will bind

14  the Debtor, the Reorganized Debtors, and all holders of claims and interests against the Debtors,

15  regardless of whether such holders are impaired under the Plan or voted to accept.

16      **D.**     **Retention of Jurisdiction.**

17      The Bankruptcy Court will retain jurisdiction over the Bankruptcy Case subsequent to the

18  date of Plan confirmation to the fullest extent permitted by law, including, without limitation, for the

19  following purposes:

20      **1.** To approve any proposed sale(s) of the Mora House and Mora Lot following one or

21  more duly noticed motions including any sale free and clear of disputed liens and interests, and to

22  enter orders as may be necessary and appropriate to aid in the close of escrows;

23      **2.** To determine any and all proceedings related to allowance of claims or objections

24  thereto, including objections to classification and including, on an appropriate motion pursuant to

25  Bankruptcy Rule 3008, reconsideration of claims that have been allowed or disallowed prior to

26  confirmation;

27  ///

28  ///

3. To hear and determine any and all applications for compensation by professionals or any other fees and expenses authorized to be paid or reimbursed in accordance with the Bankruptcy Code or the Plan;

4. To determine any and all claims or causes of action, whether pending before the Bankruptcy Court at Plan confirmation or filed or instituted after that date;

5. To modify the Plan or the Disclosure Statement, or to remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court (including the confirmation order) as may be necessary to carry out the purposes and effects of the Plan;

6. To determine disputes regarding title of the property claimed to be property of the Debtors or their estates;

7. To ensure that distributions to holders of allowed claims are accomplished in accordance with the provisions of the Plan;

8. To enter such orders as may be necessary to consummate and effectuate the operative provisions of the Plan, including actions to enjoin enforcement of claims inconsistent with the terms of the Plan;

9. To hear and determine disputes concerning any event of default or alleged event of default under the Plan, as well as disputes concerning remedies upon any event of default under the Plan;

10. To hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code.

11. To enter a final decree closing the Debtors' bankruptcy cases

12. To enter and implement such orders as may be appropriate in the event the confirmation order is for any reason stayed, reversed, revoked or vacated;

13. To hear and determine such other matters as may arise in connection with the Plan, the Disclosure Statement, or the confirmation order;

14. To hear and determine any dispute between the Reorganized Debtors and any creditor or defendant or plaintiff in litigation;

15. To approve any post-petition retainer payments to professionals; and,

16. To issue temporary restraining orders and preliminary injunctions.

Case: 20-50628    Doc# 65-4   Filed: 07/10/2020   Entered: 07/10/2020 15:43:14   Page 16 of 92

026

E.   **General Provisions.**

   1.   **Preservation of Causes of Action.**

Any and all claims and other causes of action accruing to Debtors or estate, the right and power to object to any filed or scheduled claims, the right to pursue avoidance actions will be preserved and retained by the estate after the confirmation date, and the Reorganized Debtors on behalf of the estate will have the exclusive right and standing to enforce any such causes of action.

   2.   **Cramdown.**

Pursuant to section 1129(b) of the Bankruptcy Code, Debtors reserve the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

   3.   **Notices.**

Any notice to Debtors will be in writing, and will be deemed to have been given six days after the date sent by first-class mail, postage prepaid and addressed as follows:

**Reorganized Debtors:**

>    Mora House LLC
>    FRE 355 Investment Group, LLC
>    Attn: Melvin Vaughn
>    10700 Mora Drive, Los Altos, CA  94022
>    Email: c4scab@aol.com
>
>    <u>With a copy to counsel</u>:
>    Robert G. Harris, Esq.
>    Binder & Malter, LLP
>    2775 Park Avenue
>    Santa Clara, CA 95050
>    Facsimile: (408) 295-1531
>    Email: rob@bindermalter.com

   4.   **Modification of Plan.**

The Debtors reserve the right, in accordance with the Bankruptcy Code and Bankruptcy Rules, to amend or modify the Plan at any time prior to entry of an order confirming it.  After entry of an order confirming the Plan but prior to the Effective Date, the Debtors may seek an order of the Bankruptcy Court to amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

After the Effective Date, the Reorganized Debtors may seek an order of the Bankruptcy Court to amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

The holder of an allowed claim that has accepted the Plan will be deemed to have accepted the Plan as modified if the modification does not materially and adversely change the treatment of the holder's claim.

### 5. Withdrawal or Revocation of Plan.

The Debtors may withdraw the Plan at any time prior to its confirmation date. If the Debtors withdraw the Plan prior to confirmation, or if the Plan is not confirmed, then the Plan will be deemed null and void and not binding on any person or entity.

### 6. Failure of Effective Date.

In the event the Effective Date does not occur, nothing in this Plan will be binding on the Debtors or any other person or entity or otherwise be of any force or effect.

### 7. Post-Effective Date Notices.

Except as otherwise provided in the Plan, upon and after the Effective Date, notices will be served only on the Office of the United States Trustee, the Reorganized Debtor, and those persons who file with the Bankruptcy Court and serve upon the Reorganized Debtors a request, which includes the person's name, contact individual, address, telephone number and facsimile number, that such Person receive notice of post-Effective Date matters. Persons who had previously filed with the Bankruptcy Court requests for special notice of the proceedings and other filings in the Bankruptcy Case will not receive notice of post-Effective Date matters unless such persons file a new request in accordance with this Section.

### F. Implementation Orders.

The Bankruptcy Court may, at any time, make such orders and give such directions as appropriate for consummation of the Plan pursuant to Bankruptcy Code section 1142.

*[Signatures on following page]*

Case: 20-50628    Doc# 65-4    Filed: 07/10/2020    Entered: 07/10/2020 15:43:14    Page 028 of 92

Dated:  July 10, 2020                          MORA HOUSE LLC

                                               By: */s/ Melvin Vaughn*
                                                   Melvin Vaughn

                                        Its:   Managing Member


Dated: July 10, 2020                           FRE INVESTMENT GROUP LLC

                                               By: */s/ Melvin Vaughn*
                                                   Melvin Vaughn

                                        Its:   Managing Member


Dated:  July 10, 2020                          BINDER & MALTER, LLP


                                               By:*/s/ Robert G. Harris*
                                                   Robert G. Harris

                                        Attorneys for Debtors and Debtors-in-possession
                                        FRE 355 Investment Group, LLC and
                                        Mora House, LLC

**EXHIBIT A**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| In re: FRE 355 INVESTMENT GROUP, LLC, dba FRE 355 | Case No. | 20-50628-SLJ |
|---|---|---|
| | **CHAPTER 11**<br>**MONTHLY OPERATING REPORT**<br>**(SMALL REAL ESTATE/INDIVIDUAL CASE)** | |

## SUMMARY OF FINANCIAL STATUS

**MONTH ENDED:** 05/31/20          **PETITION DATE:** 04/13/20

1. Debtor in possession (or trustee) hereby submits this Monthly Operating Report on the Accrual Basis of accounting (or if checked here ___ the Office of the U.S. Trustee or the Court has approved the Cash Basis of Accounting for the Debtor).
   Dollars reported in $1

| | | End of Current Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|---|
| 2. | **Asset and Liability Structure** | | | |
| | a. Current Assets | $37,416 | $37,146 | |
| | b. Total Assets | $15,037,415 | $15,037,139 | $14,999,999 |
| | c. Current Liabilities | $141,362 | $16,000 | |
| | d. Total Liabilities | $17,437,007 | $17,311,645 | $17,295,645 |

| | | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|---|
| 3. | **Statement of Cash Receipts & Disbursements for Month** | | | |
| | a. Total Receipts | $965 | $0 | $965 |
| | b. Total Disbursements | $688 | $1,005 | $1,020 |
| | c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | $277 | ($1,005) | ($55) |
| | d. Cash Balance Beginning of Month | ($1,054) | ($1,054) | $0 |
| | e. Cash Balance End of Month (c + d) | ($777) | ($2,059) | ($55) |

| | | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|---|
| 4. | **Profit/(Loss) from the Statement of Operations** | N/A | N/A | N/A |
| 5. | **Account Receivables (Pre and Post Petition)** | $0 | $0 | |
| 6. | **Post-Petition Liabilities** | $141,362 | $16,000 | |
| 7. | **Past Due Post-Petition Account Payables (over 30 days)** | $91,142 | $0 | |

**At the end of this reporting month:**

| | | Yes | No |
|---|---|---|---|
| 8. | Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9. | Have any payments been made to professionals? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 10. | If the answer is yes to 8 or 9, were all such payments approved by the court? | | X |
| 11. | Have any payments been made to officers, insiders, shareholders, relatives? (if yes, attach listing including date of payment, amount and reason for payment, and name of payee) | | X |
| 12. | Is the estate insured for replacement cost of assets and for general liability? | X | |
| 13. | Are a plan and disclosure statement on file? | | X |
| 14. | Was there any post-petition borrowing during this reporting period? | X | |

15. Check if paid: Post-petition taxes ___ ; U.S. Trustee Quarterly Fees ___ ; Check if filing is current for: Post-petition tax reporting and tax returns:
   (Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.)

I declare under penalty of perjury I have reviewed the above summary and attached financial statements, and after making reasonable inquiry believe these documents are correct.

Date: June 22, 2020          /s/ Melvin Vaughn
                             Responsible Individual

Revised 1/1/98

**Assets**

**Current Assets**

| | | Check if Exemption Claimed on Schedule C | Market Value |
|---|---|---|---|
| 1 | Cash and cash equivalents (including bank accts., CDs, ets.) | | $267 |
| 2 | Accounts receivable (net) | | $0 |
| 3 | Retainer(s) paid to professionals | | $37,149 * |
| 4 | Other: | | $0 |
| 5 | | | |
| 6 | **Total Current Assets** | | $37,416 |

**Long Term Assets (Market Value)**

| | | | |
|---|---|---|---|
| 7 | Real Property (residential) | | $14,999,999 |
| 8 | Real property (rental or commercial) | | $0 |
| 9 | Furniture, Fixtures, and Equipment | | $0 |
| 10 | Vehicles | | $0 |
| 11 | Partnership interests | | $0 |
| 12 | Interest in corportations | | $0 |
| 13 | Stocks and bonds | | $0 |
| 14 | Interests in IRA, Keogh, other retirement plans | | $0 |
| 15 | Other: | | $0 |
| 16 | | | |
| 17 | **Total Long Term Assets** | | $14,999,999 |
| 18 | **Total Assets** | | $15,037,415 |

**Liabilities**

**Post-Petition Liabilities**

**Current Liabilities**

| | | | |
|---|---|---|---|
| 19 | Post-petition not delinquent (under 30 days) | | $0 |
| 20 | Post-petition delinquent other than taxes (over 30 days) | | $91,142 |
| 21 | Post-petition delinquent taxes | | $0 |
| 22 | Accrued professional fees (estimated) | | $50,200 |
| 23 | Other: | | |
| 24 | Unsecured Post-Petition Borrowing Responsible Individual | | $20 |
| 25 | **Total Current Liabilities** | | $141,362 |
| 26 | **Long-Term Post Petition Debt** | | |
| 27 | **Total Post-Petition Liabilities** | | $141,362 |

**Pre-Petition Liabilities (allowed amount)**

| | | | |
|---|---|---|---|
| 28 | Secured claims (residence) | | $12,113,909 |
| 29 | Secured claims (other) | | $161,475 |
| 30 | Priority unsecured claims | | $0 |
| 31 | General unsecured claims | | $5,020,262 |
| 32 | **Total Pre-Petition Liabilities** | | $17,295,645 |
| 33 | **Total Liabilities** | | $17,437,007 |

**Equity (Deficit)**

| | | | |
|---|---|---|---|
| 34 | **Total Equity (Deficit)** | | |
| 35 | **Total Liabilities and Equity (Deficit)** | | $17,437,007 |

NOTE:
\* The Managing Member, Melvin Vaughn, made a pre-petition loan to the Debtor in the sum of $50,000 from funds which were derived from the sale of his 1960 Porsche. These funds were sent to Binder & Malter, LLP by wire at approximately 9:59 a.m. on April 13, 2020. The sum of $12,851.63 was applied to pre-petition attorneys' fees and costs, leaving an initial retainer in the sum of $37,148.37. Due to the emergency nature of the filing of this case, the retainer funds were deposited into an account held by Mora Estates 1, LLC, another company in which the Managing Member holds a 100% interest in. The initial retainer was wired directly from this account due to Mr. Vaughn's concern that the secured creditor who holds a deed of trust against the only asset of this estate was about to foreclose.

# SCHEDULES TO THE BALANCE SHEET

### Schedule A
### Rental Income Information

**List the Rental Information Requested Below By Properties (For Rental Properties Only)**

| | | **Property 1** | **Property 2** | **Property 3** |
|---|---|---|---|---|
| 1 | **Description of Property** | 0 | 0 | 0 |
| 2 | **Scheduled Gross Rents** | | | |
| | **Less:** | | | |
| 3 | **Vacancy Factor** | | | |
| 4 | **Free Rent Incentives** | | | |
| 5 | **Other Adjustments** | | | |
| 6 | **Total Deductions** | $0 | $0 | $0 |
| 7 | **Scheduled Net Rents** | $0 | $0 | $0 |
| 8 | **Less:  Rents Receivable (2)** | | | |
| 9 | **Scheduled Net Rents Collected (2)** | $0 | $0 | $0 |

(2) To be completed by cash basis reporters only.

### Schedule B
### Recapitulation of Funds Held at End of Month

| | | **Account 1** | **Account 2** | **Account 3** |
|---|---|---|---|---|
| 10 | **Bank** | Chase | | |
| 11 | **Account No.** | 1180 | | |
| 12 | **Account Purpose** | Checking | | |
| 13 | **Balance, End of Month** | $267 | | |
| 14 | **Total Funds on Hand for all Accounts** | $267 | | |

Attach copies of the month end bank statement(s), reconciliation(s), and the check register(s) to the Monthly Operating Report.

Revised 4/1/98

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
### Increase/(Decrease) in Cash and Cash Equivalents
### For the Month Ended ____05/31/20____

| | | Actual<br>Current Month | Cumulative<br>(Case to Date) |
|---|---|---|---|
| | **Cash Receipts** | | |
| 1 | Rent/Leases Collected | $0 | $0 |
| 2 | Cash Received from Sales | $0 | $0 |
| 3 | Interest Received | $0 | $0 |
| 4 | Borrowings - Pre-petition | $0 | $0 |
| 5 | Funds from Shareholders, Partners, or Other Insiders | $945 | $945 |
| 6 | Capital Contributions | $0 | $0 |
| 7 | Post-Petition borrowing Responsible Individual | $20 | $20 |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | **Total Cash Receipts** | $965 | $965 |
| | **Cash Disbursements** | | |
| 13 | Selling | $0 | $0 |
| 14 | Administrative | $0 | $0 |
| 15 | Insurance | $550 | $0 |
| 16 | Repairs and Maintenance | $123 | $0 |
| 17 | Interest Paid | $0 | $0 |
| | Rent/Lease: | | |
| 18 | Personal Property | $0 | $0 |
| 19 | Real Property | $0 | $0 |
| | Amount Paid to Owner(s)/Officer(s) | | |
| 20 | Salaries | $0 | $0 |
| 21 | Draws | $0 | $0 |
| 22 | Commissions/Royalties | $0 | $0 |
| 23 | Expense Reimbursements | $0 | $0 |
| 24 | Other | $0 | $0 |
| 25 | Salaries/Commissions (less employee withholding) | $0 | $0 |
| 26 | Management Fees | $0 | $0 |
| | Taxes: | | |
| 27 | Employee Withholding | $0 | $0 |
| 28 | Employer Payroll Taxes | $0 | $0 |
| 29 | Real Property Taxes | $0 | $0 |
| 30 | Other Taxes | $0 | $0 |
| 31 | Other Cash Outflows: | | |
| 32 | Secretary of State | $0 | $20 |
| 33 | | | |
| 34 | Transfer to Checking 9892 in error | $0 | $725 |
| 35 | Transfer to Checking 7223 in error | $0 | $220 |
| 36 | Bank charges | $15 | $55 |
| 37 | **Total Cash Disbursements:** | $688 | $1,020 |
| 38 | **Net Increase (Decrease) in Cash** | $277 | ($55) |
| 39 | **Cash Balance, Beginning of Period** | ($1,054) | |
| 40 | **Cash Balance, End of Period** | ($777) | ($55) |

Revised 1/1/98



# CHASE

**JPMorgan Chase Bank, N.A.**
P O Box 182051
Columbus, OH 43218- 2051

# EXHIBIT A

May 01, 2020 through May 29, 2020

Account Number: ████████ **1180**



| CUSTOMER SERVICE INFORMATION | |
| --- | --- |
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00019812 DRE 703 141 15120 YNNNNNNNNNN T 1 000000000 64 0000
FRE 355 INVESTMENT GROUP, LLC
DEBTOR-IN-POSSESSION 20-50628
PO BOX 3156
LOS ALTOS CA 94024-0156

## We updated the Funds Availability Policy in the Deposit Account Agreement

We increased the minimum amount of funds that we make available to you the next business day when you deposit a check. For more information, please see the Funds Availability Policy in the Deposit Account Agreement at chase.com/disclosures.

Please call the number on your statement if you have questions. We accept operator relay calls.

## CHECKING SUMMARY   Chase Total Business Checking

| | INSTANCES | AMOUNT |
| --- | --- | --- |
| **Beginning Balance** | | **-$9.16** |
| Deposits and Additions | 3 | 965.00 |
| ATM & Debit Card Withdrawals | 3 | -673.66 |
| Fees | 1 | -15.00 |
| **Ending Balance** | **7** | **$267.18** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
| --- | --- | --- |
| 05/01 | Online Transfer From Chk ...7223 Transaction#: 9541748127 | $20.00 |
| 05/22 | ATM Cash Deposit      05/22 199 Main St Los Altos CA Card 4534 | 900.00 |
| 05/22 | Online Transfer From Chk ...9892 Transaction#: 9655826769 | 45.00 |
| **Total Deposits and Additions** | | **$965.00** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
| --- | --- | --- |
| 05/28 | Card Purchase          05/27 State Farm  Insurance 800-956-6310 IL Card 4534 | $550.25 |
| 05/28 | Card Purchase With Pin  05/28 The Home Depot #6635 San Jose CA Card 4534 | 112.41 |
| 05/28 | Card Purchase With Pin  05/28 Lucky #723.Los Los Altos CA Card 4534 | 11.00 |
| **Total ATM & Debit Card Withdrawals** | | **$673.66** |

## ATM & DEBIT CARD SUMMARY

Melvin Vaughn  Card 4534

| | AMOUNT |
| --- | --- |
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $673.66 |

Case: 20-50628   Doc# 65-4 Filed: 06/02/2020 Entered: 06/02/2020 15:42:14 Page 36 of 92


May 01, 2020 through May 29, 2020

Account Number: ███████████ 1180

| | |
|---|---:|
| Total Card Deposits & Credits | $900.00 |
| **ATM & Debit Card Totals** | |
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $673.66 |
| Total Card Deposits & Credits | $900.00 |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---:|
| 05/29 | Monthly Service Fee | $15.00 |
| **Total Fees** | | **$15.00** |

You were charged a monthly service fee of $15.00 this period. You can avoid this fee in the future by maintaining a minimum daily balance of $1,500.00. Your minimum daily balance was -$9.16.

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 05/01 | $10.84 |
| 05/22 | 955.84 |
| 05/28 | 282.18 |
| 05/29 | 267.18 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---:|
| Checks Paid / Debits | 3 |
| Deposits / Credits | 0 |
| Deposited Items | 0 |
| **Transaction Total** | **3** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---:|
| Service Fee | $15.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$15.00** |
| Excessive Transaction Fees (Above 100) | $0.00 |
| **Total Service Fees** | **$15.00** |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

 **JPMorgan Chase Bank, N.A. Member FDIC**

FRE 355 Investment Group, LLC (Check Register May 1, 2020-May 29, 2020)

| Date | Bank | Account | Description | Amount | Type | Category | Receipt | Notes |
|------|------|---------|-------------|--------|------|----------|---------|-------|
| | | | Ending Balance | -9.16 | | | | |
| 5/29/20 | Chase Bank | TOTAL BUS CHK | Account Maintenance Fee | -15 | Business | Other business expenses | N | |
| 5/28/20 | Chase Bank | TOTAL BUS CHK | State Farm | -550.25 | Business | Homeowner/rental insurance | N | State Farm Homeowner Ins |
| 5/28/20 | Chase Bank | TOTAL BUS CHK | Home Depot | -112.41 | Business | Materials & Supplies | N | Outdoor Plant Replacemen |
| 5/28/20 | Chase Bank | TOTAL BUS CHK | Lucky | -11 | Business | Meals | N | Water for Open Houses |
| 5/22/20 | Chase Bank | TOTAL BUS CHK | Online Transfer Chk | 45 | Business | Transfer | N | Personal loan to FRE 355 |
| 5/22/20 | Chase Bank | TOTAL BUS CHK | ATM Cash Deposit 199 Main Street | 900 | Business | Income | N | Personal Loan to FRE 355 |
| 5/1/20 | Chase Bank | TOTAL BUS CHK | Online Transfer Chk | 20 | Business | Transfer | N | transaction#: 9541748127 |

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: MORA HOUSE , LLC | **Case No.**     20-50631-SLJ |
| | **CHAPTER 11<br>MONTHLY OPERATING REPORT<br>(SMALL REAL ESTATE/INDIVIDUAL CASE)** |

### SUMMARY OF FINANCIAL STATUS

**MONTH ENDED:**    5/31/120         **PETITION DATE:**      04/14/20

1. Debtor in possession (or trustee) hereby submits this Monthly Operating Report on the Accrual Basis of accounting (or if checked here
the Office of the U.S. Trustee or the Court has approved the Cash Basis of Accounting for the Debtor).
Dollars reported in    $1

| | | End of Current<br>Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|---|
| 2. | **Asset and Liability Structure** | | | |
| | a. Current Assets | $19,006 | $19,016 | |
| | b. Total Assets | $4,019,006 | $4,019,016 | $4,000,000 |
| | c. Current Liabilities | $15,000 | $7,500 | |
| | d. Total Liabilities | $13,051,821 | $13,044,321 | $13,036,820 |

| | | Current Month | Prior Month | Cumulative<br>(Case to Date) |
|---|---|---|---|---|
| 3. | **Statement of Cash Receipts & Disbursements for Month** | | | |
| | a. Total Receipts | $0 | $0 | $0 |
| | b. Total Disbursements | $10 | $0 | $10 |
| | c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | ($10) | $0 | ($10) |
| | d. Cash Balance Beginning of Month | $0 | $0 | $0 |
| | e. Cash Balance End of Month (c + d) | ($10) | $0 | ($10) |

| | | Current Month | Prior Month | Cumulative<br>(Case to Date) |
|---|---|---|---|---|
| 4. | **Profit/(Loss) from the Statement of Operations** | N/A | N/A | N/A |
| 5. | **Account Receivables (Pre and Post Petition)** | $0 | $0 | |
| 6. | **Post-Petition Liabilities** | $15,000 | $7,500 | |
| 7. | **Past Due Post-Petition Account Payables (over 30 days)** | $0 | $0 | |

| | At the end of this reporting month: | Yes | No |
|---|---|---|---|
| 8. | Have any payments been made on pre-petition debt, other than payments in the normal<br>course to secured creditors or lessors? (if yes, attach listing including date of<br>payment, amount of payment and name of payee) | | X |
| 9. | Have any payments been made to professionals? (if yes, attach listing including date of<br>payment, amount of payment and name of payee) | | X |
| 10. | If the answer is yes to 8 or 9, were all such payments approved by the court? | | |
| 11. | Have any payments been made to officers, insiders, shareholders, relatives? (if yes,<br>attach listing including date of payment, amount and reason for payment, and name of payee) | | X |
| 12. | Is the estate insured for replacement cost of assets and for general liability? | X | |
| 13. | Are a plan and disclosure statement on file? | | X |
| 14. | Was there any post-petition borrowing during this reporting period? | | X |

15. Check if paid: Post-petition taxes   ____;        U.S. Trustee Quarterly Fees   ____;   Check if filing is current for: Post-petition
tax reporting and tax returns:   ____.
(Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return
filings are not current.)

I declare under penalty of perjury I have reviewed the above summary and attached financial statements, and after making reasonable inquiry
believe these documents are correct.

Date:    June 22, 2020                      /s/ Melvin Vaughn
                                         Responsible Individual

Revised 1/1/98

| | Assets | Check if Exemption Claimed on Schedule C | Market Value |
|---|---|---|---|
| | **Current Assets** | | |
| 1 | Cash and cash equivalents (including bank accts., CDs, ets.) | | ($10) |
| 2 | Accounts receivable (net) | | $0 |
| 3 | Retainer(s) paid to professionals | | $19,016 |
| 4 | Other: | | |
| 5 | | | |
| 6 | **Total Current Assets** | | $19,006 |
| | **Long Term Assets (Market Value)** | | |
| 7 | Real Property (residential) | | $0 |
| 8 | Real property (rental or commercial) | | $4,000,000 |
| 9 | Furniture, Fixtures, and Equipment | | $0 |
| 10 | Vehicles | | $0 |
| 11 | Partnership interests | | $0 |
| 12 | Interest in corportations | | $0 |
| 13 | Stocks and bonds | | $0 |
| 14 | Interests in IRA, Keogh, other retirement plans | | $0 |
| 15 | Other: | | $0 |
| 16 | | | |
| 17 | **Total Long Term Assets** | | $4,000,000 |
| 18 | **Total Assets** | | $4,019,006 |
| | **Liabilities** | | |
| | **Post-Petition Liabilities** | | |
| | **Current Liabilities** | | |
| 19 | Post-petition not delinquent (under 30 days) | | $0 |
| 20 | Post-petition delinquent other than taxes (over 30 days) | | $0 |
| 21 | Post-petition delinquent taxes | | $0 |
| 22 | Accrued professional fees | | $15,000 |
| 23 | Other: | | $0 |
| 24 | | | |
| 25 | **Total Current Liabilities** | | $15,000 |
| 26 | **Long-Term Post Petition Debt** | | |
| 27 | **Total Post-Petition Liabilities** | | $15,000 |
| | **Pre-Petition Liabilities (allowed amount)** | | |
| 28 | Secured claims (residence) | | $0 |
| 29 | Secured claims (other) | | $13,011,821 |
| 30 | Priority unsecured claims | | $0 |
| 31 | General unsecured claims | | $25,000 |
| 32 | **Total Pre-Petition Liabilities** | | $13,036,821 |
| 33 | **Total Liabilities** | | $13,051,821 |
| | **Equity (Deficit)** | | |
| 34 | **Total Equity (Deficit)** | | ($9,114,730) |
| 35 | **Total Liabilities and Equity (Deficit)** | | $3,937,091 |

NOTE:

    * Binder & Malter, LLP received an initial retainer from the Managing Member, Melvin Vaughn who obtained the funds from a personal loan from a friend prior to the filing of the within petition. The funds were deposited into an account held by FRE 355 Investment Group, LLC, also a Debtor-In-Possession, Case No. 20-50328-SLJ, because this Debtor does not have a bank account.

# SCHEDULES TO THE BALANCE SHEET

### Schedule A
### Rental Income Information

**List the Rental Information Requested Below By Properties (For Rental Properties Only)**

| | | Property 1 | Property 2 | Property 3 |
|---|---|---|---|---|
| 1 | Description of Property | 0 | | |
| 2 | Scheduled Gross Rents | | | |
| | Less: | | | |
| 3 | Vacancy Factor | | | |
| 4 | Free Rent Incentives | | | |
| 5 | Other Adjustments | | | |
| 6 | Total Deductions | $0 | $0 | $0 |
| 7 | Scheduled Net Rents | $0 | $0 | $0 |
| 8 | Less:  Rents Receivable (2) | | | |
| 9 | Scheduled Net Rents Collected (2) | $0 | $0 | $0 |

(2) To be completed by cash basis reporters only.

### Schedule B
### Recapitulation of Funds Held at End of Month

| | | Account 1 | Account 2 | Account 3 |
|---|---|---|---|---|
| 10 | Bank | Chase | | |
| | | account opened in May 2020 | | |
| 11 | Account No. | | | |
| 12 | Account Purpose | Checking | | |
| 13 | Balance, End of Month | ($10) | | |
| 14 | Total Funds on Hand for all Accounts | ($10) | | |

Attach copies of the month end bank statement(s), reconciliation(s), and the check register(s) to the Monthly Operating Report.

Revised 11/1/98

# STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS

**Increase/(Decrease) in Cash and Cash Equivalents**

**For the Month Ended** _05/31/20_

|  |  | Actual<br>Current Month | Cumulative<br>(Case to Date) |
|---|---|---|---|
| | **Cash Receipts** | | |
| 1 | Rent/Leases Collected | $0 | $0 |
| 2 | Cash Received from Sales | $0 | $0 |
| 3 | Interest Received | $0 | $0 |
| 4 | Borrowings | $0 | $0 |
| 5 | Funds from Shareholders, Partners, or Other Insiders | $0 | $0 |
| 6 | Capital Contributions | $0 | $0 |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | **Total Cash Receipts** | $0 | $0 |
| | **Cash Disbursements** | | |
| 13 | Selling | $0 | |
| 14 | Administrative | $0 | |
| 15 | Capital Expenditures | $0 | |
| 16 | Principal Payments on Debt | $0 | |
| 17 | Interest Paid | $0 | |
| | Rent/Lease: | | |
| 18 | Personal Property | $0 | |
| 19 | Real Property | $0 | |
| | Amount Paid to Owner(s)/Officer(s) | | |
| 20 | Salaries | $0 | |
| 21 | Draws | $0 | |
| 22 | Commissions/Royalties | $0 | |
| 23 | Expense Reimbursements | $0 | |
| 24 | Other | $0 | |
| 25 | Salaries/Commissions (less employee withholding) | $0 | |
| 26 | Management Fees | $0 | |
| | Taxes: | | |
| 27 | Employee Withholding | $0 | |
| 28 | Employer Payroll Taxes | $0 | |
| 29 | Real Property Taxes | $0 | |
| 30 | Other Taxes | $0 | |
| 31 | Other Cash Outflows: | $0 | |
| 32 | Bank charges | $10 | $10 |
| 33 | | | |
| 34 | | | |
| 35 | | | |
| 36 | | | |
| 37 | **Total Cash Disbursements:** | $10 | $10 |
| 38 | **Net Increase (Decrease) in Cash** | ($10) | ($10) |
| 39 | **Cash Balance, Beginning of Period** | | |
| 40 | **Cash Balance, End of Period** | ($10) | ($10) |

Revised 11/1/98



# CHASE ◼

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218- 2051

May 15, 2020 through May 29, 2020

Account Number: ▮▮▮▮▮**5303**

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00021358 DRE 703 143 15120 NNNNNNNNNNN T 1 000000000 64 0000
MORA HOUSE LLC DEBTOR-IN-POSSESSION
20-50631
PO BOX 3156
LOS ALTOS CA 94024-0156



## CHECKING SUMMARY

Chase Total Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$0.00** |
| Deposits and Additions | 1 | 5.00 |
| Fees | 2 | -15.00 |
| **Ending Balance** | **3** | **-$10.00** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/18 | Service Fee Reversal | $5.00 |
| **Total Deposits and Additions** | | **$5.00** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/15 | Card Replacement Fee | $5.00 |
| 05/27 | Orig CO Name:Check OR Supply    Orig ID:1410216800 Desc Date:200522 CO Entry Descr:Order    Sec:PPD    Trace#:042000019576920 Eed:200527    Ind ID: Ind Name:Mora House LLC Trn: 1489576920Tc | 10.00 |
| **Total Fees** | | **$15.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 05/15 | -$5.00 |
| 05/18 | 0.00 |
| 05/27 | -10.00 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 0 |
| Deposits / Credits | 0 |
| Deposited Items | 0 |
| **Transaction Total** | **0** |


## SERVICE CHARGE SUMMARY *(continued)*

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $0.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 100) | $0.00 |
| **Total Service Fees** | **$0.00** |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

 **JPMorgan Chase Bank, N.A. Member FDIC**

EXHIBIT B

**EXHIBIT B**

MORA HOUSE, LLC (CHECK REGISTER) MAY 1, 2020-MAY 31, 2020)

| Date | Bank | Account | Description | Amount | Type | Category | Receipt | Notes |
|---|---|---|---|---|---|---|---|---|
| 5/31/20 | Chase Bank | TOTAL BUS CHK | ENDING BALANCE | -10.00 | | | | |
| 5/27/20 | Chase Bank | TOTAL BUS CHK | Check Fee charge | -10.00 | | Business Bank Charge | | |
| 5/18/20 | Chase Bank | TOTAL BUS CHK | Service Fee Reversal | 5 | Business | Income | N | |
| 5/15/20 | Chase Bank | TOTAL BUS CHK | Card | -5 | Business | Other business expenses | N | |

# EXHIBIT C

Capital Gains and Other Taxes Analysis for FRE 355 Investment Group, LLC and Mora House, LLC
Date:   7/1/2020

## MORA HOUSE:

**Tax Basis:**

| | |
|---|---|
| Original Purchase Price: | $2,500,000 |
| Improvements (estimated): | $350,000 |
| Capitalized Expenses: | $545,000 |
| Tax Basis | $3,395,000 |

**Tax Projections:**

| | |
|---|---|
| Estimated Selling Price: | $3,500,000 |
| Estimated sales expenses @7% | -$245,000 |
| Tax Basis: | -$3,395,000 |
| Net Projected Loss on Sale: | -$140,000 |

No capital gains tax on sale due to loss

California LLC projected taxes and fees   $6,800

**Cash flow Projections:**

| | |
|---|---|
| Estimated Selling Price: | $3,500,000 |
| Estimated sales expenses @7% | -$245,000 |
| Blanchard Deed of Trust (claim filed): | -$2,441,803 |
| S&R Release Price: | -$500,000 |
| Estimated Property Taxes (not filed) | -$116,838 |
| Estimated Net Cash from Sale: | $196,359 |

## FRE 355 INVESTMENT GROUP, LLC:

**Tax Basis:**

| | |
|---|---|
| Original Purchase Price: | $1,484,000 |
| Improvements (estimated): | $8,000,000 |
| Capitalized Expenses | $4,554,065 |
| Tax Basis | $14,038,065 |

**Tax Projections:**

| | |
|---|---|
| Estimated Selling Price: | $14,999,999 |
| Estimated sales expenses @7% | -$1,050,000 |
| Tax Basis: | -$14,038,065 |
| Net Projected Loss on Sale: | -$88,066 |

No capital gains tax on sale due to loss

California LLC projected taxes and fees   $12,590

**Cash flow Projections:**

| | |
|---|---|
| Estimated Selling Price: | $14,999,999 |
| Estimated sales expenses @7% | -$1,050,000 |
| S&R Claim Estimate (not filed) | -$13,000,000 |
| Estimated Property Taxes (claim filed): | -$255,300 |
| FTB Lien (not filed) | -$3,453 |
| EPS Plumbing Abstract Lien (not filed) | -$27,000 |
| Estimated Net Cash from Sale: | $664,246 |

## COMBINED SALE OF BOTH PROPERTIES:

**Tax Basis:**

| | |
|---|---|
| Tax Basis Mora House: | $3,395,000 |
| Tax Basis FRE: | $14,038,065 |
| Combined Tax Basis | $17,433,065 |

**Tax Projections:**

| | |
|---|---|
| Estimated Selling Price: | $17,500,000 |
| Estimated sales expenses @7% | -$1,225,000 |
| Combined Tax Basis: | -$17,433,065 |
| Net Projected Loss on Sale: | -$1,158,065 |

No capital gains tax on sale due to loss

California LLC projected taxes and fees   $19,390

**Cash flow Projections:**

| | |
|---|---|
| Estimated Selling Price: | $17,500,000 |
| Estimated sales expenses @7% | -$1,225,000 |
| S&R Claim Estimate (not filed) | -$13,000,000 |
| Blanchard Deed of Trust | -$2,441,803 |
| Mora House Est. Property Taxes | -$116,838 |
| FRE Estimated Property Taxes | -$255,300 |
| FTB Lien (not filed) | -$3,453 |
| EPS Plumbing Abstract Lien (not filed) | -$27,000 |
| Estimated Net Cash from Sale: | $430,606 |



# SYBARITE LUXURY REAL ESTATE

## 10718 MORA DRIVE MARKETING KIT

Case: 20-50628    Doc# 65    Filed: 07/10/20    Entered: 07/10/20 14:51:37    Page 37 of 42



Case: 20-50628    Doc# 65    Filed: 07/10/20    Entered: 07/10/20 14:51:37    Page 38 of
42



## WHO WE ARE

# syb·a·rite

/ˈsibəˌrīt/

noun

**a person who is self-indulgent in their fondness for sensuous luxury.**

Sybarite captures the essence of California's Bay Area—including luxury, elegance, altruism, and innovation.

With the support and strength of an elite team of seasoned real estate professionals, we manage every facet of clients' experiences seamlessly.

Case: 20-50628    Doc# 75-4    Filed: 07/28/20    Entered: 07/28/20 16:42:14    Page 047 of 92

Case: 20-50628    Doc# 65    Filed: 07/10/20    Entered: 07/10/20 14:51:37    Page 39 of 42

# 10718 MORA DRIVE MARKETING SCHEDULE



## MARKET PREPARATIONS

Photoshoot-Hire model for lifestyle photoshoot to highlight the outside/SIP living potential with David Eichler

Video and 3D Tour if needed

Floor Plan Design if needed

Dedicated Property Website Planning & Development

## COMING SOON PITCH

Contact personal sphere of high net worth clients, friends and modern home enthusiasts at Facebook/Yahoo/Google/Twitter/Professional athletes/LinkedIn/Box/Cortezyme/Coupa/ NerdWallet/Databricks/Tesla/Uber for example.

Personally reach out to select agents

Social Media Marketing (Instagram, Facebook, Twitter & Linkedin)

Compass Global Listings Feed

Compass Catch

Compass Private Exclusives

Compass Coming Soon

Top Agent Network

Coming Soon eBlast to the Top 100

The Network Group cross promotions amongst the Top Bay Area

Compass agents

## MARKET LAUNCHING

MLS & Website Activation (10718mora.com)

International & Domestic Syndication via Proxio Pro

ListGlobally – Worldwide promotion to potential buyers across

60+ countries

Invite select agents/clients for private in person or virtual tours

Catered Tour and event if SIP allows

Punch Magazine October Ad Placement

For Sale Eblast Sent to Top Agents

Juwai.com Chinese Marketing

Dwell Magazine submission

SF Curbed Story Pitch

Facebook & Instagram Paid Ads

Adwerx Advertising – Optimized ads for Facebook, websites, NewsFeeds, and in thousands of mobile apps

Social Media

048

# 10718 MORA DRIVE MARKETING SCHEDULE

## july

- Continue to stay in touch with and remind clients of the Mora House availability, value and potential as a SIP compound
- Luxury Homes Ad Placement
- Ongoing Juwai.com Campaign
- Ongoing Facebook & Instagram Paid Advertisements
- Private Broker + Client Showings
- Social media



## august

- High-End Magazine sent to all my past clients
- Capture Magazine Ad Placement
- Gentry Ad Placement
- Ongoing Juwai.com Campaign
- Ongoing Facebook & Instagram Paid Advertisements
- Private Broker + Client Showings
- Continue networking, selling and describing the values, architecture, potential, craftsmanship and exclusivity of the Mora House.
- Social media



Case: 20-50628    Doc# 75-4    Filed: 07/28/20    Entered: 07/28/20 16:42:14    Page 49 of 92

049

Case: 20-50628    Doc# 65    Filed: 07/10/20    Entered: 07/10/20 14:55:37    Page 50 of 92



# SYBARITE LUXURY REAL ESTATE

10718 MORA DRIVE MARKETING KIT

Case: 20-50628    Doc# 65    Filed: 07/10/20    Entered: 07/10/20 14:51:37    Page 42 of 42

# EXHIBIT 3

Michael W. Malter, Esq.  ID #96533
Robert G. Harris, Esq. ID #124678
Julie H. Rome-Banks, Esq. ID #142364
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050
Telephone: (408) 295-1700
Facsimile: (408) 295-1531
Email:  Michael@bindermalter.com
Email:  Rob@bindermalter.com
Email:  Julie@bindermatler.com

Attorneys for Debtors and Debtors-in-possession
FRE 355 Investment Group, LLC and Mora House, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, DIVISION 5

| | |
|---|---|
| In re:<br><br>FRE 355 INVESTMENT GROUP, LLC, dba FRE 355,<br><br>               Debtor. | Case No.  20-50628-SLJ<br><br>Cases Jointly Administered<br><br>Chapter 11 |
| In re<br><br>MORA HOUSE, LLC,<br><br>               Debtor. | Case No. 20-50631-SLJ<br><br>Chapter 11<br><br>DISCLOSURE HEARING:<br><br>Date: September 3, 2020<br>Time: 1:30 p.m.<br>Courtroom: 11 (telephonic) |

## DEBTORS' PLAN OF REORGANIZATION
### (JULY 10, 2020)

# TABLE OF CONTENTS

I.      DEFINITIONS ................................................................. 1

II.     TREATMENT OF UNCLASSIFIED CLAIMS ................................. 2

III.    TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ................. 3

        A.      Classes under Plan and Voting Rights Summary ................. 3

        B.      Treatment of Claims ........................................... 4

Class 1A – Blanchard Trust ........................................................ 4

Class 1B – S&R ................................................................... 4

Class 1C – Department of Tax & Collections ....................................... 5

Class 2A – S&R ................................................................... 5

Class 2B – Department of Tax & Collections ....................................... 5

Class 2C – EPS Plumbing .......................................................... 6

Class 3A – FRE 355 General Unsecured Claims ...................................... 6

Class 3B – Mora House LLC General Unsecured Claims ............................... 6

Class 4A – Equity Interests in FRE 355 ........................................... 7

Class 4B – Equity Interests in Mora House LLC .................................... 7

IV.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................... 7

        A.      Assumption and Rejection ..................................... 7

                1.      Contract Assumed. ................................... 7

                2.      Rejection of All Other Contracts Not Assumed. ....... 7

                3.      Claims Arising Out of Rejection. .................... 7

V.      MEANS OF EXECUTION. ............................................... 7

        A.      Reorganized Debtors. ......................................... 7

        B.      Marketing and Sale of Mora House and Mora Lot. ............... 8

        C.      Effect of Failure to Close Sale. ............................ 8

        D.      Effective Date Distribution. ................................ 8

        E.      Funding and Operation of Disputed Claims Reserve. ........... 9

        F.      Distributions Generally. .................................... 9

|   |      | G. | Powers of Reorganized Debtor. .......................................................... 11 |
| 1 |      |    |    |
| 2 | VI.  |    | EFFECT OF CONFIRMATION OF PLAN ................................................... 12 |
| 3 |      | A. | Confirmation Injunction. .................................................................. 12 |
| 4 |      | B. | Binding Effect. ............................................................................... 12 |
| 5 | VII. |    | RETENTION OF JURISDICTION ........................................................... 12 |
| 6 | VIII.|    | GENERAL PROVISIONS ...................................................................... 14 |
| 7 |      | A. | Preservation of Causes of Action. ...................................................... 14 |
| 8 |      | B. | Cramdown. ..................................................................................... 14 |
| 9 |      | C. | Severability. ................................................................................... 14 |
| 10|      | D. | Governing Law. .............................................................................. 14 |
| 11|      | E. | Notices. ......................................................................................... 14 |
| 12|      | F. | Post-Confirmation United States Trustee Fees. ..................................... 15 |
| 13|      | G. | Modification of Plan. ....................................................................... 15 |
| 14|      | H. | Withdrawal or Revocation of Plan. ..................................................... 16 |
| 15|      | I. | Failure of Effective Date. ................................................................. 16 |
| 16|      | J. | Post-Effective Date Notices. .............................................................. 16 |
| 17|      | K. | Plan Controls. ................................................................................. 16 |
| 18|      | L. | Applicable Law. .............................................................................. 16 |
| 19|      | M. | Implementation Orders. ..................................................................... 16 |

20
21
22
23
24
25
26
27
28

Debtors and debtors-in-possession FRE 355 Investment Group, LLC, dba FRE 355 and Mora House, LLC (collectively, the "Debtors") hereby propose their Chapter 11 Plan pursuant to section 1121 of the Bankruptcy Code. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.

## I. DEFINITIONS

Terms used in this Plan or the Disclosure Statement that are defined in the Bankruptcy Code or Bankruptcy Rules have the meaning assigned to them in the Bankruptcy Code and Rules.

1. ***"Addendum to Promissory Note"*** means that Addendum to Promissory Note Loan #10536 between S&R and FRE 355, dated December 11, 2018, which grants S&R an additional deed of trust collateralized by the Mora Lot and provides that "Lender shall release the real property interest in said property for a principal reduction of Five Hundred Thousand dollars ($500,000)."

2. ***"Administrative Claims Bar Date"*** means November 1, 2020.

3. "***Avoidance Actions***" means any actions commenced or that may be commenced before or after the Effective Date arising under Bankruptcy Code sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553, or under related state, federal, or foreign statutes and common law, including, without limitation fraudulent transfer laws.

4. ***"Blanchard Trust"*** means Richard and Esther Blanchard, Trustees of the Richard and Esther Blanchard 1990 Trust dated 10/1/1990.

5. ***"Disputed Claim Reserve"*** means cash withheld by the Debtors to pay any claims that are disputed, contingent or unliquidated and as to which no order sustaining an objection thereto has been entered or as to which no order estimating such claim for purposes of voting and distribution has been entered as of the Effective Date.

6. "***Effective Date***" means the sixtieth day following the date of the entry of the order of confirmation of the Plan if no notice of appeal from that order has been filed. If a notice of appeal has been filed, Debtors may waive the finality requirement and put the Plan into effect unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been

Case: 20-50628    Doc# 73-4    Filed: 07/10/20    Entered: 07/10/20 16:47:14    Page 55 of 92

Case: 20-50628    Doc# 63-4    Filed: 07/08/20    Entered: 07/08/20 14:37:21    Page 055 of 292

issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7. "*Effective Date Distribution*" means distribution on the Effective Date of the following: (a) 100% of allowed administrative claims without interest and (b) the first monthly payment to the Franchise Tax Board on account of its priority tax claim as described in Article II of this Plan.

8. "*Extended Marketing Period*" means the six-month period following the Initial Marketing Period for the Debtors to close a sale of the Mora House and Mora Lot.

9. "*FRE 355*" means FRE 355 Investment Group, LLC, dba FRE 355.

10. "*Initial Marketing Period*" means the six-month period after the Effective Date the Debtors have to close a sale of the Mora House and Mora Lot.

11. "*Mora House*" means the improved real property located at 10718 Mora Drive Los Altos, California 94024, Parcel No. 331-14-066 consisting of residence with 9,677 square feet of livable space and 6 bedrooms.

12. "*Mora Lot*" means the vacant land situated in Los Altos, California, Parcel No. 331-14-067, 1.4512 acres, Lot No. 3 adjacent to the Mora House.

13. "*Reorganized Debtors*" means the Debtors following entry of an order confirming the Plan.

14. "*S&R*" means S&R Income Fund I, LP, by and through Platinum Loan Servicing, Inc.

## II.    TREATMENT OF UNCLASSIFIED CLAIMS

Unsecured Priority Tax Claims

The State of California Franchise Tax Board ("FTB") filed a claim for unsecured priority taxes in the amount of $3,442.75 in the bankruptcy case of Mora House, LLC. This creditor will receive equal payments of $60 per month until sales of the Mora House and Mora Lot close, at which time the balance of FTB's priority tax claim will be paid in full with statutory interest.

///

///

<u>Non-Professional Ordinary Course Administrative Expense Claims</u>

The Debtors will pay non-professionals who hold administrative expense claims in the ordinary course as and when such amounts are due unless they agree to a different treatment.

<u>Professional Fees</u>

The Debtors will pay holders of allowed professional administrative expense claims approved by the Bankruptcy Court in cash on the Effective Date Distribution unless they agree to a different treatment.

Applications for compensation are to be filed within 60 days after the Effective Date unless the Debtors agree in writing to an extension of that deadline which extension agreement is then filed with the Court, except for the real estate broker appointed on behalf of the Debtor who shall request approval of compensation in connection with the sale of the Mora House and/or Mora Lot.

After the Effective Date and except as provided herein, the Debtors may incur and pay professional fees in the ordinary course without notice or court approval.

<u>Statutory U.S. Trustee Fees</u>

The Debtors will pay all fees owed to the United States Trustee pursuant to 28 U.S.C. §1930 within 15 days of billing by the United States Trustee after entry of an order confirming the Plan and as a condition thereof.

## III. TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

### A. Classes under Plan and Voting Rights Summary

| Class | Claimant | Secured/ Unsecured | Collateral | Impairment/ Voting |
|-------|----------|--------------------|------------|--------------------|
| Class 1A | Blanchard Trust | Secured | Mora Lot | Impaired Entitled to vote |
| Class 1B | S&R | Secured | Mora Lot | Impaired Entitled to vote |
| Class 1C | Department of Tax & Collections | Secured | Mora Lot | Impaired, entitled to vote |
| Class 2A | S&R | Secured | Mora House | Impaired, entitled to vote |
| Class 2B | Department of Tax & Collections | Secured | Mora House | Impaired, entitled to vote |

| Class 2C | EPS Plumbing | Secured | Mora House | Impaired, entitled to vote |
| Class 3A | FRE 355 General Unsecured Claims | Unsecured | N/A | Impaired, entitled to vote |
| Class 3C | Mora House LLC General Unsecured Claims | Unsecured | N/A | Impaired, entitled to vote |
| Class 4A | Equity Interests in FRE 355 | N/A | N/A | Unimpaired, deemed to accept |
| Class 4B | Equity Interests in Mora House LLC | N/A | N/A | Unimpaired, deemed to accept |

### B. Treatment of Claims

**Class 1A – Blanchard Trust**

Class 1A consists of the first-priority secured claim of the Blanchard Trust against the Mora Lot in the filed amount of $2,441,801.23. Under the Plan, the Blanchard Trust shall retain its lien against the Mora Lot to the extent of its allowed claim. The Blanchard Trust shall receive a single payment equal to the allowed amount of its claim with contract rate interest and reasonable attorneys' fees six months after the Effective Date or at such time that the Mora Lot is sold, whichever is sooner; provided, however that if S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then (1) S&R shall release its lien against the Mora Lot, and (2) the Debtors shall have the Extended Marketing Period to sell Mora Lot and Mora House and six additional months to pay Blanchard Trust's Class 1B claim. The Blanchard Trust shall retain without modification the right to advance $500,000 under the Addendum to Promissory Note to cause the release of the S&R lien from the Mora Lot.

**Class 1B – S&R**

Class 1B consists of the second priority secured claim of the S&R against the Mora Lot in the scheduled amount of $12,113,909.20 including interest and foreclosure fees. Under the Plan, S&R shall retain its lien against the Mora Lot to the extent of its allowed claim. S&R shall receive a single payment equal to the allowed amount of its claim with contract rate interest and reasonable attorneys' fees six months after the Effective Date or at such time that the Mora Lot is sold, whichever is sooner; provided, however that if S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then (1) S&R shall release its lien against the Mora Lot,

1 and (2) the Debtors shall have the Extended Marketing Period to sell Mora Lot and Mora House

2 and six additional months to pay S&R's Class 1B claim.

3 **Class 1C – Department of Tax & Collections**

4       Class 1C consists of the secured claim of the Department of Tax & Collections for unpaid

5 real property taxes secured against the Mora Lot in the amount of $113,837.60. Under the Plan,

6 the Department of Tax & Collections shall retain its lien against the Mora Lot to the extent of its

7 allowed claim. The Department of Tax & Collections shall receive a single payment equal to the

8 allowed amount of its claim with statutory interest six months after the Effective Date or at such

9 time that the Mora Lot is sold, whichever is sooner provided, however that if S&R receives a

10 $500,000 principal paydown under the Addendum to Promissory Note then (1) S&R shall release

11 its lien against the Mora Lot, and (2) the Debtors shall have the Extended Marketing Period to sell

12 Mora Lot and Mora House and six additional months to pay the Class 1C claim of the Department

13 of Tax & Collections .

14 **Class 2A – S&R**

15       Class 2A consists of the first priority secured claim of the S&R against the Mora House in

16 the scheduled amount of $12,113,909.20 including interest and foreclosure fees. Under the Plan,

17 S&R shall retain its lien against the Mora House to the extent of its allowed claim. S&R shall

18 receive a single payment equal to the allowed amount of its claim with contract rate interest and

19 reasonable attorneys' fees six months after the Effective Date or at such time that the Mora House

20 is sold, whichever is sooner; provided, however that if S&R receives a $500,000 principal

21 paydown under the Addendum to Promissory Note then (1) S&R shall release its lien against the

22 Mora Lot, and (2) the Debtors shall have the Extended Marketing Parioer to sell Mora Lot and

23 Mora House and six additional months to pay S&R's Class 2A claim.

24 **Class 2B – Department of Tax & Collections**

25       Class 2B consists of the secured claim of the Department of Tax & Collections secured

26 against the Mora House in the filed amount of $255,298.22 for unpaid real property taxes. Under

27 the Plan, the Department of Tax & Collections shall retain its lien against the Mora House to the

28 extent of its allowed claim. The Department of Tax & Collections shall receive a single payment

equal to the allowed amount of its claim with statutory interest six months after the Effective Date or at such time that the Mora House is sold, whichever is sooner; provided, however that if S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then (1) S&R shall release its lien against the Mora Lot, and (2) the Debtors shall have the Extended Marketing Period to sell Mora Lot and Mora House and six additional months to pay the Class 2B claim of the Department of Tax & Collections.

**Class 2C – EPS Plumbing**

Class 2C consists of the secured claim of EBS Plumbing against the Mora House in the amount of $27,000. Under the Plan, EPS Plumbing shall retain its lien against the Mora House to the extent of its allowed claim. EPS Plumbing shall receive a single payment equal to the allowed amount of its claim with contract rate interest six months after the Effective Date or at such time that the Mora House is sold, whichever is sooner; provided, however that if S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then (1) S&R shall release its lien against the Mora Lot, and (2) the Debtors shall have the Extended Marketing Period to sell Mora Lot and Mora House and six additional months to pay the Class 2C claim of EPS Plumbing.

**Class 3A – FRE 355 General Unsecured Claims**

Class 3A consists of the claims of holders of general unsecured claims against FRE 355. Holders of allowed claims in this class will receive payment of the allowed amount of their claims, without interest, from the net proceeds from sale of the Mora House after the full payment of all secured and priority claims. Payment shall be made six months after the Effective Date, unless S&R receives a $500,000 principal paydown under the Addendum to Promissory Note, in which case payment shall be made twelve months after the Effective Date or at such time that the Mora House is sold, whichever is sooner.

**Class 3B – Mora House LLC General Unsecured Claims**

Class 3B consists of the claims of holders of general unsecured claims against Mora House, LLC. Holders of allowed claims in this class will receive a pro rata distribution on the allowed amount of their claims, without interest, from the net proceeds from sale of the Mora Lot after the full payment of all secured and priority claims. Payment shall be made six months after

the Effective Date, unless S&R receives a $500,000 principal paydown under the Addendum to Promissory Note, in which case payment shall be made twelve months after the Effective Date or at such time that the Mora Lot is sold, whichever is sooner.

**Class 4A – Equity Interests in FRE 355**

Melvin Vaughn will retain his equity interests in FRE 355 without impairment.

**Class 4B – Equity Interests in Mora House LLC**

Melvin Vaughn will retain his equity interests in Mora House, LLC without impairment.

## IV. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Assumption and Rejection

#### 1. Contract Assumed.

The Debtors assume, to the extent it is necessary, the Addendum to Promissory Note.

#### 2. Rejection of All Other Contracts Not Assumed.

All other executory contracts not (a) previously assumed, assigned or rejected pursuant to final order of the Bankruptcy Court entered prior to the Effective Date, or (b) not subject to a pending motion to assume, assign or reject filed with the Bankruptcy Court prior to the Effective Date, will be deemed rejected as of the Effective Date.

#### 3. Claims Arising Out of Rejection.

Any claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Bankruptcy Court by no later than 30 calendar days after the confirmation of the Plan. If no proof of claim is filed within such time period, it will be forever barred from receiving a distribution from estate assets.

## V. MEANS OF EXECUTION.

### A. Reorganized Debtors.

The Debtors, as the Reorganized Debtors shall, from and after confirmation of the Plan, continue as the representatives of their respective estates and succeed without further order to all right, title and interest in all estate assets and property pursuant to the terms of the Plan. The Debtors will be authorized and empowered to take all actions and measures necessary to implement and administer the Plan. The Debtors will conduct their business and operate from

1   confirmation and through and after substantial consummation of the Plan. The Debtors may

2   continue to receive unsecured loans or equity advances from their sole member, Melvin Vaughn,

3   to pay the Debtors' respective ongoing costs of operations until a sale of the Mora House and

4   Mora Lot.

5         **B.**     **Marketing and Sale of Mora House and Mora Lot.**

6         The Debtors will advertise, show, market and sell the Mora House and Mora Lot and close

7   sales thereof in the Initial Marketing Period, within 6 months of the Effective Date; provided

8   however that if S&R receives a $500,000 principal paydown under the Addendum to Promissory

9   Note, the Debtors will have 6 more months to close sales of both the Mora House and Mora Lot

10   within the Extended Marketing Period.  After the Effective Date, the Debtors may extend their

11   listing agreements with Court appointed real estate broker, Phil Chen of Compass, without the

12   need for Court approval, but shall seek Court approval as a condition to entering into listing

13   agreements with any replacement broker.

14         **C.**     **Effect of Failure to Close Sale.**

15         In the event that sales of the Mora House and Mora Lot have not closed within Initial

16   Marketing Period or the Extended Marketing Period in the event that the Addendum to Promissory

17   Note has resulted in payment of $500,000 to S&R and release of its lien from the Mora Lot, all

18   holders of secured claims shall have immediate relief to exercise their rights and foreclose their

19   liens against their respective collateral without further order of the Bankruptcy Court.  Any party

20   may, following failure by the Debtors to close a sale of one or both of the Mora House and Mora

21   Lot within the periods set forth above, request conversion of these bankruptcy cases to Chapter 7

22   by filing an explanatory declaration with the Bankruptcy Court, uploading a proposed form of

23   order, and serving both with 10 days' notice and opportunity for hearing.

24         **D.**     **Effective Date Distribution.**

25         The Debtors will pay holders of allowed professional administrative expense claims in

26   cash on the Effective Date Distribution or at such later dates as the Court approves unless they

27   agree to a different treatment.

28   ///

E.      **Funding and Operation of Disputed Claims Reserve.**

The Reorganized Debtors will create the Disputed Claims Reserve by establishing at the time of closing of sale of the Mora House and Mora Lot a separate bank account and depositing into it cash equal to the face amount of all claims that are disputed, contingent or unliquidated. No deposit is required for a claim as to which an order disallowing the claim has been entered. A deposit is only required up to the amount at which a claim has been estimated should Debtors seek and obtain an order of the bankruptcy court for estimation of a disputed claim. If a disputed claim becomes an allowed claim, the Reorganized Debtors will immediately distribute to the claimant from the Disputed Claims Reserve the amount of the allowed claim that it would have been entitled to receive had it been an allowed claim on the confirmation date. Any funds no longer needed in reserve shall be released for use according to the terms of the Plan.

F.      **Distributions Generally.**

1.      **Best Efforts to Make Distributions.**

The Reorganized Debtors will not be obligated to make any distribution if it is reasonably expected that the cost of such distribution would exceed the amount of cash on hand. The Reorganized Debtors will make continuing efforts to administer the estate assets, make timely distributions, and will not unduly prolong the duration of the Reorganized Debtor's appointment.

2.      **Addresses for Delivery.**

If any distribution to a holder of an allowed claim is returned as undeliverable, no further distributions will be made to such holder unless and until the Reorganized Debtors is notified in writing of such holder's then-current address, at which time all currently due and missed distributions will be made to such holder. Undeliverable distributions will remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable or such distribution is cancelled.

3.      **Delivery of Distributions.**

Distributions may be delivered by first class mail, postage pre-paid. Mailings may be made to the address indicated on the latest notice of appearance or the latest proof of claim or

1   other paper filed by any of the foregoing in the Bankruptcy Court.  Absent any such filing, the

2   address set forth in the Debtor's schedules filed with the Bankruptcy Court may be used.

3       Distributions made in accordance with this provision will be deemed delivered whether

4   actually received or not.

5           **4.    Disputed Distributions.**

6       If any dispute arises as to the identity of a claimant who is to receive any distribution, the

7   Reorganized Debtors may, in lieu of making such distribution to such holder, make such

8   distribution into a segregated fund until the disposition thereof will be determined by Bankruptcy

9   Court order or by written agreement among the interested parties to such dispute.

10          **i.   DeMinimis Distributions.**

11      Notwithstanding any other provision of the Plan, Distributions of less than $50.00 need not

12  be made on account of any Allowed Claim; provided, however, that Distributions that would

13  otherwise be made but for this provision shall carry over to the next Distribution Date until the

14  cumulative amount to which any holder of an Allowed Claim is entitled to is more than $50.00, at

15  which time the cumulative amount of such Distributions will be paid to such holder.

16          **ii.  Withholding and Reporting Requirements.**

17      Any foreign, federal, state or local withholding taxes or other amounts required to be

18  withheld under applicable law will be deducted from any distributions hereunder.  All claimants

19  are required to provide any information necessary to withhold such taxes, including provision of a

20  FEIN or SSN to the Reorganized Debtor.  The Reorganized Debtors will be authorized to withhold

21  distribution on such claims until the requisite information is received.  If such information is not

22  received within one hundred and twenty (120) calendar days after the relevant distribution date,

23  distribution will be treated as unclaimed, and the claimant will forfeit its right to the distribution.

24  All distributions under the Plan will be net of the actual and reasonable costs of making such

25  distributions and of any allocable fees or other charges relating thereto.

26          **5.    Unclaimed Distributions.**

27      If any distribution remains unclaimed for a period of one hundred and twenty (120)

28  calendar days after the relevant distribution date, or any distribution check remains uncashed for

one hundred and twenty (120) calendar days after its issuance, the distribution will constitute an unclaimed distribution (hereafter referred to as an "Unclaimed Distribution"). Any uncashed check will be void, and the claimant will no longer be entitled to that distribution. Pursuant to Bankruptcy Code section 347(b), all right, title and interest in and the Unclaimed Distributions will immediately vest in the Debtors and be administered by the Reorganized Debtors pursuant to the terms of this Plan.

### G. Powers of Reorganized Debtor.

#### 1. Powers Generally and Power to Sue.

On the Effective Date, the Reorganized Debtors will be vested with all rights and powers of the Debtors under State and Federal law, including but not limited to the right to pursue all claims and causes of action that the Debtors have including avoidance actions, and any other causes of action, defenses, requests for subordination or recharacterization, or requests for any other equitable or legal relief that was or could have been asserted pre-petition by the Debtors against any party other than those which have been settled. The Reorganized Debtors may, on behalf of the Debtors, pursue, settle or release all such actions in accordance with the best interest of and for the benefit of the holders of allowed claims.

#### 2. Objections to and Estimation of Claims.

After the Effective Date, the Reorganized Debtors may file objections to claims. As to any claims arising from the rejection of an executory contract or unexpired lease pursuant to the Plan, the Reorganized Debtors may object within sixty (60) calendar days of the filing of any such claims. As to claims arising from the recovery of an avoidable transfer under chapter 5 of the Bankruptcy Code, the Reorganized Debtors may object within sixty (60) calendar days of the filing of any such claims.

#### 3. Settlements.

After the Effective Date the Reorganized Debtors will have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to claims, including without limitation, any objections to claims filed by the Debtors prior to the Effective Date. The Reorganized Debtors will provide notice and opportunity for hearing of any settlement.

1    **VI.    EFFECT OF CONFIRMATION OF PLAN**

2        **A.    Confirmation Injunction.**

3            On and after date of confirmation of the Plan, except to enforce the terms and conditions of

4    the Plan before the Bankruptcy Court or to implement the terms of the Plan, all persons and

5    entities who have held, hold or may hold any debt, claim, lien, encumbrance against or interest in

6    the Debtors are permanently enjoined from and after the date of entry of the order confirming the

7    Plan from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any

8    suit, action or other proceeding of any kind (including, without limitation, any proceeding in a

9    judicial, arbitral, administrative or other forum) against either the Debtors, their estates, their

10    property, or the Reorganized Debtors; (b) enforcing, levying, attaching (including, without

11    limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or

12    means whether directly or indirectly, of any judgment, award, decree or order against any of the

13    foregoing; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any

14    encumbrance of any kind against any of the foregoing (d) asserting any right of setoff,

15    subrogation, or recoupment of any kind, directly or indirectly, against any obligation due; and (e)

16    taking any actions in any place and in any manner whatsoever that do not conform to or comply

17    with the provisions of the Plan.

18        **B.    Binding Effect.**

19            Except as otherwise expressly provided in the Plan, as of the Effective Date, the provisions

20    of the Plan, a confirmation order, and any associated findings of fact or conclusions of law will

21    bind the Debtor, the Reorganized Debtors, and all holders of claims and interests against the

22    Debtors, regardless of whether such holders are impaired under the Plan or voted to accept.

23        **VII.    RETENTION OF JURISDICTION**

24            The Bankruptcy Court will retain jurisdiction over the Bankruptcy Case subsequent to the

25    date of Plan confirmation to the fullest extent permitted by law, including, without limitation, for

26    the following purposes:

27    ///

28    ///

A. To approve any proposed sale(s) of the Mora House and Mora Lot following one or more duly noticed motions including any sale free and clear of disputed liens and interests, and to enter orders as may be necessary and appropriate to aid in the close of escrows;

B. To determine any and all proceedings related to allowance of claims or objections thereto, including objections to classification and including, on an appropriate motion pursuant to Bankruptcy Rule 3008, reconsideration of claims that have been allowed or disallowed prior to confirmation;

C. To hear and determine any and all applications for compensation by professionals or any other fees and expenses authorized to be paid or reimbursed in accordance with the Bankruptcy Code or the Plan;

D. To determine any and all claims or causes of action, whether pending before the Bankruptcy Court at Plan confirmation or filed or instituted after that date;

E. To modify the Plan or the Disclosure Statement, or to remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court (including the confirmation order) as may be necessary to carry out the purposes and effects of the Plan;

F. To determine disputes regarding title of the property claimed to be property of the Debtors or their estates;

G. To ensure that distributions to holders of allowed claims are accomplished in accordance with the provisions of the Plan;

H. To enter such orders as may be necessary to consummate and effectuate the operative provisions of the Plan, including actions to enjoin enforcement of claims inconsistent with the terms of the Plan;

I. To hear and determine disputes concerning any event of default or alleged event of default under the Plan, as well as disputes concerning remedies upon any event of default under the Plan;

J. To hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

K. To enter a final decree closing the Debtors' bankruptcy cases;

///

**L.** To enter and implement such orders as may be appropriate in the event the confirmation order is for any reason stayed, reversed, revoked or vacated;

**M.** To hear and determine such other matters as may arise in connection with the Plan, the Disclosure Statement, or the confirmation order;

**N.** To hear and determine any dispute between the Reorganized Debtors and any creditor or defendant or plaintiff in litigation;

**O.** To approve any post-petition retainer payments to professionals; and,

**P.** To issue temporary restraining orders and preliminary injunctions.

## VIII.   GENERAL PROVISIONS

**A.   Preservation of Causes of Action.**

Any and all claims and other causes of action accruing to Debtors or estate, the right and power to object to any filed or scheduled claims, the right to pursue avoidance actions will be preserved and retained by the estate after the confirmation date, and the Reorganized Debtors on behalf of the estate will have the exclusive right and standing to enforce any such causes of action.

**B.   Cramdown.**

Pursuant to section 1129(b) of the Bankruptcy Code, Debtors reserve the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

**C.   Severability.**

If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**D.   Governing Law.**

Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

**E.   Notices.**

Any notice to Debtors will be in writing, and will be deemed to have been given six days after the date sent by first-class mail, postage prepaid and addressed as follows:

///

///

**Reorganized Debtors:**

  Mora House LLC
  FRE 355 Investment Group, LLC
  Attn: Melvin Vaughn
  10700 Mora Drive, Los Altos, CA 94022
  Email: c4scab@aol.com

  <u>With a copy to counsel</u>:
  Robert G. Harris, Esq.
  Binder & Malter, LLP
  2775 Park Avenue
  Santa Clara, CA 95050
  Facsimile: (408) 295-1531
  Email: rob@bindermalter.com

### F.    Post-Confirmation United States Trustee Fees.

Following confirmation, Debtors will continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtors is required to make these payments, Debtors will file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

### G.    Modification of Plan.

The Debtors reserve the right, in accordance with the Bankruptcy Code and Bankruptcy Rules, to amend or modify the Plan at any time prior to entry of an order confirming it. After entry of an order confirming the Plan but prior to the Effective Date, the Debtors may seek an order of the Bankruptcy Court to amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

After the Effective Date, the Reorganized Debtors may seek an order of the Bankruptcy Court to amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

///

///

1    The holder of an allowed claim that has accepted the Plan will be deemed to have accepted

2    the Plan as modified if the modification does not materially and adversely change the treatment of

3    the holder's claim.

4        **H.    Withdrawal or Revocation of Plan.**

5        The Debtors may withdraw the Plan at any time prior to its confirmation date.  If the

6    Debtors withdraw the Plan prior to confirmation, or if the Plan is not confirmed, then the Plan will

7    be deemed null and void and not binding on any person or entity.

8        **I.    Failure of Effective Date.**

9        In the event the Effective Date does not occur, nothing in this Plan will be binding on the

10   Debtors or any other person or entity or otherwise be of any force or effect.

11       **J.    Post-Effective Date Notices.**

12       Except as otherwise provided in the Plan, upon and after the Effective Date, notices will be

13   served only on the Office of the United States Trustee, the Reorganized Debtor, and those persons

14   who file with the Bankruptcy Court and serve upon the Reorganized Debtors a request, which

15   includes the person's name, contact individual, address, telephone number and facsimile number,

16   that such Person receive notice of post-Effective Date matters.  Persons who had previously filed

17   with the Bankruptcy Court requests for special notice of the proceedings and other filings in the

18   Bankruptcy Case will not receive notice of post-Effective Date matters unless such persons file a

19   new request in accordance with this Section.

20       **K.    Plan Controls.**

21       To the extent the terms of the Plan are inconsistent with the Disclosure Statement or any

22   document implementing the Plan, the terms of the Plan will be controlling.

23       **L.    Applicable Law.**

24       The Plan is to be governed by and construed under the Bankruptcy Code and the laws of

25   the State of California as they may be applicable.

26       **M.    Implementation Orders.**

27       The Bankruptcy Court may, at any time, make such orders and give such directions as

28   appropriate for consummation of the Plan pursuant to Bankruptcy Code section 1142

DEBTORS' PLAN OF REORGANIZATION (JULY 10, 2020)                                    Page 16

Case: 20-50628    Doc# 75-4 Filed: 07/10/2020 Entered: 07/10/2020 14:17:14 Page 16
Case: 20-50628    Doc# 64 Filed: 07/02/2020 Entered: 07/02/2020 14:42:14 Page 70
of 92

**070**

Dated:  July 10, 2020                      MORA HOUSE LLC


                                           By: _/s/ Melvin Vaughn_____
                                                Melvin Vaughn

                                           Its:  Managing Member

                                           FRE INVESTMENT GROUP LLC


Dated: July 10, 2020                       By: _/s/ Melvin Vaughn_____
                                                Melvin Vaughn

                                           Its:  Managing Member


July 10, 2020                              BINDER & MALTER, LLP


                                           By: _/s/ Robert G. Harris_____
                                                Robert G. Harris

                                           Attorneys for Debtors and Debtors-in-possession
                                           FRE 355 Investment Group, LLC and
                                           Mora House, LLC

# EXHIBIT 4

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

In re:  FRE 355 INVESTMENT GROUP, LLC, dba FRE 355

**Case No.**     20-50628-SLJ

**CHAPTER 11**
**MONTHLY OPERATING REPORT**
**(SMALL REAL ESTATE/INDIVIDUAL CASE)**

## SUMMARY OF FINANCIAL STATUS

**MONTH ENDED:**     06/30/20          **PETITION DATE:**     04/13/20

1.  Debtor in possession (or trustee) hereby submits this Monthly Operating Report on the Accrual Basis of accounting (or if checked here ☐ the Office of the U.S. Trustee or the Court has approved the Cash Basis of Accounting for the Debtor).
    Dollars reported in     $1

| | **End of Current Month** | **End of Prior Month** | **As of Petition Filing** |
|---|---|---|---|
| 2.  **Asset and Liability Structure** | | | |
| a.  Current Assets | $36,343 | $37,146 | |
| b.  Total Assets | $15,036,342 | $15,037,139 | $14,999,999 |
| c.  Current Liabilities | $254,895 | $141,362 | |
| d.  Total Liabilities | $17,550,540 | $17,437,007 | $17,295,645 |

| | **Current Month** | **Prior Month** | **Cumulative (Case to Date)** |
|---|---|---|---|
| 3.  **Statement of Cash Receipts & Disbursements for Month** | | | |
| a.  Total Receipts | $560 | $965 | $1,545 |
| b.  Total Disbursements | $1,634 | $688 | $2,654 |
| c.  Excess (Deficiency) of Receipts Over Disbursements (a - b) | ($1,074) | $277 | ($1,109) |
| d.  Cash Balance Beginning of Month | $267 | ($1,054) | ($787) |
| e.  Cash Balance End of Month (c + d) | ($807) | ($777) | ($1,896) |

| | **Current Month** | **Prior Month** | **Cumulative (Case to Date)** |
|---|---|---|---|
| 4.  **Profit/(Loss) from the Statement of Operations** | N/A | N/A | N/A |
| 5.  **Account Receivables (Pre and Post Petition)** | $0 | $0 | |
| 6.  **Post-Petition Liabilities** | $254,895 | $141,362 | |
| 7.  **Past Due Post-Petition Account Payables (over 30 days)** | $182,284 | $91,142 | |

| At the end of this reporting month: | **Yes** | **No** |
|---|---|---|
| 8.  Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9.  Have any payments been made to professionals?  (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 10. If the answer is yes to 8 or 9, were all such payments approved by the court? | | X |
| 11. Have any payments been made to officers, insiders, shareholders, relatives?  (if yes, attach listing including date of payment, amount and reason for payment, and name of payee) | | X |
| 12. Is the estate insured for replacement cost of assets and for general liability? | X | |
| 13. Are a plan and disclosure statement on file? | X | |
| 14. Was there any post-petition borrowing during this reporting period? | X | |

15.  Check if paid: Post-petition taxes ___ ;          U.S. Trustee Quarterly Fees ___ ; Check if filing is current for: Post-petition tax reporting and tax returns: ___ .
     (Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.)

I declare under penalty of perjury I have reviewed the above summary and attached financial statements, and after making reasonable inquiry believe these documents are correct.

Date:     July 20, 2020                    /s/ Melvin Vaughn
                                           Melvin Vaughn, Responsible Individual

Revised 1/1/98

# BALANCE SHEET
**(Small Real Estate/Individual Case)**
**For the Month Ended    06/30/20**

**Assets**

| | | Check if Exemption Claimed on Schedule C | Market Value |
|---|---|---|---|
| | **Current Assets** | | |
| 1 | Cash and cash equivalents (including bank accts., CDs, ets.) | | ($806) |
| 2 | Accounts receivable (net) | | $0 |
| 3 | Retainer(s) paid to professionals | | $37,149 * |
| 4 | Other: | | $0 |
| 5 | | | |
| 6 | **Total Current Assets** | | $36,343 |
| | **Long Term Assets (Market Value)** | | |
| 7 | Real Property (residential) | | $14,999,999 |
| 8 | Real property (rental or commercial) | | $0 |
| 9 | Furniture, Fixtures, and Equipment | | $0 |
| 10 | Vehicles | | $0 |
| 11 | Partnership interests | | $0 |
| 12 | Interest in corportations | | $0 |
| 13 | Stocks and bonds | | $0 |
| 14 | Interests in IRA, Keogh, other retirement plans | | $0 |
| 15 | Other: | | $0 |
| 16 | | | |
| 17 | **Total Long Term Assets** | | $14,999,999 |
| 18 | **Total Assets** | | $15,036,342 |

**Liabilities**

**Post-Petition Liabilities**

| | | | |
|---|---|---|---|
| | **Current Liabilities** | | |
| 19 | Post-petition not delinquent (under 30 days) | | $0 |
| 20 | Post-petition delinquent other than taxes (over 30 days) | | $182,284 |
| 21 | Post-petition delinquent taxes | | $0 |
| 22 | Accrued professional fees (estimated) | | $72,051 |
| 23 | Other: | | |
| 24 | Unsecured Post-Petition Borrowing Responsible Individual | | $560 |
| 25 | **Total Current Liabilities** | | $254,895 |
| 26 | **Long-Term Post Petition Debt** | | |
| 27 | **Total Post-Petition Liabilities** | | $254,895 |
| | **Pre-Petition Liabilities (allowed amount)** | | |
| 28 | Secured claims (residence) | | $12,113,909 |
| 29 | Secured claims (other) | | $161,475 |
| 30 | Priority unsecured claims | | $0 |
| 31 | General unsecured claims | | $5,020,262 |
| 32 | **Total Pre-Petition Liabilities** | | $17,295,645 |
| 33 | **Total Liabilities** | | $17,550,540 |

**Equity (Deficit)**

| | | | |
|---|---|---|---|
| 34 | **Total Equity (Deficit)** | | ($2,514,199) |
| 35 | **Total Liabilities and Equity (Deficit)** | | $15,036,342 |

NOTE:

# SCHEDULES TO THE BALANCE SHEET

### Schedule A
### Rental Income Information

**List the Rental Information Requested Below By Properties (For Rental Properties Only)**

| | | Property 1 | Property 2 | Property 3 |
|---|---|---|---|---|
| 1 | Description of Property | 0 | 0 | 0 |
| 2 | Scheduled Gross Rents | | | |
| | Less: | | | |
| 3 | Vacancy Factor | | | |
| 4 | Free Rent Incentives | | | |
| 5 | Other Adjustments | | | |
| 6 | Total Deductions | $0 | $0 | $0 |
| 7 | Scheduled Net Rents | $0 | $0 | $0 |
| 8 | Less:  Rents Receivable (2) | | | |
| 9 | Scheduled Net Rents Collected (2) | $0 | $0 | $0 |

(2) To be completed by cash basis reporters only.

### Schedule B
### Recapitulation of Funds Held at End of Month

| | | Account 1 | Account 2 | Account 3 |
|---|---|---|---|---|
| 10 | Bank | Chase | | |
| 11 | Account No. | 1180 | | |
| 12 | Account Purpose | Checking | | |
| 13 | Balance, End of Month | ($806) | | |
| 14 | Total Funds on Hand for all Accounts | ($806) | | |

Attach copies of the month end bank statement(s), reconciliation(s), and the check register(s) to the Monthly Operating Report.

# STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS

## Increase/(Decrease) in Cash and Cash Equivalents

### For the Month Ended ___06/30/20___

| | | Actual Current Month | Cumulative (Case to Date) |
|---|---|---|---|
| **Cash Receipts** | | | |
| 1 | Rent/Leases Collected | $0 | $0 |
| 2 | Cash Received from Sales | $0 | $0 |
| 3 | Interest Received | $0 | $0 |
| 4 | Borrowings - Pre-petition | $0 | $0 |
| 5 | Funds from Shareholders, Partners, or Other Insiders | $0 | $945 |
| 6 | Capital Contributions | $0 | $0 |
| 7 | Post-Petition borrowing Responsible Individual | $560 | $600 |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | **Total Cash Receipts** | $560 | $1,545 |
| | **Cash Disbursements** | | |
| 13 | Selling | $0 | $0 |
| 14 | Administrative | $0 | $0 |
| 15 | Insurance | $623 | $623 |
| 16 | Repairs and Maintenance | $7 | $7 |
| 17 | Interest Paid | $0 | $0 |
| | Rent/Lease: | | |
| 18 | Personal Property | $0 | $0 |
| 19 | Real Property | $0 | $0 |
| | Amount Paid to Owner(s)/Officer(s) | | |
| 20 | Salaries | $0 | $0 |
| 21 | Draws | $0 | $0 |
| 22 | Commissions/Royalties | $0 | $0 |
| 23 | Expense Reimbursements | $0 | $0 |
| 24 | Other | $0 | $0 |
| 25 | Housekeeper | $650 | $650 |
| 26 | Transportation | $75 | $75 |
| | Taxes: | | |
| 27 | Employee Withholding | $0 | $0 |
| 28 | Employer Payroll Taxes | $0 | $0 |
| 29 | Real Property Taxes | $0 | $0 |
| 30 | Other Taxes | $0 | $0 |
| 31 | Other Cash Outflows: | | |
| 32 | Secretary of State | $0 | $20 |
| 33 | Utilities | $162 | $162 |
| 34 | Transfer to Checking 9892 in error | $0 | $725 |
| 35 | Transfer to Checking 7223 in error | $0 | $220 |
| 36 | Bank charges | $117 | $172 |
| 37 | **Total Cash Disbursements:** | $1,634 | $2,654 |
| 38 | **Net Increase (Decrease) in Cash** | ($1,074) | ($1,109) |
| 39 | **Cash Balance, Beginning of Period** | $267 | ($787) |
| 40 | **Cash Balance, End of Period** | ($807) | ($1,896) |

Revised 1/1/98

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

In re: MORA HOUSE , LLC

**Case No.** ___20-50631-SLJ___

**CHAPTER 11**
**MONTHLY OPERATING REPORT**
**(SMALL REAL ESTATE/INDIVIDUAL CASE)**

## SUMMARY OF FINANCIAL STATUS

**MONTH ENDED:** ___06/30/20___       **PETITION DATE:** ___04/14/20___

1. Debtor in possession (or trustee) hereby submits this Monthly Operating Report on the Accrual Basis of accounting (or if checked here
   the Office of the U.S. Trustee or the Court has approved the Cash Basis of Accounting for the Debtor).
   Dollars reported in ___$1___

| | | End of Current Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|---|
| 2. | **Asset and Liability Structure** | | | |
| | a. Current Assets | $19,006 | $19,006 | |
| | b. Total Assets | $4,019,006 | $4,019,006 | $4,000,000 |
| | c. Current Liabilities | $19,781 | $15,000 | |
| | d. Total Liabilities | $13,056,602 | $13,044,321 | $13,036,820 |

| | | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|---|
| 3. | **Statement of Cash Receipts & Disbursements for Month** | | | |
| | a. Total Receipts | $40 | $0 | $40 |
| | b. Total Disbursements | $22 | $0 | $32 |
| | c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | $18 | $0 | $8 |
| | d. Cash Balance Beginning of Month | ($10) | $0 | ($10) |
| | e. Cash Balance End of Month (c + d) | $8 | $0 | ($2) |

| | | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|---|
| 4. | **Profit/(Loss) from the Statement of Operations** | N/A | N/A | N/A |
| 5. | **Account Receivables (Pre and Post Petition)** | $0 | $0 | |
| 6. | **Post-Petition Liabilities** | $19,781 | $7,500 | |
| 7. | **Past Due Post-Petition Account Payables (over 30 days)** | $0 | $0 | |

| At the end of this reporting month: | | Yes | No |
|---|---|---|---|
| 8. | Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9. | Have any payments been made to professionals? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 10. | If the answer is yes to 8 or 9, were all such payments approved by the court? | | |
| 11. | Have any payments been made to officers, insiders, shareholders, relatives? (if yes, attach listing including date of payment, amount and reason for payment, and name of payee) | | X |
| 12. | Is the estate insured for replacement cost of assets and for general liability? | X | |
| 13. | Are a plan and disclosure statement on file? | X | |
| 14. | Was there any post-petition borrowing during this reporting period? | X | |

15. Check if paid: Post-petition taxes ___;       U.S. Trustee Quarterly Fees ___; Check if filing is current for: Post-petition
    tax reporting and tax returns: ___.
    (Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return
    filings are not current.)

I declare under penalty of perjury I have reviewed the above summary and attached financial statements, and after making reasonable inquiry
believe these documents are correct.

Date:   July 20, 2020                        /s/ Melvin Vaughn
                                             Melvin Vaughn, Responsible Individual

Revised 1/1/98

**BALANCE SHEET**
**(Small Real Estate/Individual Case)**
**For the Month Ended**  06/30/20

| | Assets | Check if Exemption Claimed on Schedule C | Market Value |
|---|---|---|---|
| | **Current Assets** | | |
| 1 | Cash and cash equivalents (including bank accts., CDs, ets.) | | $8 |
| 2 | Accounts receivable (net) | | $0 |
| 3 | Retainer(s) paid to professionals | | $19,016 |
| 4 | Other: | | |
| 5 | | | |
| 6 | **Total Current Assets** | | $19,006 |
| | **Long Term Assets (Market Value)** | | |
| 7 | Real Property (residential) | | $0 |
| 8 | Real property (rental or commercial) | | $4,000,000 |
| 9 | Furniture, Fixtures, and Equipment | | $0 |
| 10 | Vehicles | | $0 |
| 11 | Partnership interests | | $0 |
| 12 | Interest in corportations | | $0 |
| 13 | Stocks and bonds | | $0 |
| 14 | Interests in IRA, Keogh, other retirement plans | | $0 |
| 15 | Other: | | $0 |
| 16 | | | |
| 17 | **Total Long Term Assets** | | $4,000,000 |
| 18 | **Total Assets** | | $4,019,006 |
| | **Liabilities** | | |
| | **Post-Petition Liabilities** | | |
| | **Current Liabilities** | | |
| 19 | Post-petition not delinquent (under 30 days) | | $0 |
| 20 | Post-petition delinquent other than taxes (over 30 days) | | $0 |
| 21 | Post-petition delinquent taxes | | $0 |
| 22 | Accrued professional fees | | $19,741 |
| 23 | Other: | | $0 |
| 24 | Unsecured Post-Petition Borrowing Responsible Indivi | | $40 |
| 25 | **Total Current Liabilities** | | $19,781 |
| 26 | **Long-Term Post Petition Debt** | | |
| 27 | **Total Post-Petition Liabilities** | | $19,781 |
| | **Pre-Petition Liabilities (allowed amount)** | | |
| 28 | Secured claims (residence) | | $0 |
| 29 | Secured claims (other) | | $13,011,821 |
| 30 | Priority unsecured claims | | $0 |
| 31 | General unsecured claims | | $25,000 |
| 32 | **Total Pre-Petition Liabilities** | | $13,036,821 |
| 33 | **Total Liabilities** | | $13,056,602 |
| | **Equity (Deficit)** | | |
| 34 | **Total Equity (Deficit)** | | ($9,114,730) |
| 35 | **Total Liabilities and Equity (Deficit)** | | $3,941,872 |

NOTE:
    * Binder & Malter, LLP received an initial retainer from the Managing Member, Melvin Vaughn who obtained the funds from a personal loan from a friend prior to the filing of the within petition. The funds were deposited into an account held by FRE 355 Investment Group, LLC, also a Debtor-In-Possession, Case No. 20-50328-SLJ, because this Debtor does not have a bank account.

Revised 1/1/98

# SCHEDULES TO THE BALANCE SHEET

### Schedule A
### Rental Income Information

**List the Rental Information Requested Below By Properties (For Rental Properties Only)**

|   |   | Property 1 | Property 2 | Property 3 |
|---|---|---|---|---|
| 1 | Description of Property | 0 | | |
| 2 | Scheduled Gross Rents | | | |
|   | Less: | | | |
| 3 | Vacancy Factor | | | |
| 4 | Free Rent Incentives | | | |
| 5 | Other Adjustments | | | |
| 6 | Total Deductions | $0 | $0 | $0 |
| 7 | Scheduled Net Rents | $0 | $0 | $0 |
| 8 | Less: Rents Receivable (2) | | | |
| 9 | Scheduled Net Rents Collected (2) | $0 | $0 | $0 |

(2) To be completed by cash basis reporters only.

### Schedule B
### Recapitulation of Funds Held at End of Month

|   |   | Account 1 | Account 2 | Account 3 |
|---|---|---|---|---|
| 10 | Bank | Chase | | |
|   |   | account opened in May 2020 | | |
| 11 | Account No. | | | |
| 12 | Account Purpose | Checking | | |
| 13 | Balance, End of Month | $8 | | |
| 14 | Total Funds on Hand for all Accounts | $8 | | |

Attach copies of the month end bank statement(s), reconciliation(s), and the check register(s) to the Monthly Operating Report.

Revised 1/1/98

# STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
## Increase/(Decrease) in Cash and Cash Equivalents
### For the Month Ended   06/30/20

| | | Actual Current Month | Cumulative (Case to Date) |
|---|---|---|---|
| **Cash Receipts** | | | |
| 1 | Rent/Leases Collected | $0 | $0 |
| 2 | Cash Received from Sales | $0 | $0 |
| 3 | Interest Received | $0 | $0 |
| 4 | Borrowings | $0 | $0 |
| 5 | Funds from Shareholders, Partners, or Other Insiders | $0 | $0 |
| 6 | Capital Contributions | $0 | $0 |
| 7 | Unsecured Post-Petition Borrowing Responsible Individual | $40 | $40 |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | **Total Cash Receipts** | $40 | $40 |
| **Cash Disbursements** | | | |
| 13 | Selling | $0 | |
| 14 | Administrative | $0 | |
| 15 | Capital Expenditures | $0 | |
| 16 | Principal Payments on Debt | $0 | |
| 17 | Interest Paid | $0 | |
| | Rent/Lease: | | |
| 18 | Personal Property | $0 | |
| 19 | Real Property | $0 | |
| | Amount Paid to Owner(s)/Officer(s) | | |
| 20 | Salaries | $0 | |
| 21 | Draws | $0 | |
| 22 | Commissions/Royalties | $0 | |
| 23 | Expense Reimbursements | $0 | |
| 24 | Other | $0 | |
| 25 | Salaries/Commissions (less employee withholding) | $0 | |
| 26 | Management Fees | $0 | |
| | Taxes: | | |
| 27 | Employee Withholding | $0 | |
| 28 | Employer Payroll Taxes | $0 | |
| 29 | Real Property Taxes | $0 | |
| 30 | Other Taxes | $0 | |
| 31 | Other Cash Outflows: | $0 | |
| 32 | Bank charges | $0 | $10 |
| 33 | Feed Cleaning Crews | $22 | $22 |
| 34 | | | |
| 35 | | | |
| 36 | | | |
| 37 | **Total Cash Disbursements:** | $22 | $32 |
| 38 | **Net Increase (Decrease) in Cash** | $18 | $8 |
| 39 | **Cash Balance, Beginning of Period** | ($10) | ($10) |
| 40 | **Cash Balance, End of Period** | $8 | ($2) |

Revised 1/1/98

# EXHIBIT 5

**Fill in this information to identify the case:**

Debtor 1    Mora House, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Northern   District of   California

Case number   20-50631-SLJ

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

The Richard and Esther Blanchard 1990 Trust
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor   Richard Blanchard

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

The Richard and Esther Blanchard 1990 Trust
Name

PO Box 3455
Number   Street

Los Altos    CA    94024
City    State    ZIP Code

Contact phone   (650) 948-3073

Contact email   r.blanchard.1946@ieee.org

**Where should payments to the creditor be sent?** (if different)

Name

Number   Street

City    State    ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on ____ / ____ / _____
    MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

| | | |
|---|---|---|
| 6. | **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

| | | |
|---|---|---|
| 7. | **How much is the claim?** | $_____ 2,441,803.28  **Does this amount include interest or other charges?**<br>(As of June 30, 2020 plus    ☐No<br>$273.22 per day thereafter.    ☑ Yes. Attach statement itemizing interest, fees, expenses, or other<br>See Attachment 1)              charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | | |
|---|---|---|
| 8. | **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Secured loan; real property see Attachment 2 (Promissory Note)<br>and Attachment 3 (Deed of Trust) |

| | | |
|---|---|---|
| 9. | **Is all or part of the claim secured?** | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:**    See Attachment 3: Deed of Trust<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**                 $____ 4,000,000.00<br>**Amount of the claim that is secured:**    $____ 2,441,803.28    (As of June 30, 2020 plus $273.22 per day thereafter, plus costs.)<br>**Amount of the claim that is unsecured:** $____ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**    $____ 2,420,765.03<br><br>**Annual Interest Rate** (when case was filed) ____ 5.00 %    See Attachment 1: Calculation of Outstanding Balance<br>☑ Fixed<br>☐ Variable |

| | | |
|---|---|---|
| 10. | **Is this claim based on a lease?** | ☑ No<br><br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____ |

| | | |
|---|---|---|
| 11. | **Is this claim subject to a right of setoff?** | ☑ No<br><br>☐ Yes. Identify the property: _____ |

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   07/06/2020
                   MM / DD / YYYY

/s/ Richard Blanchard
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Richard Blanchard for The Richard and Esther Blanchard 1990 Trust |
|---|---|
| | First name          Middle name          Last name |
| Title | Trustee |
| Company | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | PO Box 3455 |
| | Number     Street |
| | Los Altos          CA          94024 |
| | City          State     ZIP Code |
| Contact phone | (650) 948-3073          Email   r.blanchard.1946@ieee.org |

# EXHIBIT 6

**Fill in this information to identify the case:**

Debtor 1    FREE 355 Investment Group, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Northern District of California

Case number   20-50628

## Official Form 410

# Proof of Claim

12/15

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

County of Santa Clara Department of Tax & Collections
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Cnty. of Santa Clara Dept. of Tax & Collections
Name

852 N. First St.
Number   Street

San Jose     CA     95112
City     State     ZIP Code

Contact phone (408) 808 - 7962

Contact email Keesha.Arnst@fin.sccgov.org

**Where should payments to the creditor be sent?** (if different)

Name

Number   Street

City     State     ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known) 1

Filed on 05/11/2020
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Case 20-50628   Doc# 751-4   Filed 07/28/20   Entered 07/28/20 16:42:14   Page 1 of 92

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

**7. How much is the claim?**  $ _____ 255,298.22 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Real Estate Property Tax _____

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____

**Amount of the claim that is secured:** $ _____ 255,298.22

**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____ 255,298.22

**Annual Interest Rate** (when case was filed) 18.00 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Case 20-50628 Doc#151-4 Filed 07/28/20 Entered 07/28/20 16:42:14 Page 2 087 of 92

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ _____ |

\* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   05/12/2020
                  MM / DD / YYYY

*Pablo Gauna*
Signature

Print the name of the person who is completing and signing this claim:

| Name | Pablo | Gauna |
|---|---|---|
| | First name    Middle name | Last name |

Title   Supervising Account Clerk

Company   County of Santa Clara
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address   852 N. First St.
          Number    Street

San Jose                      CA          95112
City                          State       ZIP Code

Contact phone   (408) 808 - 7962        Email   Keesha.Arnst@fin.sccgov.org

# EXHIBIT 7

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Mora House, LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Northern District of California |
| Case number | 20-50631 |

## Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

---

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

County of Santa Clara Department of Tax & Collections
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Co. of Santa Clara Dept. of Tax and Collections | |
| Name | Name |
| 852 N. First St | |
| Number        Street | Number        Street |
| San Jose            CA          95112 | |
| City          State          ZIP Code | City          State          ZIP Code |
| Contact phone (408) 808 - 7962 | Contact phone _____ |
| Contact email Keesha.Arnst@fin.sccgov.org | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____ / __ / ____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

---

6. **Do you have any number you use to identify the debtor?**
   - ☑ No
   - ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. **How much is the claim?**    $_____ 116,837.60 . **Does this amount include interest or other charges?**
   - ☐ No
   - ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

   Limit disclosing information that is entitled to privacy, such as health care information.

   Real Estate Property Tax

9. **Is all or part of the claim secured?**
   - ☐ No
   - ☑ Yes. The claim is secured by a lien on property.

     **Nature of property:**
     - ☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
     - ☐ Motor vehicle
     - ☐ Other. Describe: _____

     **Basis for perfection:** _____
     Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

     **Value of property:**    $_____
     **Amount of the claim that is secured:**    $_____ 116,837.60

     **Amount of the claim that is unsecured:**   $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

     **Amount necessary to cure any default as of the date of the petition:**    $_____ 116,837.60

     **Annual Interest Rate** (when case was filed) 18.00 %
     - ☑ Fixed
     - ☐ Variable

10. **Is this claim based on a lease?**
    - ☑ No
    - ☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11. **Is this claim subject to a right of setoff?**
    - ☑ No
    - ☐ Yes. Identify the property: _____

Case 22-50681 Doc#7524 Filed 05/04/20 Entered 07/28/20 16:42:14 Page 2 of 3

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

---

| Part 3: | Sign Below |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  05/04/2020
                  MM / DD / YYYY

*Pablo Gauna*
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Pablo | | Gauna |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Supervising Account Clerk | | |
| Company | County of Santa Clara | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 852 N. First St. | | |
| | Number       Street | | |
| | San Jose | CA | 95112 |
| | City | State | ZIP Code |
| Contact phone | (408) 808 - 7962 | Email | Keesha.Arnst@fin.sccgov.org |