MARTA E. VILLACORTA (NY SBN 4918280)
Assistant United States Trustee
SUHEY RAMIREZ (NY SBN 5472022)
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
280 South First Street, Room 268
San Jose, CA  95113
Telephone:  (408) 535-5525 ext. 236
Facsimile:   (408) 535-5532
Email: suhey.ramirez@usdoj.gov

Attorneys for TRACY HOPE DAVIS
United States Trustee for Region 17

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re:<br><br>FRE 355 INVESTMENT GROUP, LLC,<br>dba FRE 355,<br><br>                Debtor.<br><br>In re:<br><br>MORA HOUSE, LLC,<br><br>                Debtor. | Case No. 20-50628 SLJ<br><br>Chapter 11<br><br>Date:     September 3, 2020<br>Time:    1:30 PM<br>Place:   Telephone or Vide Conference Only<br>Judge:  Honorable Stephen L. Johnson |

**OBJECTION OF THE UNITED STATES TRUSTEE AND RESERVATION OF RIGHTS WITH RESPECT TO THE DISCLOSURE STATEMENT TO THE DEBTORS' PROPOSED COMBINED PLAN OF REORGANIZATION AND DISCLOSURE <u>STATEMENT DATED JULY 10, 2020</u>**

Tracy Hope Davis, United States Trustee for Region 17 ("United States Trustee"), by and through her undersigned counsel, hereby files this objection ("Objection") to the Disclosure Statement for Debtors' Plan of Reorganization Dated July 10, 2020, ECF No. 65 ("Disclosure

UST Objection to Debtor's Disclosure Statement: FRE 355 Investment Group, LLC 20-50628   1

Case: 20-50628    Doc# 84    Filed: 08/27/20    Entered: 08/27/20 10:58:03    Page 1 of 11

Statement") filed by the above-captioned debtors (collectively, the "Debtors"), FRE 355 Investment Group, LLC ("FRE 355 Investment Group") and Mora House, LLC.

## I. INTRODUCTION

The United States Trustee objects to the approval of the Disclosure Statement because it does not meet the requirements of section 1125 of the Bankruptcy Code. Specifically, as further explained below, the Disclosure Statement: (1) lacks sufficient detail regarding the sale of the Properties (defined below) located in Los Altos, California; (2) fails to explain the tax and mortgage interest implications if the Properties are not sold within 6 months of the Effective Date; (3) lacks sufficient information regarding when the Paydown (defined below) is due to S&R, Debtors' primary secured creditor; (4) fails to explain what monies will be used to pay Chapter 11 administrative claims on the Effective Date if the Properties are not sold; (5) does not contain adequate information regarding EPS Plumbing's ("EPS") claim; (6) does not contain adequate information regarding the cramdown provision; (7) lacks information regarding the Debtors' eligibility for a discharge; and (8) does not contain adequate information regarding United States Trustee quarterly fees.

This is information that should be provided prior to the approval of the Disclosure Statement so that creditors and parties-in-interest may understand the treatment of their claims under the plan and whether to vote, or not to vote, for the plan. For these reasons, the United States Trustee objects to approval of the Disclosure Statement, and, absent amendment to address the objections raised herein, it should not be approved. The United States Trustee reserves her rights to object to any amended plan or disclosure statement filed.

To the extent that the Debtors fail to address these deficiencies, the United States Trustee reserves her rights to object to confirmation of the plan, and to object to any subsequently filed amended plan or disclosure statement filed prior to the hearing.

## II. JURISDICTION AND STANDING

Under 28 U.S.C. § 586(a)(3), the United States Trustee is charged with supervising the administration of cases and trustees "by, whenever the United States trustee considers it to be appropriate" taking certain action. *See* 28 U.S.C. §§ 586(a)(3)(A)-(I). This duty is part of the

United States Trustee's responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994). Under 11 U.S.C. § 307, the United States Trustee has standing to be heard and to object to the Plan and Disclosure Statement addressed herein. 11 U.S.C. § 307.

### III. BACKGROUND FACTS AND PROCEDURAL POSTURE

#### A. Summary of Facts

The Debtors, FRE 355 Investment Group and Mora House, LLC filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on April 13, 2020 and April 14, 2020, respectively, and they self-designated as single asset real estate cases.[1] ECF No. 1 and ECF No. 1 in Case No. 20-50631.[2] On April 16, 2020, the Court entered an order authorizing the joint administration of the Debtors. *See* ECF No. 13. Melvin Vaughn is the managing member and sole owner of the Debtors. *See* ECF No. 65 at 6. By order dated June 25, 2020, the Court authorized the retention of The Law Offices of Binder and Malter, to serve as counsel to the Debtors. *See* ECF No. 20 and ECF No. 26 in Case No. 20-50631.

The Debtors' section 341(a) meeting of creditors was held and concluded on May 5, 2020. *See* Dockets generally. Due to a lack of interest, no official committee of unsecured creditors has been appointed by the United States Trustee. *Id.*

According to its petition, the principal asset of FRE 355 Investment Group is a newly constructed single family dwelling located at 10718 Mora Drive, Los Altos, California ("Mora House"), valued at $14,999,999 and in an undeveloped parcel lot of approximately 1.47 acres located immediately adjacent to the Mora House, Parcel No. 331-14-067 (the "Mora Lot") valued at $4,000,000. *See* ECF No. 26. The sole asset of Mora House, LLC is the Mora Lot. *See* ECF No. 65 at 6.

---

[1] The United States Trustee respectfully requests that the Court take judicial notice of the Debtor's Petition, Schedules, Statement of Financial Affairs, and other documents filed therewith, and any amendments thereto which are in the Court's file in this case pursuant to Fed. R. Evid. 201, as made applicable by Fed. R. Bankr. P. 9017. The information contained in these documents, signed under penalty of perjury by Debtor, are admissions of the Debtor pursuant to Fed. R. Evid. 801(d).

[2] "ECF No." refers to the main bankruptcy docket for case number 20-50628 SLJ.

UST Objection to Debtor's Disclosure Statement: FRE 355 Investment Group, LLC 20-50628    3

Both the Mora House and the Mora Lot (collectively, the "Properties") are encumbered by the secured debt of S&R. *See* ECF No. 65 at 6. FRE 355 Investment Group and S&R are parties to an Addendum to Promissory Note Loan #10536 dated December 11, 2018, which granted S&R an additional deed of trust collateralized by the Mora Lot and provides that "Lender shall release the real property interest in said property for a principal reduction of Five Hundred Thousand dollars ($500,000)." *Id*. at 7.

On June 5, 2020 the Debtors filed an Application to Employ Phil Chen as Real Estate Broker and for Order Approving Listing Agreements for Sale of the Mora House and Mora Lot (the "Broker Retention Application"), which was approved by the Bankruptcy Court by order dated June 16, 2020. *See* ECF Nos. 53, 58 and 59. According to the listing agreements attached to the Broker Retention Application, the Mora House is currently being marketed at $14,999,999 while the Mora Lot has been listed for $4,000,000. *See* ECF No. 53 at Exhibits A and B. However, if the Properties are sold together, the total purchase price is $17,500,000. *See* ECF No. 53 at Exhibit C.

According to the FRE 355 Investment Group's Schedules, the following debts are owed:

    a. Schedule D: Secured Claims     $12,255,383.74

    b. Schedule E: Priority Unsecured Claims     $0.00

    c. Schedule F: Nonpriority Unsecured Claims     $4,165,014.69

*See* ECF Nos. 26 and 68.

According to Mora House, LLC's Schedules, the following debts are owed:

    a. Schedule D: Secured Claims     $13,011,820.46

    b. Schedule E: Priority Unsecured Claims     $0.00

    b. Schedule F: Nonpriority Unsecured Claims     $25,000.00

*See* Case No. 20-50631, ECF No. 22.

Platinum Loan Servicing, Inc. ("PLS") as servicing agent for S&R, filed a Motion to Dismiss Chapter 11 Cases on July 22, 2020, arguing among other things that the Debtors' Plan is patently infeasible and a sham delay tactic. *See* ECF No. 69 at 4. PLS also argues that "the Debtors' distribution analysis that results in $430,606 to pay unsecured creditors on a $19

million sale is based on PLS receiving only $13 million at closing, however, the amount due PLS as of July 7, 2020 is $13,173,440.49 and increases by at least $136,000 monthly plus cost." *See* ECF No. 69 at 5. The Debtors filed an Opposition to the Motion to Dismiss on August 5, 2020, and the matter will be heard on September 29, 2020. *See* ECF Nos. 79 at 1 and 82. To date, PLS has not filed an objection to the Debtors' Disclosure Statement. *See* Docket generally.

## B. Relevant Liquidating Plan Provisions[3]

1. <u>Feasibility.</u>  The Disclosure Statement states that the Mora House and Mora Lot will sell for list prices, $14,999,000 and $4,000,000 respectively. *See* ECF No. 65 at 9. However, according to the listing agreements attached to the Broker Employment Application there is a possibility that the Properties will be sold together for $17,500,000. *See* ECF No. 53 at Exhibit C.

2. <u>Cash at Closing</u>. The Disclosure Statement indicates that the cash at closing will be $6,275,000 and that the Chapter 11 Administrative Claims of $20,000 will be paid on the Effective Date. *See* ECF No. 65 at 11. The Effective Date is defined in the Chapter 11 Plan of Reorganization (the "Plan") as the sixtieth day following the date of the entry of the order of confirmation of the Plan if no notice of appeal from that order has been filed. *See* ECF No. 64 at 1. According to the latest monthly operating reports ("MORs") filed on August 20, 2020, the Debtors have negative $798.00 cash on hand, combined. *See* ECF No. 83 and ECF No. 34 in Case No. 20-50631.

3. <u>Marketing and Sale of Mora House and Mora Lot.</u> The Disclosure Statement states that the Debtors will advertise, show, market and sell the Properties and close sales thereof in the Initial Marketing period, within 6 months of the Effective Date; however if the mortgage lien holder, S&R receives a $500,000 principal paydown, the Debtors will have 6 more months to close sales of the Properties within the Extended Marketing Period. *See* ECF No. 65 at 12.

4. <u>Effective Date Distribution.</u>  The Disclosure Statement indicates that the Debtors will

---

[3] All undefined capitalized terms have the same definitions assigned to them under the Liquidating Plan, ECF No. 64 at 1-2.

pay holders of allowed professional administrative expense claims in cash on the Effective Date. *See* ECF No. 65 at 13.

     5.    <u>Class 2(c)- EPS Plumbing</u>. The Disclosure Statement lists EPS Plumbing ("EPS") holding a secured claim in the amount of $27,000. *See* ECF No. 65 at 4. The Debtors initially listed EPS holding a nonpriority unsecured creditor in the amount of $25,000, but later amended Schedule E/F and EPS is no longer listed as a creditor. *See* ECF No. 34 at 1 and ECF No. 68.

     6.    <u>Cramdown.</u> The Disclosure Statement indicates that pursuant to section 1129(b) of the Bankruptcy Code, the Debtors reserve the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors. *See* ECF No. 65 at 17.

     7.    <u>Reorganized Debtors</u>. The Debtors indicate on page 12 that the Debtors will conduct their business and operate from confirmation and through and after substantial consummation of the Plan.

     8.    <u>United States Trustee Quarterly Fees.</u> The Debtors' Plan states that "[f]ollowing confirmation, Debtors will continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6)." *See* ECF No. 64 at 3.

### IV.    <u>ARGUMENT</u>

**A. The Governing Law.**

To satisfy the requirements of adequate information under 11 U.S.C. § 1125, a disclosure statement "must contain the necessary financial information, data, and projections relevant to the creditor's decision to accept or reject the Chapter 11 plan." *In re Ferguson*, 474 B.R. 466, 476 (Bankr. D.S.C. 2012); *see also Harper v. Oversight Comm. (In re Conco, Inc.)*, 855 F.3d 703, 714 (6th Cir. 2017) ("While the Bankruptcy Code does not precisely define "adequate disclosure," the disclosure statement must contain enough information to comport with the purpose of requiring a disclosure statement."). The importance of full disclosure is clear since there is substantial reliance placed upon the disclosure statement by the creditors and the court. *Currithers v. FedEx Ground Package Sys., Inc.*, 2012 U.S. Dist. LEXIS 13848, *11-12 (E.D. Mich. Feb. 6, 2012) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988)). Given this reliance, the Debtor-in-Possession's obligation to provide sufficient data to satisfy the Code standard of

"adequate information" is of substantial concern. *Id.* Adequate information is "a flexible concept that permits the degree of disclosure to be tailored to the particular situation." *Official Committee of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715, 718-19 (Bankr. E.D. Cal. 1992). However, at an "irreducible minimum," a disclosure statement must provide information about the plan and how its provisions will be affected. *Id.* What is adequate is a subjective determination to be made on a case-by-case basis. *In re Brotby*, 303 B.R. 177, 193 (9th Cir. B.A.P. 9th Cir. 2003) (quoting *In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988).

**B. The Disclosure Statement Fails to Provide Adequate Information as Required by Section 1125 of the Bankruptcy Code.**

The Disclosure Statement fails to meet the requirements of Section 1125. Specifically, it does not contain "adequate information," in the following ways:

**1. The Disclosure Statement Contains Inadequate Information Regarding the Sale of the Properties.**

On Page 6 of the Disclosure Statement, the Debtors indicated that the Properties have been marketed concurrently. *See* ECF No. 65 at 6. However, on pages 9 and 10 of the Disclosure Statement, the Debtors state that the Mora House and Mora Lot will sell for list prices, $14,999,000 and $4,000,000, respectively. *See* ECF No. 65 at 9 and 10. According to the listing agreements attached to the Broker Retention Application there is a possibility that the Properties will be sold together for $17,500,000. *See* ECF No. 53 at Exhibit C. There is no discussion regarding the reasonable probability of success if the Properties are sold concurrently for $17,500,000 instead of separately for a total purchase price of $18,499,000. The Debtors should provide this information and explain how the plan provision regarding feasibility will be affected. *See In re Michelson*, 141 B.R. 715, 718-19. Accordingly, the Disclosure Statement should be amended to include this information.

**2. The Disclosure Statement Fails to Explain the Tax and Mortgage Interest Implications if the Properties are Not Sold Within 6 months of the Effective Date.**

On page 12 of the Disclosure Statement, the Debtors state they will advertise, show, market and sell the Properties and close sales thereof in the Initial Marketing Period, within 6 months of the Effective Date. *See* ECF No. 65 at 12. The Disclosure Statement does not explain what

property taxes and interest mortgage payments will become due during this time or how they will be paid if the Properties are not sold within 6 months of the Effective Date. There is no discussion regarding the feasibility of the Plan when considering both the property taxes and mortgage interest increase if the Properties are not sold within 6 months of the Effective Date. The Debtors should provide this information and explain how the plan provision regarding feasibility will be affected. *See In re Michelson*, 141 B.R. 715, 718-19. Accordingly, the Disclosure Statement should be amended to include this information.

### 3. The Disclosure Statement Does Not State When the Paydown Will Be Paid to S&R.

On page 6 of the Disclosure Statement, the Debtors indicate that if S&R receives $500,000 as a principal paydown (the "Paydown") for the mortgage on the Properties, then the Debtors will have an additional 6 months to sell the Properties. *See* ECF No. 65 at 12. There is no discussion how the Paydown to S&R will affect the feasibility of the Plan. The Debtors should provide this information and explain how the plan provision regarding feasibility will be affected. *See In re Michelson*, 141 B.R. 715, 718-19. Consequently, the Disclosure Statement should be revised to include this information.

### 4. The Disclosure Statement Fails to Explain What Monies Will be Used to Pay Chapter 11 Administrative Claims on the Effective Date if the Properties are Not Sold.

On page 13 of the Disclosure Statement, the Debtors indicate that the cash at closing will be $6,275,000. *See* ECF No. 65 at 11. The Disclosure Statement also provides that the Chapter 11 Administrative Claims of $20,000 will be paid on the Effective Date. *Id.* As mentioned above, the Effective Date is the sixtieth day following the date of the entry of the order of confirmation of the Plan if no notice of appeal from that order has been filed. *See* ECF No. 64 at 1. Per a review of the Debtors' July 2020 MORs, the Debtors have negative $798.00 cash on hand, combined. *See* ECF No. 83 and ECF No. 34 in Case No. 20-50631. The Debtors should explain how the administrative expense claims will be paid on the Effective Date if the Properties are not sold by the Effective Date considering the negative cash flow. *See In re Michelson*, 141 B.R. 715, 718-19. Accordingly, the Disclosure Statement should be amended to provide information with respect

to the reasonable probability that the administrative claims can in fact be paid on the Effective Date before any Disclosure Statement is approved.

### 5. The Disclosure Statement Does Not Contain Adequate Information Regarding the EPS Claim.

The Debtors initially listed EPS holding a nonpriority unsecured creditor in the amount of $25,000, but later amended Schedule E/F and EPS is no longer listed as a creditor. *See* ECF No. 34 at 1 and ECF No. 68. However, the Disclosure Statement indicates that EPS (Class 2C) holds a secured claim of $27,000, which will be paid six months after the Effective Date. *See* ECF No. 65 at 4. Given the factual discrepancy and lack of information, it is unclear why EPS was listed as a secured creditor in the Disclosure Statement. The Debtors never amended Schedule D to include EPS. *See* Docket generally. Also, per a review of the docket, it does not appear that EPS filed a proof of claim alleging to have a secured claim. *Id.* Accordingly, the Debtors should amend their Disclosure Statement and explain this discrepancy.

### 6. The Disclosure Statement Does Not Contain Adequate Information Regarding the Cram Down Provision.

On page 17 of the Disclosure Statement, the Debtors reserve their right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors without any additional information. *See* ECF No. 65 at 17. It is misleading to suggest to creditors that the Debtors may invoke 11 U.S.C. § 1129(b) without an explanation. If the invocation of "cram down" is intended, the Disclosure Statement should contain a brief summary of the operation of Section 1129(b) as it would affect the class in question, as well as a brief outline of the "fair and equitable" standard that would be applied should "cram down" be invoked. *See In re One Times Square Assocs. Ltd. Partnership*, 159 B.R. 695, 706-08 (Bankr. S.D.N.Y. 1993). Accordingly, the Disclosure Statement should be amended to include this information.

//

//

//

### 7. The Disclosure Statement Should Include a Provision that the Debtors Are Not Entitled to a Discharge.

Section 1141(d)(3) provides that the confirmation of a bankruptcy plan does not discharge a bankruptcy debtor if: (A) the plan provides for the liquidation of all or substantially all of the property of the bankruptcy estate; (B) the debtor does not engage in business after consummation of the plan; and (C) the debtor would be denied a discharge under 11 U.S.C. § 727(a) if the case were a case under chapter 7. *See In re Western Asbestos Co.*, 313 B.R. 832, 853 (Bankr. N.D. Cal. 2003) ("A corporate chapter 11 debtor receives a discharge from all pre-petition debts unless the plan provides for the liquidation of all or substantially all of the property of the debtor's bankruptcy estate and the debtor does not intend to engage in business after consummation of the plan.").

Here, the Debtors have proposed a Liquidating Plan. *See* ECF Nos. 64 and 65. The Debtors indicate on page 12 that they will conduct their business and operate from confirmation and through and after substantial consummation of the Plan. *See* ECF No. 65 at 12. The Disclosure Statement does not indicate that the Debtors intend to engage in business after consummation of the Plan. *Id.* Further, creditors should not bear the burden of determining what additional information/updates not disclosed in the Disclosure Statement are also a part of the Debtors' plan. *In re Ferguson*, 474 B.R. 466, 476 (Bankr. D.S.C. 2012) ("A disclosure statement is more than merely a ministerial task that precedes a confirmation hearing that can be updated at any time."). Absent further information, it does not appear the Debtors are entitled to a discharge. Accordingly, the Disclosure Statement should be amended to accurately reflect all the relevant provisions of the Debtors' Plan (including the lack of discharge provision).

### 8. The Disclosure Statement Does Not Contain Adequate Information Regarding United States Trustee Quarterly Fees.

The United States Trustee is authorized by law to collect a mandatory quarterly fee from every debtor who files a chapter 11 bankruptcy case. *See* 28 U.S.C. § 1930(a)(6); *see also Sanders v. United States Trustee (In re Sanders),* No. CC-12-1398, 2013 WL 1490971 (B.A.P. 9th Cir. April 11, 2013) (citing *Tighe v. Celebrity Home Entm't, Inc. (In re Home Entm't, Inc.)*, 210 F.3d 995, 998 (9th Cir. 2000) (noting that Congress specifically "extend[ed] quarterly fees

payable by Chapter 11 debtors to the U.S. Trustee into the post-confirmation period")).

Additionally, the Debtors are required to pay any attendant interest in connection with any delinquent quarterly fees. *See* 31 U.S.C. § 3717.

Here, the Debtors' Plan states that "[f]ollowing confirmation, Debtors will continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6)." *See* ECF No. 64 at 3. However, there is no discussion regarding the Debtors' requirement to pay any attendant interest in connection with any delinquent quarterly fees. Accordingly, the Disclosure Statement should be amended to include this information.

## V.     CONCLUSION

For the foregoing reasons, the Disclosure Statement should not be approved until the Debtor files an amendment that clarifies and provides additional information as described above. *See* 11 U.S.C. § 1125. The United States Trustee reserves her right to object to any amendment(s) to the Disclosure statement for failure to meet the requirements of 11 U.S.C. § 1125 and the Federal Rules of Bankruptcy Procedure. The United States Trustee also reserves her right to object to confirmation of the Plan for failure to meet the requirements of 11 U.S.C. § 1129 and the Federal Rules of Bankruptcy Procedure, and to take any other appropriate action.

Date: August 27, 2020

        TRACY HOPE DAVIS
        United States Trustee, Region 17

        */s/ Suhey Ramirez*
        SUHEY RAMIREZ
        Trial Attorney