**Lewis R. Landau** (CA Bar No. 143391)
**Attorney-at-Law**
22287 Mulholland Hwy., # 318
Calabasas, California 91302
Voice & Fax: (888) 822-4340
*Email: Lew@Landaunet.com*

Attorney for Platinum Loan Servicing, Inc.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>FRE 355 Investment Group, LLC,<br><br>        Debtor. | Case No.: 20-50628 SLJ 11<br><br>Cases Jointly Administered<br><br>Chapter 11<br><br>Case No.: 20-50631 SLJ 11 |
| In re<br><br>Mora House, LLC,<br><br>        Debtor. | **OBJECTION TO DISCLSOURE STATEMENT;**<br>**JOINDER IN UST OBJECTIONS;**<br>**11 U.S.C. § 1111(b)(2) ELECTION**<br><br>Date: September 3, 2020<br>Time: 1:30 p.m.<br>Place: Courtroom 9 (Telephonic)<br>US Bankruptcy Court; Judge Johnson<br>280 South First Street<br>San Jose, California 95113 |

Platinum Loan Servicing, Inc. ("PLS") as servicing agent for the beneficiaries of the mortgages on the real property owned by FRE 355 dba FRE 355 Investment Group, LLC ("FRE 355") and Mora House, LLC ("Mora House") (FRE 355 and Mora House are collectively referred to as "Debtors"), herein objects to approval of the Disclosure Statement for Debtors' Plan of Reorganization [ECF # 65] ("Disclosure Statement") filed by Debtors. PLS further joins in and adopts the objections [ECF # 84] filed the Office of the United States Trustee ("UST"). PLS further elects treatment pursuant to 11 U.S.C. § 1111(b)(2) with regard to Debtors' plan.

For all these reasons, the Court should deny approval of Debtors' Disclosure Statement.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## THE DEBTORS' DISCLOSURE STATEMENT DOES NOT CONTAIN ADEQUATE INFORMATION AND THE PLAN IS PATENTLY NOT CONFIRMABLE

PLS has moved for relief from stay and to dismiss Debtors' cases based in part on the argument that the Debtors' Disclosure Statement and plan were filed as a delay tactic to avoid relief from stay in single asset real estate cases under 11 U.S.C. § 365(d)(3). The Court has continued both matters to September 29, 2020 at 1:30 p.m. *See* ECF #s 81, 82 collectively attached hereto as Exhibit 1. The Disclosure Statement in support of the tactically filed plan is now before the Court and it should be summarily denied because: (1) Debtors admitted three weeks ago that it is deficient; (2) the United States Trustee's objections as further addressed herein reveal material inaccuracies and deficiencies; and (3) the Debtors' plan is patently unconfirmable.

As the Court noted when continuing PLS's motion for relief from stay, there is a "yawning gap in values" that may well be determinative in these cases, i.e., $13,250,000 versus $17,500,000 for both parcels. While PLS has offered a licensed appraiser's valuation opinion [ECF # 75; Hart Declaration], Debtors' only support for its valuation position is a naked statement in its schedules based on prior unsuccessful listing prices and the current broker's opinion that the properties will sell for $17,500,000 within six (6) months. However, a broker's opinion of value is inadmissible and unreliable. *See* Federal Rules of Evidence 104, 602, 701, 702, 703; Donoway v. Tucker (In re Donoway), 139 B.R. 156, 157 (Bankr. D. Md. 1992) ("Real estate brokers and agents without specialized training in real estate appraising are not qualified to testify as to their opinions regarding fair market value"). Debtors' Disclosure Statement fails to adequately address the fundamental valuation issue in these cases.

Debtors admit that their Disclosure Statement is deficient and requires amendment. *See* ECF # 79 attached hereto as Exhibit 2. On August 5, 2020, ***more than three weeks ago***, Debtors stated, "counsel for the Debtors has determined that certain amendments to the Disclosure Statement ***are necessary***." Id. at 3 (emphasis added). Additionally, Debtors stated, "The Debtors plan to amend their Disclosure Statement[2] to include more specific information about the history

of list prices for both properties, which have changed considerably since the time the properties were first marketed." Footnote 2 stated, "Counsel for the Debtors is also working with the Trial Attorney from the Office of the U.S. Trustee to address certain concerns informally raised by that office about the Disclosure Statement and expects in due course that an Amended Disclosure Statement will be filed with the Court prior to the hearing for approval of the disclosure statement." Id. at 4.

Although Debtors admitted that their Disclosure Statement was deficient, Debtors failed to timely file an amended Disclosure Statement that could be evaluated by parties in interest prior to the objection deadline. Instead, the UST filed a substantial 11-page objection identifying eight (8) groups of Disclosure Statement deficiencies that preclude approval. *See* ECF # 84 attached hereto as Exhibit 3 ("UST Objection"). PLS joins in and adopts each of the eight (8) UST Objections as an objection to approval of the Disclosure Statement. PLS further objects to the Debtors filing material amendments after the objection deadline, which denies PLS the due process opportunity to address the matter before a hearing thereon. This denial of due process is especially acute in this case when the Debtors have known for weeks of the need to amend the Disclosure Statement.

PLS adopts and emphases the UST Objections related to objections that render the Debtor's plan patently unconfirmable. Courts will not approve a disclosure statement that describes a "patently unconfirmable" plan, that is, a plan that is incapable of confirmation as a matter of law. In re Quigley Co., 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007). If a Chapter 11 plan does not comply with Bankruptcy Code Section 1129, courts will not subject the estate to the expense of the vote solicitation and plan confirmation process. In re Pecht, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986). In such circumstances, therefore it is "incumbent upon the [c]ourt to decline approval of the disclosure statement and prevent diminution of the estate." Id., at 139.

Here, the UST identified the Disclosure Statement's failure to address post-confirmation UST fees. UST Objection at 10. A 1% UST fee on $17,500,000 in distributions is an additional $175,000 draw on anticipated cash from closing that is not provided for in Debtors' Disclosure Statement distribution schedule. *See* Disclosure Statement Exhibit C; page 36.

The same problem exists for the failure to provide for continuing accruals on secured creditor claims and administrative expenses. UST Objection at 8. Debtors' Disclosure Statement assumes no post-petition accruals on the Blanchard first deed of trust on the Mora Lot or property taxes. Worse, it assumes that PLS will be paid a flat $13,000,000, when PLS's claim already exceeds that amount and continues to accrue *interest of $136,712.50 monthly at the 15% default rate on the principal amount of $10,937,000.* As the Ninth Circuit recently and clearly held, PLS is entitled to interest at the default note rate. *See* In re New Investments, Inc., 840 F.3d 1137, 1140 (9th Cir. 2016) ("Subsection § 1123(d) renders void *Entz-White's* rule that a debtor who proposes to cure a default may avoid a higher, post-default interest rate in a loan agreement.")

Similarly, PLS adopts and emphasizes the UST Objection related to failure to adequately address the cram down provisions. UST Objection at 9. This omission is again significant because it will highlight the patent non-confirmability of Debtors' plan. Debtors' plan treats PLS as a fully secured creditor. As a fully secured creditor, § 1129(b) requires that PLS receive the following:

> (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
> (A) With respect to a class of secured claims, the plan provides —
> (i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
> (ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
> (iii) for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. § 1129(b)(2).

1   Here, the Debtors' plan does not comply with the requirements of § 1129(b)(2).  The plan

2   does not provide for PLS to retain its lien for the full amount of its allowed claim on the Mora Lot

3   as required by § 1129(b)(2)(A)(i) but instead purports to release that lien for a $500,000 payment

4   notwithstanding the intended cram down on PLS's claim.  Similarly, the plan does not preserve

5   PLS's credit bid rights as required by § 1129(b)(2)(A)(ii).  When a debtor pursues a liquidation

6   under chapter 11 through a sale of its assets, its secured creditors may "credit bid" for the assets

7   that serve as the collateral securing their loans. *See* 11 U.S.C. § 363(k); *see also* RadLAX

8   Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 647 (2012) ("Thus, debtors may not

9   sell their property free of liens under § 1129(b)(2)(A) without allowing lienholders to credit-bid,

10  as required by clause (ii)").  Here, and as recognized by the UST, the Debtors' Disclosure

11  Statement and plan simply ignore these fundamentally necessary terms required to non-

12  consensually confirm their plan.  As such, the plan is patently unconfirmable.

13  For all these reasons, the Court should deny approval of Debtors' Disclosure Statement.

**II.**

**ELECTION PURSUANT TO 11 U.S.C. § 1111(b)(2)**

16  Pursuant to Federal Rule of Bankruptcy Procedure 3014, PLS elects treatment pursuant to

17  11 U.S.C. § 1111(b)(2) in each Debtors' case with regard to the Debtors' plan as filed [ECF # 64].

18  PLS reserves all rights to the extent of any amendment to Debtors' plan.

**III.**

**CONCLUSION**

21  For all the reasons set forth above, PLS respectfully requests entry of an order denying

22  approval of Debtors' Disclosure Statement.

23  Dated:  August 27, 2020                    **Lewis R. Landau**
                                              **Attorney-at-Law**

25                                            By:*/s/ Lewis R. Landau*
26                                            Lewis R. Landau
                                              Attorneys for PLS

# EXHIBIT 1

**Entered on Docket
August 13, 2020**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes the order of the Court.
Signed: August 13, 2020

*Stephen Johnson*

_____
**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 20-50628 SLJ |
| **FRE 355 INVESTMENT GROUP, LLC,** | Chapter 11 |
| | *Jointly Administered* |
| Debtor. | |
| _____ | Case No. 20-50631 SLJ |
| | Chapter 11 |
| In re | |
| **MORA HOUSE, LLC,** | Date: August 11, 2020 |
| | Time: 10:00 a.m. |
| Debtor. | Ctrm: 9 |

### ORDER CONTINUING HEARING ON PLATINUM LOAN SERVICING, INC.'S MOTION FOR RELIEF FROM STAY

On July 28, 2020, secured creditor Platinum Loan Servicing Inc. ("Movant") filed its Motion for Relief from Stay; Memorandum of Points and Authorities, etc. ("Motion")(DKT 75). The Motion seeks relief from stay to continue with foreclosure on two parcels of real properties, each owned by one of the jointly administered Debtors and located on Mora

Case 20-50628   Doc# 87   Filed 08/13/20   Entered 08/13/20 12:46:53   Page 1 of
43
007

Drive, Los Altos, California (collectively "Property"). The matter came on for hearing on the regular chapter 11 motion for relief from stay calendar. Due to the formulation of the Bankruptcy Local Rules ("BLR") and, specifically, BLR 4001-1(c) and (f),[1] the matter was calendared on 14 days' notice and did not require a written opposition from Debtors. Lewis Landau, Esq. appeared for Movant and Julie Rome-Banks, Esq. appeared for Debtors.

The Motion is made under § 362(d)(1), (2), and (3). Debtors appeared and opposed the Motion orally. Debtors contested Movant's valuation of the Property as well as the contention that reorganization was impossible. They indicated they wished to depose Movant's appraisal witness. They also believe that certain aspects of Movant's claim in these cases may require objection.

At the hearing I indicated, consistent with my usual practice in view of the BLR, that I would continue the hearing to allow Debtors to prepare and file a written response and proposed September 29, 2020 for such a hearing, with briefing to be submitted in advance. Movant contends, based on its reading of § 362(e), that a continuance of more than 30 days is not authorized by the statute on the facts presented.

Instead, Movant argued at the hearing that its Motion should be granted immediately because it has met its burden of proof by submitting evidence that the Property has less value than the outstanding loan.[2] The Motion relies on an appraisal by Ricci E. Hart, who is a certified and licensed real estate appraiser and concluded the combined value of the Property is approximately $13 million (comprised of one parcel at $10.25 million and a second at $2.75 million). Movant asserts the loan balance is $13.3 million and contends

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All "Civil Rule" references are to the Federal Rules of Civil Procedure and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure. "Civil L.R." and "B.L.R." references refer to the applicable Civil Local Rules and Bankruptcy Local Rules.

[2] Pursuant to § 362(g), the moving party has the burden of proof on the issue of debtor's equity; the debtor has the burden of proof on all other issues.

ORDER CONTINUING HEARING ON PLATINUM LOAN SERVICING, INC.'S MOTION FOR RELIEF FROM STAY                                                                 2/8

1   Debtors have no equity in the Property. It further contends that Debtors' plan is infeasible,

2   principally because it relies on an exaggerated value for the Property.

3       Valuation of property is not an exact science. *See Boyle v. Wells (In re Gustav Schaefer*

4   *Co.)*, 103 F.2d 237, 242 (6th Cir. 1939), cert. denied, 308 U.S. 579, 60 (1939) ("The valuation

5   of property is an inexact science and whatever method is used will only be an

6   approximation[.]"); *Rushton v. Commissioner*, 498 F.2d 88, 95 (5th Cir. 1974) ("Valuation

7   outside the actual market place is inherently inexact."); *In re Jones*, 5 B.R. 736, 738 (Bankr.

8   E.D. Va. 1980) ("True value is an elusive Pimpernel.").

9       Courts are often greeted with conflicting appraisals and testimony, to which weight

10  must be assigned depending upon credibility assessments. *In re Smith*, 267 B.R. 568, 572

11  (Bankr. S.D. Ohio 2001) ("Because the valuation process often involves the analysis of

12  conflicting appraisal testimony, a court must necessarily assign weight to the opinion

13  testimony received based on its view of the qualifications and credibility of the parties'

14  expert witnesses."); *In re Coates*, 180 B.R. 110, 112 (Bankr. D.S.C. 1995) ("The valuation

15  process is not an exact science, and the court must allocate varying degrees of weight

16  depending upon the court's opinion of the credibility of ... [the appraisal] evidence.").

17      Moreover, a trial court is not bound by valuation opinions or reports submitted by

18  appraisers and may form its own opinion as to the value of property in bankruptcy

19  proceedings. *See, e.g., Sammons v. Comm's of IRS*, 838 F.2d 330, 333 (9th Cir.1988); *In re Ahmed,*

20  2011 WL 1004649, *2 (Bankr. N.D. Cal. 2011); *In re Evans*, 492 B.R. 480, 508 (Bankr. S.D.

21  Miss. 2013).

22      The problem here is that the record contains contrary evidence as to value. Debtors'

23  bankruptcy schedules estimated the two parcels were worth $19 million (DKT 26 (FRE),

24  DKT 22 (Mora)). Debtors' real estate broker, Phil Chen, states they are worth $17.5 million

25  (DKT 79-1). Admittedly, these are not appraisals, but both were executed under penalty of

26  perjury, which should be accorded some weight. *See* Barry Russell, Bankruptcy Evidence

27  Manual § 701.2 (2019-20 ed.) ("Courts have generally held that an owner is competent to

28

give his opinion on the value of his property, often by stating the conclusion without stating a reason." (citations omitted)); *In re Morse*, 2018 WL 6721090, *6 (Bankr. N.D.N.Y. December 20, 2018)("the Court should not categorically reject a broker's opinion of value . . . [a]s an evidentiary matter, . . . it comes down to the weight to assign to such testimony and opinion." (internal citations and quotation marks omitted)).

Given the conflicting evidence and taking into consideration that this is a preliminary hearing for which neither written opposition with points and authorities nor countervailing evidence is required, due process requires that Debtors be given an opportunity to present their written arguments and evidence.

As for Movant's argument regarding § 362(e), it is worth considering the statute at issue:

> (e)(1) Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing. If the hearing under this subsection is a preliminary hearing, then such final hearing shall be concluded not later than thirty days after the conclusion of such preliminary hearing, unless the 30-day period is extended with the consent of the parties in interest or for a specific time *which the court finds is required by compelling circumstances.*

§ 362(e)(1) (emphasis added).

In effect, § 362(e)(1) provides that the automatic stay expires by operation of law thirty days after a motion for relief from stay is filed unless: (1) a preliminary hearing is held within thirty days of the filing of the motion; (2) the court orders the stay continued in effect pending the conclusion of a final hearing; (3) there is a reasonable likelihood that the party opposing relief from stay will prevail at the conclusion of such final hearing; and (4) the final

ORDER CONTINUING HEARING ON PLATINUM LOAN SERVICING, INC.'S MOTION FOR RELIEF FROM STAY                                                                 4/8

hearing occurs not later than thirty days after the conclusion of such preliminary hearing, unless the 30-day period is extended for a specific time upon a finding of compelling circumstances. 11 U.S.C. § 362(e)(1); *In re City of San Bernardino, California*, 545 B.R. 14, 16 (C.D. Cal. 2016).

I conclude that these conditions are satisfied, assuming as I must that the hearing held on August 11, 2020 was a preliminary hearing held within the 30-day period prescribed by statute. *See* BLR 4001-1(c).

At a hearing on a motion for relief from stay, a bankruptcy court generally is called upon only to decide a limited set of issues: the adequacy of protection for the creditor, the debtor's equity in the property and the property's necessity to an effective reorganization. *First Fed. Bank of California v. Robbins (In re Robbins )*, 310 B.R. 626, 631 (B.A.P. 9th Cir. 2004). The argument that Debtors be given an opportunity to shore up the evidence of value makes sense in view of the determination that I have to make. The disposition of this case appears to depend largely on a determination of the value of the Property as this affects Debtors' equity, Movant's adequate protection, and the prospects of a sale as envisioned by the now-filed plan. Without this information, I am flying blind.

Movant's appraisal is contested by Debtors, as is the amount of its claim. Given the seriousness of the disputes here and, frankly, the yawning gap in values, it is not possible to conclude at this juncture that Movant is correct in its valuation. Debtors have filed a plan that contemplates a sale at a very different value. Given the posture of the case, I conclude Debtors have met their obligation of showing a reasonable likelihood of prevailing. Having said that, the valuation appears critical and Debtors should be mindful that a conclusion of value may be case-determinative.

A final hearing, and possibly an evidentiary hearing, is necessary. Compelling circumstances warrant such an extension beyond the 30 days set forth in § 362(e)(1). There is little guidance in case law or treatises as to what constitutes compelling circumstances. Nevertheless, I find that the current pandemic qualifies.

ORDER CONTINUING HEARING ON PLATINUM LOAN SERVICING, INC.'S MOTION FOR RELIEF FROM STAY                                                      5/8

Simply put, these are not normal times.[3] Bankruptcy courts in this district have been closed to visitors since March 2020. *See* General Order 38. Santa Clara County, where the San Jose Division is located, has had a shelter in place order in force since March 17, 2020, and has been on the Governor's "watch list" since the inception of that program.[4] Every facet of life has been affected in this county, from employment to transit to retail to personal health care. In fact, since March 18, 2020, all work that does not qualify as essential (a limited category) must be done remotely. In the court's experience, most law offices are shuttered, many attorneys are working remotely, frequently with limited or no assistance from support staff, and communications with clients and other professionals are hampered and delayed.

Against the backdrop of the COVID-19 pandemic, and Debtors' reasonable request for discovery, I find that compelling circumstances exist to extend the date of the final hearing beyond the thirty days after the conclusion of the preliminary hearing.

For the foregoing reasons,

IT IS HEREBY ORDERED as follows:

1. This matter is CONTINUED to **September 29, 2020, at 1:30 p.m.,** at which time the court will hold a final hearing on the Motion. Appearances will be by phone or by teleconference and the courtroom deputy will inform the parties in advance.

---

[3] I am not the first judge to make observations like this. One court summed up the current situation as follows: "The COVID-19 pandemic has effectively shut commerce, closed businesses and schools, eliminated employment, substantially changed daily life at the local, state, and national levels, and generally limited products and services to those deemed necessary or essential." *In re Dudley*, ___ B.R. ____, 2020 WL 2569921, at *2 (Bankr. E.D. Cal. May 18, 2020). Another court offered this assessment: "Meanwhile, the world is in the midst of a global pandemic. The President has declared a national emergency. The Governor has issued a state-wide health emergency. As things stand, the government has forced all restaurants and bars [ ] to shut their doors, and the schools are closed, too. The government has encouraged everyone to stay home, to keep infections to a minimum and help contain the fast-developing public health emergency." *Art Ask Agency v. Individuals, Corporations, et al.*, 2020 WL 1427085, *1 (N.D. Ill. 2020).

[4] https://www.sccgov.org/sites/covid19/Pages/public-health-orders.aspx

ORDER CONTINUING HEARING ON PLATINUM LOAN SERVICING, INC.'S MOTION FOR RELIEF FROM STAY

6/8

1    2.  Debtor shall file an opposition to the Motion, including any additional evidence,

2    by September 15, 2020. Movant's reply is due by September 22, 2020.

3    3.  The automatic stay shall continue in effect pending the conclusion of the final

4    hearing.

5    IT IS SO ORDERED.

6    **\*\*\* END OF ORDER \*\*\***

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Case: 20-50628    Doc# 87    Filed: 08/23/20    Entered: 08/23/20 14:46:33    Page 13 of
43

013

**Entered on Docket**
**August 14, 2020**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**



The following constitutes the order of the Court.
Signed: August 14, 2020

*Stephen Johnson*

_____
**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

In re

**FRE 355 INVESTMENT GROUP, LLC,**

                    Debtor.

_____

In re

**MORA HOUSE, LLC,**

                    Debtor.

_____

Case No. 20-50628 SLJ
Chapter 11

*Jointly Administered*


Case No. 20-50631 SLJ
Chapter 11


Date: August 19, 2020
Time: 2:00 p.m.
Ctrm: 9

## ORDER CONTINUING HEARING ON PLATINUM LOAN SERVICING, INC.'S MOTION TO DISMISS CHAPTER 11 CASES

On July 28, 2020, secured creditor Platinum Loan Servicing Inc. ("Movant") filed its

Motion to Dismiss Chapter 11 Cases ("Motion"), which is noticed for hearing on August 19,

ORDER CONTINUING HEARING ON PLATINUM LOAN SERVICING, INC.'S MOTION TO
DISMISS CHAPTER 11 CASES                                                    1/3

2020. The briefing period is closed.[1] The determinative issue in the Motion – the value of the real property owned by Debtors -- is the same as in the Motion for Relief from Stay filed by Movant, which the court has continued to September 29, 2020.

A creditor's motion to dismiss a chapter 11 case must be heard not later than 30 days after the filing the motion and must be decided not later than 15 days after the commencement of the hearing, unless the court finds compelling circumstances. 11 U.S.C. § 1112(b)(3). For the same reasons set forth in the Order Continuing Hearing on Platinum Loan Servicing, Inc.'s Motion for Relief from Stay, entered on August 13, 2020, I conclude compelling circumstances exist that justify a continuance beyond the time limits set forth in § 1112(b)(3). Accordingly,

IT IS HEREBY ORDERED that the Motion is CONTINUED to **September 29, 2020, at 1:30 p.m.,** to be heard concurrently with Movant's Motion for Relief from Stay.

**\*\*\* END OF ORDER \*\*\***

---

[1] Debtors filed an opposition on August 5, 2020 (DKT 79) and Movant filed a reply on August 12, 2020 (DKT 80).

ORDER CONTINUING HEARING ON PLATINUM LOAN SERVICING, INC.'S MOTION TO DISMISS CHAPTER 11 CASES                                                                2/3

# EXHIBIT 2

1  MICHAEL W. MALTER. #96533
   ROBERT G. HARRIS, #124678
2  JULIE H. ROME-BANKS, #142364
   Binder & Malter, LLP
3  2775 Park Avenue
   Santa Clara, CA 95050
4  T: (408) 295-1700
   F: (408) 295-1531
5  Email: Michael@bindermalter.com
   Email: Rob@bindermalter.com
6  Email: Julie@bindermalter.com

7  Attorneys for Debtors-In-Possession,
   FRE 355 INVESTMENT GROUP, LLC and
8  MORA HOUSE, LLC

9

## UNITED STATES BANKRUPTCY COURT

10

## NORTHERN DISTRICT OF CALIFORNIA - DIVISION 5

11

| | |
|---|---|
| 12 In re: | Case No. 20-50628-SLJ |
| 13 FRE 355 INVESTMENT GROUP, LLC, dba FRE 355, | Cases Jointly Administered |
| 14 | Chapter 11 |
| 15          Debtor. | |
| 16 In re | Case No. 20-50631-SLJ |
| 17 MORA HOUSE, LLC, | Chapter 11 |
| 18 | |
| 19          Debtor. | Date: August 19, 2020 |
| 20 | Time: 2:00 p.m. |
| | Courtroom: 9 (Telephonic) |
| 21 | Judge: Hon. Stephen L. Johnson |

22

## OPPOSITION TO MOTION TO DISMISS CHAPTER 11 CASES

23          Debtors and debtors-in-possession FRE 355 INVESTMENT GROUP, LLC ("FRE

24  355") and MORA HOUSE, LLC ("Mora") respectfully represent the following in response

25  to the Motion to Dismiss Chapter 11 Cases ("Motion") filed creditor Platinum Lon

26  Servicing, Inc. ("PLS"):

27

28

## I. Background Facts

1.    The basic facts regarding the making of the loan by PLS are largely not in dispute.  There are however certain significant factual nuances regarding the collateral which PLS omits from the Motion.

2.    The original loan by PLS was only secured against the developed property located at 10718 Mora Hills Drive, Los Altos Hills, California (identified as the "Mora House" in the Plan and Disclosure Statement).  A copy of the Note Secured by a Deed of Trust and a conformed copy of the Deed of Trust securing the loan by the Mora House both bearing executed dates of March 30, 2018 are attached as supporting documents to Claim #4, filed by PLS in the FRE 355 bankruptcy case on August 3, 2020.   Notably, PLS waited until the claims bar date of August 3, 2020 to file its Proof of Claim in the FRE 355 case and has not yet filed its proof of claim in the Mora bankruptcy case, which has a different bar date, August 17, 2020, a mere two days before the scheduled hearing on this Motion and after the upcoming preliminary hearing date of August 11, 2020 on PLS's related motion for relief from the automatic stay in these cases (see docket numbers 75-77).  The Debtors expect to object to significant portions of the Proof of Claim of PLS as being overstated assuming it is similar to the proof of claim filed already.

3.    At no place in connection with this Motion or the related Motion for Relief from Stay does PLS provide a copy of the deed of trust that secures its obligation against the vacant lot owned by Mora.  Had the deed of trust been provided by PLS, the Court would have seen that PLS originally made the loan solely secured only by the Mora House property and that the additional collateral consisting of the deed of trust on the vacant lot owned by Mora was provide to PLS by a later agreement to further secure the loan when Mr. Vaughn arranged for the short sale of an unrelated property owned by 276 Dalewood, LLC on which PLS also had a junior lien.  A true and correct copy of the deed of trust recorded against the vacant lot owned by Mora on December 11, 2018 in favor of PLS is attached as Exhibit "A" to the Declaration of Melvin Vaughn filed concurrently herewith and is incorporated herein by reference.

4.      The assumptions about the monthly operating report and the potential impact on the administrative burden of these cases made by PLS are both factually and legally incorrect.  *See* Motion at page 4, lines 16-17 and request for judicial notice exhibits 3 and 4.  The unpaid post-petition liabilities reflected in the balance sheet of the FRE 355 June Monthly Operating Report consist primarily of accrued interest owed to PLS of $182,284; the Debtor FRE 355 has been accruing monthly owed to PLS based on the pre-petition interest only payment amount of $91,142.   As also reflected on that balance sheet, only $560 having been advanced by Mr. Vaughn as an unsecured post-petition loan to FRE 355[1].   The balance of post-petition liabilities of $72,051 represents accrued professional fees which will eventually be set-off by the pre-petition retainer shown as an asset in the same operating report of $37,149.  However, on June 26, 2020, after the June operating report was filed, the Court ruled on Binder & Malter's amended application for employment, requiring waiver of Binder & Malter's pre-petition fees and costs.  Accordingly, the retainer was restored to the full amount of $50,000, which shall be reflected in the next operating report for the month of July and therefore further reduces the administrative burden on the Debtor FRE 355.

5.      In the course of preparing this Opposition, counsel for the Debtors has determined that certain amendments to the Disclosure Statement are necessary.  Among those are the statement quoted by PLS that, "The Mora House has been actively marketed for sale since April 2018 with a current list price of $14,999,999."  The statement is not accurate because the Mora House was not marketed at that particular sales price until October 2018.  In addition, because that statement does not provide creditors and parties in interest with the complete history of the list prices for the Mora

---

[1] Although the amount owed to Mr. Vaughn for post-petition advances is likely to increase, as reflected in the chapter 7 liquidation analysis contained at page 11 of the Disclosure Statement, the repayment of Mr. Vaughn's administrative claims (projected in the conservative total amount of $20,000) will have minimal effect on the amount paid to unsecured creditors.

House and vacant lot.  The Debtors plan to amend their Disclosure Statement[2] to include more specific information about the history of list prices for both properties, which have changed considerably since the time the properties were first marketed.  See Declaration of Phil Chen, the appointed broker, filed concurrently herewith for history of list prices for both properties. As also reflected in the Declaration of Phil Chen, recent sales activity concerning the two properties has increased in the past few weeks as the COVID-19 pandemic crisis has begun to relax.  Showings of the properties have increased, including repeated showings to the same potential buyer.  This sales activity supports the Debtors' ability to complete a sale of the properties within the time provided in the proposed Plan.

LEGAL ARGUMENT

I.      THE PLAN HAS A REASONABLE CHANCE TO BE CONFIRMED WITHIN A REASONABLE TIME.

6.      There is no dispute that the Debtors both self-designated their cases on the respective petition dates as being single asset real estate cases within the meaning of the Bankruptcy Code.  As such, the Debtors had a period of 90 days to propose a plan of reorganization pursuant to Bankruptcy Code Section 362(d)(3) which either has a reasonable possibility of being confirmed within a reasonable time, or to commence making monthly payments to secured creditors at a non-default contract rate of interest. The last day to file a timely plan of reorganization as to FRE 355, the first of the joint debtors to file, was July 13, 2020.  The Debtors timely filed their joint plan on July 10, 2020.

---

[2] Counsel for the Debtors is also working with the Trial Attorney from the Office of the U.S. Trustee to address certain concerns informally raised by that office about the Disclosure Statement and expects in due course that an Amended Disclosure Statement will be filed with the Court prior to the hearing for approval of the disclosure statement. The time for objections to the Disclosure Statement, which was set for the first such available hearing date on the Court's calendar of September 3, 2020, has not yet run.

1    7.    Because the properties do not generate rents, and the monthly non-default

2    contract rate of interest is $91,141.67, the Debtors oppose stay relief on the alternative

3    provision of Section 362(d)(3), to wit, that the Plan "has a reasonable possibility of being

4    confirmed within a reasonable time". The Debtors categorically deny any suggestion by

5    PLS that the filing of the joint Plan was a "sham delay tactic".  Rather, the filing of the

6    Joint Plan, as well as the time when it was filed, is expressly provided for in the

7    Bankruptcy Code.

8    8.    PLS asserts incorrectly that "[t]he critical foundation for Debtors' liquidating

9    Plan is that the Debtors sell their real properties for at least $19 million, which will yield

10   $430,606 to pay general unsecured claims.[3]"  Exhibit "C" to the Disclosure Statement

11   contains capital gains analyses of both properties if sold together (as they are currently

12   being marketed) and separately (as is also provided for in the approved listing

13   agreements with broker Phil Chen of Compass).  Exhibit "C" also illustrates the cash flow

14   from such sales.  Columns 1 and 2 of Exhibit "C" shows that the lot would generate

15   $196,359 of net equity if sold for its separate listing price of $3,500,000, and the home

16   would generate another $664,246 of net equity if sold for its separate listing price of

17   $14,999,000.  Column 3, of course, shows $430,000 of net equity if the properties are

18   sold together for the combined price of $17,500,000.  The Debtors have conferred with

19   the United States Trustee about correcting language in the disclosure statement to make

20   sure that the capital gains analysis in Exhibit "C" is explained fully.

21   9.    As noted in the Declaration of Phil Chen, the Debtors have not stuck with

22   the same listing price for years as suggested by Platinum but rather have dropped the

23   listing price of the properties over time and changed in the list price to reflect the joint

24   marketing of the properties which is more likely to result in a sale contract than if the

25   properties were being marketed individually.

26

27   _____
        [3] Motion to Dismiss [Dkt. #69], 4:18-19.

28

1    10.    Although the Debtors have not be able to obtain an appraisal on short

2    notice of the properties, the current list price and activity (showings) of the properties

3    support that the Plan is feasible. The Debtors also desire to cross-examine the appraiser

4    who authored the report relied upon by PLS, Mr. Ricci Hart, as to many of the

5    assumptions and choice of comparable properties utilized in his appraisal report which

6    the Debtor believes does not accurately value the properties.   At a minimum, based on

7    the information contained in the Plan, Disclosure Statement and this opposition, the Court

8    should set an evidentiary hearing to determine if the Debtors' Plan has a reasonable

9    possibility of being confirmed within a reasonable time.

10   II.    NEGATIVELY AMORTIZING PLANS ARE PERMITTED IN THE 9th CIRCUIT.

11    11.    PLS acknowledges that the law in the Ninth Circuit allows for negatively

12   amortizing plans to be confirmed.  In Great Western Bank v. Sierra Woods Group., 953

13   F.2d 1174 (9th Cir. 1992), the Ninth Circuit held that, "[the fairness of a reorganization

14   plan that includes negative amortization should be determined on a case-by-case

15   basis."  Id. at 1177.  Some of the factors that are relevant to this determination are:

16        "1. Does the plan offer a market rate of interest and present value of
          the deferred payments;
17        2. Is the amount and length of the proposed deferral reasonable;
          3. Is the ratio of debt to value satisfactory throughout the plan;
18        4. Are the debtor's financial projections reasonable and sufficiently
          proven, or is the plan feasible;
19        5. What is the nature of the collateral, and is the value of the
          collateral appreciating, depreciating, or stable;
20        6. Are the risks unduly shifted to the creditor;
          7. Are the risks borne by one secured creditor or class of secured
21        creditors;
          8. Does the plan preclude the secured creditor's foreclosure;
22        9.Did the original loan terms provide for negative amortization; and
          10. Are there adequate safeguards to protect the secured creditor
23        against plan failure."

24   Id. at 1177-78 (citation omitted).  The Ninth Circuit went on to note that the above list is

25   not exclusive, that other factors may be considered, and that bankruptcy courts are not

26   required to refer to each of these factors when considering plans that propose negative

27   amortization.  Id. at 1178.  The Ninth Circuit then instructed the Nevada District Court to

28

1 remand the issue to the bankruptcy court to make the determination of whether the

2 negative amortization plan was fair and equitable under the facts of that case.

3        12.      The Debtors submit that the facts of this case support approval of a

4 negatively amortizing plan which has an initial duration of 6 months.  The Debtors

5 contend that a 6-month period of deferred payments is reasonable under the

6 circumstances.  In addition, the plan can only be extended to its full 12-month duration if

7 a payment of $500,000 is made to PLS.  This principal pay down is further supported by

8 the terms of the Addendum to Promissory Note Loan #10536 attached as Exhibit "B" to

9 the Declaration of Melvin Vaughn filed concurrently herewith and requires that upon

10 receipt of such amount PLS release its lien on the vacant lot **as it previously had**

11 **agreed**.    Because the requirement to make that payment is placed upon the Debtors,

12 there is no risk to the secured creditor.  The plan also provides for relief from stay to PLS

13 to foreclose in the event that the Debtors are unable to timely close a sale of the

14 properties.

15        13.      One additional fact and one of the most significant differences between the

16 Great Western Bank case and this case is the presence of the COVID-19 pandemic and

17 the effect that worldwide pandemic has had on the Debtors' ability to market and sell their

18 properties.  Numerous bankruptcy courts around the country have been according

19 debtors additional time to perform obligations required of them under the Bankruptcy

20 Code or as previously ordered by such courts.   For instance, in the case of *Pier 1*

21 *Imports, Inc. et al.* pending in the Eastern District of Virginia Bankruptcy Court, Judge

22 Huennekens first ordered in mid-March 2020 but then allowed the debtors in that case to

23 delay their going out of business sales due to the pandemic. In *24 Hour Fitness*

24 *Worldwide, Inc. et al.* pending in the Delaware Bankruptcy Court, Judge Owens granted

25 extraordinary relief to the Debtors under Section 365 to defer the first 60 days of rental

26 payments to more than 300 landlords specifically because of the impact of the pandemic

27 on their ability to operate almost every store location.  Similar relief was also granted to

28 the debtors as to approximately 500 to landlords in the case of *CEC Entertainment, Inc.*

*et al. dba Chuck E. Cheese*, pending in the Southern District of Texas before Judge Isgur.  While these bankruptcy cases may have provided for extraordinary relief to the debtors in different contexts then the present case, the point of consideration for all was the global pandemic and the impact on those debtors' created by state and local government orders that adversely affected how those debtors conducted their business operations and ability to comply with provisions of the Bankruptcy Code,

14.     Like the cases cited above, these Debtors have been forced to comply with emergency shelter-in-place orders from the State of California and the County of Santa Clara that were issued in response to the pandemic.  These orders have greatly impacted the Debtors' ability to actively market their properties since mid-March 2020 by prohibiting such routine marketing activities as brokers' tours, customary open house hours, requiring additional sanitation measures (during a time when such materials are in short supply because of the pandemic) and limiting the number of potential buyers who can view the properties.  The pandemic was also responsible for the failure of the Debtors to complete a pre-bankruptcy sale to a purchaser from China who was prevented from being able to access her funds in China and therefore had to cancel the sale.  Although the Debtors herein do not operate a business like those other pending cases cited above, that is a distinction without a difference because the Debtors' "business" is to construct, market and sell their properties.  The Debtors have been adversely affected by the pandemic in their ongoing business efforts to sell the properties.

15.     Another Ninth Circuit case discussing negative amortization in a plan is In re Nauman, 213 B.R. 355 (B.A.P. 9th Cir. 1997).  This was a chapter 12 case filed by debtors who operated a cattle ranch and a bed and breakfast business on their ranch.  The bankruptcy court held that the plan was fair and equitable under the standards described in Great Western Bank and confirmed the plan over the objection of the senior secured creditor.  On appeal, the Bankruptcy Appellate Panel first acknowledged that there is no "fair and equitable" requirement to confirm a chapter 12 plan, but since the lower court had conducted the multi-factor analysis described by the

1 Ninth Circuit in <u>In re Great Western Bank</u> required when a plan proposes negative

2 amortization treatment of a secured claim, the appellate court was able to review the

3 lower court's findings.  Regarding the second <u>Great Western</u> factor ("Is the amount and

4 length of the proposed deferral reasonable?"), the Appellate Panel stated:

5

6 > "The bankruptcy court specifically found that the 21-month partial deferral was reasonable given the loan-to-value ratio and the automatic auction sale provisions

7 > in the plan.  The court found that the loan-to-value ratio was 71% at that time and would reach 75% under the negative amortization plan.  Further, the interest rate

8 > of 8.5% is the same as that under the Debtors' sale contract, which was entered into only two years before the plan's confirmation.  Another court has found a

9 > negative amortization rate for the first four years to be acceptable under §1225(a)(5).  In re Big Hook Land & Cattle Co., 81 B.R. 1001, 1006 (Bankr. Mont.

10 > 1988). The court's finding  that this deferral was reasonable was not clearly erroneous.

11 <u>Id</u>. at 363. The Debtors herein are not asking for a lengthy deferral that occurred in

12 <u>Nauman</u>, but rather only 6-12 months.

13

14 <u>III.  AN EVIDENTIARY HEARING IS REQUIRED.</u>

15       16.    Given that the Court must evaluate the factual issues in these cases in

16 order to make a determination of whether the Plan has a reasonable chance of being

17 confirmed in a reasonable time, the Debtors believe that they have the right to an

18 evidentiary hearing.  As noted above, the Debtors desire to cross examine the appraiser

19 used by PLS and the Court must also consider the facts of the COVID -19 pandemic

20 which are unique circumstances in bankruptcy cases now pending across the country.  If

21 the Court is disinclined to defer the evidential hearing until the time of confirmation of the

22 plan, then the Court should at a minimum provide for an evidentiary hearing at this time in

23 connection this Motion by PLS as well as PLS' motion for relief from stay.

24       WHEREFORE, the Debtors pray that (a) the Court deny the Motion, or (b)

25 alternatively that the Court defer ruling on the Motion until the time of plan confirmation,

26 or (c) alternatively, that the Court set an evidentiary hearing on the Motion and related

27 motion for relief from stay of PLS, and (d) for such other and further relief as the Court

28 deems just and proper.

Dated: August 5, 2020

BINDER & MALTER, LLP

By: /s/ Julie H. Rome-Banks
Julie H. Rome-Banks
Attorneys for Debtors

1 MICHAEL W. MALTER. #96533
ROBERT G. HARRIS, #124678
2 JULIE H. ROME-BANKS, #142364
Binder & Malter, LLP
3 2775 Park Avenue
Santa Clara, CA 95050
4 T: (408) 295-1700
F: (408) 295-1531
5 Email: Michael@bindermalter.com
Email: Rob@bindermalter.com
6 Email: Julie@bindermalter.com

7 Attorneys for Debtors-In-Possession,
FRE 355 INVESTMENT GROUP, LLC and
8 MORA HOUSE, LLC

9

**UNITED STATES BANKRUPTCY COURT**

10

**NORTHERN DISTRICT OF CALIFORNIA - DIVISION 5**

11

| | |
|---|---|
| 12 In re: | Case No. 20-50628-SLJ |
| 13 FRE 355 INVESTMENT GROUP, LLC, | Cases Jointly Administered |
| 14 dba FRE 355, | Chapter 11 |
| 15 Debtor. | |
| 16 In re | Case No. 20-50631-SLJ |
| 17 MORA HOUSE, LLC, | Chapter 11 |
| 18 | |
| 19 Debtor. | Date: August 19, 2020 |
| 20 | Time: 2:00 p.m. |
| | Courtroom: 9 (Telephonic) |
| | Judge: Hon. Stephen L. Johnson |

21

22 **DECLARATION OF PHIL CHEN IN SUPPORT OF OPPOSITION TO MOTION TO**
23 **DISMISS CHAPTER 11 CASES**

24   I, Phil Chen, hereby declare:

25   1.   I am a real estate broker, duly licensed by the State of California, and am a

26 contractor of Compass, a licensed real estate brokerage firm, as a broker associate.

27   2.   I have personal knowledge of the facts stated herein, except as to those

28 matters alleged upon information and belief and as to those matters I believe them to be

true. If called as a witness, I could and would competently testify as follows.

3. I make this Declaration in support of the opposition of debtors and debtors-in-possession FRE 355 INVESTMENT GROUP, LLC ("FRE 355") and MORA HOUSE, LLC ("Mora") to the Motion to Dismiss Chapter 11 Cases ("Motion") filed creditor Platinum Loan Servicing, Inc. ("PLS").

4. Among the assets of these Debtors are a parcel of developed real estate owned by FRE 355 commonly known as and located at 10718 Mora Drive, Los Altos, California, consisting of a newly constructed single family residence of approximately 9,677 square foot main residence consisting of 6 bedrooms, 8 full baths, 3 half baths, a separate in-laws living quarters with 800 square feet (referred to as the 'Mora House' due to its address). The Mora House is located in the Los Altos foothills and was created by Swatt │Miers Architects with block like volumes suspended in delicate interplay between smooth stucco, Brazilian hardwood, and luminous glass. The architecture is modern and designed by Mr. Swatt who trained under Frank Lloyd Wright. As a result of its architectural pedigree, the Mora House is unique. Immediately adjacent to the Mora House is a parcel of undeveloped real estate owned by Mora commonly referred to as lot 3, Parcel No. 331-14-067, consisting of 1.47 acres. The properties share a common driveway.

5. May 27, 2020, I entered into a new listing agreement with FRE 355 concerning the Mora House and also I entered into a new listing agreement with Mora House concerning the vacant lot. My listing agreements were approved by this Court as part of the application to approve my employment, which order was entered on June 16, 2020 as docket #58 in these cases. The properties had most recently been listed with another Compass broker, Joe Velasco. Prior to Mr. Velasco, the properties were listed with brokers from (in order of the most recent listings first) The Agency, Sotheby's International and DeLeon Realty.

6. Attached hereto as Exhibit "A" is a history of the list prices for the Mora House. The changes in the list price are attributed to (a) reductions authorized by the

seller FRE 355, and (b) a change in marketing strategy whereby the Mora House and the vacant lot began to be marketed together which occurred in May 2019 with broker Joe Velasco of Compass.  Attached hereto as Exhibit "B" is a history of changes in the listing of the vacant lot. Initially the vacant lot was separately listed for sale by Sotheby's International in April 2017 for $6 million. However, in December 2017 that listing was dropped.  The current listing agreements of Compass provide that the vacant lot will be marketed together with the Mora House, which is in my opinion the strategy best likely to sell both properties for the maximum amount possible.

7.      Debtors along with Compass have been forced to comply with emergency shelter-in-place orders from the State of California and the County of Santa Clara that were issued in response to the COVID-19 pandemic.  These orders have greatly impacted the ability to actively market the Debtors' properties since mid-March 2020 by prohibiting such routine marketing activities as brokers' tours, customary open house hours, requiring additional sanitation measures (during a time when such materials are in short supply because of the pandemic) and limiting the number of potential buyers who can view the properties.  Based upon my routine business communications with Mr. Velasco when I agreed to take over the listings of both properties, the pandemic was also responsible for the failure of the Debtors to complete a pre-bankruptcy sale to a purchaser from China who was prevented from being able to access her funds in China and therefore had to cancel the sale.  Even in the presence of the pandemic and the multiple restrictions imposed by the State and County of Santa Clara, Compass and the Debtors have nevertheless persevered in our efforts to list and show the properties to all potentially interested buyers.

8.      Sales activity concerning the two properties has increased in the past few weeks as the COVID-19 pandemic crisis has begun to relax.  Potential buyers are once again shopping for real properties in the Bay Area and luxury properties like these are no exception.  Showings of the properties have increased, including repeated showings to the same potential buyer.

9.     In my professional opinion, I believe that given the nature of the properties and the unique architecture of the Mora House, as well as taking into consideration the current circumstances and listings, that the properties will sell at their current combined list price of $17,500,000 within approximately the next 6 months.  I understand that Bankruptcy Court approval is required for any sale.

Executed on August 5, 2020.  I declare under penalty of perjury under the laws of the State of California that that foregoing is true and correct.

_/s/ Phil Chen_____
Phil Chen

# EXHIBIT 3

MARTA E. VILLACORTA (NY SBN 4918280)
Assistant United States Trustee
SUHEY RAMIREZ (NY SBN 5472022)
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
280 South First Street, Room 268
San Jose, CA 95113
Telephone: (408) 535-5525 ext. 236
Facsimile: (408) 535-5532
Email: suhey.ramirez@usdoj.gov


Attorneys for TRACY HOPE DAVIS
United States Trustee for Region 17

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re: ) | Case No. 20-50628 SLJ |
| ) | |
| FRE 355 INVESTMENT GROUP, LLC, ) | Chapter 11 |
| dba FRE 355, ) | |
| ) | Date: September 3, 2020 |
| Debtor. ) | Time: 1:30 PM |
| ) | Place: Telephone or Vide Conference Only |
| In re: ) | Judge: Honorable Stephen L. Johnson |
| ) | |
| MORA HOUSE, LLC, ) | |
| ) | |
| Debtor. ) | |
| ) | |

**OBJECTION OF THE UNITED STATES TRUSTEE AND RESERVATION OF
RIGHTS WITH RESPECT TO THE DISCLOSURE STATEMENT TO THE DEBTORS'
PROPOSED COMBINED PLAN OF REORGANIZATION AND DISCLOSURE
STATEMENT DATED JULY 10, 2020**

Tracy Hope Davis, United States Trustee for Region 17 ("United States Trustee"), by and

through her undersigned counsel, hereby files this objection ("Objection") to the Disclosure

Statement for Debtors' Plan of Reorganization Dated July 10, 2020, ECF No. 65 ("Disclosure

Case: 20-50628     Doc# 84     Filed: 08/27/20     Entered: 08/27/20 22:46:53     Page 32 of
43
632

Statement") filed by the above-captioned debtors (collectively, the "Debtors"), FRE 355 Investment Group, LLC ("FRE 355 Investment Group") and Mora House, LLC.

## I.    **INTRODUCTION**

The United States Trustee objects to the approval of the Disclosure Statement because it does not meet the requirements of section 1125 of the Bankruptcy Code.  Specifically, as further explained below, the Disclosure Statement:  (1) lacks sufficient detail regarding the sale of the Properties (defined below) located in Los Altos, California; (2) fails to explain the tax and mortgage interest implications if the Properties are not sold within 6 months of the Effective Date; (3) lacks sufficient information regarding when the Paydown (defined below) is due to S&R, Debtors' primary secured creditor;  (4) fails to explain what monies will be used to pay Chapter 11 administrative claims on the Effective Date if the Properties are not sold; (5) does not contain adequate information regarding EPS Plumbing's ("EPS") claim; (6) does not contain adequate information regarding the cramdown provision; (7) lacks information regarding the Debtors' eligibility for a discharge; and (8) does not contain adequate information regarding United States Trustee quarterly fees.

This is information that should be provided prior to the approval of the Disclosure Statement so that creditors and parties-in-interest may understand the treatment of their claims under the plan and whether to vote, or not to vote, for the plan.  For these reasons, the United States Trustee objects to approval of the Disclosure Statement, and, absent amendment to address the objections raised herein, it should not be approved.  The United States Trustee reserves her rights to object to any amended plan or disclosure statement filed.

To the extent that the Debtors fail to address these deficiencies, the United States Trustee reserves her rights to object to confirmation of the plan, and to object to any subsequently filed amended plan or disclosure statement filed prior to the hearing.

## II.    **JURISDICTION AND STANDING**

Under 28 U.S.C. § 586(a)(3), the United States Trustee is charged with supervising the administration of cases and trustees "by, whenever the United States trustee considers it to be appropriate" taking certain action.  *See* 28 U.S.C. §§ 586(a)(3)(A)-(I). This duty is part of the

Case: 20-50628    Doc# 84    Filed: 08/27/20    Entered: 08/27/20 22:46:53    Page 33 of 43

033

United States Trustee's responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994). Under 11 U.S.C. § 307, the United States Trustee has standing to be heard and to object to the Plan and Disclosure Statement addressed herein. 11 U.S.C. § 307.

### III. BACKGROUND FACTS AND PROCEDURAL POSTURE

#### A. Summary of Facts

The Debtors, FRE 355 Investment Group and Mora House, LLC filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on April 13, 2020 and April 14, 2020, respectively, and they self-designated as single asset real estate cases.[1] ECF No. 1 and ECF No. 1 in Case No. 20-50631.[2] On April 16, 2020, the Court entered an order authorizing the joint administration of the Debtors. *See* ECF No. 13. Melvin Vaughn is the managing member and sole owner of the Debtors. *See* ECF No. 65 at 6. By order dated June 25, 2020, the Court authorized the retention of The Law Offices of Binder and Malter, to serve as counsel to the Debtors. *See* ECF No. 20 and ECF No. 26 in Case No. 20-50631.

The Debtors' section 341(a) meeting of creditors was held and concluded on May 5, 2020. *See* Dockets generally. Due to a lack of interest, no official committee of unsecured creditors has been appointed by the United States Trustee. *Id.*

According to its petition, the principal asset of FRE 355 Investment Group is a newly constructed single family dwelling located at 10718 Mora Drive, Los Altos, California ("Mora House"), valued at $14,999,999 and in an undeveloped parcel lot of approximately 1.47 acres located immediately adjacent to the Mora House, Parcel No. 331-14-067 (the "Mora Lot") valued at $4,000,000. *See* ECF No. 26. The sole asset of Mora House, LLC is the Mora Lot. *See* ECF No. 65 at 6.

---

[1] The United States Trustee respectfully requests that the Court take judicial notice of the Debtor's Petition, Schedules, Statement of Financial Affairs, and other documents filed therewith, and any amendments thereto which are in the Court's file in this case pursuant to Fed. R. Evid. 201, as made applicable by Fed. R. Bankr. P. 9017. The information contained in these documents, signed under penalty of perjury by Debtor, are admissions of the Debtor pursuant to Fed. R. Evid. 801(d).

[2] "ECF No." refers to the main bankruptcy docket for case number 20-50628 SLJ.

Both the Mora House and the Mora Lot (collectively, the "Properties") are encumbered by the secured debt of S&R. *See* ECF No. 65 at 6. FRE 355 Investment Group and S&R are parties to an Addendum to Promissory Note Loan #10536 dated December 11, 2018, which granted S&R an additional deed of trust collateralized by the Mora Lot and provides that "Lender shall release the real property interest in said property for a principal reduction of Five Hundred Thousand dollars ($500,000)." *Id.* at 7.

On June 5, 2020 the Debtors filed an Application to Employ Phil Chen as Real Estate Broker and for Order Approving Listing Agreements for Sale of the Mora House and Mora Lot (the "Broker Retention Application"), which was approved by the Bankruptcy Court by order dated June 16, 2020. *See* ECF Nos. 53, 58 and 59. According to the listing agreements attached to the Broker Retention Application, the Mora House is currently being marketed at $14,999,999 while the Mora Lot has been listed for $4,000,000. *See* ECF No. 53 at Exhibits A and B. However, if the Properties are sold together, the total purchase price is $17,500,000. *See* ECF No. 53 at Exhibit C.

According to the FRE 355 Investment Group's Schedules, the following debts are owed:

    a.   Schedule D:   Secured Claims           $12,255,383.74

    b.   Schedule E:   Priority Unsecured Claims      $0.00

    c.   Schedule F:   Nonpriority Unsecured Claims   $4,165,014.69

*See* ECF Nos. 26 and 68.

According to Mora House, LLC's Schedules, the following debts are owed:

    a.     Schedule D:     Secured Claims           $13,011,820.46

    b.     Schedule E:     Priority Unsecured Claims      $0.00

    b.     Schedule F:     Nonpriority Unsecured Claims   $25,000.00

*See* Case No. 20-50631, ECF No. 22.

Platinum Loan Servicing, Inc. ("PLS") as servicing agent for S&R, filed a Motion to Dismiss Chapter 11 Cases on July 22, 2020, arguing among other things that the Debtors' Plan is patently infeasible and a sham delay tactic. *See* ECF No. 69 at 4. PLS also argues that "the Debtors' distribution analysis that results in $430,606 to pay unsecured creditors on a $19

million sale is based on PLS receiving only $13 million at closing, however, the amount due PLS as of July 7, 2020 is $13,173,440.49 and increases by at least $136,000 monthly plus cost." *See* ECF No. 69 at 5. The Debtors filed an Opposition to the Motion to Dismiss on August 5, 2020, and the matter will be heard on September 29, 2020. *See* ECF Nos. 79 at 1 and 82. To date, PLS has not filed an objection to the Debtors' Disclosure Statement. *See* Docket generally.

**B. Relevant Liquidating Plan Provisions[3]**

1. <u>Feasibility.</u> The Disclosure Statement states that the Mora House and Mora Lot will sell for list prices, $14,999,000 and $4,000,000 respectively. *See* ECF No. 65 at 9. However, according to the listing agreements attached to the Broker Employment Application there is a possibility that the Properties will be sold together for $17,500,000. *See* ECF No. 53 at Exhibit C.

2. <u>Cash at Closing.</u> The Disclosure Statement indicates that the cash at closing will be $6,275,000 and that the Chapter 11 Administrative Claims of $20,000 will be paid on the Effective Date. *See* ECF No. 65 at 11. The Effective Date is defined in the Chapter 11 Plan of Reorganization (the "Plan") as the sixtieth day following the date of the entry of the order of confirmation of the Plan if no notice of appeal from that order has been filed. *See* ECF No. 64 at 1. According to the latest monthly operating reports ("MORs") filed on August 20, 2020, the Debtors have negative $798.00 cash on hand, combined. *See* ECF No. 83 and ECF No. 34 in Case No. 20-50631.

3. <u>Marketing and Sale of Mora House and Mora Lot.</u> The Disclosure Statement states that the Debtors will advertise, show, market and sell the Properties and close sales thereof in the Initial Marketing period, within 6 months of the Effective Date; however if the mortgage lien holder, S&R receives a $500,000 principal paydown, the Debtors will have 6 more months to close sales of the Properties within the Extended Marketing Period. *See* ECF No. 65 at 12.

4. <u>Effective Date Distribution.</u> The Disclosure Statement indicates that the Debtors will

---

[3] All undefined capitalized terms have the same definitions assigned to them under the Liquidating Plan, ECF No. 64 at 1-2.

**036**

pay holders of allowed professional administrative expense claims in cash on the Effective Date. *See* ECF No. 65 at 13.

     5.   <u>Class 2(c)- EPS Plumbing</u>.  The Disclosure Statement lists EPS Plumbing ("EPS") holding a secured claim in the amount of $27,000.  *See* ECF No. 65 at 4.  The Debtors initially listed EPS holding a nonpriority unsecured creditor in the amount of $25,000, but later amended Schedule E/F and EPS is no longer listed as a creditor.  *See* ECF No. 34 at 1 and ECF No. 68.

     6.   <u>Cramdown.</u>  The Disclosure Statement indicates that pursuant to section 1129(b) of the Bankruptcy Code, the Debtors reserve the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.  *See* ECF No. 65 at 17.

     7.   <u>Reorganized Debtors</u>.  The Debtors indicate on page 12 that the Debtors will conduct their business and operate from confirmation and through and after substantial consummation of the Plan.

     8.   <u>United States Trustee Quarterly Fees.</u> The Debtors' Plan states that "[f]ollowing confirmation, Debtors will continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6)."  *See* ECF No. 64 at 3.

## IV.   <u>ARGUMENT</u>

**A. The Governing Law.**

     To satisfy the requirements of adequate information under 11 U.S.C. § 1125, a disclosure statement "must contain the necessary financial information, data, and projections relevant to the creditor's decision to accept or reject the Chapter 11 plan."  *In re Ferguson*, 474 B.R. 466, 476 (Bankr. D.S.C. 2012); *see also Harper v. Oversight Comm. (In re Conco, Inc.)*, 855 F.3d 703, 714 (6th Cir. 2017) ("While the Bankruptcy Code does not precisely define "adequate disclosure," the disclosure statement must contain enough information to comport with the purpose of requiring a disclosure statement.").  The importance of full disclosure is clear since there is substantial reliance placed upon the disclosure statement by the creditors and the court.  *Currithers v. FedEx Ground Package Sys., Inc.*, 2012 U.S. Dist. LEXIS 13848, *11-12 (E.D. Mich. Feb. 6, 2012) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988)).  Given this reliance, the Debtor-in-Possession's obligation to provide sufficient data to satisfy the Code standard of

"adequate information" is of substantial concern. *Id.* Adequate information is "a flexible concept that permits the degree of disclosure to be tailored to the particular situation." *Official Committee of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715, 718-19 (Bankr. E.D. Cal. 1992). However, at an "irreducible minimum," a disclosure statement must provide information about the plan and how its provisions will be affected. *Id.* What is adequate is a subjective determination to be made on a case-by-case basis. *In re Brotby*, 303 B.R. 177, 193 (9th Cir. B.A.P. 9th Cir. 2003) (quoting *In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988).

**B. The Disclosure Statement Fails to Provide Adequate Information as Required by Section 1125 of the Bankruptcy Code.**

The Disclosure Statement fails to meet the requirements of Section 1125. Specifically, it does not contain "adequate information," in the following ways:

**1. The Disclosure Statement Contains Inadequate Information Regarding the Sale of the Properties.**

On Page 6 of the Disclosure Statement, the Debtors indicated that the Properties have been marketed concurrently. *See* ECF No. 65 at 6. However, on pages 9 and 10 of the Disclosure Statement, the Debtors state that the Mora House and Mora Lot will sell for list prices, $14,999,000 and $4,000,000, respectively. *See* ECF No. 65 at 9 and 10. According to the listing agreements attached to the Broker Retention Application there is a possibility that the Properties will be sold together for $17,500,000. *See* ECF No. 53 at Exhibit C. There is no discussion regarding the reasonable probability of success if the Properties are sold concurrently for $17,500,000 instead of separately for a total purchase price of $18,499,000. The Debtors should provide this information and explain how the plan provision regarding feasibility will be affected. *See In re Michelson*, 141 B.R. 715, 718-19. Accordingly, the Disclosure Statement should be amended to include this information.

**2. The Disclosure Statement Fails to Explain the Tax and Mortgage Interest Implications if the Properties are Not Sold Within 6 months of the Effective Date.**

On page 12 of the Disclosure Statement, the Debtors state they will advertise, show, market and sell the Properties and close sales thereof in the Initial Marketing Period, within 6 months of the Effective Date. *See* ECF No. 65 at 12. The Disclosure Statement does not explain what

property taxes and interest mortgage payments will become due during this time or how they will be paid if the Properties are not sold within 6 months of the Effective Date. There is no discussion regarding the feasibility of the Plan when considering both the property taxes and mortgage interest increase if the Properties are not sold within 6 months of the Effective Date. The Debtors should provide this information and explain how the plan provision regarding feasibility will be affected. *See In re Michelson*, 141 B.R. 715, 718-19. Accordingly, the Disclosure Statement should be amended to include this information.

**3. The Disclosure Statement Does Not State When the Paydown Will Be Paid to S&R.**

On page 6 of the Disclosure Statement, the Debtors indicate that if S&R receives $500,000 as a principal paydown (the "Paydown") for the mortgage on the Properties, then the Debtors will have an additional 6 months to sell the Properties. *See* ECF No. 65 at 12. There is no discussion how the Paydown to S&R will affect the feasibility of the Plan. The Debtors should provide this information and explain how the plan provision regarding feasibility will be affected. *See In re Michelson*, 141 B.R. 715, 718-19. Consequently, the Disclosure Statement should be revised to include this information.

**4. The Disclosure Statement Fails to Explain What Monies Will be Used to Pay Chapter 11 Administrative Claims on the Effective Date if the Properties are Not Sold.**

On page 13 of the Disclosure Statement, the Debtors indicate that the cash at closing will be $6,275,000. *See* ECF No. 65 at 11. The Disclosure Statement also provides that the Chapter 11 Administrative Claims of $20,000 will be paid on the Effective Date. *Id.* As mentioned above, the Effective Date is the sixtieth day following the date of the entry of the order of confirmation of the Plan if no notice of appeal from that order has been filed. *See* ECF No. 64 at 1. Per a review of the Debtors' July 2020 MORs, the Debtors have negative $798.00 cash on hand, combined. *See* ECF No. 83 and ECF No. 34 in Case No. 20-50631. The Debtors should explain how the administrative expense claims will be paid on the Effective Date if the Properties are not sold by the Effective Date considering the negative cash flow. *See In re Michelson*, 141 B.R. 715, 718-19. Accordingly, the Disclosure Statement should be amended to provide information with respect

Case: 20-50628    Doc# 87    Filed: 08/27/20    Entered: 08/27/20 22:46:53    Page 39 of 43

to the reasonable probability that the administrative claims can in fact be paid on the Effective Date before any Disclosure Statement is approved.

**5. The Disclosure Statement Does Not Contain Adequate Information Regarding the EPS Claim.**

The Debtors initially listed EPS holding a nonpriority unsecured creditor in the amount of $25,000, but later amended Schedule E/F and EPS is no longer listed as a creditor. *See* ECF No. 34 at 1 and ECF No. 68. However, the Disclosure Statement indicates that EPS (Class 2C) holds a secured claim of $27,000, which will be paid six months after the Effective Date. *See* ECF No. 65 at 4. Given the factual discrepancy and lack of information, it is unclear why EPS was listed as a secured creditor in the Disclosure Statement. The Debtors never amended Schedule D to include EPS. *See* Docket generally. Also, per a review of the docket, it does not appear that EPS filed a proof of claim alleging to have a secured claim. *Id.* Accordingly, the Debtors should amend their Disclosure Statement and explain this discrepancy.

**6. The Disclosure Statement Does Not Contain Adequate Information Regarding the Cram Down Provision.**

On page 17 of the Disclosure Statement, the Debtors reserve their right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors without any additional information. *See* ECF No. 65 at 17. It is misleading to suggest to creditors that the Debtors may invoke 11 U.S.C. § 1129(b) without an explanation. If the invocation of "cram down" is intended, the Disclosure Statement should contain a brief summary of the operation of Section 1129(b) as it would affect the class in question, as well as a brief outline of the "fair and equitable" standard that would be applied should "cram down" be invoked. *See In re One Times Square Assocs. Ltd. Partnership*, 159 B.R. 695, 706-08 (Bankr. S.D.N.Y. 1993). Accordingly, the Disclosure Statement should be amended to include this information.

//

//

//

**7. The Disclosure Statement Should Include a Provision that the Debtors Are Not Entitled to a Discharge.**

Section 1141(d)(3) provides that the confirmation of a bankruptcy plan does not discharge a bankruptcy debtor if: (A) the plan provides for the liquidation of all or substantially all of the property of the bankruptcy estate; (B) the debtor does not engage in business after consummation of the plan; and (C) the debtor would be denied a discharge under 11 U.S.C. § 727(a) if the case were a case under chapter 7. *See In re Western Asbestos Co.*, 313 B.R. 832, 853 (Bankr. N.D. Cal. 2003) ("A corporate chapter 11 debtor receives a discharge from all pre-petition debts unless the plan provides for the liquidation of all or substantially all of the property of the debtor's bankruptcy estate and the debtor does not intend to engage in business after consummation of the plan.").

Here, the Debtors have proposed a Liquidating Plan. *See* ECF Nos. 64 and 65. The Debtors indicate on page 12 that they will conduct their business and operate from confirmation and through and after substantial consummation of the Plan. *See* ECF No. 65 at 12. The Disclosure Statement does not indicate that the Debtors intend to engage in business after consummation of the Plan. *Id.* Further, creditors should not bear the burden of determining what additional information/updates not disclosed in the Disclosure Statement are also a part of the Debtors' plan. *In re Ferguson*, 474 B.R. 466, 476 (Bankr. D.S.C. 2012) ("A disclosure statement is more than merely a ministerial task that precedes a confirmation hearing that can be updated at any time."). Absent further information, it does not appear the Debtors are entitled to a discharge. Accordingly, the Disclosure Statement should be amended to accurately reflect all the relevant provisions of the Debtors' Plan (including the lack of discharge provision).

**8. The Disclosure Statement Does Not Contain Adequate Information Regarding United States Trustee Quarterly Fees.**

The United States Trustee is authorized by law to collect a mandatory quarterly fee from every debtor who files a chapter 11 bankruptcy case. *See* 28 U.S.C. § 1930(a)(6); *see also Sanders v. United States Trustee (In re Sanders),* No. CC-12-1398, 2013 WL 1490971 (B.A.P. 9th Cir. April 11, 2013) (citing *Tighe v. Celebrity Home Entm't, Inc. (In re Home Entm't, Inc.)*, 210 F.3d 995, 998 (9th Cir. 2000) (noting that Congress specifically "extend[ed] quarterly fees

payable by Chapter 11 debtors to the U.S. Trustee into the post-confirmation period")).

Additionally, the Debtors are required to pay any attendant interest in connection with any

delinquent quarterly fees. *See* 31 U.S.C. § 3717.

Here, the Debtors' Plan states that "[f]ollowing confirmation, Debtors will continue to

pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28

U.S.C. § 1930(a)(6)." *See* ECF No. 64 at 3. However, there is no discussion regarding the

Debtors' requirement to pay any attendant interest in connection with any delinquent quarterly

fees. Accordingly, the Disclosure Statement should be amended to include this information.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Disclosure Statement should not be approved until the

Debtor files an amendment that clarifies and provides additional information as described above.

*See* 11 U.S.C. § 1125. The United States Trustee reserves her right to object to any amendment(s)

to the Disclosure statement for failure to meet the requirements of 11 U.S.C. § 1125 and the Federal

Rules of Bankruptcy Procedure. The United States Trustee also reserves her right to object to

confirmation of the Plan for failure to meet the requirements of 11 U.S.C. § 1129 and the Federal

Rules of Bankruptcy Procedure, and to take any other appropriate action.

Date: August 27, 2020

TRACY HOPE DAVIS
United States Trustee, Region 17

*/s/ Suhey Ramirez*
SUHEY RAMIREZ
Trial Attorney

## CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, California. I am over the age of eighteen (18) years and not a party to the within entitled cause, my business address is 22287 Mulholland Hwy., # 318, Calabasas, CA 91302.

On August 27, 2020 I served a true and correct copy of the following documents:

**OBJECTION TO DISCLSOURE STATEMENT; JOINDER IN UST OBJECTIONS; 11 U.S.C. § 1111(b)(2) ELECTION**

by effecting electronic delivery upon such persons that have agreed to accept service through the Court's CM/ECF electronic noticing system as follows:

Bernard S. Greenfield on behalf of Creditor Richard Blanchard
bgreenfield@greenfieldlaw.com, ckaefer@greenfieldlaw.com
Robert G. Harris on behalf of Debtor FRE 355 Investment Group, LLC
rob@bindermalter.com
Lewis R. Landau on behalf of Creditor Platinum Loan Servicing, Inc.
lew@landaunet.com
Michael W. Malter on behalf of Debtor FRE 355 Investment Group, LLC
michael@bindermalter.com
Office of the U.S. Trustee / SJ
USTPRegion17.SJ.ECF@usdoj.gov
Suhey Ramirez on behalf of U.S. Trustee Office of the U.S. Trustee / SJ
suhey.ramirez@usdoj.gov, Patti.Vargas@UST.DOJ.GOV
Julie H. Rome-Banks on behalf of Debtor FRE 355 Investment Group, LLC
julie@bindermalter.com
Jennifer C. Wong on behalf of Creditor Wells Fargo Bank, N.A.
bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of August 2020 at Los Angeles, California.

*/s/ Lewis R. Landau*
Lewis R. Landau