Michael W. Malter, Esq.  ID #96533
Robert G. Harris, Esq. ID #124678
Julie H. Rome-Banks, Esq. ID #142364
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050
Telephone: (408) 295-1700
Facsimile: (408) 295-1531
Email: Michael@bindermalter.com
Email: Rob@bindermalter.com
Email: Julie@bindermatler.com

Attorneys for debtors and debtors-in-possession
FRE 355 Investment Group, LLC and Mora House, LLC

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, DIVISION 5

| | |
|---|---|
| In re:<br><br>FRE 355 INVESTMENT GROUP, LLC, dba FRE 355,<br><br>                 Debtor. | Case No.  20-50628-SLJ<br><br>Cases Jointly Administered<br><br>Chapter 11 |
| In re<br><br>MORA HOUSE, LLC,<br><br>                 Debtor. | Case No. 20-50631-SLJ<br><br>Chapter 11<br><br>DISCLOSURE HEARING:<br><br>Date: September 3, 2020<br>Time: 1:30 p.m.<br>Courtroom: 11 (telephonic) |

**RESPONSE BY DEBTORS TO (1) OBJECTION OF THE UNITED STATES TRUSTEE AND RESERVATION OF RIGHTS WITH RESPECT TO THE DISCLOSURE STATEMENT TO THE DEBTORS' PROPOSED COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT DATED JULY 10, 2020, AND (2) OBJECTION TO DISCLOSURE STATEMENT; JOINDER IN UST OBJECTIONS; 11 U.S.C. § 1111(b)(2) ELECTION**

Case: 20-50628    Doc# 88    Filed: 09/01/20    Entered: 09/01/20 08:34:34    Page 1 of 53

Debtors and debtors-in-possession FRE 355 Investment Group, LLC, dba FRE 355 and Mora House, LLC (collectively, the "Debtors") hereby respond as follows to the Objections[1] to the Disclosure Statement for Debtors' Plan of Reorganization (July 10, 2020) (the "Disclosure Statement").

### A.  UST Objection and Responses

The parties have met and conferred.  The Debtors hereby propose the changes set forth in Exhibits "A" and "B" hereto, redlines showing proposed changes to the Disclosure Statement and the Debtors' Plan of Reorganization (July 10, 2020) (the "Plan"), intended to resolve the UST Objection.  Specific points raised, references in the UST Objection, the text of the proposed changes, and reference to the redlined Disclosure Statement and Plan are as follows:

| UST Objection | Page(s) | Proposed Change to Disclosure Statement | Redline Page(s) |
|---|---|---|---|
| The Disclosure Statement Contains Inadequate Information Regarding the Sale of the Properties. | 7:12-23 | As set forth in Exhibit "C" hereto, the Debtors assume that the Mora House and Mora Lot will sell for list prices, $14,999,000 and $4,000,000, for a total of $18,999,999 if sold separately, and $17,500,000 if sold together.  The combined tax basis for the two properties is $17,433,065.  Assuming sale expenses of 7% ($1,295,000 if sold separately for $18,999,999 or $1,225,000 if sold together for $1,750,000), the Debtors would generate a loss of $228,066 if the sale price is $1,899,999 or $1,158,065 if the sale price is $1,750,000.  In either case, no Federal or State capital gains taxes would be payable.  $17,704,000 would be available to pay claims after costs of sale if the properties sell for $18,999,999, and $16,275.000 would be available if the properties sell for a combined $17,500,000.<br><br>Payment from escrow of the secured claims set forth in Classes 1A-2C listed above at a sale price of $18,999,999 leaves a net $860,805 to pay unsecured and priority claims, and a sale at $17,500,000 will leave $430,606. | 11:19-12:3 |
| The Disclosure Statement Fails to Explain the Tax and Mortgage Interest Implications if the Properties are Not Sold Within 6 months of the Effective Date. | 7:24-8:7 | If the properties are not sold within six months of the Effective Date, or the extended period following a $500,000 advance to S&R, Blanchard and S&R shall have the right to asserts their liens and foreclose.  Foreclosing lenders are responsible for accrual on senior liens, including property taxes. | 2:3-6 |

---

[1] Objection of the United States Trustee and Reservation of Rights with Respect to the Disclosure Statement to The Debtors' Proposed Combined Plan of Reorganization and Disclosure Statement Dated July 10, 2020 (the "UST Objection"), and the Objection To Disclosure Statement; Joinder in UST Objections; 11 U.S.C. § 1111(B)(2) Election (the "S&R Objection"), collectively, the "Objections".

| | | | |
|---|---|---|---|
| The Disclosure Statement Does Not State When the Paydown Will Be Paid to S&R. | 8:8-15 | The Debtors will advertise, show, market and sell the Mora House and Mora Lot and close sales thereof in the Initial Marketing Period, within 6 months of the Effective Date; provided however that if S&R receives a $500,000 principal paydown under the Addendum to Promissory Note prior to 6 months following the Effective Date, the Debtors will have 6 more months to close sales of both the Mora House and Mora Lot within the Extended Marketing Period. | 14:21-28<br><br>See also<br>1:26-27<br>2:22-24<br>3:12-13<br>3:21-22<br>4:4-5<br>4:23-24<br>5:5-6<br>5:14-15 |
| The Disclosure Statement Fails to Explain What Monies Will be Used to Pay Chapter 11 Administrative Claims on the Effective Date if the Properties are Not Sold. | 8:16-9:2 | The Debtors are presently planning on a capital contribution from Melvin Vaughn to pay administrative expenses allowed. Once agreement has been reached an amended Bankruptcy Rule 2016(b) statement will be filed. | 12:10-12 |
| The Disclosure Statement Does Not Contain Adequate Information Regarding the EPS Claim. | 9:3-13 | EPS did not file a timely proof of claim in the case, though the Debtors believe it holds a mechanic's lien. Counsel for EPS has been contacted and asked to file a claim, at which time its validity and the adequacy of notice of the bar date for claims will be evaluated. | 4:27-28 |
| The Disclosure Statement Does Not Contain Adequate Information Regarding the Cram Down Provision. | 9:14-24 | Bankruptcy Code section 1129(b) provides that, if the Plan is rejected by one or more impaired classes of claims, it may be confirmed by the Bankruptcy Court, if: (i) the Court determines that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting class(es) of claims impaired under the Plan; and (ii) at least one class of impaired claims voted to accept the Plan. The Debtors will seek to confirm the Plan under this provision if one or more impaired classes do not vote to accept.<br><br>If any impaired class of claims or interests does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtors if, as to each impaired class of claims or interests that has not accepted the Plan (or is deemed to reject the Plan), the Plan "does not discriminate unfairly" and is "fair and equitable" under the so-called "cram down" provisions set forth in section 1129(b) of the Bankruptcy Code.<br><br>The "unfair discrimination" test applies to classes of claims or interests that are of equal priority and are receiving different treatment under the Plan. A chapter 11 plan does not discriminate unfairly, within the meaning of the Bankruptcy Code, if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are substantially similar to those of the dissenting class and if no class of claims or interests receives more than it legally is entitled to receive for its claims or interests. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." | 6:12-7:17 |

Case: 20-50628    Doc# 88    Filed: 09/01/20    Entered: 09/01/20 08:34:34    Page 3 of 53

The "fair and equitable" test applies to classes of different priority and status (*e.g.*, secured versus unsecured; claims versus interests) and includes the general requirement that no class of claims receive more than 100% of the allowed amount of the claims in such class and that the "absolute priority rule" is satisfied (*i.e.*, unless a class of claims of a senior priority are satisfied in full, no junior class can receive or retain any property under the Plan). As to any rejecting class, the test sets different standards that must be satisfied in order for the Plan to be confirmed, depending on the type of claims or interests in such Class. The following sets forth the "fair and equitable" test that must be satisfied if a class rejects the Plan:

• **Rejecting Class of Unsecured Creditors**. Either (i) each holder of an impaired unsecured claim in the class receives or retains under the Plan, property of a value, as of the Effective Date, equal to the amount of its allowed claim, or (ii) the holders of claims and interests that are junior to the claims of the rejecting class will not receive or retain any property under the Plan.

• **Rejecting Class of Secured Claims**. The plan provides that (i) **either** that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and **(ii)** that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property; **(ii)** for the sale, subject to section 363(k) of this title [11 USCS § 363(k)], of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or **(iii)** for the realization by such holders of the indubitable equivalent of such claims.

**IF ALL OTHER CONFIRMATION REQUIREMENTS ARE SATISFIED AT THE CONFIRMATION HEARING, THE PLAN PROPONENTS WILL ASK THE BANKRUPTCY COURT TO RULE THAT THE PLAN MAY BE CONFIRMED ON THE GROUNDS THAT THE SECTION 1129(b) REQUIREMENTS HAVE BEEN SATISFIED.**

| | | | |
|---|---|---|---|
| The Disclosure Statement Should Include a Provision that the Debtors Are Not Entitled to a Discharge. | 10:1-20 | The Plan does not provide for a discharge of the Debtors. | 14:19-20 |

Case: 20-50628    Doc# 88    Filed: 09/01/20    Entered: 09/01/20 08:34:34    Page 4 of 53

| | | | |
|---|---|---|---|
| The Disclosure Statement Does Not Contain Adequate Information Regarding United States Trustee Quarterly Fees. | 10:21-11:8 | The Debtors will pay all fees owed to the United States Trustee pursuant to 28 U.S.C. §1930 and any attendant interest in connection with any delinquent quarterly fees within 15 days of billing by the United States Trustee after entry of an order confirming the Plan and as a condition thereof. | Plan, 3:14-18 |

**B. S&R Objection and Responses**

The Debtors met and conferred through counsel prior to the filing of this objection. After a phone call, the undersigned transmitted the redlines attached hereto as Exhibits "A" and "B" and asked for comments. The Debtors will continue to accept comments in an effort to resolve all objections prior to the hearing.

Platinum Loan Servicing, Inc. ("PLS"), on behalf of S&R, after arguing points asserted in support of its motion for stay relief and dismissal, adopts and joins in the eight points of UST Objection addressed above. S&R Objection, 3:11-12. PLS then attempts to draw a parallel between certain objections by the U.S. Trustee and its own three that allegedly render the Plan "patently unconfirmable," a term used nowhere in the UST Objection.

PLS first misstates the U.S. Trustee's eighth objection and incorrectly raises it as a basis for claiming the Plan to be patently unconfirmable. As set forth above, The U.S. Trustee's eighth objection pertained to "attendant interest" on fee delinquencies and has been addressed by a proposed Plan amendment. PLS then claims that a $175,000 U.S. Trustee fee would be generated by a sale. These cases will be closed promptly after confirmation, and any sale of the properties will occur after that time. No U.S. Trustee fee would then be generated. PLS's objection in this regard should be overruled.

PLS then misstates the U.S. Trustee's second objection. The Debtors have proposed language to explain the tax and mortgage implications of accruals of secured and administrative debt, as the U.S. Trustee requested. The Disclosure Statement presently lists S&R's secured claim at $12,113,909.20. PLS seems to be seeking to establish that it is accruing principal and interest at $136,712.50 at a default rate of interest, protesting that its claim cannot be capped at $13 million. If S&R is successful in proving there is no equity in the properties, no interest will accrue at all post-petition. If the Debtors are successful in that there is equity, then S&R will be entitled to assert a

claim including interest, fees and costs pursuant to Bankruptcy Code section 506(b). The Debtors intend to object to S&R's claim and reserve the right to challenge any default rate interest asserted.

PLS's third objection seems to be that the Plan is patently unconfirmable because it does not include one of the three alternative bases for cramdown of a secured creditor: preservation of a secured claimant's right to credit bid under Bankruptcy Code section 1129(b)(2)(A)(ii). PLS targets its objection to collateral it is contractually-bound to release its lien against pursuant to the terms of an Addendum to Promissory Note. Even if the optional cramdown treatment for a credit bid is included in the Plan, its application would not release S&R from its negotiated contractual obligation. The tortured interpretation of the Bankruptcy Code set forth in this final objection should be overruled and reserved for confirmation.

WHEREFORE, the Debtors respectfully request that the Court, subject to the making of the modifications set forth the redlined Plan and Disclosure Statement attached hereto as Exhibits "A" and "B", approve the Disclosure Statement as containing adequate information.

Dated: August 31, 2020

BINDER & MALTER, LLP

By:/s/ Robert G. Harris
Robert G. Harris

Attorneys for debtors and debtors-in-possession
FRE 355 Investment Group, LLC and
Mora House, LLC

Michael W. Malter, Esq.  ID #96533
Robert G. Harris, Esq. ID #124678
Julie H. Rome-Banks, Esq. ID #142364
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050
Telephone: (408) 295-1700
Facsimile: (408) 295-1531
Email:  Michael@bindermalter.com
Email:  Rob@bindermalter.com
Email:  Julie@bindermatler.com

Attorneys for Debtors and Debtors-in-possession
FRE 355 Investment Group, LLC and Mora House, LLC

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, DIVISION 5

| | |
|---|---|
| In re:<br><br>FRE 355 INVESTMENT GROUP, LLC, dba FRE 355,<br><br>                          Debtor. | Case No.  20-50628-SLJ<br><br>Cases Jointly Administered<br><br>Chapter 11 |
| In re<br><br>MORA HOUSE, LLC,<br><br>                          Debtor. | Case No. 20-50631-SLJ<br><br>Chapter 11<br><br>DISCLOSURE HEARING:<br><br>Date: September 3, 2020<br>Time: 1:30 p.m.<br>Courtroom: 11 (telephonic) |

## DEBTORS' PLAN OF REORGANIZATION
### (~~JULY 10~~SEPTEMBER 3, 2020)

**TABLE OF CONTENTS**

I. DEFINITIONS .................................................................................................. 1

II. TREATMENT OF UNCLASSIFIED CLAIMS ............................................... 2

III. TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ....................... 3

    A. Classes under Plan and Voting Rights Summary ................................ 3

    B. Treatment of Claims ............................................................................ 4

    Class 1A – Blanchard Trust .................................................................... 4

    Class 1B – S&R ...................................................................................... 4

    Class 1C – Department of Tax & Collections ........................................ 5

    Class 2A – S&R ...................................................................................... 5

    Class 2B – Department of Tax & Collections ........................................ 6

    Class 2C – EPS Plumbing ...................................................................... 6

    Class 3A – FRE 355 General Unsecured Claims ................................... 6

    Class 3B – Mora House LLC General Unsecured Claims ..................... 7

    Class 4A – Equity Interests in FRE 355 ................................................ 7

    Class 4B – Equity Interests in Mora House LLC ................................... 7

IV. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................... 7

    A. Assumption and Rejection .................................................................. 7

        1. Contract Assumed. ..................................................................... 7

        2. Rejection of All Other Contracts Not Assumed. ...................... 7

        3. Claims Arising Out of Rejection. ............................................. 7

V. MEANS OF EXECUTION. ............................................................................. 8

    A. Reorganized Debtors. .......................................................................... 8

    B. Marketing and Sale of Mora House and Mora Lot. ............................. 8

    C. Effect of Failure to Close Sale. ........................................................... 8

    D. Effective Date Distribution. ................................................................ 9

    E. Funding and Operation of Disputed Claims Reserve. .......................... 9

    F. Distributions Generally. ....................................................................... 9

1           G.      Powers of Reorganized Debtor. .................................................11

2    VI.    EFFECT OF CONFIRMATION OF PLAN ...............................................12

3           A.      Confirmation Injunction. ..............................................................12

4           B.      Binding Effect. ..............................................................................13

5    VII.    RETENTION OF JURISDICTION ...........................................................13

6    VIII.    GENERAL PROVISIONS ........................................................................14

7           A.      Preservation of Causes of Action. ...............................................14

8           B.      Cramdown. ....................................................................................15

9           C.      Severability. ..................................................................................15

10           D.      Governing Law. .............................................................................15

11           E.      Notices. ..........................................................................................15

12           F.      Post-Confirmation United States Trustee Fees. ..........................15

13           G.      Modification of Plan. ....................................................................16

14           H.      Withdrawal or Revocation of Plan. ..............................................16

15           I.      Failure of Effective Date. ..............................................................16

16           J.      Post-Effective Date Notices. .........................................................16

17           K.      Plan Controls. ...............................................................................17

18           L.      Applicable Law. .............................................................................17

19           M.      Implementation Orders. ................................................................17

20    I.      DEFINITIONS ..........................................................................................1

21    II.    TREATMENT OF UNCLASSIFIED CLAIMS .........................................2

22    III.    TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ................3

23           A.      Classes under Plan and Voting Rights Summary ......................3

24           B.      Treatment of Claims .....................................................................4

25           Class 1A – Blanchard Trust ....................................................................4

26           Class 1B – S&R ..........................................................................................4

27           Class 1C – Department of Tax & Collections ........................................5

28           Class 2A – S&R ..........................................................................................5

Class 2B – Department of Tax & Collections ...................................................6

Class 2C – EPS Plumbing .................................................................................6

Class 3A – FRE 355 General Unsecured Claims ..............................................6

Class 3B – Mora House LLC General Unsecured Claims .................................7

Class 4A – Equity Interests in FRE 355 ...........................................................7

Class 4B – Equity Interests in Mora House LLC .............................................7

IV.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............................7

    A.    Assumption and Rejection .....................................................................7

        1.    Contract Assumed. .....................................................................7

        2.    Rejection of All Other Contracts Not Assumed.........................7

        3.    Claims Arising Out of Rejection. ...............................................7

V.    MEANS OF EXECUTION. ................................................................................8

    A.    Reorganized Debtors. .............................................................................8

    B.    Marketing and Sale of Mora House and Mora Lot. ...............................8

    C.    Effect of Failure to Close Sale. .............................................................8

    D.    Effective Date Distribution. ...................................................................9

    E.    Funding and Operation of Disputed Claims Reserve.............................9

    F.    Distributions Generally. .........................................................................9

    G.    Powers of Reorganized Debtor. ...........................................................11

VI.    EFFECT OF CONFIRMATION OF PLAN ......................................................12

    A.    Confirmation Injunction. ......................................................................12

    B.    Binding Effect. .....................................................................................13

VII.    RETENTION OF JURISDICTION ...................................................................13

VIII.    GENERAL PROVISIONS ................................................................................14

    A.    Preservation of Causes of Action. ........................................................14

    B.    Cramdown. ............................................................................................15

    C.    Severability. ..........................................................................................15

    D.    Governing Law. ....................................................................................15

1

E.      Notices. ...................................................................................................... 15

F.      Post-Confirmation United States Trustee Fees. ................................... 15

G.      Modification of Plan. .................................................................................. 16

H.      Withdrawal or Revocation of Plan. ....................................................... 16

I.      Failure of Effective Date. .......................................................................... 16

J.      Post-Effective Date Notices. .................................................................... 16

K.      Plan Controls. ............................................................................................... 17

L.      Applicable Law. ........................................................................................... 17

M.      Implementation Orders. ............................................................................ 17

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Debtors and debtors-in-possession FRE 355 Investment Group, LLC, dba FRE 355 and Mora House, LLC (collectively, the "Debtors") hereby propose their Chapter 11 Plan pursuant to section 1121 of the Bankruptcy Code. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.

## I. DEFINITIONS

Terms used in this Plan or the Disclosure Statement that are defined in the Bankruptcy Code or Bankruptcy Rules have the meaning assigned to them in the Bankruptcy Code and Rules.

1. *"Addendum to Promissory Note"* means that Addendum to Promissory Note Loan #10536 between S&R and FRE 355, dated December 11, 2018, which grants S&R an additional deed of trust collateralized by the Mora Lot and provides that "Lender shall release the real property interest in said property for a principal reduction of Five Hundred Thousand dollars ($500,000)."

2. *"Administrative Claims Bar Date"* means November 1, 2020.

3. *"Avoidance Actions"* means any actions commenced or that may be commenced before or after the Effective Date arising under Bankruptcy Code sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553, or under related state, federal, or foreign statutes and common law, including, without limitation fraudulent transfer laws.

4. *"Blanchard Trust"* means Richard and Esther Blanchard, Trustees of the Richard and Esther Blanchard 1990 Trust dated 10/1/1990.

5. *"Disputed Claim Reserve"* means cash withheld by the Debtors to pay any claims that are disputed, contingent or unliquidated and as to which no order sustaining an objection thereto has been entered or as to which no order estimating such claim for purposes of voting and distribution has been entered as of the Effective Date.

6. *"Effective Date"* means the sixtieth day following the date of the entry of the order of confirmation of the Plan if no notice of appeal from that order has been filed. If a notice of appeal has been filed, Debtors may waive the finality requirement and put the Plan into effect unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been

issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.     "*Effective Date Distribution*" means distribution on the Effective Date of the following: (a) 100% of allowed administrative claims without interest and (b) the first monthly payment to the Franchise Tax Board on account of its priority tax claim as described in Article II of this Plan.

8.     "*Extended Marketing Period*" means the six-month period following the Initial Marketing Period for the Debtors to close a sale of the Mora House and Mora Lot.

9.     "*FRE 355*" means FRE 355 Investment Group, LLC, dba FRE 355.

10.     "*Initial Marketing Period*" means the six-month period after the Effective Date the Debtors have to close a sale of the Mora House and Mora Lot.

11.     "*Mora House*" means the improved real property located at 10718 Mora Drive Los Altos, California 94024, Parcel No. 331-14-066 consisting of residence with 9,677 square feet of livable space and 6 bedrooms.

12.     "*Mora Lot*" means the vacant land situated in Los Altos, California, Parcel No. 331-14-067, 1.4512 acres, Lot No. 3 adjacent to the Mora House.

13.     "*Reorganized Debtors*" means the Debtors following entry of an order confirming the Plan.

14.     "*S&R*" means S&R Income Fund I, LP, by and through Platinum Loan Servicing, Inc.

## II.     TREATMENT OF UNCLASSIFIED CLAIMS

Unsecured Priority Tax Claims

The State of California Franchise Tax Board ("FTB") filed a claim for unsecured priority taxes in the amount of $3,442.75 in the bankruptcy case of Mora House, LLC. This creditor will receive equal payments of $60 per month until sales of the Mora House and Mora Lot close, at which time the balance of FTB's priority tax claim will be paid in full with statutory interest.

///

///

<u>Non-Professional Ordinary Course Administrative Expense Claims</u>

The Debtors will pay non-professionals who hold administrative expense claims in the ordinary course as and when such amounts are due unless they agree to a different treatment.

<u>Professional Fees</u>

The Debtors will pay holders of allowed professional administrative expense claims approved by the Bankruptcy Court in cash on the Effective Date Distribution unless they agree to a different treatment.

Applications for compensation are to be filed within 60 days after the Effective Date unless the Debtors agree in writing to an extension of that deadline which extension agreement is then filed with the Court, except for the real estate broker appointed on behalf of the Debtor who shall request approval of compensation in connection with the sale of the Mora House and/or Mora Lot.

After the Effective Date and except as provided herein, the Debtors may incur and pay professional fees in the ordinary course without notice or court approval.

<u>Statutory U.S. Trustee Fees</u>

The Debtors will pay all fees owed to the United States Trustee pursuant to 28 U.S.C. §1930 and any attendant interest in connection with any delinquent quarterly fees within 15 days of billing by the United States Trustee after entry of an order confirming the Plan and as a condition thereof.

### III. TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

### A. Classes under Plan and Voting Rights Summary

| Class | Claimant | Secured/ Unsecured | Collateral | Impairment/ Voting |
|-------|----------|--------------------|------------|--------------------|
| Class 1A | Blanchard Trust | Secured | Mora Lot | Impaired Entitled to vote |
| Class 1B | S&R | Secured | Mora Lot | Impaired Entitled to vote |
| Class 1C | Department of Tax & Collections | Secured | Mora Lot | Impaired, entitled to vote |
| Class 2A | S&R | Secured | Mora House | Impaired, entitled to vote |

| Class 2B | Department of Tax & Collections | Secured | Mora House | Impaired, entitled to vote |
|---|---|---|---|---|
| Class 2C | EPS Plumbing | Secured | Mora House | Impaired, entitled to vote |
| Class 3A | FRE 355 General Unsecured Claims | Unsecured | N/A | Impaired, entitled to vote |
| Class 3C | Mora House LLC General Unsecured Claims | Unsecured | N/A | Impaired, entitled to vote |
| Class 4A | Equity Interests in FRE 355 | N/A | N/A | Unimpaired, deemed to accept |
| Class 4B | Equity Interests in Mora House LLC | N/A | N/A | Unimpaired, deemed to accept |

## B. Treatment of Claims

**Class 1A – Blanchard Trust**

Class 1A consists of the first-priority secured claim of the Blanchard Trust against the Mora Lot in the filed amount of $2,441,801.23. Under the Plan, the Blanchard Trust shall retain its lien against the Mora Lot to the extent of its allowed claim. The Blanchard Trust shall receive a single payment equal to the allowed amount of its claim with contract rate interest and reasonable attorneys' fees six months after the Effective Date or at such time that the Mora Lot is sold, whichever is sooner; provided, however that if S&R receives a $500,000 principal paydown under the Addendum to Promissory Note prior to 6 months following the Effective Date, then (1) S&R shall release its lien against the Mora Lot, and (2) the Debtors shall have the Extended Marketing Period to sell Mora Lot and Mora House and six additional months to pay Blanchard Trust's Class 1B claim. The Blanchard Trust shall retain without modification the right to advance $500,000 under the Addendum to Promissory Note to cause the release of the S&R lien from the Mora Lot.

**Class 1B – S&R**

Class 1B consists of the second priority secured claim of the S&R against the Mora Lot in the scheduled amount of $12,113,909.20 including interest and foreclosure fees. Under the Plan, S&R shall retain its lien against the Mora Lot to the extent of its allowed claim. S&R shall

1  receive a single payment equal to the allowed amount of its claim with contract rate interest and

2  reasonable attorneys' fees six months after the Effective Date or at such time that the Mora Lot is

3  sold, whichever is sooner; provided, however that if S&R receives a $500,000 principal paydown

4  under the Addendum to Promissory Note prior to 6 months following the Effective Date, then (1)

5  S&R shall release its lien against the Mora Lot, and (2) the Debtors shall have the Extended

6  Marketing Period to sell Mora Lot and Mora House and six additional months to pay S&R's Class

7  1B claim.

8  **Class 1C – Department of Tax & Collections**

9       Class 1C consists of the secured claim of the Department of Tax & Collections for unpaid

10  real property taxes secured against the Mora Lot in the amount of $113,837.60.  Under the Plan,

11  the Department of Tax & Collections shall retain its lien against the Mora Lot to the extent of its

12  allowed claim.  The Department of Tax & Collections shall receive a single payment equal to the

13  allowed amount of its claim with statutory interest six months after the Effective Date or at such

14  time that the Mora Lot is sold, whichever is sooner provided, however that if S&R receives a

15  $500,000 principal paydown under the Addendum to Promissory Note prior to 6 months following

16  the Effective Date, then (1) S&R shall release its lien against the Mora Lot, and (2) the Debtors

17  shall have the Extended Marketing Period to sell Mora Lot and Mora House and six additional

18  months to pay the Class 1C claim of the Department of Tax & Collections .

19  **Class 2A – S&R**

20       Class 2A consists of the first priority secured claim of the S&R against the Mora House in

21  the scheduled amount of $12,113,909.20 including interest and foreclosure fees.  Under the Plan,

22  S&R shall retain its lien against the Mora House to the extent of its allowed claim.  S&R shall

23  receive a single payment equal to the allowed amount of its claim with contract rate interest and

24  reasonable attorneys' fees six months after the Effective Date or at such time that the Mora House

25  is sold, whichever is sooner; provided, however that if S&R receives a $500,000 principal

26  paydown under the Addendum to Promissory Note prior to 6 months following the Effective Date,

27  then (1) S&R shall release its lien against the Mora Lot, and (2) the Debtors shall have the

28

1  Extended Marketing ~~Parioer~~Period to sell Mora Lot and Mora House and six additional months to

2  pay S&R's Class 2A claim.

3  **Class 2B – Department of Tax & Collections**

4        Class 2B consists of the secured claim of the Department of Tax & Collections secured

5  against the Mora House in the filed amount of $255,298.22 for unpaid real property taxes.  Under

6  the Plan, the Department of Tax & Collections shall retain its lien against the Mora House to the

7  extent of its allowed claim.  The Department of Tax & Collections shall receive a single payment

8  equal to the allowed amount of its claim with statutory interest six months after the Effective Date

9  or at such time that the Mora House is sold, whichever is sooner; provided, however that if S&R

10  receives a $500,000 principal paydown under the Addendum to Promissory Note prior to 6 months

11  following the Effective Date, then (1) S&R shall release its lien against the Mora Lot, and (2) the

12  Debtors shall have the Extended Marketing Period to sell Mora Lot and Mora House and six

13  additional months to pay the Class 2B claim of the Department of Tax & Collections.

14  **Class 2C – EPS Plumbing**

15        Class 2C consists of the secured claim of EBS Plumbing against the Mora House in the

16  amount of $27,000.  Under the Plan, EPS Plumbing shall retain its lien against the Mora House to

17  the extent of its allowed claim.  EPS Plumbing shall receive a single payment equal to the allowed

18  amount of its claim with contract rate interest six months after the Effective Date or at such time

19  that the Mora House is sold, whichever is sooner; provided, however that if S&R receives a

20  $500,000 principal paydown under the Addendum to Promissory Note then (1) S&R shall release

21  its lien against the Mora Lot, and (2) the Debtors shall have the Extended Marketing Period to sell

22  Mora Lot and Mora House and six additional months to pay the Class 2C claim of EPS Plumbing.

23  **Class 3A – FRE 355 General Unsecured Claims**

24        Class 3A consists of the claims of holders of general unsecured claims against FRE 355.

25  Holders of allowed claims in this class will receive payment of the allowed amount of their claims,

26  without interest, from the net proceeds from sale of the Mora House after the full payment of all

27  secured and priority claims.  Payment shall be made six months after the Effective Date, unless

28  S&R receives a $500,000 principal paydown under the Addendum to Promissory Note prior to 6

1  months following the Effective Date, in which case payment shall be made twelve months after

2  the Effective Date or at such time that the Mora House is sold, whichever is sooner.

3  **Class 3B – Mora House LLC General Unsecured Claims**

4  Class 3B consists of the claims of holders of general unsecured claims against Mora

5  House, LLC.  Holders of allowed claims in this class will receive a pro rata distribution on the

6  allowed amount of their claims, without interest, from the net proceeds from sale of the Mora Lot

7  after the full payment of all secured and priority claims.  Payment shall be made six months after

8  the Effective Date, unless S&R receives a $500,000 principal paydown under the Addendum to

9  Promissory Note prior to 6 months following the Effective Date, in which case payment shall be

10  made twelve months after the Effective Date or at such time that the Mora Lot is sold, whichever

11  is sooner.

12  **Class 4A – Equity Interests in FRE 355**

13  Melvin Vaughn will retain his equity interests in FRE 355 without impairment.

14  **Class 4B – Equity Interests in Mora House LLC**

15  Melvin Vaughn will retain his equity interests in Mora House, LLC without impairment.

16  **IV.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

17  **A.  Assumption and Rejection**

18  **1.  Contract Assumed.**

19  The Debtors assume, to the extent it is necessary, the Addendum to Promissory Note.

20  **2.  Rejection of All Other Contracts Not Assumed.**

21  All other executory contracts not (a) previously assumed, assigned or rejected pursuant to

22  final order of the Bankruptcy Court entered prior to the Effective Date, or (b) not subject to a

23  pending motion to assume, assign or reject filed with the Bankruptcy Court prior to the Effective

24  Date, will be deemed rejected as of the Effective Date.

25  **3.  Claims Arising Out of Rejection.**

26  Any claims arising out of the rejection of an executory contract or unexpired lease pursuant

27  to the Plan must be filed with the Bankruptcy Court by no later than 30 calendar days after the

28

1  confirmation of the Plan.  If no proof of claim is filed within such time period, it will be forever

2  barred from receiving a distribution from estate assets. -

3  ///

4  ### V.    MEANS OF EXECUTION.

5  #### A.    Reorganized Debtors.

6  The Debtors, as the Reorganized Debtors shall, from and after confirmation of the Plan,

7  continue as the representatives of their respective estates and succeed without further order to all

8  right, title and interest in all estate assets and property pursuant to the terms of the Plan.  The

9  Debtors will be authorized and empowered to take all actions and measures necessary to

10  implement and administer the Plan.  The Debtors will conduct their business and operate from

11  confirmation and through and after substantial consummation of the Plan. The Debtors may

12  continue to receive unsecured loans or equity advances from their sole member, Melvin Vaughn,

13  to pay the Debtors' respective ongoing costs of operations until a sale of the Mora House and

14  Mora Lot.

15  #### B.    Marketing and Sale of Mora House and Mora Lot.

16  The Debtors will advertise, show, market and sell the Mora House and Mora Lot and close

17  sales thereof in the Initial Marketing Period, within 6 months of the Effective Date; provided

18  however that if S&R receives a $500,000 principal paydown under the Addendum to Promissory

19  Note prior to 6 months following the Effective Date, the Debtors will have 6 more months to close

20  sales of both the Mora House and Mora Lot within the Extended Marketing Period.  After the

21  Effective Date, the Debtors may extend their listing agreements with Court appointed real estate

22  broker, Phil Chen of Compass, without the need for Court approval, but shall seek Court approval

23  as a condition to entering into listing agreements with any replacement broker.

24  #### C.    Effect of Failure to Close Sale.

25  In the event that sales of the Mora House and Mora Lot have not closed within Initial

26  Marketing Period or the Extended Marketing Period in the event that the Addendum to Promissory

27  Note has resulted in payment of $500,000 to S&R and release of its lien from the Mora Lot, all

28  holders of secured claims shall have immediate relief to exercise their rights and foreclose their

DEBTORS' PLAN OF REORGANIZATION (JULY 10SEPTEMBER 3, 2020)
Page 8

liens against their respective collateral without further order of the Bankruptcy Court.  Any party may, following failure by the Debtors to close a sale of one or both of the Mora House and Mora Lot within the periods set forth above, request conversion of these bankruptcy cases to Chapter 7 by filing an explanatory declaration with the Bankruptcy Court, uploading a proposed form of order, and serving both with 10 days' notice and opportunity for hearing.

**D.  Effective Date Distribution.**

The Debtors will pay holders of allowed professional administrative expense claims in cash on the Effective Date Distribution or at such later dates as the Court approves unless they agree to a different treatment.

~~///~~

**E.  Funding and Operation of Disputed Claims Reserve.**

The Reorganized Debtors will create the Disputed Claims Reserve by establishing at the time of closing of sale of the Mora House and Mora Lot a separate bank account and depositing into it cash equal to the face amount of all claims that are disputed, contingent or unliquidated.  No deposit is required for a claim as to which an order disallowing the claim has been entered.  A deposit is only required up to the amount at which a claim has been estimated should Debtors seek and obtain an order of the bankruptcy court for estimation of a disputed claim.  If a disputed claim becomes an allowed claim, the Reorganized Debtors will immediately distribute to the claimant from the Disputed Claims Reserve the amount of the allowed claim that it would have been entitled to receive had it been an allowed claim on the confirmation date.  Any funds no longer needed in reserve shall be released for use according to the terms of the Plan.

**F.  Distributions Generally.**

**1.  Best Efforts to Make Distributions.**

The Reorganized Debtors will not be obligated to make any distribution if it is reasonably expected that the cost of such distribution would exceed the amount of cash on hand. The Reorganized Debtors will make continuing efforts to administer the estate assets, make timely distributions, and will not unduly prolong the duration of the Reorganized Debtor's appointment.

**2.  Addresses for Delivery.**

1    If any distribution to a holder of an allowed claim is returned as undeliverable, no further

2    distributions will be made to such holder unless and until the Reorganized Debtors is notified in

3    writing of such holder's then-current address, at which time all currently due and missed

4    distributions will be made to such holder.  Undeliverable distributions will remain in the

5    possession of the Reorganized Debtors until such time as a distribution becomes deliverable or

6    such distribution is cancelled.

7               **3.        Delivery of Distributions.**

8    Distributions may be delivered by first class mail, postage pre-paid.  Mailings may be

9    made to the address indicated on the latest notice of appearance or the latest proof of claim or

10   other paper filed by any of the foregoing in the Bankruptcy Court.  Absent any such filing, the

11   address set forth in the Debtor's schedules filed with the Bankruptcy Court may be used.

12   Distributions made in accordance with this provision will be deemed delivered whether

13   actually received or not.

14              **4.        Disputed Distributions.**

15   If any dispute arises as to the identity of a claimant who is to receive any distribution, the

16   Reorganized Debtors may, in lieu of making such distribution to such holder, make such

17   distribution into a segregated fund until the disposition thereof will be determined by Bankruptcy

18   Court order or by written agreement among the interested parties to such dispute.

19              **i.   DeMinimis Distributions.**

20   Notwithstanding any other provision of the Plan, Distributions of less than $50.00 need not

21   be made on account of any Allowed Claim; provided, however, that Distributions that would

22   otherwise be made but for this provision shall carry over to the next Distribution Date until the

23   cumulative amount to which any holder of an Allowed Claim is entitled to is more than $50.00, at

24   which time the cumulative amount of such Distributions will be paid to such holder.

25              **ii.  Withholding and Reporting Requirements.**

26   Any foreign, federal, state or local withholding taxes or other amounts required to be

27   withheld under applicable law will be deducted from any distributions hereunder.  All claimants

28   are required to provide any information necessary to withhold such taxes, including provision of a

FEIN or SSN to the Reorganized Debtor. The Reorganized Debtors will be authorized to withhold distribution on such claims until the requisite information is received. If such information is not received within one hundred and twenty (120) calendar days after the relevant distribution date, distribution will be treated as unclaimed, and the claimant will forfeit its right to the distribution. All distributions under the Plan will be net of the actual and reasonable costs of making such distributions and of any allocable fees or other charges relating thereto.

5. <b>Unclaimed Distributions.</b>

If any distribution remains unclaimed for a period of one hundred and twenty (120) calendar days after the relevant distribution date, or any distribution check remains uncashed for one hundred and twenty (120) calendar days after its issuance, the distribution will constitute an unclaimed distribution (hereafter referred to as an "Unclaimed Distribution"). Any uncashed check will be void, and the claimant will no longer be entitled to that distribution. Pursuant to Bankruptcy Code section 347(b), all right, title and interest in and the Unclaimed Distributions will immediately vest in the Debtors and be administered by the Reorganized Debtors pursuant to the terms of this Plan.

G. **Powers of Reorganized Debtor.**

    1. **Powers Generally and Power to Sue.**

On the Effective Date, the Reorganized Debtors will be vested with all rights and powers of the Debtors under State and Federal law, including but not limited to the right to pursue all claims and causes of action that the Debtors have including avoidance actions, and any other causes of action, defenses, requests for subordination or recharacterization, or requests for any other equitable or legal relief that was or could have been asserted pre-petition by the Debtors against any party other than those which have been settled. The Reorganized Debtors may, on behalf of the Debtors, pursue, settle or release all such actions in accordance with the best interest of and for the benefit of the holders of allowed claims.

    2. **Objections to and Estimation of Claims.**

After the Effective Date, the Reorganized Debtors may file objections to claims. As to any claims arising from the rejection of an executory contract or unexpired lease pursuant to the Plan,

1 the Reorganized Debtors may object within sixty (60) calendar days of the filing of any such

2 claims.  As to claims arising from the recovery of an avoidable transfer under chapter 5 of the

3 Bankruptcy Code, the Reorganized Debtors may object within sixty (60) calendar days of the

4 filing of any such claims.

5      **3.    Settlements.**

6      After the Effective Date the Reorganized Debtors will have the exclusive authority to file,

7 settle, compromise, withdraw, or litigate to judgment any objections to claims, including without

8 limitation, any objections to claims filed by the Debtors prior to the Effective Date.  The

9 Reorganized Debtors will provide notice and opportunity for hearing of any settlement.

10      **VI.    EFFECT OF CONFIRMATION OF PLAN**

11      **A.    Confirmation Injunction.**

12      On and after date of confirmation of the Plan, except to enforce the terms and conditions of

13 the Plan before the Bankruptcy Court or to implement the terms of the Plan, all persons and

14 entities who have held, hold or may hold any debt, claim, lien, encumbrance against or interest in

15 the Debtors are permanently enjoined from and after the date of entry of the order confirming the

16 Plan from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any

17 suit, action or other proceeding of any kind (including, without limitation, any proceeding in a

18 judicial, arbitral, administrative or other forum) against either the Debtors, their estates, their

19 property, or the Reorganized Debtors; (b) enforcing, levying, attaching (including, without

20 limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or

21 means whether directly or indirectly, of any judgment, award, decree or order against any of the

22 foregoing; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any

23 encumbrance of any kind against any of the foregoing (d) asserting any right of setoff,

24 subrogation, or recoupment of any kind, directly or indirectly, against any obligation due; and (e)

25 taking any actions in any place and in any manner whatsoever that do not conform to or comply

26 with the provisions of the Plan.

27

28

**B. Binding Effect.**

Except as otherwise expressly provided in the Plan, as of the Effective Date, the provisions of the Plan, a confirmation order, and any associated findings of fact or conclusions of law will bind the Debtor, the Reorganized Debtors, and all holders of claims and interests against the Debtors, regardless of whether such holders are impaired under the Plan or voted to accept.

## VII. RETENTION OF JURISDICTION

The Bankruptcy Court will retain jurisdiction over the Bankruptcy Case subsequent to the date of Plan confirmation to the fullest extent permitted by law, including, without limitation, for the following purposes:

##

##

**A.** To approve any proposed sale(s) of the Mora House and Mora Lot following one or more duly noticed motions including any sale free and clear of disputed liens and interests, and to enter orders as may be necessary and appropriate to aid in the close of escrows;

**B.** To determine any and all proceedings related to allowance of claims or objections thereto, including objections to classification and including, on an appropriate motion pursuant to Bankruptcy Rule 3008, reconsideration of claims that have been allowed or disallowed prior to confirmation;

**C.** To hear and determine any and all applications for compensation by professionals or any other fees and expenses authorized to be paid or reimbursed in accordance with the Bankruptcy Code or the Plan;

**D.** To determine any and all claims or causes of action, whether pending before the Bankruptcy Court at Plan confirmation or filed or instituted after that date;

**E.** To modify the Plan or the Disclosure Statement, or to remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court (including the confirmation order) as may be necessary to carry out the purposes and effects of the Plan;

**F.** To determine disputes regarding title of the property claimed to be property of the Debtors or their estates;

G.      To ensure that distributions to holders of allowed claims are accomplished in accordance with the provisions of the Plan;

H.      To enter such orders as may be necessary to consummate and effectuate the operative provisions of the Plan, including actions to enjoin enforcement of claims inconsistent with the terms of the Plan;

///

///

I.       To hear and determine disputes concerning any event of default or alleged event of default under the Plan, as well as disputes concerning remedies upon any event of default under the Plan;

J.       To hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

K.      To enter a final decree closing the Debtors' bankruptcy cases;

///

L.      To enter and implement such orders as may be appropriate in the event the confirmation order is for any reason stayed, reversed, revoked or vacated;

M.      To hear and determine such other matters as may arise in connection with the Plan, the Disclosure Statement, or the confirmation order;

N.      To hear and determine any dispute between the Reorganized Debtors and any creditor or defendant or plaintiff in litigation;

O.      To approve any post-petition retainer payments to professionals; and,

P.      To issue temporary restraining orders and preliminary injunctions.

## VIII.      GENERAL PROVISIONS

A.      **Preservation of Causes of Action.**

Any and all claims and other causes of action accruing to Debtors or estate, the right and power to object to any filed or scheduled claims, the right to pursue avoidance actions will be preserved and retained by the estate after the confirmation date, and the Reorganized Debtors on behalf of the estate will have the exclusive right and standing to enforce any such causes of action.

B.     **Cramdown.**

Pursuant to section 1129(b) of the Bankruptcy Code, Debtors reserve the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

C.     **Severability.**

If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

///

///

D.     **Governing Law.**

Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

E.     **Notices.**

Any notice to Debtors will be in writing, and will be deemed to have been given six days after the date sent by first-class mail, postage prepaid and addressed as follows:

//

//

**Reorganized Debtors:_____**

_____Mora House LLC
FRE 355 Investment Group, LLC
Attn: Melvin Vaughn
10700 Mora Drive, Los Altos, CA  94022
Email: c4scab@aol.com

With a copy to counsel:
Robert G. Harris, Esq.
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050
Facsimile: (408) 295-1531
Email: rob@bindermalter.com

F.     **Post-Confirmation United States Trustee Fees.**

Following confirmation, Debtors will continue to pay quarterly fees to the United States

DEBTORS' PLAN OF REORGANIZATION (JULY 10SEPTEMBER 3, 2020)
_____Page 15

1    Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtors
2    is required to make these payments, Debtors will file with the court quarterly reports in the form
3    specified by the United States Trustee for that purpose.

4           **G.      Modification of Plan.**

5           The Debtors reserve the right, in accordance with the Bankruptcy Code and Bankruptcy
6    Rules, to amend or modify the Plan at any time prior to entry of an order confirming it. After
7    entry of an order confirming the Plan but prior to the Effective Date, the Debtors may seek an
8    order of the Bankruptcy Court to amend or modify the Plan in accordance with section 1127(b) of
9    the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan
10   in such manner as may be necessary to carry out the purpose and intent of the Plan.

11          After the Effective Date, the Reorganized Debtors may seek an order of the Bankruptcy
12   Court to amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code to
13   remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may
14   be necessary to carry out the purpose and intent of the Plan.

15   ~~##~~
16   ~~##~~

17          The holder of an allowed claim that has accepted the Plan will be deemed to have accepted
18   the Plan as modified if the modification does not materially and adversely change the treatment of
19   the holder's claim.

20          **H.      Withdrawal or Revocation of Plan.**

21          The Debtors may withdraw the Plan at any time prior to its confirmation date. If the
22   Debtors withdraw the Plan prior to confirmation, or if the Plan is not confirmed, then the Plan will
23   be deemed null and void and not binding on any person or entity.

24          **I.      Failure of Effective Date.**

25          In the event the Effective Date does not occur, nothing in this Plan will be binding on the
26   Debtors or any other person or entity or otherwise be of any force or effect.

27          **J.      Post-Effective Date Notices.**

28

Case: 20-50628   Doc# 88   Filed: 09/01/20   Entered: 09/01/20 08:34:34   Page 27 of 53

1    Except as otherwise provided in the Plan, upon and after the Effective Date, notices will be

2    served only on the Office of the United States Trustee, the Reorganized Debtor, and those persons

3    who file with the Bankruptcy Court and serve upon the Reorganized Debtors a request, which

4    includes the person's name, contact individual, address, telephone number and facsimile number,

5    that such Person receive notice of post-Effective Date matters.  Persons who had previously filed

6    with the Bankruptcy Court requests for special notice of the proceedings and other filings in the

7    Bankruptcy Case will not receive notice of post-Effective Date matters unless such persons file a

8    new request in accordance with this Section.

9         **K.    Plan Controls.**

10   To the extent the terms of the Plan are inconsistent with the Disclosure Statement or any

11   document implementing the Plan, the terms of the Plan will be controlling.

12   ///

13   ///

14        **L.    Applicable Law.**

15   The Plan is to be governed by and construed under the Bankruptcy Code and the laws of

16   the State of California as they may be applicable.

17        **M.    Implementation Orders.**

18   The Bankruptcy Court may, at any time, make such orders and give such directions as

19   appropriate for consummation of the Plan pursuant to Bankruptcy Code section 1142

20   Dated: ~~July 10~~September 3, 2020          MORA HOUSE LLC

21

22                                    By: _/s/ Melvin Vaughn_____
                                          Melvin Vaughn

23
                                        Its:  Managing Member
24
                                        FRE INVESTMENT GROUP LLC
25

26   Dated: ~~July 10~~September 3, 2020          By: _/s/ Melvin Vaughn_____
                                          Melvin Vaughn
27

28                                      Its:  Managing Member

DEBTORS' PLAN OF REORGANIZATION (~~JULY 10~~SEPTEMBER 3, 2020)
————Page 17

1

2

3

4

5

6    ~~July 10~~Dated: September 3, 2020          _____BINDER & MALTER, LLP

7
                                          _____
8                                          By: _/s/ *Robert G. Harris*_____
                                          _____        Robert G. Harris
9
                                          Attorneys for Debtors and Debtors-in-possession
10                                         FRE 355 Investment Group, LLC and
                                          Mora House, LLC
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael W. Malter, Esq.  ID #96533
Robert G. Harris, Esq. ID #124678
Julie H. Rome-Banks, Esq. ID #142364
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050
Telephone: (408) 295-1700
Facsimile: (408) 295-1531
Email: Michael@bindermalter.com
Email: Rob@bindermalter.com
Email: Julie@bindermatler.com

Attorneys for Debtors and Debtors-in-possession
FRE 355 Investment Group, LLC and Mora House, LLC

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, DIVISION 5

| | |
|---|---|
| In re: | Case No.  20-50628-SLJ |
| FRE 355 INVESTMENT GROUP, LLC, dba FRE 355, | Cases Jointly Administered |
| | Chapter 11 |
| Debtor. | |
| In re | Case No. 20-50631-SLJ |
| MORA HOUSE, LLC, | Chapter 11 |
| Debtor. | DISCLOSURE HEARING: |
| | Date: September 3, 2020 |
| | Time: 1:30 p.m. |
| | Courtroom: 11 (telephonic) |

## DISCLOSURE STATEMENT FOR DEBTORS' PLAN OF REORGANIZATION
### (~~JULY 10~~SEPTEMBER 3, 2020)

**TABLE OF CONTENTS**

I.        INTRODUCTION ......................................................................................................... 1

II.       SUMMARY OF CREDITOR TREATMENT IN PLAN ............................................. 1

          A.        Plan Overview. ............................................................................................... 1

          B.        Summary of Plan Treatment by Class. ........................................................... 2

III.      VOTING PROCEDURES ........................................................................................... 5

          A.        Impairment. .................................................................................................... 5

          B.        Cramdown (Procedure Absent Acceptance by All Classes). ....................... 65

          C.        Submission of Votes. .................................................................................... 75

IV.       HISTORY OF THE DEBTORS .............................................................................. 86

          A.        The Debtors' Businesses. ............................................................................ 86

          B.        Events Leading to Bankruptcy. ................................................................... 97

V.        SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE .......................... 108

VI.       ASSETS .................................................................................................................. 119

VII.      FEASIBILITY ....................................................................................................... 119

VIII.     ALTERNATIVES TO THE PLAN OF REORGANIZATION .............................. 1240

          A.        Best Interest of Creditors Test .................................................................. 1240

          B.        Liquidation under Chapter 7 ..................................................................... 1240

          C.        Assertion of All Claims Yields A Chapter 7 Dividend Smaller Than the
                    Dividend that the Plan Provides ................................................................ 1311

IV.       OTHER RELEVANT PLAN PROVISIONS ......................................................... 1311

          A.        Executory Contracts. ................................................................................. 1311

          B.        Means of Execution. .................................................................................. 1412

          C.        Effect of Confirmation of Plan. ................................................................ 1614

          D.        Retention of Jurisdiction. .......................................................................... 1715

          E.        General Provisions. ................................................................................... 1917

          F.        Implementation Orders. ............................................................................ 2118

I.        INTRODUCTION ..................................................................................................... 1

II.    SUMMARY OF CREDITOR TREATMENT IN PLAN .................................................. 1

       A.    Plan Overview. ........................................................................................... 1

       B.    Summary of Plan Treatment by Class. ...................................................... 2

III.   VOTING PROCEDURES .......................................................................................... 5

       A.    Impairment. ................................................................................................ 5

       B.    Cramdown (Procedure Absent Acceptance by All Classes). .................... 6

       C.    Submission of Votes. .................................................................................. 7

IV.    HISTORY OF THE DEBTORS ................................................................................. 8

       A.    The Debtors' Businesses. ........................................................................... 8

       B.    Events Leading to Bankruptcy. .................................................................. 9

V.     SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE .................................. 10

VI.    ASSETS .................................................................................................................... 11

VII.   FEASIBILITY ............................................................................................................ 11

VIII.  ALTERNATIVES TO THE PLAN OF REORGANIZATION ......................................... 12

       A.    Best Interest of Creditors Test .................................................................. 12

       B.    Liquidation under Chapter 7 ...................................................................... 12

       C.    Assertion of All Claims Yields A Chapter 7 Dividend Smaller Than the
             Dividend that the Plan Provides ................................................................ 13

IX.    OTHER RELEVANT PLAN PROVISIONS ................................................................ 13

       A.    Executory Contracts. .................................................................................. 13

       B.    Means of Execution. ................................................................................... 14

       C.    Effect of Confirmation of Plan. .................................................................. 16

       D.    Retention of Jurisdiction. ........................................................................... 17

       E.    General Provisions. ..................................................................................... 19

       F.    Implementation Orders. .............................................................................. 21

## I.  INTRODUCTION

THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION UNDER BANKRUPTCY CODE SECTION 1125 FOR SOLICITATION OF ACCEPTANCES THEREOF. DISTRIBUTION OF THIS DISCLOSURE STATEMENT TO CREDITORS IS AUTHORIZED BY THE ENCLOSED ORDER OF THE COURT.

This Disclosure Statement (the "Disclosure Statement") contains information with respect to the Debtors' Chapter 11 Plan (~~July 10~~September 3, 2020) (the "Plan") filed by debtors and debtors-in-possession FRE 355 Investment Group, LLC, dba FRE 355 and Mora House, LLC (collectively, the "Debtors").  Pursuant to section 1125 of the Bankruptcy Code, this Disclosure Statement is being distributed to you for the purpose of enabling you to make an informed judgment about the Plan.

**Your vote on the Plan is important.  For the Plan to be accepted by a class of claims, the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of allowed claims in such class who vote on the Plan must vote to accept it.**

Non-acceptance of the Plan may lead to a liquidation of the Debtors and their assets under chapter 7 of the Bankruptcy Code or to the confirmation of another plan.  These alternatives may not provide for a distribution of as much value to holders of allowed claims and interests as the Plan. Accordingly, the Debtors urge you to accept the Plan by completing and returning the enclosed ballot no later than October __, 2020.

## II.  SUMMARY OF CREDITOR TREATMENT IN PLAN

### A.  Plan Overview.

The Debtors will advertise, market and close sales of the Mora House and Mora Lot within 6 months after the Effective Date of the Plan, the Initial Marketing Period, to pay secured claimants of both properties in full and to pay a projected dividend of 9.15% to unsecured claimants. If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note prior to 6 months following the Effective Date, then (1) S&R shall release its lien against the Mora Lot, and (2) the Debtors shall have the Extended Marketing Period of six additional months to close sales of

the Mora House and Mora Lot. The Blanchard Trust shall retain without modification the right to advance $500,000 under the Addendum to Promissory Note to cause the release of the S&R lien from the Mora Lot. If the properties are not sold within six months of the Effective Date, or the extended period following a $500,000 advance to S&R, Blanchard and S&R shall have the right to asserts their liens and foreclose. Foreclosing lenders are responsible for accrual on senior liens, including property taxes.

### B. Summary of Plan Treatment by Class.

The treatment[1] of each class of creditors under the Plan is summarized as follows

| Class | Claimant(s) | Claim Amount | Treatment | Impairment/ Voting |
|---|---|---|---|---|
| Unclassified | Tax claims entitled to priority under Bankruptcy Code section 507(a)(8) | $3,442.75 | Will receive equal payments of $60 per month until sales of the Mora House and Mora Lot close, at which time the balance of FTB's priority tax claim will be paid in full with statutory interest. | Unimpaired Not entitled to vote |
| Unclassified | Estate Professionals | $20,000 | Will receive pay 100% of allowed amounts of claims without interest in cash on the Effective Date unless the holder of the claim otherwise agrees. | Unimpaired and not entitled to vote |
| Class 1A | Blanchard Trust | $2,441,801.23 | Retains lien against the Mora Lot.<br><br>Will receive a single payment equal to the allowed amount of its claim with contract rate interest and reasonable attorneys' fees six months after the Effective Date or at such time that the Mora House is sold, whichever is sooner.<br><br>If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note prior to the expiration of six months following the Effective Date then the Debtors shall have the Extended Marketing Period of to sell the Mora House and Mora Lot and six additional months to pay the Blanchard Trust's Class 1A claim. | Impaired and entitled to vote |

[1] The Plan's language controls in the event of any conflict or ambiguity.

| | | | Blanchard Trust shall retain without modification the right to advance $500,000 under the Addendum to Promissory Note to cause the release of the S&R lien from the Mora Lot. | |
|---|---|---|---|---|
| Class 1B | S&R | $12,113,909.20 | Retains lien against the Mora Lot.<br><br>Will receive a single payment equal to the allowed amount of its claim with contract rate interest and reasonable attorneys' fees six months after the Effective Date or at such time that the Mora Lot is sold, whichever is sooner.<br><br>If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note prior to six months following the Effective Date then the Debtors shall have the Extended Marketing Period to sell the Mora House and Mora Lot and six additional months to pay S&R's Class 1B claim. | Impaired and entitled to vote |
| Class 1C | Department of Tax & Collections | $255,300.00 | Retains lien against the Mora Lot.<br><br>Will receive a single payment equal to the allowed amount of its claim with statutory interest six months after the Effective Date or at such time that the Mora Lot is sold, whichever is sooner.<br><br>If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note prior to six months following the Effective Date then the Debtors shall have the Extended Marketing Period to sell the Mora House and Mora Lot and six additional months and to pay the Department of Tax & Collections' Class 1C claim | Impaired and entitled to vote |
| Class 2A | S&R | $12,113,909.20 | Retains lien against the Mora House.<br><br>Will receive a single payment equal to the allowed amount of its claim with contract rate interest and reasonable attorneys' fees six months | Impaired and entitled to vote |

| | | | | |
|---|---|---|---|---|
| | | | after the Effective Date or at such time that the Mora House is sold, whichever is sooner.<br><br>If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note prior to six months following the Effective Date then the Debtors shall have the Extended Marketing Period to sell the Mora House and Mora Lot and six additional months to pay S&R's Class 2A claim. | |
| Class 2B | Department of Tax & Collections | $116,838 | Retains lien against the Mora House.<br><br>Will receive a single payment equal to the allowed amount of its claim with statutory rate interest six months after the Effective Date or at such time that the Mora House is sold, whichever is sooner.<br><br>If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note then the Debtors shall have the Extended Marketing Period to sell the Mora House and Mora Lot and six additional months to pay the Class 2B claim of the Department of Tax & Collections. | Impaired and entitled to vote |
| Class 2C | EPS Plumbing[2] | $27,000.00 | Retains lien against the Mora House.<br><br>Will receive a single payment equal to the allowed amount of its claim with contract rate interest six months after the Effective Date or at such time that the Mora House is sold, whichever is sooner.<br><br>If S&R receives a $500,000 principal paydown under the Addendum to Promissory Note prior to six months following the Effective Date then the Debtors shall have the Extended Marketing Period to sell the Mora House and Mora Lot and six additional months to pay the Class 2B claim of EPS Plumbing. | Impaired and entitled to vote |

[2] EPS did not file a timely proof of claim in the case, though the Debtors believe it holds a mechanic's lien. Counsel for EPS has been contacted and asked to file a claim, at which time its validity and the adequacy of notice of the bar date for claims will be evaluated.

| Class 3A | General Unsecured Claims of FRE 355 | $4,165,014.69 | Will receive payment of the allowed amount of their claims, without interest, from the net proceeds from sale of the Mora House after the full payment of all secured and priority claims six months after the Effective Date, unless S&R receives a $500,000 principal paydown under the Addendum to Promissory Note prior to six months following the Effective Date, in which case payment shall be made twelve months after the Effective Date or at such time that the Mora House and Mora Lot are sold, whichever is sooner | Impaired and entitled to vote |
|---|---|---|---|---|
| Class 3B | General Unsecured Claims of Mora House LLC | $25,663.49 | Will receive a pro rata distribution on the allowed amount of their claims, without interest, from the net proceeds from sale of the Mora Lot after the full payment of all secured and priority claims. Payment shall be made six months after the Effective Date, unless S&R receives a $500,000 principal paydown under the Addendum to Promissory Note prior to six months following the Effective Date, in which case payment shall be made twelve months after the Effective Date or at such time that the Mora House and Mora Lot are sold, whichever is sooner. | Impaired and entitled to vote |
| Class 4A | Equity Interests in FRE 355 | N/A | Interests to be retained | No |
| Class 4B | Equity Interests in Mora House LLC | N/A | Interests to retained | No |

### III.   VOTING PROCEDURES

#### A.   Impairment.

If you hold a claim that is impaired and classified, and listed in the column of the table above you will receive a ballot and may vote on the Plan.  "Impairment" means that your legal, equitable, or contractual rights are altered by the Plan or that you will not be paid in cash in full with interest

as set forth below on the Effective Date. Holders of claims that are not impaired under the Plan are deemed to accept it.

///

///

## B.      Cramdown (Procedure Absent Acceptance by All Classes).

Bankruptcy Code section 1129(b) provides that, if the Plan is rejected by one or more impaired classes of claims, it may be confirmed by the Bankruptcy Court, if: (i) the Court determines that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting class(es) of claims impaired under the Plan; and (ii) at least one class of impaired claims voted to accept the Plan. The Debtors will seek to confirm the Plan under this provision if one or more impaired classes do not vote to accept.

If any impaired class of claims or interests does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtors if, as to each impaired class of claims or interests that has not accepted the Plan (or is deemed to reject the Plan), the Plan "does not discriminate unfairly" and is "fair and equitable" under the so-called "cram down" provisions set forth in section 1129(b) of the Bankruptcy Code.

The "unfair discrimination" test applies to classes of claims or interests that are of equal priority and are receiving different treatment under the Plan. A chapter 11 plan does not discriminate unfairly, within the meaning of the Bankruptcy Code, if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are substantially similar to those of the dissenting class and if no class of claims or interests receives more than it legally is entitled to receive for its claims or interests. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair."

The "fair and equitable" test applies to classes of different priority and status (*e.g.*, secured versus unsecured; claims versus interests) and includes the general requirement that no class of claims receive more than 100% of the allowed amount of the claims in such class and that the "absolute priority rule" is satisfied (*i.e.*, unless a class of claims of a senior priority are satisfied in full, no junior class can receive or retain any property under the Plan). As to any rejecting class, the

test sets different standards that must be satisfied in order for the Plan to be confirmed, depending on the type of claims or interests in such Class. The following sets forth the "fair and equitable" test that must be satisfied if a class rejects the Plan:

• **Rejecting Class of Unsecured Creditors**. Either (i) each holder of an impaired unsecured claim in the class receives or retains under the Plan, property of a value, as of the Effective Date, equal to the amount of its allowed claim, or (ii) the holders of claims and interests that are junior to the claims of the rejecting class will not receive or retain any property under the Plan.

• **Rejecting Class of Interests**. Either (i) each interest holder will receive or retain under the Plan property of a value equal to the greater of (a) the fixed liquidation preference or redemption price, if any, of such interest and (b) the value of the interest, or (ii) the holders of interests that are junior to the Interests of the rejecting Class will not receive or retain any property under the Plan.

The Debtors believe the Plan satisfies the "fair and equitable" requirement with respect to any potential rejecting class.

**IF ALL OTHER CONFIRMATION REQUIREMENTS ARE SATISFIED AT THE CONFIRMATION HEARING, THE PLAN PROPONENTS WILL ASK THE BANKRUPTCY COURT TO RULE THAT THE PLAN MAY BE CONFIRMED ON THE GROUND THAT THE SECTION 1129(b) REQUIREMENTS HAVE BEEN SATISFIED.**

    **C.**     **Submission of Votes.**

A vote for acceptance or rejection of the Plan may be cast by completing and signing the ballot enclosed herewith and mailing it to:

///

        Robert G. Harris, Esq.
        Binder & Malter, LLP
        2775 Park Avenue
        Santa Clara, CA 95050

Only the Ballot should be mailed. For your vote to be counted, your completed ballot must be received no later than October __, 2020 by 5:00 p.m., prevailing Pacific Time. Upon confirmation, the Plan will be binding on all creditors regardless of whether a creditor has voted in favor of or rejected the Plan.

# IV.    HISTORY OF THE DEBTORS

### A.    The Debtors' Businesses.

The Debtors are limited liability companies formed to own, develop and sell individual parcels of real property.  Melvin Vaughn is the managing member and sole owner of the Debtors.

The principal asset of FRE 355 is the Mora House, a newly-constructed single family dwelling located at 10718 Mora Hills Drive, Los Altos Hills, California.  The Mora House has 6 bedrooms, 8 full bathrooms, 3 half bathrooms, a 4-car garage and is 9,677 square feet.  The lot upon which the Mora House sits is approximately 1.24 acres in the Los Altos Hills with jaw dropping views of the San Francisco Bay, East Bay mountains and Silicon Valley, including the adjacent 4,000-acre Rancho San Antonio Open Space Reserve.  Construction of the home, which is in a modern style, was completed in approximately early 2018.  The Mora House has been actively marketed for sale since April 2018 with a current list price of $14,999,999.

The sole asset of Mora House, LLC is the Mora Lot, an undeveloped parcel lot of approximately 1.47 acres located immediately adjacent to the Mora House.  The Mora Lot has been marketed concurrently with the Mora House under a separate listing agreement because ownership of the Mora Lot, and its continued preservation as undeveloped property, preserves the unobstructed views from the new home.   The Mora Lot is currently listed for sale at $4,000,000. Access to the Mora House and Mora Lot is by a common driveway.

Both the Mora House and the Mora Lot are encumbered by the secured debt of S&R.  S&R holds a first position deed of trust on the Mora House in the scheduled amount of $12,113,909.20 including interest and foreclosure fees.  The debt owed to S&R is cross-collateralized by a second deed of trust on the Mora Lot.

The Blanchard Trust holds a senior deed of trust against the Mora Lot alone in the amount of $2,441,801.23.

FRE 355 and S&R are parties to an Addendum to Promissory Note Loan #10536 dated December 11, 2018, which granted S&R an additional deed of trust collateralized by the Mora Lot and provides that "Lender shall release the real property interest in said property for a principal reduction of Five Hundred Thousand dollars ($500,000)."

**B.     Events Leading to Bankruptcy.**

The loan from S&R was originally in the amount of $10,937,000 and was made on or about March 29, 2018.  The loan matured on May 1, 2019.  Five (5) interest only payments were made to S&R by FRE 355 pursuant to the terms of its promissory note before the loan matured.

The loan from S&R was originally in the amount of $10,937,000 and was made on or about March 29, 2018.  The loan matured on May 1, 2019.  FRE made five interest only payments to S&R on its promissory note before the loan matured.  Upon maturity, neither Debtor had located a buyer for its respective real property[3].  S&R recorded notices of defaults on both properties with trustee's sales initially set for July 31, 2019 as to FRE 355 and August 21, 2019 as to Mora House LLC.

Following the maturation of S&R's loan and scheduled trustee's sales, Mr. Vaughn entered into a series of verbal agreements with S&R on behalf of the Debtors.  Mr. Vaughn personally advanced unsecured loans to FRE 355 and used limited rents from a holiday rental in order to make additional interest only forbearance payments to S&R beginning in August 2019 of $91,141.67 approximately each month.  S&R postponed the trustee's sales while the Debtors continued to actively market and show the Mora House and Mora Lot with the assistance of a real estate broker.  Continuances of the trustee's sales were granted monthly upon additional payment to S&R.  Mr. Vaughn estimates that he has contributed approximately $3.1 million of his own funds into the development, construction and carrying costs of the Mora House and Mora Lot since 2007 principally in the form of unsecured loans.

The trustee's sale of the property owned by FRE 355 was continued to April 13, 2020 at 10:00 a.m., and the trustee's sale of the undeveloped lot owed by Mora House, LLC was continued to April 15, 2020 at 10:00 a.m.   Less than an hour prior to the sale time, Mr. Vaughn was informed that S&R refused to honor an agreement for another month of forbearance, refused to accept payment, and would not continue the trustee's sale on the Mora House.

---

[3] There had been sale contracts on both properties entered into in early March 2020 that would have been sufficient to pay all secured and unsecured debt in both cases in full and provide Mr. Vaughn with a return on his equity.  However, it was cancelled pre-petition by the buyer, an individual from China, as a result of the pandemic.

The Debtors commenced the filing of these bankruptcy cases by initially filing a voluntary petition with the Bankruptcy Court, first on April 13, 2020 on behalf of FRE 355 to prevent the trustee's foreclosure sale of the Mora House and second, by filing a voluntary petition on April 14, 2020 on behalf of Mora House, LLC to prevent the trustee's foreclosure sale of the Mora Lot.

## V.    SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE

Appointment of Professionals:

Both Debtors applied for appointment of accountant Alan R. David to assist in the preparation of required State income tax returns and to provide guidance on any required capital gains analysis.  The Court entered the Order Appointing Accountant for Debtors [Dkt. #51] on May 29, 2020.

Both Debtors applied for appointment of a real estate broker.  The Court entered the Order Granting Application for Approval of Listing Agreement for Sale of Property of The Estate and Appointment of Real Estate Broker [Dkt. #58] on June 16, 2020.

Both Debtors applied for the appointment of Binder & Malter, LLP as their bankruptcy counsel.  After contested hearings held on May 27, 2020 and June 20, 2020, employment was approved.  The Court's Amended Order Granting Amended Motion for Employment and For Approval of Post-Petition Retainer [Dkt. #63] was entered on June 28, 2020.

Post-Petition Operations:  The Mora House has not been rented since the commencement of these cases, and no cash collateral has been generated.  The limited costs of operations are utilities which are in Mr. Vaughn's personal name, routine maintenance such as landscaping, pool care, and insurance.  Mr. Vaughn continues to advance these limited costs each month along with quarterly U.S. Trustee fees as an unsecured loan to the Debtors, as was his custom and practice pre-petition.

Attendance at 341 Meetings and Initial Debtor Interviews:  Both Debtors have completed their initial debtor interview, held jointly by the United States Trustee.  Both Debtors have individually appeared at their Section 341 meetings of creditors which were both concluded.

Monthly Operating Reports and DIP Accounts: The Debtors are current in the filing of their monthly operating reports.  The May, 2020 reports for each Debtor are attached hereto as Exhibits "A" and "B".

## VI.    ASSETS

### A.    Listed Assets and Values.

The Debtors listed the following assets in its most recent Monthly Operating Reports to the Bankruptcy Court for the period ending May 31, 2020:

| Description | Value |
|---|---|
| Cash – DIP Accounts | $267 |
| Professional Retainers | $37,149 + $19,016 = $56,165 |
| Mora House | $14,999,000 |
| Mora Lot | $4,000,000 |
| **Total assets** | $19,055,432 |

## VII.    FEASIBILITY

The Bankruptcy Code requires as a condition to the Plan's confirmation that the Bankruptcy Court find that liquidation of the Debtors or the need for further reorganization is not likely to follow after confirmation.  In order to prove feasibility, the Debtors are required therefore to set forth their Effective Date and other priority payments and show that they have adequate cash to pay them when due.  This involves a two-step analysis: first, the Debtors will set forth their analysis of the proceeds from sale of the Mora House and Mora Lot.

As set forth in Exhibit "C" hereto, the Debtors assume that the Mora House and Mora Lot will sell for list prices, $14,999,000 and $4,000,000, respectively.for a total of $18,999,000 if sold separately, and $17,500,000 if sold together.  The combined tax basis for the two properties is $17,433,065.  Assuming sale expenses of 7% ($1,295,000 if sold separately for $1,899,999 or $1,225,000 if sold together for $1,750,000), the Debtors would generate a loss of $228,066 if the sale price is $1,899,999 or $1,158,065 onif the sale, meaning price is $1,750,000.  In either case, no Federal or State capital gains taxes would be payable.  $16,27517,704,000 would be available to pay claims after costs of sale if the properties sell for $18,999,999, and $16,275,000 would be available if the properties sell for a combined $17,500,000.

Payment from escrow of the secured claims set forth in Classes 1A-2C listed above will leaveat a sale price of $18,999,000 leaves a net $860,805 to pay unsecured and priority claims, and a sale at $17,500,000 will leavfease $430,606 in net proceeds for distribution to creditors..

In addition, to the extent there are ongoing costs of operations such as payment of insurance and quarterly U.S. Trustee fees to be paid by the Debtors, as well as monthly payment of the priority tax claim of the Franchise Tax Board (until paid in full at the time of sale of the Mora House property as described earlier), the Debtors may continue to receive unsecured loans or equity contributions by their sole member, Melvin Vaughn, to enable the Debtors to make those required payments.

The Debtors are presently planning on a capital contribution from Melvin Vaughn to pay administrative expenses allowed. Once agreement has been reached tan amended Bankruptcy Rule 2016(b) statement will be filed.

## VIII.   ALTERNATIVES TO THE PLAN OF REORGANIZATION

The Debtors believe that the Plan provides creditors with the greatest value that can be obtained on their respective claims. The most likely alternative to confirmation of the Plan is liquidation of the estates under chapter 7 of the Bankruptcy Code.

### A.   Best Interest of Creditors Test

The "best interest" test of Bankruptcy Code section 1129(a)(7)(A)(ii) requires that a plan provide to each dissenting member of each impaired class a recovery that has a present value at least equal to the present value of the distribution that unsecured creditors would receive if the bankruptcy estate were liquidated under chapter 7 of the Bankruptcy Code.

### B.   Liquidation under Chapter 7

When a chapter 11 case is converted to a case under chapter 7 of the Bankruptcy Code, a chapter 7 trustee is appointed to conduct the affairs of the estate. In applying the liquidation test of Bankruptcy Code section 1129(a)(7)(A)(ii), the court must consider not only the accrued expenses of administration from the chapter 11, but the chapter 7 trustee's fees and expenses, and the fees and expenses of professionals likely to be retained by that trustee. Generally, no distribution is made in a chapter 7 case until all assets of the bankruptcy estate and all claims have been liquidated, a

process that can often take many months and sometimes years. Most importantly, a chapter 7 trustee does not operate the business over which he or she takes control except in very rare circumstances.

      **C.**    **Assertion of All Claims Yields A Chapter 7 Dividend Smaller Than the Dividend that the Plan Provides**

    As set forth above, sales of the Mora House and Mora Lot if closed within the Initial Marketing Period or Extended Marketing Period would leave $430,606 in net proceeds for distribution to unsecured creditors in Classes 3A and 3B. Subtracting the $25,663.49 for Class 3A leaves $404,942.51 for distribution to creditors. Even if the two properties could be sold for list price, a Chapter 7 would yield less than the projected Chapter 11 dividend. The following table illustrates why:

| | |
|---|---|
| Cash at closing | $6,275,000 |
| Less Secured Claims | $15,870,057.49 |
| **Subtotal – Net Unencumbered Asset Value** | **$404,942.51** |
| Chapter 11 Administrative Claims | [$20,000] |
| Priority Tax Claim | [$3,442.75] |
| Projected Chapter 7 Trustee Fees | [$10,400] |
| Chapter 7 Trustee's Professionals | [$25,000] |
| **NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS IN CHAPTER 7** | **$346,099.76** |
| ***Percent Distribution to Holders of Allowed Unsecured Creditors in Chapter 7*** | ***8.3%*** |
| **NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS IN CHAPTER 11** | **$381,100.01** |
| ***Percent Distribution to Non-Insider Unsecured Creditors Under Plan*** | ***9.15%*** |

~~IV.~~**IX.** OTHER RELEVANT PLAN PROVISIONS

    **A.**    **Executory Contracts.**

        **1. Assumption and Rejection**

            **i. Contract Assumed.**

    The Debtors assume, to the extent it is necessary, the Addendum to Promissory Note.

##

///

ii.  **Rejection of All Other Contracts Not Assumed.**

All other executory contracts not (a) previously assumed, assigned or rejected pursuant to final order of the Bankruptcy Court entered prior to the Effective Date, or (b) not subject to a pending motion to assume, assign or reject filed with the Bankruptcy Court prior to the Effective Date, will be deemed rejected as of the Effective Date.

iii.  **Claims Arising Out of Rejection.**

Any claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Bankruptcy Court by no later than 30 calendar days after the confirmation of the Plan.  If no proof of claim is filed within such time period, it will be forever barred from receiving a distribution from estate assets.

B.  **Means of Execution.**

1.  **Reorganized Debtors.**

The Debtors, as the Reorganized Debtors shall, from and after confirmation of the Plan, continue as the representatives of their respective estates and succeed without further order to all right, title and interest in all estate assets and property pursuant to the terms of the Plan.  The Debtors will be authorized and empowered to take all actions and measures necessary to implement and administer the Plan.  The Debtors will conduct their business and operate from confirmation and through and after substantial consummation of the Plan.  The Plan does not provide for a discharge of the Debtors.

2.  **Marketing and Sale of Mora House and Mora Lot.**

The Debtors will advertise, show, market and sell the Mora House and Mora Lot and close sales thereof in the Initial Marketing Period, within 6 months of the Effective Date; provided however that if S&R receives a $500,000 principal paydown under the Addendum to Promissory Note prior to 6 months following the Effective Date, the Debtors will have 6 more months to close sales of both the Mora House and Mora Lot within the Extended Marketing Period.  The Debtor's court-approved real estate broker, Phil Chen of Sybarite Luxury Real Estate has developed an advanced strategy to close a sale of the Mora House and Mora Lot within these Marketing Periods.

The marketing brochure and kit setting forth the strategy, plan and timing is attached hereto as Exhibit "D".

##

   **3.  Effect of Failure to Close Sale.**

In the event that sales of the Mora House and Mora Lot have not closed within Initial Marketing Period or the Extended Marketing Period in the event that the Addendum to Promissory Note has resulted in payment of $500,000 to S&R prior to 6 months following the Effective Date, and release of its lien from the Mora Lot, all holders of secured claims shall have immediate relief to exercise their rights and foreclose their liens against their respective collateral without further order of the Bankruptcy Court.  Any party may, following failure by the Debtors to close a sale of one or both of the Mora House and Mora Lot within the periods set forth above, request conversion of these bankruptcy cases to Chapter 7 by filing an explanatory declaration with the Bankruptcy Court, uploading a proposed form of order, and serving both with 10 days' notice and opportunity for hearing.

   **4.  Effective Date Distribution.**

The Debtors will pay holders of allowed professional administrative expense claims in cash on the Effective Date Distribution or at such later dates as the Court approves unless they agree to a different treatment.

   **5.  Funding and Operation of Disputed Claims Reserve.**

The Reorganized Debtors will create the Disputed Claims Reserve by establishing at the time of closing of sale of the Mora House and Mora Lot a separate bank account and depositing into it cash equal to the face amount of all claims that are disputed, contingent or unliquidated.  No deposit is required for a claim as to which an order disallowing the claim has been entered.  A deposit is only required up to the amount at which a claim has been estimated should Debtors seek and obtain an order of the bankruptcy court for estimation of a disputed claim.  If a disputed claim becomes an allowed claim, the Reorganized Debtors will immediately distribute to the claimant from the Disputed Claims Reserve the amount of the allowed claim that it would have been entitled to receive had it been an allowed claim on the confirmation date.  Any funds no longer needed in

reserve shall be released for use according to the terms of the Plan.

///

///

///

      **6. Powers of Reorganized Debtor.**

          **a.    Powers Generally and Power to Sue.**

On the Effective Date, the Reorganized Debtors will be vested with all rights and powers of the Debtors under State and Federal law, including but not limited to the right to pursue all claims and causes of action that the Debtors have including avoidance actions, and any other causes of action, defenses, requests for subordination or recharacterization, or requests for any other equitable or legal relief that was or could have been asserted pre-petition by the Debtors against any party other than those which have been settled. The Reorganized Debtors may, on behalf of the Debtors, pursue, settle or release all such actions in accordance with the best interest of and for the benefit of the holders of allowed claims.

          **b.    Objections to and Estimation of Claims.**

After the Effective Date, the Reorganized Debtors may file objections to claims. As to any claims arising from the rejection of an executory contract or unexpired lease pursuant to the Plan, the Reorganized Debtors may object within sixty (60) calendar days of the filing of any such claims. As to claims arising from the recovery of an avoidable transfer under chapter 5 of the Bankruptcy Code, the Reorganized Debtors may object within sixty (60) calendar days of the filing of any such claims.

          **c.    Settlements.**

After the Effective Date the Reorganized Debtors will have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to claims, including without limitation, any objections to claims filed by the Debtors prior to the Effective Date. The Reorganized Debtors will provide notice and opportunity for hearing of any settlement.

      **C.    Effect of Confirmation of Plan.**

          **1. Confirmation Injunction.**

On and after date of confirmation of the Plan, except to enforce the terms and conditions of the Plan before the Bankruptcy Court or to implement the terms of the Plan, all persons and entities who have held, hold or may hold any debt, claim, lien, encumbrance against or interest in the Debtors are permanently enjoined from and after the date of entry of the order confirming the Plan from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against either the Debtors, their estates, their property, or the Reorganized Debtors; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, of any judgment, award, decree or order against any of the foregoing; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against any of the foregoing (d) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due; and (e) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan.

      **2.** Binding Effect.

Except as otherwise expressly provided in the Plan, as of the Effective Date, the provisions of the Plan, a confirmation order, and any associated findings of fact or conclusions of law will bind the Debtor, the Reorganized Debtors, and all holders of claims and interests against the Debtors, regardless of whether such holders are impaired under the Plan or voted to accept.

      **D.** **Retention of Jurisdiction.**

The Bankruptcy Court will retain jurisdiction over the Bankruptcy Case subsequent to the date of Plan confirmation to the fullest extent permitted by law, including, without limitation, for the following purposes:

      **1.** To approve any proposed sale(s) of the Mora House and Mora Lot following one or more duly noticed motions including any sale free and clear of disputed liens and interests, and to enter orders as may be necessary and appropriate to aid in the close of escrows;

      **2.** To determine any and all proceedings related to allowance of claims or objections thereto, including objections to classification and including, on an appropriate motion pursuant to

Bankruptcy Rule 3008, reconsideration of claims that have been allowed or disallowed prior to confirmation;

///

///

        **3.** To hear and determine any and all applications for compensation by professionals or any other fees and expenses authorized to be paid or reimbursed in accordance with the Bankruptcy Code or the Plan;

        **4.** To determine any and all claims or causes of action, whether pending before the Bankruptcy Court at Plan confirmation or filed or instituted after that date;

        **5.** To modify the Plan or the Disclosure Statement, or to remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court (including the confirmation order) as may be necessary to carry out the purposes and effects of the Plan;

        **6.** To determine disputes regarding title of the property claimed to be property of the Debtors or their estates;

        **7.** To ensure that distributions to holders of allowed claims are accomplished in accordance with the provisions of the Plan;

        **8.** To enter such orders as may be necessary to consummate and effectuate the operative provisions of the Plan, including actions to enjoin enforcement of claims inconsistent with the terms of the Plan;

        **9.** To hear and determine disputes concerning any event of default or alleged event of default under the Plan, as well as disputes concerning remedies upon any event of default under the Plan;

        **10.** To hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code.

        **11.** To enter a final decree closing the Debtors' bankruptcy cases

        **12.** To enter and implement such orders as may be appropriate in the event the confirmation order is for any reason stayed, reversed, revoked or vacated;

        **13.** To hear and determine such other matters as may arise in connection with the Plan, the Disclosure Statement, or the confirmation order;

**14.** To hear and determine any dispute between the Reorganized Debtors and any creditor or defendant or plaintiff in litigation;

**15.** To approve any post-petition retainer payments to professionals; and,

**16.** To issue temporary restraining orders and preliminary injunctions.

**E.     General Provisions.**

**1.   Preservation of Causes of Action.**

Any and all claims and other causes of action accruing to Debtors or estate, the right and power to object to any filed or scheduled claims, the right to pursue avoidance actions will be preserved and retained by the estate after the confirmation date, and the Reorganized Debtors on behalf of the estate will have the exclusive right and standing to enforce any such causes of action.

///

///

**2.   Cramdown.**

Pursuant to section 1129(b) of the Bankruptcy Code, Debtors reserve the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

**3.   Notices.**

Any notice to Debtors will be in writing, and will be deemed to have been given six days after the date sent by first-class mail, postage prepaid and addressed as follows:

**Reorganized Debtors:**

> Mora House LLC
> FRE 355 Investment Group, LLC
> Attn: Melvin Vaughn
> 10700 Mora Drive, Los Altos, CA  94022
> Email: c4scab@aol.com
>
> With a copy to counsel:
> Robert G. Harris, Esq.
> Binder & Malter, LLP
> 2775 Park Avenue
> Santa Clara, CA 95050
> Facsimile: (408) 295-1531
> Email: rob@bindermalter.com

**4.  Modification of Plan.**

The Debtors reserve the right, in accordance with the Bankruptcy Code and Bankruptcy Rules, to amend or modify the Plan at any time prior to entry of an order confirming it. After entry of an order confirming the Plan but prior to the Effective Date, the Debtors may seek an order of the Bankruptcy Court to amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

After the Effective Date, the Reorganized Debtors may seek an order of the Bankruptcy Court to amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

The holder of an allowed claim that has accepted the Plan will be deemed to have accepted the Plan as modified if the modification does not materially and adversely change the treatment of the holder's claim.

**5. Withdrawal or Revocation of Plan.**

The Debtors may withdraw the Plan at any time prior to its confirmation date. If the Debtors withdraw the Plan prior to confirmation, or if the Plan is not confirmed, then the Plan will be deemed null and void and not binding on any person or entity.

**6. Failure of Effective Date.**

In the event the Effective Date does not occur, nothing in this Plan will be binding on the Debtors or any other person or entity or otherwise be of any force or effect.

**7. Post-Effective Date Notices.**

Except as otherwise provided in the Plan, upon and after the Effective Date, notices will be served only on the Office of the United States Trustee, the Reorganized Debtor, and those persons who file with the Bankruptcy Court and serve upon the Reorganized Debtors a request, which includes the person's name, contact individual, address, telephone number and facsimile number, that such Person receive notice of post-Effective Date matters. Persons who had previously filed with the Bankruptcy Court requests for special notice of the proceedings and other filings in the

Bankruptcy Case will not receive notice of post-Effective Date matters unless such persons file a new request in accordance with this Section.

    **F.    Implementation Orders.**

The Bankruptcy Court may, at any time, make such orders and give such directions as appropriate for consummation of the Plan pursuant to Bankruptcy Code section 1142.

[*Signatures on following page*]

Dated: ~~July 10~~September 3, 2020       MORA HOUSE LLC

By*: /s/ Melvin Vaughn*
       Melvin Vaughn

Its:  Managing Member

Dated: ~~July 10~~September 3, 2020       FRE INVESTMENT GROUP LLC

By*: /s/ Melvin Vaughn*
       Melvin Vaughn

Its:  Managing Member

Dated: ~~July 10~~September 3, 2020       BINDER & MALTER, LLP

By:*/s/ Robert G. Harris*
       Robert G. Harris

Attorneys for Debtors and Debtors-in-possession
FRE 355 Investment Group, LLC and
Mora House, LLC