**Fill in this information to identify the case:**

Debtor 1 Mora House, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court **California Northern Bankruptcy Court**

Case number: **20−50631**

# EXHIBIT B

FILED

**U.S. Bankruptcy Court**
**California Northern Bankruptcy Court**

8/17/2020

**Edward J. Emmons, Clerk**

Official Form 410

# Proof of Claim

**04/19**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

1. **Who is the current creditor?**

S&R Income Fund I, LP et al.

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor Lewis R. Landau

2. **Has this claim been acquired from someone else?**

☑ No

☐ Yes. From whom?

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

S&R Income Fund I, LP et al.

Name

c/o Platinum Loan Servicing, Inc.
24025 Park Sorrento, Suite 150
United States
Calabasas, CA 91302

Contact phone 8888224340

Contact email Lew@Landaunet.com

**Where should payments to the creditor be sent?** (if different)

Name

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

4. **Does this claim amend one already filed?**

☑ No

☐ Yes. Claim number on court claims registry (if known) Filed on MM / DD / YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**

☑ No

☐ Yes. Who made the earlier filing?

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**EXHIBIT B**

6. **Do you have any number you use to identify the debtor?**
- ☑ No
- ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ______

7. **How much is the claim?** $ 13264318.71

**Does this amount include interest or other charges?**
- ☐ No
- ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Money Loaned

9. **Is all or part of the claim secured?**
- ☐ No
- ☑ Yes. The claim is secured by a lien on property.

**Nature of property:**
- ☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410−A) with this *Proof of Claim*.
- ☐ Motor vehicle
- ☐ Other. Describe: ______

**Basis for perfection:** Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ 2750000.00

**Amount of the claim that is secured:** $ 13264318.71

**Amount of the claim that is unsecured:** $ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ ______

**Annual Interest Rate** (when case was filed) 15 %

- ☑ Fixed
- ☐ Variable

10. **Is this claim based on a lease?**
- ☑ No
- ☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ ______

11. **Is this claim subject to a right of setoff?**
- ☑ No
- ☐ Yes. Identify the property: ______

Case: 20-50633 Doc# 91-2 Filed: 09/01/20 Entered: 09/01/20 15:42:08 Page 2 of 21
Case 20-50633 Claim 4 Filed 09/17/20 Desc Main Document Page 2 of 3

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply*: | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ |

* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 8/17/2020
MM / DD / YYYY

/s/ /s/ Lewis R. Landau
Signature

Print the name of the person who is completing and signing this claim:

Name: /s/ Lewis R. Landau
First name Middle name Last name

Title:

Company: Lewis R. Landau Attorney at Law
Identify the corporate servicer as the company if the authorized agent is a servicer

Address: 22287 Mulholland Hwy #318
Number Street
Calabasas, CA 91302
City State ZIP Code

Contact phone 8888224340 Email Lew@Landaunet.com



**EXHIBIT B**

# Platinum Loan Servicing Inc.

24025 Park Sorrento Suite 150
Calabasas, CA 91302
(818) 222-5222

7/28/2020

FRE 355 Investment Group, LLC by: Melvin Vaughn, Managing Member
10700 Mora Drive
Los Altos, CA 94024
Account: 10536

## BENEFICIARY'S DEMAND FOR PAYOFF

Dear FRE 355 Investment Group, LLC by: Melvin Vaughn, Managing Member

You are authorized to use the following amounts to payoff the above-mentioned loan. All necessary legal documents will be forwarded to the trustee for Full Reconveyance upon receipt of payment in full.

| **Payoff Date** | **7/28/2020** |
|---|---|
| Maturity Date | 5/1/2019 |
| Next Payment Due | 9/1/2019 |
| Interest Rate | 15.000% |
| Interest Paid-To Date | 8/1/2019 |
| Principal Balance | $10,937,000.00 |
| Unpaid Default Interest from 2/1/20 to 8/1/20 @ $45,584.75 per month | $319,093.25 |
| Accrued Interest From 8/1/2019 To 7/28/2020 | $1,658,521.58 |
| Unpaid Late Charges | $86,587.38 |
| Accrued Late Charges | $150,399.04 |
| Unpaid Charges (See itemization attached) | $112,672.46 |
| Prepayment Penalty | $0.00 |
| Other Fees (See itemization attached) | $45.00 |
| Trust Balance | $0.00 |
| **Payoff Amount** | **$13,264,318.71** |

Please add **$4,571.30** for each additional day past **7/28/2020**.

We reserve the right to amend this demand should any changes occur that would increase the total amount for payoff. **Please note that this demand expires on 7/28/2020**, at which time you are instructed to contact this office for additional instructions (DEMAND FORWARDING FEES ARE DUE EVEN UPON CANCELLATION OF YOUR ESCROW).

Make disbursement check payable to: **Platinum Loan Servicing Inc.**

Sincerely,

Karen Larson
Platinum Loan Servicing
818 222-5222
klarson@platinumloanservicing.com

Approved By Scot Fine CEO

# EXHIBIT B

| ITEMIZATION OF UNPAID CHARGES | | | | | |
|---|---|---|---|---|---|
| **Date** | **Description** | **Interest Rate** | **Unpaid Balance** | **Accrued Interest** | **Total Due** |
| 02/14/2019 | NSF Payment Charge | 0.000% | $25.00 | $0.00 | $25.00 |
| 04/15/2019 | Advanced Trustee Fees | 0.000% | $17,538.34 | $0.00 | $17,538.34 |
| 04/15/2019 | Advanced Trustee Fees | 0.000% | $5,062.91 | $0.00 | $5,062.91 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $426.87 | $0.00 | $426.87 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $1,790.35 | $0.00 | $1,790.35 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $1,705.12 | $0.00 | $1,705.12 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $4,177.69 | $0.00 | $4,177.69 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $14,471.84 | $0.00 | $14,471.84 |
| 02/14/2020 | Advanced Trustee Fees | 0.000% | $852.48 | $0.00 | $852.48 |
| 04/10/2020 | defaulted late fees | 0.000% | $18,228.32 | $0.00 | $18,228.32 |
| 07/06/2020 | Advanced Appraisal Fees | 15.000% | $10,500.00 | $100.63 | $10,600.63 |
| 07/08/2020 | Advanced Lawyer Fees (Landau) | 15.000% | $1,564.00 | $13.69 | $1,577.69 |
| 07/15/2020 | Lawyer Fees Landau | 0.000% | $6,000.00 | $0.00 | $6,000.00 |
| 07/15/2020 | SBS Trust Deed Fees | 0.000% | $8,028.69 | $0.00 | $8,028.69 |
| 07/16/2020 | Advanced Lawyer Fees | 15.000% | $22,067.00 | $119.53 | $22,186.53 |
| | | | | **Total** | **$112,672.46** |

| ITEMIZATION OF OTHER FEES | |
|---|---|
| **Description** | **Amount** |
| Demand Fee | $0.00 |
| Reconveyance Fee | $45.00 |
| Recording Fee | $0.00 |
| Forwarding Fee | $0.00 |
| **Total** | **$45.00** |

## BORROWER STATEMENT OF ACCOUNT

**EXHIBIT B**

| ACCOUNT NO. | 10536 |
|---|---|
| STATEMENT DATE | 7/28/2020 |

**STATEMENT SUMMARY**

| | |
|---|---|
| Statement Period | All Dates |
| Principal Balance | $10,937,000.00 |
| Reserve Balance | $0.00 |
| Impound Balance | $0.00 |
| Unpaid Late Charges | $86,587.38 |
| Unpaid Charges | $112,658.23 |
| Unpaid Interest | $319,093.25 |
| Regular Payment | $136,726.42 |
| Note Rate | 15.000% |
| Interest Paid in 2020 | $229,014.47 |

Property: 10718 Mora Drive Los Altos CA 94024

**BORROWER**

FRE 355 Investment Group, LLC by: Melvin Vaughn, Managing Member
10700 Mora Drive
Los Altos CA 94024

Please advise us immediately of any discrepancies in the transactions or investment activity on your statement of account or if you contemplate changing your address. When making inquiries by telephone or in writing please give your account number. We urge you to keep this statement with your investment records.

### ACCOUNT ACTIVITY

| Transaction Date | Pmt Due Date | Reference | Description | Transaction Amount | Distribution Interest | Principal | Late Chgs | Other | Trust | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Balance Forward | | | | | | | $0.00 |
| 4/11/2018 | | | Funds Advanced | ($10,937,000.00) | $0.00 | ($10,937,000.00) | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 4/13/2018 | | 10182 | Payment - Other | $60,761.11 | $60,761.11 | $0.00 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 4/13/2018 | 6/1/2018 | 10182 | Payment - Thank You | $91,141.67 | $91,141.67 | $0.00 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 4/13/2018 | 7/1/2018 | 10182 | Payment - Thank You | $91,141.67 | $91,141.67 | $0.00 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 4/13/2018 | 8/1/2018 | 10182 | Payment - Thank You | $91,141.67 | $91,141.67 | $0.00 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 4/13/2018 | 9/1/2018 | 10182 | Payment - Thank You | $91,141.67 | $91,141.67 | $0.00 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 4/13/2018 | 10/1/2018 | 10182 | Payment - Thank You | $91,141.67 | $91,141.67 | $0.00 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 4/13/2018 | 11/1/2018 | 10182 | Payment - Thank You | $91,141.67 | $91,141.67 | $0.00 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 12/11/2018 | | | MOD | ($1,000.00) | $0.00 | $0.00 | $0.00 | ($1,000.00) | $0.00 | $10,937,000.00 |
| 12/11/2018 | | | Fed Ex Fee | ($50.00) | $0.00 | $0.00 | $0.00 | ($50.00) | $0.00 | $10,937,000.00 |
| 12/14/2018 | 12/1/2018 | WIRE | Payment - Thank You | $92,191.67 | $91,141.67 | $0.00 | $0.00 | $1,050.00 | $0.00 | $10,937,000.00 |
| 12/14/2018 | | WIRE | Late Charge | ($9,114.17) | $0.00 | $0.00 | ($9,114.17) | $0.00 | $0.00 | $10,937,000.00 |
| 12/14/2018 | 1/1/2019 | WIRE | Payment - Thank You | $91,186.67 | $91,141.67 | $0.00 | $0.00 | $45.00 | $0.00 | $10,937,000.00 |
| 2/11/2019 | 2/1/2019 | 115 | Payment - Thank You | $91,141.67 | $91,141.67 | $0.00 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 2/14/2019 | | 115 | NSF | ($91,141.67) | ($91,141.67) | $0.00 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 2/14/2019 | | | NSF Payment Charge | ($25.00) | $0.00 | $0.00 | $0.00 | ($25.00) | $0.00 | $10,937,000.00 |
| 4/15/2019 | | | Advanced Trustee Fees | ($17,538.34) | $0.00 | $0.00 | $0.00 | ($17,538.34) | $0.00 | $10,937,000.00 |
| 4/15/2019 | | | Advanced Trustee Fees | ($5,062.91) | $0.00 | $0.00 | $0.00 | ($5,062.91) | $0.00 | $10,937,000.00 |
| 7/31/2019 | | CASHIERS | Payment - Other | $5,000.00 | $2,500.00 | $0.00 | $0.00 | $2,500.00 | $0.00 | $10,937,000.00 |
| 8/7/2019 | 2/1/2019 | WIRE | Payment - Thank You | $91,141.67 | $136,712.50 | ($45,570.83) | $0.00 | $0.00 | $0.00 | $10,982,570.83 |
| 8/7/2019 | | WIRE | Late Charge | ($13,671.25) | $0.00 | $0.00 | ($13,671.25) | $0.00 | $0.00 | $10,982,570.83 |
| 8/7/2019 | | | Funds Advanced | $45,570.83 | $0.00 | $45,570.83 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 9/4/2019 | | WIRE | Payment - Other | $90,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $90,000.00 | $10,937,000.00 |
| 9/5/2019 | 3/1/2019 | WIRE | Payment - Thank You | $0.00 | $91,141.67 | $0.00 | $0.00 | $0.00 | ($91,141.67) | $10,937,000.00 |
| 9/5/2019 | | WIRE | Late Charge | ($9,114.17) | $0.00 | $0.00 | ($9,114.17) | $0.00 | $0.00 | $10,937,000.00 |
| 9/5/2019 | | WIRE | Payment - Other | $1,141.67 | $0.00 | $0.00 | $0.00 | $0.00 | $1,141.67 | $10,937,000.00 |
| 10/2/2019 | | WIRE | Payment - Other | $50,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $50,000.00 | $10,937,000.00 |
| 10/2/2019 | | WIRE | Payment - Other | $10,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $10,000.00 | $10,937,000.00 |
| 10/4/2019 | 4/1/2019 | WIRE | Payment - Thank You | $31,141.67 | $91,521.42 | ($379.75) | $0.00 | $0.00 | ($60,000.00) | $10,937,379.75 |
| 10/4/2019 | | WIRE | Late Charge | ($9,114.17) | $0.00 | $0.00 | ($9,114.17) | $0.00 | $0.00 | $10,937,379.75 |
| 11/4/2019 | 5/1/2019 | WIRE | Payment - Thank You | $91,176.67 | $91,524.59 | ($347.92) | $0.00 | $0.00 | $0.00 | $10,937,727.67 |
| 11/4/2019 | | WIRE | Late Charge | ($9,114.17) | $0.00 | $0.00 | ($9,114.17) | $0.00 | $0.00 | $10,937,727.67 |
| 12/5/2019 | 6/1/2019 | WIRE | Payment - Thank You | $91,141.67 | $91,527.49 | ($385.82) | $0.00 | $0.00 | $0.00 | $10,938,113.49 |
| 12/5/2019 | | WIRE | Late Charge | ($9,114.17) | $0.00 | $0.00 | ($9,114.17) | $0.00 | $0.00 | $10,938,113.49 |
| 1/14/2020 | 7/1/2019 | WIRE | Payment - Thank You | $91,141.67 | $91,711.30 | ($569.63) | $0.00 | $0.00 | $0.00 | $10,938,683.12 |
| 1/14/2020 | | WIRE | Late Charge | ($13,672.64) | $0.00 | $0.00 | ($13,672.64) | $0.00 | $0.00 | $10,938,683.12 |
| 2/14/2020 | | | Advanced Trustee Fees | ($426.87) | $0.00 | $0.00 | $0.00 | ($426.87) | $0.00 | $10,938,683.12 |
| 2/14/2020 | | | Advanced Trustee Fees | ($1,790.35) | $0.00 | $0.00 | $0.00 | ($1,790.35) | $0.00 | $10,938,683.12 |

**EXHIBIT B**

## ACCOUNT ACTIVITY

| Transaction Date | Pmt Due Date | Reference | Description | Transaction Amount | Distribution: Interest | Principal | Late Chgs | Other | Trust | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 2/14/2020 | | | Advanced Trustee Fees | ($1,705.12) | $0.00 | $0.00 | $0.00 | ($1,705.12) | $0.00 | $10,938,683.12 |
| 2/14/2020 | | | Advanced Trustee Fees | ($4,177.69) | $0.00 | $0.00 | $0.00 | ($4,177.69) | $0.00 | $10,938,683.12 |
| 2/14/2020 | | | Advanced Trustee Fees | ($14,471.84) | $0.00 | $0.00 | $0.00 | ($14,471.84) | $0.00 | $10,938,683.12 |
| 2/14/2020 | | | Advanced Trustee Fees | ($852.48) | $0.00 | $0.00 | $0.00 | ($852.48) | $0.00 | $10,938,683.12 |
| 2/27/2020 | 8/1/2019 | WIRE | Payment - Thank You | $91,141.66 | $137,303.17 | ($46,161.51) | $0.00 | $0.00 | $0.00 | $10,984,844.63 |
| 2/27/2020 | | WIRE | Late Charge | ($13,672.64) | $0.00 | $0.00 | ($13,672.64) | $0.00 | $0.00 | $10,984,844.63 |
| 2/27/2020 | | | Funds Advanced | $46,161.51 | $0.00 | $46,161.51 | $0.00 | $0.00 | $0.00 | $10,938,683.12 |
| 2/27/2020 | | | Funds Advanced | $1,683.12 | $0.00 | $1,683.12 | $0.00 | $0.00 | $0.00 | $10,937,000.00 |
| 4/10/2020 | | | defaulted late fees | ($18,228.32) | $0.00 | $0.00 | $0.00 | ($18,228.32) | $0.00 | $10,937,000.00 |
| 7/6/2020 | | | Advanced Appraisal Fees | ($10,500.00) | $0.00 | $0.00 | $0.00 | ($10,500.00) | $0.00 | $10,937,000.00 |
| 7/8/2020 | | | Advanced Lawyer Fees (Landau) | ($1,564.00) | $0.00 | $0.00 | $0.00 | ($1,564.00) | $0.00 | $10,937,000.00 |
| 7/15/2020 | | | SBS Trust Deed Fees | ($8,028.69) | $0.00 | $0.00 | $0.00 | ($8,028.69) | $0.00 | $10,937,000.00 |
| 7/15/2020 | | | Lawyer Fees Landau | ($17,106.00) | $0.00 | $0.00 | $0.00 | ($17,106.00) | $0.00 | $10,937,000.00 |
| 7/15/2020 | | | Charge Adjustment | ($12,394.00) | $0.00 | $0.00 | $0.00 | ($12,394.00) | $0.00 | $10,937,000.00 |
| 7/16/2020 | | | Charge Adjustment | $23,500.00 | $0.00 | $0.00 | $0.00 | $23,500.00 | $0.00 | $10,937,000.00 |
| 7/16/2020 | | | Advanced Lawyer Fees | ($22,067.00) | $0.00 | $0.00 | $0.00 | ($22,067.00) | $0.00 | $10,937,000.00 |
| | | | | | $1,523,836.61 | ($10,937,000.00) | ($86,587.38) | ($109,893.61) | $0.00 | |

## TRUST ACCOUNT ACTIVITY

| Transaction Date | Check# or Reference | From Whom Received or To Whom Paid | Description / Memo | Amount Paid Out | Amount Received | Daily Balance |
|---|---|---|---|---|---|---|
| | | | Balance Forward | | | $0.00 |
| | | | | $0.00 | $0.00 | |

## OUTSTANDING CHARGES AND ADVANCES

| Date of Charge | Reference | Description | Interest Rate | Original Amount | Unpaid Balance | Accrued Interest | Total Amount Due |
|---|---|---|---|---|---|---|---|
| 2/14/2019 | | NSF Payment Charge | 0.000% | $25.00 | $25.00 | $0.00 | $25.00 |
| 4/15/2019 | | Advanced Trustee Fees | 0.000% | $17,538.34 | $17,538.34 | $0.00 | $17,538.34 |
| 4/15/2019 | | Advanced Trustee Fees | 0.000% | $5,062.91 | $5,062.91 | $0.00 | $5,062.91 |
| 2/14/2020 | | Advanced Trustee Fees | 0.000% | $426.87 | $426.87 | $0.00 | $426.87 |
| 2/14/2020 | | Advanced Trustee Fees | 0.000% | $1,790.35 | $1,790.35 | $0.00 | $1,790.35 |
| 2/14/2020 | | Advanced Trustee Fees | 0.000% | $1,705.12 | $1,705.12 | $0.00 | $1,705.12 |
| 2/14/2020 | | Advanced Trustee Fees | 0.000% | $4,177.69 | $4,177.69 | $0.00 | $4,177.69 |
| 2/14/2020 | | Advanced Trustee Fees | 0.000% | $14,471.84 | $14,471.84 | $0.00 | $14,471.84 |
| 2/14/2020 | | Advanced Trustee Fees | 0.000% | $852.48 | $852.48 | $0.00 | $852.48 |
| 4/10/2020 | | defaulted late fees | 0.000% | $18,228.32 | $18,228.32 | $0.00 | $18,228.32 |
| 7/6/2020 | | Advanced Appraisal Fees | 15.000% | $10,500.00 | $10,500.00 | $96.25 | $10,596.25 |
| 7/8/2020 | | Advanced Lawyer Fees (Landau) | 15.000% | $1,564.00 | $1,564.00 | $13.03 | $1,577.03 |
| 7/15/2020 | | Lawyer Fees Landau | 0.000% | $6,000.00 | $6,000.00 | $0.00 | $6,000.00 |
| 7/15/2020 | | SBS Trust Deed Fees | 0.000% | $8,028.69 | $8,028.69 | $0.00 | $8,028.69 |
| 7/16/2020 | | Advanced Lawyer Fees | 15.000% | $22,067.00 | $22,067.00 | $110.34 | $22,177.34 |
| | | | | $112,438.61 | $112,438.61 | $219.62 | $112,658.23 |

**EXHIBIT B**

# NOTE SECURED BY A DEED OF TRUST

Loan Number: **10536** Date: **03/29/2018** Calabasas, California

**Marquee Funding Group, Inc**
**BRE#01870113 & NMLS #267442**
**Dawn Bailey-ButtarBRE: #01940291/**
**NMLS: #1166016**

**10718 Mora Drive Los Altos CA 94024**
Property Address

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$10,937,000.00 (**this amount will be called "principal"), plus interest, to the order of **S & R Income Fund I, LP as to an undivided 40.569% interest and S & R Income Fund II, LP as to an undivided 22.401% interest and RDG Lender Services, LLC, as to an undivided 9.600% interest and PLC Investment Group, LLC, a California limited liability company as to an undivided 9.143% interest and Julian Maimin and Stacey Maimin, Trustees, of the Julian Maimin & Stacey Maimin Revocable Trust U/A 12/1/10 as to an undivided 6.857% interest and Judi Beth Kaplan, Trustee of the Judi Beth Kaplan Living Trust dated November 29, 2006 as to an undivided 4.572% interest and William H. Scripps and Kathryn A. Scripps Trustees, of the Scripps Family 1992 Revocable Trust**

**U/A 6-9-92 as to an undivided 4.572% interest and Lauren Dromy, Trustee, of The Israel Maimin 2010 Grantor Trust FBO Lauren Dromy U/A 12/1/10 as to an undivided 2.286% interest** (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

**2. INTEREST**

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on **04/10/2018**, and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

**3. PAYMENTS**

My payments are ☑ Interest Only ☐ Fully Amortized ☐ Other

I will make my payments each month as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 5 | Monthly beginning December 1, 2018 | 10.00% | $91,141.67 |
| 1 | May 1, 2019 | 10.00% | $11,028,141.67 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on **05/01/2019** (the Due Date) I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.

I will make my payments payable to **Platinum Loan Servicing, Inc., 24025 Park Sorrento, Suite #150, Calabasas CA 91302**, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

**4. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge For Overdue Payments.** If I do not pay the full amount of each monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.000%** of my overdue payment or U.S. **$0.00**, whichever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than **10** days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

**(B) Default.** If I do not pay the full amount of each monthly payment due under this Note by the date stated in paragraph 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

**5. BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows: **If this loan is paid off or refinanced during the first Three (3) month(s) of the term, a prepayment penalty equal to the difference between Three (3) month(s) of interest and the date of prepayment shall be due tendered.**

**6. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**7. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

**8. THIS NOTE IS SECURED BY A DEED OF TRUST**

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note. Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

**9. DEFAULT RATE**

In the event of a default under the terms of this note, including but not limited to; (a) non-payment of any installment of principal or interest within ten (10) days of its designated due date; (b) failure to pay insurance premiums or property taxes when they become due; (c) transfer of title; (d) or that this note is not paid in full on or before due date, then any unpaid balance at the time of default shall bear interest at the rate of Five percent (5%) above the herein stated note rate, from the time of default, until this note has been paid in full, or until the specific default has been cured. The Default Rate will automatically apply to all interest accrued thereafter without demand by the Note Lender.

**10. WAIVER OF STATUTORY REGULATIONS**

By initialing below, Borrower waives any right under California Civil Code 2954.10 or otherwise to prepay this Note, in whole or in part, without a prepayment penalty as described in Paragraph 5. Borrower acknowledges that prepayment of this Note may result in Lender's incurring additional losses, costs, expenses, and **liabilities**, including, but not limited to, lost revenue and lost profits. Borrower therefore agrees to pay the prepayment penalty as described in Paragraph 5, if any principal amount is prepaid, whether voluntarily or by reason of acceleration of the Maturity Date on default (including, but not limited to, acceleration on any transfer or conveyance of any right, title, or interest in the Mortgaged Property giving Lender the right to accelerate the maturity of this Note as provided in the Deed of Trust).

**11. USE OF PROCEEDS**
Loan Proceeds are intended to be used primarily for business and commercial purpose and are not intended to be used for personal, family, or household purpose or in any manner which may result in the loan Transaction not being exempt from Truth in Lending Act (TILA), 15 U.S.C.A 1602 (h) or any similar or applicable consumer lending laws.

**FRE 355, LLC, a Delaware Limited Liability Company Doing business in California as FRE 355 Investment Group, LLC, a Delaware Limited Liability Company by:**

3/30/18 | 3/30/18

Borrower **Melvin Vaughn, Managing Member** Date | Borrower **Melvin Vaughn, Guarantor** Date

## ASSIGNMENT OF NOTE SECURED BY A DEED OF TRUST

Date: ______________________________

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:

all beneficial interest under the within Note, without recourse, and Deed of Trust securing same

**DO NOT DESTROY THIS NOTE:** When paid it must be surrendered to the Trustee, together with the Deed of Trust securing same for cancellation, before reconveyance will be made.

# Addendum to Promissory Note
# Loan #10536

In addition to the security in the real property at 10718 Mora Drive, Los Altos, California as described in the Deed of Trust securing this obligation, the promissory note will also be secured by an additional Deed of Trust further collateralized by the following:

**The real property commonly known as 10700 Mora Drive, Los Altos, CA. 94024**
**APN: 331-14-067**

**Lender shall release the real property interest in said property for a principal reduction of Five Hundred Thousand dollars. ($500,000.00)**

**Agreed and accepted this 11 day of December 2018.**

Melvin Vaughn, Managing Member

**EXHIBIT B**

24079489

Regina Alcomendras
Santa Clara County - Clerk-Recorder
12/11/2018 11:12 AM

Titles: 1 Pages: 9

Fees: $124.00
Taxes: $0
Total: $124.00

**Recording Requested By**
Marquee Funding Group, Inc.
DRE#01870113 & NMLS #267442
Dawn Bailey-Buttar
DRE: #01940291/ NMLS: #1166016

**When Recorded Mail To**
Marquee Funding Group, Inc.
24025 Park Sorrento, Suite #150,
Calabasas CA 91302

Title Order No.

Space above this line for recorder's use

# DEED OF TRUST

RECORDER: INDEX FOR SPECIAL NOTICE

Loan No. **10536**

This Deed of Trust, made this **29th** day of **March 2018**, among the Trustor, **Mora House, LLC., a California Limited Liability Company** (herein "Borrower"), **Platinum Loan Servicing, Inc.** (herein "Trustee"), and the Beneficiary, **S & R Income Fund I, LP a Delaware Limited Partnership as to an undivided 40.569% interest and S & R Income Fund II, LP a Delaware Limited Partnership as to an undivided 22.401% interest and RDG Lender Services, LLC, a Delaware limited liability company as to an undivided 9.600% interest and PLC Investment Group, LLC, a California limited liability company as to an undivided 9.143% interest and Julian Maimin and Stacey Maimin, Trustees, of the Julian Maimin & Stacey Maimin Revocable Trust U/A 12/1/10 as to an undivided 6.857% interest and Judi Beth Kaplan, Trustee of the Judi Beth Kaplan Living Trust dated November 29, 2006 as to an undivided 4.572% interest and William H. Scripps and Kathryn A. Scripps Trustees, of the Scripps Family 1992 Revocable Trust U/A 6-9-92 as to an undivided 4.572% interest and Lauren Dromy, Trustee, of The Israel Maimin 2010 Grantor Trust FBO Lauren Dromy U/A 12/1/10 as to an undivided 2.286% interest** (herein "Lender").

The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

## GRANT IN TRUST

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the county of **Santa Clara**, State of California: **SEE EXHIBIT "A" ATTACHED HERE TO AND MADE A PART HEREOF.**

**APN: 331-14-067**, which has the address of **Vacant Land, Los Altos CA 94024** (herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

**THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:**

(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **03/29/2018**, in the principal sum of U.S. **$10,937,000.00**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

**EXHIBIT B**

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the **Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend** generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

**1. Payments of Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and/or interest on any Future Advances secured by the Deed of Trust.

**2. Funds for Taxes and Insurance (Impounds)**. Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine, or at option of Lender the entire amount so collected or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Case: 20-50628 Claim# 4 Part 2 Filed: 09/01/20 Page 10 of 18

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust . Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security hereof or the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), **Platinum Loan Servicing, Inc., 24025 Park Sorrento, Suite #150, Calabasas, CA 91302** or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice

Case: 20-50628 Claim# 9-1 Part 2 Filed: 07/27/20 Desc: Attachment 1 Page 1 of 18

provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State of California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not effect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require The Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

**17. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**18. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

**19. Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

**20. Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed or Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the

Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender of a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

**REQUEST FOR SPECIAL NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST**

In accordance with Section 2924b of the Civil Code, Request is hereby made by the undersigned Trustor that a copy of any default and a copy of any notice of sale under deed of trust recorded in Book XXXXX, Page(s) XXXXX, Instrument No.__________, Official Records of County Recorder of ____________________ County, California. The original Trustor ____________________
and the original Trustee
____________________ and the
original Beneficiary
____________________
Mail to: ____________________

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

**Mora House, LLC., a California Limited Liability Company by:**

12/11/18

Borrower **Melvin Vaughn, Managing Member** Date

12/11/18

Borrower Date

Case: 20-50628 Claim# 91 Part 2 Filed: 09/01/20 Desc: Attachment 1 Page 16 of 21

**EXHIBIT B**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of SANTA CLARA

On DEC. 11, 2018 before me, FERNANDO CROCE, NOTARY PUBLIC,
personally appeared MELVIN VAUGHN

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

FERNANDO CROCE
Notary Public – California
Santa Clara County
Commission # 2223476
My Comm. Expires Dec 24, 2021

(Seal)

**REQUEST FOR FULL RECONVEYANCE**

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all **other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and** this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Signature of Beneficiary (the "LENDER") Date

Signature of Beneficiary (the "LENDER") Date

When recorded, mail to

Att: ______________

**ORDER NO. :** 0623011718-

# EXHIBIT A

The land referred to is situated in the unincorporated area of the County of Santa Clara, State of California, and is described as follows:

Parcel One:

Lot 3 as shown on that certain Parcel Map Recorded in the Office of the Recorder of the County of Santa Clara on August 14, 2007, in Book 817 of Maps, Pages 17 through 20, Santa Clara County Records.

EXCEPTING THEREFROM Parcel One above described the underground water rights as conveyed by Robert L. Rees and Esther J. Rees, husband and wife to California Water Service Company, a California Corporation by Deed dated March 4, 1953, and Recorded March 20, 1953, in Book 2603 of Official Records, Page 137.

Parcel Two:

A non-exclusive right of way for road purposes, appurtenant to Parcel One above described, with the right of ingress and egress over the same and for the establishing and maintaining of public utilities over and along all of the following described parcel of land lying outside the bounds of Lot 1 of Tract No. 10 Jo Mora Ranch as said Lot 1 is shown upon the Map of said Tract Recorded in Book Y of Maps, Page 53, Santa Clara County Records to wit:

Beginning at a 3/4 inch iron pipe at the Southwesterly corner of Lot 1 in the Easterly line of Mora Drive as said lot and drive are shown on the Map of Tract No. 10, Jo Mora Ranch, which Map was filed in the Office of the Recorder of the County of Santa Clara, State of California, on June 2, 1932, in Book "Y" of Maps, Page 53; thence along the Easterly line of Mora Drive North 00° 41' East 77.00 feet to a 3/4 inch pipe which bears South 00° 41' West 68.00 feet from the Northwesterly corner of said Lot 1; thence North 88° 36' East 255.12 feet to a 3/4 inch pipe in the Easterly line of said Lot 1, from which the Northeasterly corner of said Lot 1 bears North 06° 15' 47" East 59.00 feet; thence North 70° 21' East 98.13 feet to a 3/4 inch pipe; thence South 84° 25' East 77.18 feet to a 3/4 inch pipe; thence South 75° 14' East 93.00 feet to a 3/4 inch pipe in the Easterly line of that certain 2.91 acre parcel of land conveyed by Robert L. Rees, et ux., Else M. Cavelti, et al., by Deed dated June 28, 1952, and Recorded July 21, 1952, in Book 2454 of Official Records, Page 511, Santa Clara County Records; thence along the Easterly line of said 2.91 acre parcel of land, South 13° 36' West 60.41 feet to a 3/4 inch pipe at the Southeasterly corner thereof in the Southerly line of Lot 40 of the Subdivision of the Hale Ranch, being also the Southerly line of Lot 8, as shown on the Map of Loyola Hills, which Map was filed for Record in the Office of the Recorder of the County of Santa Clara, State of California, on June 16, 1916, in Book "O" of Maps, Page 99; thence along the Southerly line of said Lot 40, being also the Southerly line of said Lot 8 South 86° 54' West 253.10 feet to a 4" X 4" stake at the Southeasterly corner of Lot 1 of Tract No. 10 Jo Mora Ranch hereinabove referred to; thence along the Southerly line of said Lot 1, South 87° 05' West 248.53 feet to the point of beginning.

Parcel Three:

A non-exclusive right of way, appurtenant to Parcel One above described, for ingress and egress and for the purposes of establishing and maintaining water, gas electric and telephone service lines over a strip of land described, as follows, to wit:

Beginning at a 3/4 inch pipe in the Southerly line of Lot 40 of the Subdivision of the Hale Ranch, in the San Antonio Rancho, distant thereon, North 86° 54' East 253.10 feet from 4" X 4" stake at the Southeasterly corner of Lot 1 of Tract No. 10, entitled, "Jo Mora Ranch" as shown upon the Map of said Tract Recorded in Book "Y" of Maps, Page 53, Records of Santa Clara County, California, and running thence along the Southerly line of said Lot 40, North 86° 54' East 169.08 feet to a 3/4 inch pipe; thence leaving said Southerly line of Lot 40 and running North 08° 08' East 64.42 feet to a one half inch pipe; thence North 54° 49' East 137.40 feet to a one-half inch pipe; thence North 15° 05' East 172.82 feet to a one half inch pipe; thence North 28° 24' West 139.50 feet to a one half inch pipe; thence South 66° 52' West 126.63 feet to a 3/4 inch pipe; thence at right angles South 23° 08' East 10.00 feet to a 3/4 inch pipe; thence North 66° 52' East 117.51 feet; thence South 28° 24' East 126.39 feet; thence South 15° 05' West 165.22 feet; thence South 54° 49' West 133.79 feet; thence South 81° 57' West 159.56 feet to a 3/4 inch pipe in the Easterly line of that certain 2.91 acre tract of land conveyed by Robert L. Rees, et ux., to Else H. Cavelti, et al., as Recorded in Book 2454 of Official Records, Page 511; thence along the Easterly line of said 2.91 acre tract of land, South 13° 35' West 60.41 feet to the place of beginning.

Parcel Four:

A non-exclusive easement, appurtenant to Parcel One described, for ingress and egress over all that portion of the 1.324 acre parcel of land conveyed by Robert L. Rees, et ux., to Ethel R. Thompson, a widow, by Deed Recorded July 10, 1957, in Book 3840 of Official Records, Page 400, Santa Clara County Records, that lies within the bounds of a 20 foot roadway, the center line of which is described as follows:

Beginning at a point in the Northwesterly line of said 1.324 acre parcel distant North 08° 08' East 64.42 feet from the Southwesterly corner of said parcel of land running along the Northwesterly lines of said parcel of the following courses and distances: North 54° 49' East 137.40 feet and North 15° 05' East 100.00 feet.

Parcel Five:

An easement, appurtenant to Parcel One above described, for the purposes of maintaining a water service pipe line over a strip of land five feet wide, the center line of which is described as follows:

Beginning at a point in the Westerly line of that certain 1.324 acre parcel of land conveyed by Robert L. Rees, et ux., to Ethel R. Thompson, a widow by Deed Recorded on July 10, 1957, in Book 3840 of Official Records, Page 400, Santa Clara County Records, distant thereon South 15° ' West 22.73 feet from the Northwesterly corner thereof, and running thence North 89° 49' East 142.33 feet to the Northerly line of said 1.324 acre parcel of land, at a point which bears North 67° 08' West 37.22 feet from the Northeast corner thereof.

Parcel Six:

An easement for the benefit of Lot 3 as shown on that certain Record of Survey Map Recorded in Book 817 of Maps, Pages 17-20, for a sanitary sewer on, over and through those certain real properties now known as Lots a et B as shown on that certain Record of Survey Map Recorded in Book 161 of Maps, Page 29; and Lots 2 et Lot 3 as shown on that certain Record of Survey Map Recorded in Book 817 of Maps, Pages 17-20, all Official Records of Santa Clara county, California. said easement being a 10 foot wide strip of which is more particularly described as follows:

Parcel A:

Beginning at a corner common to said Lots A et B of said Record of Survey 161 Maps 29 at the South line of Mora Heights way distant South 28°20'59" East 147.16 feet along the line common to said Lots A et , thence along the centerline of a 10 foot wide strip, five feet on either side, measured perpendicularly, of the following described line the following four courses, South 23°23'45" East, 113.84 feet, South 12'58'12" West, 56.92 feet, South 59°01'36" West, 218.92 feet and South 78°23'00" West, 14.20 feet to the East corner of Lot 2 of said Record of Survey 817 Maps 17-20;

Thence continuing along the South line of said Lot 2, South 78°23'02" West, 112.54 feet to the terminus of this easement.

The sidelines of the above described strip shall be prolonged or shortened so as to begin at the Southwesterly line of said Lot B or A perpendicular line to it and end at a line perpendicular to the terminus course and intersect so as not to create any gaps or gores along the entire length of this easement strip.

As described in the Sanitary Sewer Easement and Maintenance Agreement Recorded October 6, 2015 as Instrument No. 23099670, Santa Clara County Records.

APN: 331-14-067

**EXHIBIT B**

This is to certify that this is a true copy of the document on file in this office.

ATTEST: DEC 1 1 2018

COUNTY CLERK-RECORDER
SANTA CLARA COUNTY, CALIFORNIA