**Entered on Docket**
**September 30, 2020**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**The following constitutes the order of the Court.**
**Signed: September 29, 2020**

_____
**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>**FRE 355 INVESTMENT GROUP, LLC,**<br>Debtor.<br>_____<br>In re<br>**MORA HOUSE, LLC,**<br>Debtor. | Case No. 20-50628 SLJ<br>Chapter 11<br>*Jointly Administered*<br><br>Case No. 20-50631 SLJ<br>Chapter 11<br><br>Date: September 29, 2020<br>Time: 1:30 p.m.<br>Ctrm: 9 |

## ORDER GRANTING MOTION FOR RELIEF FROM STAY

Platinum Loan Servicing Inc.'s ("PLS") Motion for Relief from Stay ("Motion") came on for hearing at the above-referenced date and time. Appearances were noted on the record. After hearing arguments from counsel, the court took the matter under submission. For the reasons stated below, the court grants the Motion.

## I. BACKGROUND

FRE 355 Investment Group, LLC, owns real property located at 10718 Mora Drive, Los Altos, California ("Mora House"), and Mora House, LLC, owns an undeveloped real property in Los Altos, California, identified as APN #331-14-067 ("Mora Lot") adjacent to Mora House (collectively, the "Properties"). According to the schedules, Mora House has a value of $14,999,999, and Mora Lot has a value of $4,000,000. PLS holds the first deed of trust against Mora House, which is cross-collateralized by a junior deed of trust against Mora Lot. It filed a proof of claim for $13,264,318.71. The Richard and Esther Blanchard Trust holds the senior deed of trust against Mora Lot and filed a proof of claim in the amount of $2,441,803.28. The County of Santa Clara filed a proof of claim for $255,298.22 for delinquent real property taxes as to Mora House and $116,837.60 as to Mora Lot. Both cases are designated as Single Asset Real Estate cases in the petitions, and they are jointly administered.

Debtors filed a plan of reorganization within 90 days of the petition date. The plan is premised on a sale of Mora House and Mora Lot, either together for $17,500,000 or separately for $14,999,999, and $3,500,000, respectively, within 6 months of the Effective Date, as defined in the plan, or within 12 months of the Effective Date if certain conditions are met. In the meantime, no payments will be made to secured creditors.

## II. MOTION FOR RELIEF FROM STAY AND RELATED PLEADINGS

PLS's Motion is brought under § 362(d)(1), (2), and (3), asserting lack of adequate protection, lack of equity, and an infeasible plan that has no reasonable possibility of being confirmed. The Motion is supported by a declaration from licensed appraiser Ricci E. Hart, who valued Mora House at $10,500,000 and Mora Lot at $2,750,000.

Because of the local rules in this district, Debtors appeared at the initial hearing and orally opposed the Motion. The court continued the hearing for a month and half to give Debtors an opportunity to file a written opposition, conduct discovery as they wished to depose PLS's appraiser, and submit additional evidence as to the value of the Properties.

Debtors filed an opposition, supported by declarations from Melvin Vaughn, who is the sole shareholder of Debtors, and Phil Chen, who is employed by the estate to market and sell the Properties. Debtors did not submit an appraisal.

### III. EVIDENCE OF VALUE

Resolution of this motion depends in large part on the evidence of the value of the Mora House and the Mora Lot. Not surprisingly, the parties focused much attention on this point at oral argument, in part because they differ significantly on the Properties' value.

A. <u>PLS Evidence of Value</u>

PLS offered the expert testimony of Mr. Hart. He indicated, as noted above, that the value of the Properties totaled $13,250,000. In coming to this conclusion, he used comparable market data and drew logical conclusions based on his expertise to arrive at the valuation for Mora House and Mora Lot.

At the hearing, Debtors for the first time criticized Mr. Hart's appraisal for being an external-only evaluation as well as using dissimilar properties for comparison. None of these arguments was included Debtors' written opposition even though Debtors had more than a month and half to review Mr. Hart's appraisal before filing the opposition.[1]

Notwithstanding Debtors' last-minute criticisms at the hearing, Mr. Hart's appraisal is competently and persuasively supported and the only credible evidence of value on the record.

---

[1] At the initial hearing on August 11, 2020, Debtors indicated that they would like to depose Mr. Hart. I continued the hearing for a month and half to give Debtors an opportunity to do so. At the final hearing on September 29, 2020, Debtors represented to the court that they were unable to arrange a mutually-agreeable time with Mr. Hart and therefore no deposition took place. Given that this was one of the reasons for the continuance, Debtors could have contacted the court for an informal discovery conference so I could have assisted in the timely scheduling of the deposition. No such request was made.

ORDER GRANTING MOTION FOR RELIEF FROM STAY

B. <u>Debtors' Evidence of Value</u>

Debtors have not provided an appraisal of the Properties.[2] Instead, Debtors relied on the scheduled value of the Properties and the declaration prepared by Mr. Chen, the broker engaged to sell the Properties. Debtors confidently predict that the Properties will sell at the list prices. It should be noted in this regard that the Properties have been marketed for sale for some years and have not sold. By example, Mora House has been marketed at the list price of $14,999,999 since October 2018.

Mr. Vaughn's assessment of the Properties' value, as set forth in the bankruptcy schedules, is not entitled to significant weight. The law is clear that an owner is competent to give his opinion of value of his own property, under Federal Rule of Evidence 701. However, to be probative or credible, there should be some evidence of how Mr. Vaughn reached his determination of value. *See In re Russell*, 567 B.R. 833, 840 (Bankr. D.Mont. 2017)("While a debtor's estimate of value may be acceptable in certain cases, the Court may give little weight to an opinion if not based upon sufficient facts."). That evidence is missing here.

The Debtors also offered the declaration testimony of Mr. Chen. His declaration states as follows:

> In my professional opinion, I believe that given the nature of the properties and the unique architecture of the Mora House, as well as taking into consideration the current circumstances and listings, that the properties <u>will sell at their current combined list price of $17,500,000 within approximately the next 6 months</u>.

---

[2] In Mr. Vaughn's declaration, he stated that he engaged Andrew Young, who appraised Mora House in 2018, as his appraiser when PLS filed its Motion to Dismiss, which was July 22, 2020. Mr. Vaughn further stated that he expected Mr. Young's appraisal by August 31, 2020, but Mr. Young informed him on September 1, 2020, that Mr. Young was unable to complete the appraisal due to an unexpected death in the family. For the record, Debtors did not file an application to employ Mr. Young as an appraiser, even though he was engaged some months ago. Debtors also did not include the 2018 appraisal completed by Mr. Young or disclosed the appraised value, which would have provided some evidence of value that could have been adjusted to account for change in market conditions in the intervening two years.

ORDER GRANTING MOTION FOR RELIEF FROM STAY

Declaration of Phil Chen, ¶ 7 (emphasis added).

Strictly speaking, this is not a valuation of the Properties. The list price for real property is not the same as its value. Mr. Chen's statement is simply a prediction that, within six months, the Properties will sell at a specified price. Other than generalized statements by Mr. Chen that he took into account the unique characteristics of Mora House and compared it to other properties for sale in the areas of Los Altos Hills, Palo Alto, Atherton, and Woodside, Mr. Chen provided no details on how he arrived at the list price, such as his methodology, market data comparison, and adjustments.

There is such a thing as a broker price opinion, but I cannot conclude that Mr. Chen's declaration fits that standard.[3] *See* 12 U.S.C. § 3355(b) ("the term 'broker price opinion' means an estimate prepared by a real estate broker, agent, or sales person that details the probable selling price of a particular piece of real estate property and provides a varying level of detail about the property's condition, market, and neighborhood, and information on comparable sales"). Mr. Chen's declaration is summary and makes no effort to discuss the characteristics of the other comparable properties. He did not mention how those properties' prices affect the value of the Properties at issue here.

In summary, I give much weight to Mr. Ricci's opinion of value and little weight to the bankruptcy schedules values prepared by Mr. Vaughn. I give no weight to Mr. Chen's statement because it does not actually discuss value.

## IV.   EQUITY IN THE PROPERTY

Given my conclusions about the value of the Properties, I must determine whether Debtors have any equity. I conclude that they do not.

---

[3] The court accept Mr. Chen's declaration for what it is, namely that in Mr. Chen's opinion, the Properties will sell at the list price in the next six months. To the extent that Mr. Chen's declaration is being offered as expert testimony for a broker price opinion or for valuation of the Properties, PLS's evidentiary objection is sustained because Mr. Chen provided no explanation of the methods he used. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms, Inc.,* 509 U.S. 579, 589-90 (1993).

|  | **Debtor** FRE 355 | | **Platinum Loan Serv.** FRE 355 | |
|---|---|---|---|---|
|  | Mora House | Mora Lot | Mora House | Mora Lot |
| Property Value | $14,999,000.00 | $ 4,000,000.00 | $10,500,000.00 | $ 2,750,000.00 |
| Blanchard Trust |  | $ 2,441,803.28 |  | $ 2,441,803.28 |
| Santa Clara County | $    255,298.22 | $    116,837.60 | $    255,298.22 | $    116,837.60 |
| Platinum | $13,264,318.71 |  | $13,264,318.71 |  |
|  | $ 1,479,383.07 | $ 1,441,359.12 | $(3,019,616.93) | $    191,359.12 |
| Net | $ 2,920,742.19 | | $(2,828,257.81) | |

As can be seen, the choice of which valuation to use is important in this case. Based on my conclusion that PLS's evidence of value is stronger, I conclude on the evidence that Debtors have no equity.

## V.   DISCUSSION[4]

PLS moves for relief from stay under three separate provisions. Under § 362(d)(1), the automatic stay may be terminated for cause, including the lack of adequate protection. Under § 362(d)(2), the automatic stay may be terminated if the debtor does not have equity in the subject property and such property is not necessary to an effective reorganization. For stay relief purposes, equity exists if the value of the property exceeds all claims secured by that property, whether those claims belong to the moving creditor or others. *In re Mellor*, 734 F.2d 1396, 1400 n.2 (9th Cir. 1984). An "equity cushion" is also dependent on the value of the subject property. An equity cushion exists where the value of the property is sufficient to fully secure the moving creditor, even if there is insufficient value to provide the debtor with

---

[4] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All "Civil Rule" references are to the Federal Rules of Civil Procedure and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure. "Civil L.R." and "B.L.R." references refer to the applicable Civil Local Rules and Bankruptcy Local Rules.

ORDER GRANTING MOTION FOR RELIEF FROM STAY
6/11

Case: 20-50628    Doc# 113    Filed: 09/30/20    Entered: 09/30/20 16:16:42    Page 6 of 11

equity when creditors junior to the movant are also considered. *Id.* PLS has the burden of proof on the issue of equity in the Properties, and Debtors have the burden of proof on all other issues. 11 U.S.C. § 362(g).

I find that cause exists to grant relief from stay under § 362(d)(1) because PLS is not adequately protected. It is not protected by an equity cushion and it has not received any postpetition payments, nor will it under Debtors' proposed plan.

Relief from stay is also appropriate under § 362(d)(2) and (3). As discussed above, PLS has met its burden that Debtors do not have equity in the Properties. The burden of proof shifts to Debtors to show that the Properties are necessary for an effective reorganization. Debtors must establish that "the property is essential for an effective reorganization *that is in prospect*. This means . . . that there must be a reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376 (1988) (emphasis in original; citations and internal quotation marks omitted). As this test is similar to that of § 362(d)(3)(A), the discussion will apply to both subsections.

Debtors do not dispute PLS's characterization that their reorganization plan is a negative amortization plan, and I concur. Although not *per se* impermissible under 11 U.S.C. § 1129(b), "plans [with negative amortization] tend to be fraught with pitfalls that unfairly endanger creditors." *Great Western Bank v. Sierra Woods Group,* 953 F.2d 1174, 1177 (9th Cir. 1992). Whether a reorganization plan that includes negative amortization is fair and equitable must be decided on a case-by-case basis pursuant to the non-exclusive factors set forth by the Ninth Circuit. *Id.*, at 1178.

In *Great Western Bank*, the Ninth Circuit noted that courts considering negative amortization plans have considered accrual or payment of a market rate of interest to be a necessary, but not sufficient, requirement for confirmation. In addition, the Ninth Circuit cited with approval a list of factors to be considered in determining whether a negative amortization plan should be confirmed, which includes whether the amount and length of

ORDER GRANTING MOTION FOR RELIEF FROM STAY
7/11

the proposed deferral is reasonable, the ratio of the debt to value, whether the plan is feasible, the nature of the collateral—i.e., whether its value is appreciating, depreciating, or stable, whether the risks are unduly shifted to the secured creditor, and whether there are adequate safeguards to protect the secured creditor against plan failure. *Id.,* at 1177-78.

Debtors have not provided any facts or made any arguments that their plan meets the requirements for a negative amortization plan. On the record before me, most of the factors weigh in favor of PLS, including the ratio of debt to value, Debtors' list prices for the Properties, which have not yet resulted in a sale, risks unduly shifted to PLS, preclusion of foreclosure by PLS during the plan term, and the lack of adequate safeguards to protect PLS against plan failure.

PLS also raises a valid issue that another $816,000 in interest accrues every six months, a fact not disputed by Debtors, while the plan does not provide for any adequate protection payments to PLS. Similarly, interest will also continue to accrue on the Blanchard loan as will property taxes during the plan term. These facts suggest that a negative amortization plan confers significant risk on PLS but no risk on Debtors.

I am also mindful that these are single asset real estate cases, and § 362(d)(3) was drafted specifically to address perceived abuses "in which debtors have attempted to delay mortgage foreclosures even when there is little chance that they can reorganize successfully." 3 COLLIER ON BANKRUPTCY ¶ 362.07[5][b] (Richard Levin & Henry J. Sommer eds., 16th ed.). Generally, in a single asset case where there is no equity in the property, the stay should not be continued based on the debtor's hope that a beneficial liquidation plan can be achieved. Debtors do not get to wait for that one purchaser willing to pay their price to materialize while PLS is not adequately protected. This is the scenario that § 362(d)(3) was designed to avoid.

In sum, Debtors have not established that they can meet the requirements to confirm a negative amortization plan. The list prices for the Properties, on balance, have not resulted in sales and this suggests they are speculative. I conclude Debtors have not shown that their

ORDER GRANTING MOTION FOR RELIEF FROM STAY

plan has a realistic and reasonable chance of being confirmed. *See* 3 COLLIER ON BANKRUPTCY ¶ 362.07[4][b] ("A debtor also fails to show necessity of the property for an effective reorganization if the debtor's plan is unsupported by credible assumptions and projections that offer some basis for confidence that the plan could succeed.").

It is worth noting that Debtors have disputed the amount of PLS's lien in this case. That matter is set for hearing on October 7, 2020. Debtors' argument, as I understand it and from hearing oral argument, is that PLS's secured claim is actually less than the approximate amount of $13,300,000 in its proof of claim because of miscalculations and duplicate charges.

Even assuming, for the sake of argument, that Debtors prevail on their objection to PLS's claim and the claim is reduced to $11,338,000, as Debtors contend, there is still no equity or equity cushion. With an appraised value of $10,500,000, Mora House lacks equity or equity cushion. Since PLS's loan is cross-collateralized, Mora Lot, appraised at $2,750,000, also does not have any equity when taking into account the first deed of trust held by Blanchard Trust in the amount of $2,441,803 and delinquent property taxes of $116,837. PLS, whose lien against the Mora Lot is junior to that of Blanchard Trust, does not have any equity cushion. Were I to sustain that objection, it would not make a material difference on this record. And, needless to say, PLS contested Debtors' arguments about its claim.

Lastly, I address Debtors' arguments that these are extraordinary times and that I should set an evidentiary hearing. There is no question that the Covid-19 pandemic and the wildfires in the Bay Area affected the marketing and sale of the Properties. Overruling the strong objection from PLS, I took the pandemic into account when I continued the initial hearing for more than a month for the express purpose of giving Debtors additional time to conduct discovery and present evidence of valuation. *See* Order Continuing Hearing on Platinum Loan Servicing, Inc.'s Motion for Relief from Stay (DKT 81). Neither was accomplished.

ORDER GRANTING MOTION FOR RELIEF FROM STAY
9/11

It is also important to note that Debtors have been trying to sell the Properties for a number of years, long before the pandemic and the wildfires. By Debtors' own admission, both Properties have been marketed for sale since 2017, and Mora House has been listed for sale at the current price since October 2018, almost a year and half before the onset of the Covid-19 pandemic. *See* Declaration of Phil Chen in Support of Opposition to Motion to Dismiss Chapter 11 Cases (DKT 79).

Addressing Debtors' argument that they are entitled to an evidentiary hearing, I find they are not. "[T]here is no right to a trial in every contested matter. The trial of a contested matter under Rule 9014 requires trial testimony in open court only when there is a genuine factual dispute." *In re Malek*, 591 B.R. 420, 432 (Bankr. N.D. Cal. 2018), citing *In re Khachikyan*, 335 B.R. 121, 126 (B.A.P. 9th Cir. 2005). For the reasons indicated above Debtors have not presented substantial evidence to support their view that there are genuine issues of material fact regarding the Properties' valuation.

Accordingly, for the foregoing reasons,

IT IS HEREBY ORDERED as follows:

1. In regard to real property commonly known as 10718 Mora Drive, Los Altos, California, and the undeveloped lot in Los Altos, California, identified as APN #331-41-067, the Motion is GRANTED under § 362(d)(1), (2), and (3), and the automatic stay is terminated in all respects as to PLS and PLS may enforce its remedies in accordance with applicable non-bankruptcy law.

2. The 14-day stay provided in Bankruptcy Rule 4001(a)(3) is not waived.

**\*\*\* END OF ORDER \*\*\***

ORDER GRANTING MOTION FOR RELIEF FROM STAY
10/11

**COURT SERVICE LIST**

[ECF recipients only]

ORDER GRANTING MOTION FOR RELIEF FROM STAY
11/11